```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                         Docket #1:22-cv-05974-
 GMO GAMECENTER USA, INC. et al,    :    JPC-KHP

                    Plaintiffs,     :

  - against -                       :

 WHINSTONE US, INC.,                :    New York, New York
                                         December 13, 2022
                    Defendant.      :
                                         STATUS CONFERENCE
------------------------------------ :


                        PROCEEDINGS BEFORE
                 THE HONORABLE KATHARINE H. PARKER,
                   UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:          HAYNES AND BOONE LLP
                         BY:  LESLIE C. THORNE, ESQ.
                         30 Rockefeller Plaza, 26th Floor
                         New York, NY 10112

For Defendant:           FOLEY & LARDNER, LLP
                         BY:  ROBERT ALLEN SCHER, ESQ.
                         90 Park Avenue
                         New York, NY 10016



Transcription Service:   Carole Ludwig, Transcription Services
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com




Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

**INDEX**

**E X A M I N A T I O N S**

| **Witness** | **Direct** | **Cross** | **Re-Direct** | **Re-Cross** |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| **Exhibit Number** | **Description** | **ID** | **In** | **Voir Dire** |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS                        3
 2              THE CLERK:  Calling case 22-civil-5974, GMO
 3   Gamecenter USA vs. Whinstone US.
 4              Beginning with counsel for the plaintiff, please
 5   make your appearance for the record.
 6              MS. LESLIE C. THORNE:  Leslie Thorne for the
 7   plaintiffs.
 8              THE CLERK:  And counsel for the defendant?
 9              MR. ROBERT A. SCHER:  For defendant, Robert Scher.
10   Good afternoon, your Honor.
11              HONORABLE KATHARINE H. PARKER (THE COURT):  All
12   right, good afternoon.  Thank you, all, for coming in.
13   Nice to see you.
14              So, I wanted to get an update on where you are on
15   discovery, any issues that have arisen or that you may
16   anticipate.  And let's start with plaintiffs' counsel.
17              MS. THORNE:  We have our first set of discovery
18   responses due tomorrow.  And so we have not run into any
19   issues yet.  We are in sort of the final stages of
20   negotiating a confidentiality order that's based on your
21   Honor's order, with just a few changes to fit it to the
22   case.  But I don't anticipate any problems in that area.
23              We also anticipate working over the next couple of
24   weeks to work on an ESI protocol.  But so far we've worked
25   well together, so I don't anticipate any issues there.
```

```
 1                         PROCEEDINGS                        4
 2              THE COURT:  Okay.  Good.  And with the ESI
 3   protocol, I guess let me -- do you anticipate any issues
 4   with that ESI protocol?
 5              MS. THORNE:  I don't think so.
 6              THE COURT:  No.  Okay.
 7              MS. THORNE:  We have spoken and decided to --
 8   we're exchanging some documents that are sort of easily
 9   accessible and all that in the first -- in the first round.
10              THE COURT:  Right.
11              MS. THORNE:  But we anticipate talking through
12   some custodians and search terms that might make sense.  At
13   this point, I don't anticipate any major issues there.
14              THE COURT:  All right, good.  I just was at some
15   conferences talking about ESI protocols, and it occurred to
16   me that it might be more efficient for the parties to
17   perhaps approach an ESI protocol ss a more iterative type
18   of document.  Just once you're informed with the exchange of
19   some information -- I'm glad you're exchanging some
20   documents -- you might be able to hone in on how you want to
21   search further in a more efficient way.  So I just ask that,
22   as you're negotiating it, think about how to be most
23   efficient.  That's going to be in both parties' interests.
24              MS. THORNE:  Certainly, your Honor.
25              THE COURT:  Okay.  Good.  And from defendant's
```

```
 1                        PROCEEDINGS                       5
 2   perspective, where are you?
 3              MR. SCHER:  Nothing to add.  Ms. Thorne and I had
 4   an opportunity to speak earlier today, and I agree with her
 5   report.  I guess the only thing to add in addition is we have
 6   discussed -- and we discussed this the last time before your
 7   Honor -- a settlement conference before your Honor, which
 8   both of our clients seem to be willing to do, on the condition
 9   that clients be there in person, which we understand is a
10   requirement of your rules --
11              THE COURT:  Yes.
12              MR. SCHER:  -- in any event, as well as we
13   discussed giving an offer back and forth, which also is
14   part of your rules and required.
15              THE COURT:  Correct.
16              MR. SCHER:  There is some mid-January, at least
17   on -- I think on both of our clients' parts, some times
18   that they're unavailable, so we were hoping you might be
19   able to give us a couple of dates in either late January
20   into February that work, and we could then go back and see
21   what works and get back to you, if that is acceptable to
22   you.
23              THE COURT:  Yes.  I'm glad to hear that you're
24   talking about an early resolution.  My calendar's pretty
25   full, actually, in January.  So what typically works best
```

```
 1                         PROCEEDINGS                      6
 2   is that we pick a date that works for counsel; and then if
 3   your clients absolutely can't make it, then you write to
 4   me.  Because I do have a lot of dates even already filled
 5   in February.  Do you think that you -- you'll need a full
 6   day for this, right?
 7             MS. THORNE:  I expect so.  Part of the
 8   complicating factor there is that most of my clients only
 9   speak Japanese.
10             THE COURT:  Right.
11             MS. THORNE:  And so we'll need to have a
12   translator, which slows things down a little bit.
13             THE COURT:  Yes.
14             MS. THORNE:  Would you like us to sort of get
15   together offline and come up with a few different dates to
16   send you, or would you --
17             THE COURT:  Hang on one second.
18             Okay, so what my deputy is saying is February 22nd
19   is a full day that's open.  Hang on.
