```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
          ------------------------------:

          GMO GAMECENTER USA, INC.,      : Case No.: 22-cv-5974

          et al.,                        :

                         Plaintiffs,:

              v.                         :

          WHINSTONE US, INC. ,           : New York, New York

                         Defendant. : April 20, 2023

          ------------------------------:
```

TRANSCRIPT OF STATUS CONFERENCE HEARING

BEFORE THE HONORABLE KATHARINE H. PARKER

UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          HAYNES AND BOONE LLP
                        BY:  Leslie C. Thorne, Esq.
                             Michael Freyberg, Esq.
                        30 Rockefeller Plaza
                        New York, New York 10012

For Defendant:          DEBEVOISE & PLIMPTON LLP
                        BY:  Maeve L. O'Connor, Esq.
                             Brandon R. Fetzer, Esq.
                             Elliot Greenfield, Esq.
                        66 Hudson Boulevard
                        New York, New York 10001

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

PROCEEDINGS

1              THE DEPUTY CLERK:  Calling Case

2    22-cv-5974; GMO Gamecenter versus Whinstone US.

3              Beginning with counsel for the plaintiff,

4    please make your appearance for the record.

5              MS. THORNE:  Leslie Thorne and Mike

6    Freyberg for GMO.

7              THE COURT:  Hi.

8              THE DEPUTY CLERK:  And counsel for the

9    defendants, please make your appearance for the

10   record.

11             MS. O'CONNOR:  Maeve O'Connor, Elliot

12   Greenfield and Brandon Fetzer of Debevoise &

13   Plimpton for defendant.

14             THE COURT:  Hello.

15             MS. O'CONNOR:  Good morning.

16             THE COURT:  Okay.  So it's a case

17   management conference today.  Before we -- before

18   you fill me in on discovery issues, have the parties

19   had any more discussions about settlement?  Is that

20   something that --

21             MS. THORNE:  We have --

22             THE COURT:  -- is still possible?

23             MS. THORNE:  I don't think so.  Not at

24   this time.  Whinstone representatives did travel to

25   Japan this week, earlier this week, to meet with

PROCEEDINGS

1    GMO, and they had a couple of days to discuss

2    whether there was some business solution here.  I

3    don't think there is at this time.  I would not say

4    that's a forever situation, but I think, given the

5    discovery that's happened since the last settlement

6    meeting, and also we visited the Rockdale facility.

7              THE COURT:  Great.

8              MS. THORNE:  I think there are going to

9    be significant factual issues that the parties are

10   going to need to, sort of, hash out and do a bit

11   more discovery before any more settlement

12   discussions are to be fruitful.  But I'm curious to

13   hear opposing counsel's view on this.

14             THE COURT:  Okay.

15             MS. O'CONNOR:  Thank you, Your Honor.

16             We're obviously brand new to the case,

17   having just substituted in this week, but our

18   understanding is the same, that the parties did have

19   this, kind of, business person to business person

20   meeting in Japan that was not fruitful.  It doesn't

21   seem as though there's a path at present.  And so

22   we'll have to be litigating.  And I'm sure that if

23   an opportunity comes along for further discussions

24   that folks think will be fruitful, I'm sure that

25   both parties will be open to engagement.

PROCEEDINGS

 1              THE COURT:  And so did your team visit
 2      the facility?
 3              MS. O'CONNOR:  Not our personal team, but
 4      the client's business people from our side traveled
 5      to Japan.
 6              THE COURT:  No, no.  I'm talking about
 7      have the lawyers seen the facility in Texas?
 8              MS. O'CONNOR:  No.
 9              THE COURT:  Because there's factual
10      issues, I think, about the space and the state of
11      the machines, Gamecenter's machines.  Are they
12      actually working?  How up to date are they?
13              There's allegations that they're -- as I
14      understand it, that they're antiquated and not even
15      able to use the power that was available.  So I had
16      suggested that the lawyers need to go look at the
17      building and the machines in the building as
18      compared to other machines.  Has your team done that
19      yet?
20              MS. O'CONNOR:  Our -- it was plaintiffs
21      who did that.
22              THE COURT:  Okay.
23              MS. O'CONNOR:  And I didn't have an
24      understanding -- we obviously knew that --
25              THE COURT:  Yeah.

PROCEEDINGS

1              MS. O'CONNOR:  -- the direction had also

2     been at counsel for defendant --

3              THE COURT:  I mean, I think it would be

4     helpful for counsel to see it in person.

5              MS. O'CONNOR:  Yes.  In-house counsel for

6     defendant, I believe, has seen it.

7              THE COURT:  All right.  It's probably

8     helpful for outside counsel, too, actually, so that

9     you know what's -- you know, what it looks like.

10             So tell me from plaintiff's counsel

11    perspective what's happened since I last saw you

12    from discovery.  Is discovery on track?