20             MR. SCHER:  Is February 20th President's Day,
21   which I think -- I don't know if -- I don't have my phone
22   on me.  I don't know if there's a --
23             THE CLERK:  Yes, the Court's closed that day.
24   It's a Monday; it's the 20th, yes.
25             THE COURT:  So that's not a good week for --
```

```
1                          PROCEEDINGS                         7
2            MR. SCHER:  That week may be problematic.
3            THE COURT:  Okay.  So that may be why I have that
4    date open.  I can do the 28th the whole day.  It looks like
5    I don't have any other whole days.  Let me just see here.
6            MR. SCHER:  I believe that's fine for me.  Again,
7    I would have to check with my clients, but I imagine they
8    would be able to make themselves available.
9            MS. THORNE:  That works for me, as well.
10           THE COURT:  Okay.  So let's -- I'm going to
11   schedule it for the 28th for the whole day.  Write to me as
12   soon as possible if that does not work.  You'll need
13   to -- plaintiffs' counsel will need to arrange for the
14   translator to be here.  And how many people in the
15   plaintiffs' group are you anticipating will be here?
16           MS. THORNE:  I would anticipate we will have four
17   lawyers and I think probably three client representatives.
18           THE COURT:  Okay.  And what about for defense
19   side?
20           MR. SCHER:  I imagine two lawyers and maximum
21   three clients.
22           THE COURT:  Okay.  All right.  So that's fine.  We
23   can accommodate that here.  And I think -- normally I have
24   a three-page limit on the premediation statement.  But it
25   might help to have slightly more pages, I think.
```

```
 1                         PROCEEDINGS                        8
 2             MR. SCHER:  Five?
 3             THE COURT:  Five pages.  Again, I don't have any
 4   stake in the matter, so you don't need to convince me of
 5   anything.  The purpose of the mediation statement is really
 6   to key in on the key leverage points for settlement
 7   discussion and to hone in on damages.  If there's a
 8   difference of opinion about a particular point of law or a
 9   particular fact or a particular method of analyzing
10   damages, it will be helpful for me to understand that.  And
11   if there's anything you want to attach that you want me to
12   take a look at, I can do that in advance of the conference.
13   But that's really the purpose of it, rather than an
14   advocacy piece, to really help me focus in on those key
15   issues that each side will be, you know, wanting to raise
16   and discuss in the settlement context.  So it's a little
17   bit different purpose than a brief.
18             And then I do encourage you to try to narrow the
19   gap -- I think we talked about this last time -- as much as
20   possible before you get to me.  So if you can have multiple
21   exchanges of numbers, that is great.  You're not restricted
22   to just one demand and one counter.  So I encourage you to
23   narrow that gap and to have a dialogue to understand what
24   the key points of disagreement are for purposes of
25   settlement so that we can focus in and use the time
```

```
 1                         PROCEEDINGS                        9
 2  effectively during the settlement conference.
 3             And I think I said before that I don't require any
 4  opening statements by the lawyers.  That's usually not that
 5  productive, I find.  We can certainly talk together, if
 6  that would be useful during the course of the day; but
 7  usually I'm talking separately with each side.
 8             Your clients are, of course, welcome to talk
 9  themselves during the conference, if they want.  And when
10  we meet here, I'll go over the procedures for the benefit
11  of your respective clients before we go into breakout
12  sessions.  Okay?
13             Any questions about that process?
14             MR. SCHER:  I only had one question -- and this
15  may be in your rules, and I apologize; I can go back and
16  look.  Do you want the mediation statements to be ex parte?
17             THE COURT:  Yes.  They're ex parte.  Sometimes
18  parties choose to exchange them.  I don't object to that,
19  but I find that it's usually better for ex parte because
20  you can tell me if there's some kind of impediment or
21  something that you want me to know just for my ears only.
22             Let me see what else I wanted to talk about.  If
23  there's any -- I mean, so this is primarily a contract
24  dispute; I don't know if there would be any kind of unusual
25  terms to an agreement here, other than just exchange of
```

```
 1                        PROCEEDINGS                         10
```

2  money.  But if there are any terms or business terms or
3  anything of that sort, I think it's important for counsel
4  to have a discussion about that, what you would be
5  expecting in terms of provisions in any kind of agreement,
6  just so that you can think through some of those issues in
7  advance of the conference.  Particularly if people are
8  coming from far away, I want to make the best use of the
9  day as possible.  So I would ask that you think about that,
10 particularly if they're unusual terms.  I'm not talking
11 about, you know, the run-of-the-mill confidentiality or
12 something like that, but you know what I mean.
13           Any other questions that you all have?
14           MS. THORNE:  No, your Honor.
15           MR. SCHER:  No, your Honor.
16           THE COURT:  Okay.  All right, so I think that
17 we've discussed everything, then.  Is there anything else
18 that plaintiffs' counsel would like to raise?
19           MS. THORNE:  Not for plaintiffs, no.
20           THE COURT:  And what about defense?
21           MR. SCHER:  No, your Honor.  Thank you.
22           THE COURT:  Okay.  Good.  So I'll look forward to
23 seeing you in February.  And I hope that I can help you
24 resolve this case.  And, in the meantime, Happy Holidays.
25           (Whereupon, the matter is recessed.)

```
 1                                                            11
 2
 3                      C E R T I F I C A T E
 4
 5          I, Carole Ludwig, certify that the foregoing
 6   transcript of proceedings in the case of GMO Gamecenter
 7   USA, Inc. et al v. Whinstone US, Inc., Docket #22-cv-05974-
 8   JPC-KHP, was prepared using digital transcription software
 9   and is a true and accurate record of the proceedings.
10
11
12
13
14          Signature   Carole Ludwig
15                      Carole Ludwig
16
17
18          Date:    December 16, 2022
19
20
21
22
23
24
25
```