13             MS. THORNE:  I would say discovery has

14    proceeded.  Both sides have continued to assemble

15    documents, gather documents from their clients.  I

16    think there's a significant amount to be done.  And

17    I think also -- we had a chance to visit this

18    morning for the first time, and it's been -- we

19    discussed potential changes to the schedule that we,

20    I think, agree on in light of new counsel getting up

21    to speed and also making sure that there's time for

22    production of the documents before we move into full

23    deposition discovery.

24             We've also set up a discussion for next

25    week to finalize the ESI protocol, which no issue

PROCEEDINGS

1    with ESI protocol, it's more the logistics of how to

2    search for documents, making sure we're all on the

3    same page and minimize any disputes later on with

4    respect to, you know, responsiveness.

5                THE COURT:  Okay.  So what is it that you

6    are anticipating, and what's the new schedule that

7    you're proposing?

8                MS. THORNE:  Big picture, we received a

9    proposal from opposing counsel this morning that

10   essentially pushed back all of the deadlines about

11   three months, and also added a couple of deadlines

12   for expert reports because I think both sides

13   anticipate that this is going to be a heavy, heavy

14   expert case.

15               And so we would be -- we're not in a

16   position right now to -- I don't have a draft for

17   you, but I anticipate that in short order, you know,

18   potentially even today, we submit an agreed order

19   with respect to deadlines that I believe are pushing

20   all of the existing deadlines back for three months

21   and put expert report deadlines in mid-December and

22   rebuttal experts in mid-January.

23               THE COURT:  And remind me, how many

24   experts is your side intending to call?

25               MS. THORNE:   I anticipate we will have --

PROCEEDINGS

1    not including any attorney's experts, probably

2    three.

3              THE COURT:  Three.  Okay.

4              And what are the topics for those

5    experts?

6              MS. THORNE:  Damages.  We also intend to

7    have an expert on the machines specifically, a

8    technical expert on that.  As well as potentially an

9    expert to, sort of, explain the business and the

10   market so that that can be better understood is what

11   we're anticipating.

12             THE COURT:  Okay.  And so you've

13   exchanged document requests --

14             MS. THORNE:  Yes, we've received document

15   requests --

16             THE COURT:  -- and responses?

17             MS. THORNE:  -- written responses and

18   limited productions, both sides.  Although I think

19   we both acknowledge that we will have additional

20   documents to produce based on word searches of

21   certain custodians.

22             THE COURT:  So when do you think you'll

23   be in a position to start fact depositions?

24             MS. THORNE:  I would say in late May is

25   my -- would be my best guesstimate.

PROCEEDINGS

 1            THE COURT:  Okay.  And I guess some of

 2    the fact individuals were here at the -- fact

 3    witnesses would be here at the -- were here at the

 4    settlement conference.

 5            MS. THORNE:  Correct.

 6            THE COURT:  Right.  Okay.

 7            MS. THORNE:  Although I think there will

 8    probably also be some third-party depositions.  For

 9    instance, Whinstone's former CEO has left the

10    company, and so I don't know if we'll be able to

11    arrange that with opposing counsel.  I don't know

12    what the relationship is or whether we'll need to,

13    you know, do that sort of outside of party

14    negotiation.

15            There are also, I think, some who were

16    involved in the negotiation of the original

17    agreement who were with a company called Northern

18    Data, who Riot bought Whinstone from.  And so we'll

19    need to -- I anticipate wanting to depose one or two

20    of those people as well.

21            THE COURT:  Okay.  So since you're headed

22    into the summer season, I'd like counsel to talk

23    about holding dates for depositions to get -- you

24    know, so that you can get things scheduled, and

25    you're not coming to me for extensions because of

1   people's vacation schedules.  Get those -- it's

2   always hard to get dates over the summer, and that's

3   what your schedule is contemplating.  So you should

4   talk early, even if you don't have -- know the exact

5   order, get counsel time, dates, and then you can

6   pencil in the witnesses.

7            Okay.  From defendant's standpoint, where

8   are you in discovery?  What are you anticipating?

9   Is it basically in line with what plaintiff's

10  counsel has said?

11           MS. O'CONNOR:  I think it's -- I think

12  it's quite similar.  My expectation is that many of

13  the fact depositions will probably be in September

14  because of substantial completion of document

15  production.  It just makes more sense to try to get

16  all that done first.  And I think we had talked

17  about substantial completion maybe in August.  And

18  so it may be that the depositions take place

19  slightly differently in terms of how we fill out the

20  months ahead.  But, nonetheless, I think, generally,

21  that's about what we would envision.

22           We would envision similar experts in our

23  case, and agree that there will be some third-party

24  discovery and some party depositions.  And we can

25  certainly start to block out a schedule and start

PROCEEDINGS

 1   holding some dates so that we are sure we can get it

 2   all in.

 3                  THE COURT:  Okay.  Now, what are you

 4   anticipating to be the volume of documents?  Because

 5   it seems to me that there's just some -- there's --

 6   I mean, there's some e-mail communications,

 7   obviously, because there were some e-mail

 8   communications about this power, whether it was

 9   needed, whether additional space was needed in the

10   other building or not.  So there's some e-mails back

11   and forth, but the number of custodians, it seems to

12   me, is not really that great.  But tell me if I'm

13   wrong.

14                  MS. O'CONNOR:  I think I agree that the

15   number of custodians is not huge.  And I think we

16   will have a much better sense of volume once we

17   exchange our proposed search terms and run them and

18   look at how many hits we get.  We're now in the

19   process of transferring the database that exists

20   over to our firm so that we can start seeing what's

21   in there.  So I don't have a huge -- I don't have a

22   great sense right now of what the volume will be, so

23   I'm a little nervous about saying we'll get to

24   substantial completion so quickly that we'll be able

25   to kick off into all depositions in May.  I'm not

PROCEEDINGS

1    sure that's right.  But we're certainly not looking

2    to unduly slow things either.  We just don't have

3    all the visibility yet.

4              THE COURT:  How many Japanese language

5    documents do you think there may be, and have you

6    addressed that in -- you know, in your protocols, or

7    your draft protocols?

8              MS. THORNE:  And I'm happy to address --

9              THE COURT:  Yeah.

10             MS. THORNE:  -- that.  We discussed that

11   with prior counsel.

12             THE COURT:  Yeah.

13             MS. THORNE:  We did discuss that.  I

14   don't anticipate there will be that many.  All of

15   the parties' communications with each other are in

16   English.  And I think a good bit of the discovery in

17   this case will actually be not communications per se

18   by e-mail, more data logs --

19             THE COURT:  Right.

20             MS. THORNE:  -- and both -- internal to

21   both parties, and also, sort of, they use the system

22   to create, sort of, work orders and requests for

23   (inaudible) and issues like that.  And so I think

24   that will be most of it.

25             So I think the only Japanese language

PROCEEDINGS

1   documents will be our internal documents.  We have

2   discussed with opposing counsel that we would just

3   produce those in Japanese.  Obviously, to submit

4   things to the Court, both parties anticipated hiring

5   certified translators to produce certified copies,

6   to the extent that we need it.

7           But we had set up counsel in Japan to

8   review the Japanese documents -- obviously, I do not

9   speak Japanese -- and consult closely with us to

10  make sure that they're catching everything.  But

11  that was what we discussed with opposing counsel.

12  We're happy to --

13          THE COURT:  Right, because the search

14  terms will have to be --

15          MS. THORNE:  Yes.

16          THE COURT:  -- tailored --

17          MS. THORNE:  Yes.

18          THE COURT:  -- for that.

19          MS. THORNE:  Correct.

20          THE COURT:  Okay.  Any other issues that

21  you're anticipating at this point in discovery?

22          MS. THORNE:  I don't think so.

23          MS. O'CONNOR:  Not for defendant.  Thank

24  you, Your Honor.

25          THE COURT:  No?  Okay.

PROCEEDINGS

1          So seems to me then I can have a status

2    letter in 30 days as to how you're going in

3    discovery.  And we can, maybe, schedule a conference

4    for the summer.

5          You should follow my rules in terms of

6    any discovery issues that pop up.  Just send me a

7    letter.  I'll schedule a conference.  If it seems as

8    if there's a lot of issues, then I'm going to

9    schedule regular conferences.  Right now it doesn't

10   seem like there's -- you're headed toward that path.

11   I hope that you're not, and then you can meet and

12   confer and work out everything.  But I'll try to

13   meet with you to resolve issues to the extent I can

14   in conferences without the need for a lot of motion

15   practice; okay?

16          Anything else?

17          MS. THORNE:  Not from plaintiffs, Your

18   Honor.

19          THE COURT:  No?

20          MS. THORNE:  Well, actually, one other

21   thing.

22          THE COURT:  Oh.

23          MS. THORNE:  I anticipate that we'll file

24   by the end of the week a motion to extend the

25   deadline.  And then we'll also plan to do the status

PROCEEDINGS

1   letter in 30 days, but I just wanted to tag that

2   we'll get that on file.

3           THE COURT:  Yeah, you should do that.

4   And did you -- forgive me if I'm misremembering.

5   Did you already submit a proposed protective order?

6           MS. THORNE:  Yes.

7           THE COURT:  You did do that.  Okay.  All

8   right.  Good.

9           MS. O'CONNOR:  Nothing further for

10  defendant.

11          THE COURT:  All right.  Nice to see

12  everybody.  Welcome, to new counsel.  Okay.

13

14                        0o0

15

16

17

18

19

20

21

22

23

24

25

```
 1                 C E R T I F I C A T E

 2

 3        I, Adrienne M. Mignano, certify that the

 4   foregoing transcript of proceedings in the case of

 5   GMO Gamecenter USA, Inc. v. Whinstone US, Inc.,

 6   Docket #22CV5974 was prepared using digital

 7   transcription software and is a true and accurate

 8   record of the proceedings.

 9

10

11   Signature   _Adrienne M. Mignano_____

12              ADRIENNE M. MIGNANO, RPR

13

14   Date:        April 21, 2023

15

16

17

18

19

20

21

22

23

24

25
```