UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GMO GAMECENTER USA, INC. and GMO
INTERNET GROUP, INC.,

        *Plaintiffs*,

  - against -

WHINSTONE US, INC.,

        *Defendant.*

WHINSTONE US, INC.,

        *Counterclaim Plaintiff,*

  - against -

GMO GAMECENTER USA, INC. and GMO
INTERNET GROUP, INC.,

        *Counterclaim Defendants.*

Civil Action No. 1:22-cv-05974-JPC

**GMO'S MEMORANDUM OF LAW IN SUPPORT OF
ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER
TO PRESERVE EVIDENCE AND THE STATUS QUO**

Leslie C. Thorne
Alexandra Larkin
Michael Freyberg
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989

**ATTORNEYS FOR GMO
GAMECENTER USA, INC. and
GMO INTERNET GROUP, INC.**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

    A.   GMO filed this action alleging that Whinstone breached the Texas
        Agreement, under which Whinstone's Texas Data Center hosts
        GMO's Bitcoin-mining machines. ........................................................................... 2

    B.   GMO and its counsel arranged an initial fact-gathering visit to the
        Texas Data Center. ................................................................................................ 2

    C.   Whinstone's counsel sent a demand letter that recognizes the
        importance of preserving relevant evidence, including GMO's
        machines, and Whinstone failed to preserve video evidence. ........................... 3

    D.   Whinstone terminated the Texas Agreement and threatened to
        remove GMO's mining machines from the Texas Data Center. ....................... 5

    E.   GMO's counsel sought a reasonable arrangement to preserve and
        collect relevant evidence—but Whinstone refused ........................................... 7

    F.   GMO seeks immediate relief to preserve and permit access to
        important evidence. ............................................................................................... 9

ARGUMENT ........................................................................................................................ 10

    A.   The Court may grant injunctive relief to preserve potentially
        relevant evidence. ............................................................................................... 10

    B.   Injunctive relief is appropriate and necessary to permit GMO and its
        expert to gather and preserve relevant evidence about operations at
        the Texas Data Center. ....................................................................................... 11

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aquavit Pharms., Inc. v. U-Bio Med, Inc.*,
  No. 19-CV-3351, 2021 WL 4312579 (S.D.N.Y. July 16, 2021) ............................................. 14

*ComLab v. Tire*,
  815 F. App'x 597 (2d Cir. 2020) ....................................................................................... 10

*In re Complaint of Specialist LLC*,
  No. 16-CV-5010, 2016 WL 6884919 (S.D.N.Y. Nov. 22, 2016) ................................ 10, 11, 14

*Kelly Toys Holdings, LLC v. Airpods Pro Store*,
  No. 21-CV-8435, 2022 WL 2801077 (S.D.N.Y. July 18, 2022) ........................................... 13

*Kronisch v. United States*,
  150 F.3d 112 (2d Cir. 1998) .............................................................................................. 10

*N.A.A.C.P., Inc. v. Town of East Haven*,
  70 F.3d 219 (2d Cir. 1995) ................................................................................................ 10

*Pro. Merch. Advance Cap., LLC v. C Care Servs., LLC*,
  No. 13 CIV. 6562, 2013 WL 12109397 (S.D.N.Y. Oct. 2, 2013) .......................................... 13

*Prof'l Merch. Advance Cap., LLC v. C Care Servs., LLC*,
  No. 13-CV-6562, 2013 WL 12109397 (S.D.N.Y. Oct. 2, 2013) ........................................... 10

*R.F.M.A.S., Inc. v. So*,
  271 F.R.D. 13 (S.D.N.Y. 2010) .......................................................................................... 14

*RBC Nice Bearings, Inc. v. Peer Bearing Co.*,
  No. 3:06-CV-1380, 2008 WL 11376620 (D. Conn. Nov. 5, 2008) ........................................ 10

*Toussie v. Allstate Ins. Co.*,
  No. 15-CV-5235, 2018 WL 11451597 (E.D.N.Y. Aug. 15, 2018) ............................. 10, 12, 14

*Treppel v. Biovail Corp.*,
  233 F.R.D. 363 (S.D.N.Y. 2006) ......................................................................... 10, 11, 12, 14

*Wager v. G4S Secure Integration, LLC*,
  No. 19-CV-3547, 2021 WL 5304321 (S.D.N.Y. Nov. 15, 2021) ........................................... 14

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*,
  877 F.2d 1120 (2d Cir. 1989) ............................................................................................. 10

**Rules**

Fed. R. Civ. P. 37 .................................................................................................................. 10, 15

Fed. R. Civ. P. 65 .................................................................................................................. 1, 15

Plaintiffs/Counterclaim-Defendants GMO Gamecenter USA, Inc. and GMO Internet Group, Inc. (collectively, "GMO") move by order to show cause for a temporary restraining order and preliminary injunction under Fed. R. Civ. P. 65 requiring Defendant/Counterclaim-Plaintiff Whinstone US, Inc. ("Whinstone") to preserve evidence and maintain the status quo.

## PRELIMINARY STATEMENT

This action centers on machines that GMO uses to mine Bitcoin, which are hosted at a facility in Texas under a contract between GMO and Whinstone. The mining operations have encountered problems, and the parties dispute the reasons why. GMO claims that, among other things, Whinstone has not provided sufficient power to the Bitcoin-mining machines, improperly removed machines from operation, and failed to provide a fully functional data center to host the machines. Whinstone, on the other hand, contends that GMO's machines are outdated or inoperable, among other things.

Evidence about the operations of GMO's machines at the Texas facility is therefore critical to the parties' claims and defenses. Discovery is in its early stages. Yet Whinstone has declared its intent to remove GMO's machines from the facility and thus prevent GMO and its technical expert from gathering and preserving crucial information about these operations. Whinstone is steadfast in this plan despite GMO's repeated efforts to reach a workable arrangement, and despite acknowledging that it did not preserve certain video footage of the facility, even though it was important to show what happened to GMO's machines and should have been preserved once GMO filed this action.

Whinstone's imminent removal of GMO's machines before the bulk of fact discovery has occurred and before GMO's expert has sufficiently examined and documented the operations at the Texas facility threatens irreparable harm to GMO's ability to prove its claims, defenses, and

damages in this action. Accordingly, GMO respectfully requests that this Court grant a temporary restraining order and preliminary injunction prohibiting Whinstone from removing or powering down GMO's machines through the discovery period, which is scheduled to conclude on October 27, 2023, and in any event no sooner than October 1, 2023, so that GMO's expert may properly observe, assess, and document GMO's machines' operations at the Texas facility after an opportunity to appropriately evaluate the evidence exchanged in discovery.

## STATEMENT OF FACTS

### A. GMO filed this action alleging that Whinstone breached the Texas Agreement, under which Whinstone's Texas Data Center hosts GMO's Bitcoin-mining machines.

GMO filed this action against Whinstone for breaching a Colocation Services Agreement (Texas) (the "Texas Agreement"). As relevant here, GMO alleges that Whinstone did not provide sufficient power to GMO's machines, improperly removed certain machines from operation, and failed to provide a fully functional data center to host GMO's machines in Rockdale, Texas (the "Texas Data Center"). *See* ECF No. 30. These breaches caused GMO to suffer lost-profit damages because GMO was unable to efficiently mine Bitcoin at the Texas Data Center. *See id.*

Whinstone denies it breached the Texas Agreement and asserts certain defenses, alleging that GMO's machines were/are outdated or inoperable, among other things. *See* ECF No. 34. Whinstone also asserts counterclaims against GMO for breaching the Texas Agreement. *Id.*

### B. GMO and its counsel arranged an initial fact-gathering visit to the Texas Data Center.

After discovery commenced and the parties were unable to resolve their dispute through a settlement conference with Magistrate Judge Parker, Whinstone allowed GMO and GMO's counsel to visit the Texas Data Center (on Judge Parker's suggestion and request) in March 2023, but only on the condition that GMO and its counsel not take photos or video during the visit. *See* Declaration of Leslie C. Thorne submitted concurrently herewith ("Thorne Decl.") ¶ 4, Ex. 1.

During the Texas Data Center visit, GMO and its counsel were directed not to take any photos or video. *Id.* GMO's technical expert did not attend this site visit because it was for initial fact gathering, not for purposes of expert analysis.[1] *Id.*

After the site visit, GMO's counsel ("Haynes Boone") sent a letter to Whinstone's counsel, Debevoise & Plimpton, LLC ("Debevoise"), demanding that Whinstone produce the following, as requested in GMO's previously served requests for production: all video footage or recordings of (i) GMO's representatives at the Texas Data Center (at the suggestion of Judge Parker) and (ii) Building A and Building X of the Texas Data Center. *Id.* ¶ 5, Ex. 2 (May 23, 2023 letter). This video footage is important because, *inter alia*, (i) GMO claims that Whinstone improperly removed GMO machines from operation in Building A in March 2022, (ii) Haynes Boone and GMO believe that many of GMO's removed machines were stored in Building X at the Texas Data Center, and (iii) Whinstone apparently denies that the machines in Building X are the improperly removed machines. *See* ECF No. 30; Thorne Decl. ¶ 5. The footage is also important because Whinstone asserts that certain piles of GMO's machines spread across the floors of Building A were placed there by GMO, whereas GMO asserts that those machines were placed there by Whinstone after Whinstone improperly removed them in March 2022. Thus, the footage is key to the parties' claims and defenses. Thorne Decl. ¶ 5.

### C. Whinstone's counsel sent a demand letter that recognizes the importance of preserving relevant evidence, including GMO's machines, and Whinstone failed to preserve video evidence.

Debevoise then sent a letter to Haynes Boone on May 24, 2023, falsely accusing GMO and Haynes Boone of "alter[ing] or destroy[ing]" evidence—namely, GMO's mining machines—as part of GMO's ordinary machine-repair process. Thorne Decl. ¶ 6, Ex. 3 (May 24, 2023 letter).

---

[1] Under the then-current Scheduling Order, expert discovery was not set to close until September 25, 2023. *See* ECF No. 33 (October 25, 2022 Scheduling Order).

Debevoise further stated: "To prevent the further destruction of relevant evidence in light of the spoliation concerns described above, the parties must take immediate steps to preserve a record of the status quo to date. To do so, we propose that each side arrange for an appropriate consultant to visit the facility as soon as possible, and in no event later than June 20th to preserve all information each party believes will be relevant at trial, including, among other things, evidence of the number of working and non-working miners and each miner's hash rate and processing capacity." *Id.*

Haynes Boone promptly responded to Debevoise's letter, assuring Debevoise that neither Haynes Boone nor GMO "altered or destroyed" evidence, and that evidence in GMO's possession had been preserved. Thorne Decl. ¶ 7, Ex. 4 (May 30, 2023 letter). Haynes Boone also expressed surprise that Debevoise had taken issue with GMO's machine-repair process, because Whinstone had both (i) removed many of GMO's machines from operation in March 2022 (justifying this removal on the basis that the machines were "non-functioning" as a result of GMO's alleged "fail[ure] to maintain" and "repair" them, *see* ECF No. 34), and (ii) threatened to remove and scrap GMO's operating machines on the basis that they are in "disrepair." Thorne Decl. ¶ 7, Ex. 4. Haynes Boone pointed out that Whinstone is intimately involved in GMO's repair process and is actually the party that disposes of bad machine parts, and the repair process mitigates GMO's damages against Whinstone by allowing GMO to operate at a higher capacity. *Id.*

Haynes Boone's letter further stated: "In response to [Debevoise's] proposal to arrange for consultants to visit the facility in furtherance of preservation efforts *prior to June 20*, GMO does not believe that sending a consultant on its behalf for this purpose is necessary, but we are open to discussing this proposal further with you." Thorne Decl. ¶ 8, Ex. 4 (emphasis added). In GMO's view, an expert visit was not yet necessary because discovery in this action was in the early stages, and expert disclosures were not due until December—but GMO was not suggesting that expert

consultants would *never* need to visit the Texas Data Center. *Id.* ¶ 8. Also, when Haynes Boone sent its response to Debevoise's letter, Whinstone had neither terminated the Texas Agreement nor threatened to remove all of GMO's machines from operation. *Id.*

Debevoise responded about three weeks later, stating that it "did not accuse GMO or Haynes Boone of destroying evidence" but instead "merely noted GMO's recent activities and expressed our concern that relevant evidence may have been altered or destroyed."[2] *Id.* ¶ 9, Ex. 5 (June 23, 2023 letter). Debevoise further stated: "With respect to GMO's request for video footage or recordings, we understand that Whinstone maintains security footage of Building A for a period of 30 days. Whinstone will retain that footage *for the past 30 days* and is willing to meet and confer to discuss the retention of security footage *on a going forward basis*." *Id.* ¶ 10 (emphasis added). Based on this statement, Whinstone has apparently not preserved earlier video evidence of Building A during the period since April 2022, which is when GMO filed this action and thus when (at the latest) Whinstone's obligation to preserve such evidence arose. *Id.*

### D. Whinstone terminated the Texas Agreement and threatened to remove GMO's mining machines from the Texas Data Center.

On June 29, 2023, Whinstone sent GMO a "Notice of Termination" purporting to terminate the Texas Agreement and simultaneously disconnected GMO's machines from power. *Id.* ¶ 11, Ex. 6 (June 29, 2023 Notice of Termination). Whinstone took these actions purportedly based on GMO's alleged breach of the Texas Agreement, which Whinstone's prior counsel, Foley & Lardner, LLP ("Foley"), had asserted in a letter more than one year earlier, in June 2022.[3] *Id.*, Exs. 6-7. The Notice of Termination demanded that GMO remove its machines from the Texas

---

[2] Debevoise's prior letter speaks for itself: It accused GMO and Haynes Boone of actions that "constitute[] alteration and/or destruction of highly relevant evidence" and asserted that the parties needed "[t]o prevent the further destruction of relevant evidence[.]" Thorne Decl., Ex. 3.

[3] Foley's letter alleged that GMO breached the Texas Agreement by failing to (i) use the "Specified Power Draw," and (ii) negotiate an amended colocation agreement in good faith. Thorne Decl., Ex. 7 (June 13, 2022 Foley letter).

Data Center by July 29, 2023, and warned that if GMO did not, then Whinstone would do so. *Id.*, Ex. 6.

Whinstone sent GMO another letter on July 24, 2023, stating that if GMO did not remove its machines from the Texas Data Center by July 29, Whinstone "will immediately begin removing" GMO's machines. *Id.* ¶ 12, Ex. 8 (Whinstone's July 24, 2023 letter).

On the same day (July 24, 2023), Haynes Boone responded on GMO's behalf to Whinstone's Notice of Termination. *Id.* ¶ 13, Ex. 9 (Haynes Boone's July 24 letter). Haynes Boone expressed GMO's position that Whinstone's termination and simultaneous power shutdown were improper because the year-old allegations of breach in Foley's letter are meritless. *See id.*, Ex. 9. Indeed, the breaches alleged in Foley's letter are baseless because, among other things: (i) the Texas Agreement does not require GMO to *use* any specified level of power, but instead requires Whinstone to *provide* specified levels of power, and (ii) correspondence between Whinstone and GMO shows that GMO attempted in good faith to negotiate an amended colocation agreement, but Whinstone repeatedly stonewalled those efforts. *See id.*

Haynes Boone also noted Whinstone's apparent failure to preserve video evidence (as stated in Debevoise's June 23 letter) and asserted that Whinstone's continued power down of GMO's machines and threatened machine removal would, like the failure to preserve video evidence, constitute spoliation. *See id.* The removal of GMO's machines is particularly concerning because GMO and Haynes Boone (i) were not permitted to take any photos or video during their fact-gathering visit to the Texas Data Center in March, and (ii) have not had an opportunity to, as Whinstone's own counsel suggested, "arrange for an appropriate consultant to visit the facility" so that the expert consultant may assess GMO's machines in operation and, in turn, offer opinions relevant to the parties' claims, defenses, and damages in this action. *See id.* ¶¶ 4, 6, Ex. 3.

Debevoise responded on Whinstone's behalf, stating that Whinstone still intended to remove GMO's machines from the Texas Data Center on July 29 if GMO did not remove them sooner. *Id.* ¶ 15, Ex. 10 (July 26 letter). Debevoise further alleged that GMO's position about spoliation is "inconsistent with its prior representations that it had preserved all relevant evidence and that a visit to the facility by consultants regarding evidence preservation was unnecessary." *Id.* ¶ 16, Ex. 10. This twists Haynes Boone's words and turns a blind eye to the change in circumstances due to the Notice of Termination and threatened removal of GMO's machines. *Id.*

GMO never said a site visit by expert consultants was unnecessary; it simply disagreed that such a visit had to occur by June 20. *See id.* ¶ 16, Exs. 3-4. When GMO took that position, Whinstone had not purported to terminate the Texas Agreement, had not powered down all of GMO's machines, and had not threatened to remove all the machines. And then, as now, the parties had plenty of time before the December 1, 2023 deadline for expert reports. *See* ECF No. 60. GMO did not expect that Whinstone was planning to throw a wrench into the mechanics of the legitimate discovery process in this action.

GMO also never said that all relevant evidence has been gathered; it simply confirmed that the evidence in its possession has been preserved. *See* Thorne Decl. ¶ 16, Ex. 4. GMO's expert still needs sufficient opportunity to visit the Texas Data Center before GMO's machines are removed to assess the operations, which are critical to his opinions about the parties' claims, defenses, and damages. *See* Declaration of Kenyon Hayward submitted concurrently herewith ("Hayward Decl.") ¶¶ 5-7.

**E.  GMO's counsel sought a reasonable arrangement to preserve and collect relevant evidence—but Whinstone refused.**

Immediately after receiving Debevoise's July 26 letter, Haynes Boone called Debevoise and proposed that the parties arrange for GMO's expert to visit the Texas Data Center in the next

two to three weeks. Thorne Decl. ¶ 17. During this call, Haynes Boone emphasized the need for GMO's expert to visit the Texas Data Center while the machines are present and the power is on so that the expert can properly evaluate and document the operations, including taking photos and video because GMO was denied that opportunity during the March site visit. *Id.*

The next day, on July 27, 2023, Debevoise emailed Haynes Boone, stating: "As a courtesy, Whinstone will not begin deinstallation until August 2, 2023"—thus granting a mere four-day extension from Whinstone's initially imposed July 29 deadline. *See id.* ¶ 18, Ex. 11 (July 27 email). Debevoise further stated that GMO's request for an extension of two or three weeks was "particularly unreasonable" because Haynes Boone previously stated that GMO had preserved relevant evidence and "did not believe that sending an expert to the Texas Facility on its behalf was necessary." *Id.* This again intentionally misconstrues Haynes Boone's earlier statements, and Debevoise did not address Haynes Boone's explanation that GMO's expert needs to inspect GMO's machines with the power on and to document these operations by pictures and video.

Later the same day (July 27, 2023), Haynes Boone again contacted Debevoise and re-requested that GMO be allowed to schedule a visit at the Texas Data Center with its expert and with the ability to take photos and videos. Thorne Decl. ¶ 19. Haynes Boone further explained that, based on conversations with GMO's expert, the expert needs continual access to the Texas Data Center during the discovery period to properly evaluate the operations, including the ability to assess such operations in light of technical documents that are yet-to-be exchanged in discovery. *Id.* Debevoise responded that Whinstone was amenable to powering on GMO's machines and for GMO and its expert to take pictures during a site visit, but Whinstone would not allow GMO's machines to remain installed, powered on, or operational beyond August 2. Debevoise again stated that de-installation would occur on August 2. *Id.*

**F. GMO seeks immediate relief to preserve and permit access to important evidence.**

Despite the unreasonably short notice, GMO has arranged for its expert to visit the Texas Data Center on August 1 and 2, but this is not sufficient for a complete review and analysis that can rightfully rely on all the evidence. *See* Hayward Decl. ¶¶ 4-7.[4] Neither GMO nor Haynes Boone has ever suggested otherwise—they never represented to Whinstone or Debevoise that visiting the Texas Data Center with an expert was unnecessary or that GMO's expert already had a sufficient opportunity to assess the operations at the Texas Data Center. Rather, as noted above, Haynes Boone merely indicated in May that an expert visit was not, at the time, immediately necessary (*i.e.*, it did not need to occur by June 20). This statement was made before Whinstone sent the Notice of Termination and threatened to remove GMO's machines from operation. *See* Thorne Decl. ¶¶ 8, 11, Exs. 3, 5.

The parties' correspondence also shows that Whinstone and Debevoise sought to elicit confirmations from GMO that it preserved all relevant evidence as a means to justify an improper termination and, in turn, disconnect and remove GMO's machines from the Texas Data Center. This will result in the spoliation of relevant evidence and prevent GMO's expert from observing, documenting, and assessing operations that are essential to his expert opinions. *See* Hayward Decl. ¶¶ 5-7. GMO's expert needs the ability to visit the Texas Data Center to observe and document the operating machines on multiple occasions, including after he has an opportunity to review information concerning GMO's operations at the Texas Data Center that has not yet been exchanged in discovery. *See id.* Therefore, Whinstone's planned August 2 removal of all GMO's

---

[4] This site visit requires GMO's attorneys Leslie Thorne and Michael Freyberg of Haynes Boone to travel to the Texas Data Center in Rockdale, Texas, on July 31, 2023 (the date of this filing), and to remain there through August 2. *See* Thorne Decl. ¶ 18. Should a hearing on GMO's Order to Show Cause be set for August 1 or August 2, other counsel from Haynes Boone will appear in Court on any of these dates, but GMO also respectfully requests that other key members of the litigation team, including Ms. Thorne as lead counsel, be permitted to participate by telephone or video conference.

machines from the Texas Data Center represents an imminent threat of irreparable harm to GMO's ability to assess and prove its case. *See* Thorne Decl. ¶ 21.

## ARGUMENT

### A.  The Court may grant injunctive relief to preserve potentially relevant evidence.

Generally, a party seeking a temporary restraining order and preliminary injunction must show: "(1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief." *Prof'l Merch. Advance Cap., LLC v. C Care Servs., LLC*, No. 13-CV-6562, 2013 WL 12109397, at *5 (S.D.N.Y. Oct. 2, 2013) (quoting *N.A.A.C.P., Inc. v. Town of East Haven*, 70 F.3d 219, 223 (2d Cir. 1995)).[5]

When, however, injunctive relief takes the form of "preservation orders to enforce litigants' preservation obligations," "courts in this circuit have rejected the view that a party seeking [such] a preservation order must meet the requirements for a preliminary injunction."[6] *Toussie v. Allstate Ins. Co.*, No. 15-CV-5235, 2018 WL 11451597, at *4-5 (E.D.N.Y. Aug. 15, 2018). This is because "applying the standard for a preliminary injunction in the context of a request for a preservation order 'creates anomalies,' requiring the court to 'evaluate the merits of the litigation even before evidence has been gathered, let alone produced to the opposing party or submitted to the court.'"

---

[5] "The purpose of a temporary restraining order is to preserve an existing situation *in status quo* until the court has had an opportunity to pass upon the merits of the demand for a preliminary injunction." *Prof'l Merch.*, 2013 WL 12109397, at *5 (quoting *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir. 1989)).

[6] Parties have a duty to preserve evidence when they have "notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *ComLab v. Tire*, 815 F. App'x 597, 600 (2d Cir. 2020); *see Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (explaining that "the obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation."); *see also* FED. R. CIV. P. 37(e) (requiring parties to take "reasonable steps to preserve" relevant evidence).

*Id.* (quoting *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370 (S.D.N.Y. 2006)); *see In re Complaint of Specialist LLC*, No. 16-CV-5010, 2016 WL 6884919, at *3-4 (S.D.N.Y. Nov. 22, 2016).

Granting injunctive relief to preserve evidence "is especially appropriate in situations where there is a reasonable probability that pertinent or relevant information will be lost or destroyed or is at risk of loss or destruction absent entry of the order." *Toussie*, 2018 WL 11451597, at *4 (citing *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, No. 3:06-CV-1380, 2008 WL 11376620, at *3 (D. Conn. Nov. 5, 2008)). Thus, in *Toussie*, the court upheld a preservation order restraining a party from removing physical evidence until a proper inspection could be performed. *Id.* at *4-5.

Courts considering motions to preserve evidence often apply a balancing test, consulting the following three factors: "1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition, or contents, but also the physical, spatial, and financial burdens created by ordering evidence preservation." *In re Complaint of Specialist*, 2016 WL 6884919, at *3 (quoting *Treppel*, 233 F.R.D. at 370) (internal alteration omitted). Further, a showing "that unique and critical evidence will be destroyed would certainly buttress any motion for a preservation order," but this "is not an absolute requirement[.]" *Treppel*, 233 F.R.D. at 371.

### B. Injunctive relief is appropriate and necessary to permit GMO and its expert to gather and preserve relevant evidence about operations at the Texas Data Center.

Whinstone is poised to prevent GMO from gathering and preserving evidence at the heart of this dispute. If Whinstone is allowed to proceed with unilaterally disconnecting and removing

all of GMO's machines from the Texas Data Center on August 2, then GMO and its technical expert will be deprived of a sufficient opportunity to observe, assess, and document GMO's machines in operation after GMO's technical expert has had an opportunity to review the evidence collected in discovery. This threatens irreparable harm to GMO's ability to prove its case.

GMO has alleged that Whinstone failed to provide sufficient power to GMO's machines, removed certain machines from operation, and failed to construct or maintain the Texas Data Center in a manner required by the Texas Agreement, thus preventing GMO's machines from mining Bitcoin. *See* ECF No. 30. Whinstone has responded that GMO's machines are "broken-down" or otherwise not operating at full capacity. *See* ECF No. 34. The operation of GMO's machines at the Texas Data Center therefore lies at the core of both parties' claims and defenses. *See* ECF Nos. 30, 34. Preserving the status quo as to those operations—by enjoining Whinstone from removing the machines—is warranted to prevent relevant information from being lost. *See Toussie*, 2018 WL 11451597, at *4; *Treppel*, 233 F.R.D. at 371.

To comprehensively and accurately evaluate the operations of GMO's machines at the Texas Data Center, GMO's expert needs at least two months, and preferably through the end of the discovery period, to collect and preserve information. *See* Hayward Decl. ¶¶ 5-7. Because Whinstone has cut the power supply to GMO's machines and plans to unilaterally remove GMO's machines from operation—just as it did in March 2022—Whinstone will severely hamper GMO's ability to assess the machines in operation and prove its case. *Id.*; *see Toussie*, 2018 WL 11451597, at *2 (upholding an order requiring that boxes of materials "continue to be preserved until the parties complete certain procedures, including submitting expert reports to the court regarding the sufficiency of the photographs of the items in the boxes for use at trial").

What's more, Whinstone's improper termination, power-down of GMO's machines, and threats to imminently remove GMO's machines from the Texas Data Center are just the latest events in a campaign to spoliate germane, crucial evidence. As shown by the correspondence between Haynes Boone and Debevoise/Whinstone:

- Whinstone accused GMO and Haynes Boone of "alter[ing] and destroy[ing]" evidence in May—without citing any proof—and then backed away from those allegations in June. *See* Thorne Decl. ¶¶ 6-9 Exs. 2-4.

- In the same June letter, Whinstone acknowledged that it deleted and/or failed to preserve at least a year's worth of relevant video evidence of Building A, where all of GMO's machines operate and from which Whinstone removed certain of GMO's machines in March 2022. *See id.* ¶ 10, Ex. 5; ECF Nos. 30, 34. Notably, such spoliation took place not only when litigation was threatened and imminent, but also while this case was already pending.

- On the cusp of terminating the Texas Agreement and removing GMO's machines, and after first accusing GMO of altering and destroying evidence, Whinstone then elicited confirmations from GMO that it had preserved all relevant evidence concerning its machines—then Whinstone twisted those pre-termination statements into an alleged waiver of any right for GMO's expert to conduct a full and proper inspection, notwithstanding that discovery is in its early stages, and expert reports are not due until December 2023. *See generally* Thorne Decl. and Exhibits thereto.

The above actions by Whinstone and its counsel, in conjunction with Whinstone's refusal to allow Haynes Boone and GMO to take pictures or videos during their March site visit to the Texas Data Center, *see id.* ¶ 4, support granting a preservation order to prevent Whinstone from

interfering with GMO's ability to collect relevant evidence and prove its case. *See Pro. Merch. Advance Cap., LLC v. C Care Servs., LLC*, No. 13 CIV. 6562, 2013 WL 12109397, at *8 (S.D.N.Y. Oct. 2, 2013) (granting a preservation order when the defendants had demonstrated "carelessness with their financial information" and the plaintiff had a legitimate concern that "documents that will verify financial information in the underlying litigation" would not be preserved).

This Court should prevent Whinstone from effectively eliminating GMO's opportunity to collect and preserve relevant evidence and to facilitate important expert analysis. The removal of GMO's machines from the Texas Data Center before GMO's expert conducts a fulsome assessment of the operations and the exchange of technical documents concerning those operations would deprive GMO of crucial evidence and irreparably harm GMO's ability to prove its case. *See, e.g.*, *Kelly Toys Holdings, LLC v. Airpods Pro Store*, No. 21-CV-8435, 2022 WL 2801077, at *10 (S.D.N.Y. July 18, 2022) (granting injunctive relief to preserve evidence where "Plaintiff had not yet had the opportunity to take discovery. Thus, where there is a risk that a party will destroy or alter evidence, courts have not hesitated to grant such relief, which protects the litigants and preserves the integrity of the action before it."); *Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351, 2021 WL 4312579, at *9 (S.D.N.Y. July 16, 2021) (preliminary injunction prohibited deletion of relevant evidence); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 32-34 (S.D.N.Y. 2010) (ordering defendant to preserve evidence "at least for a sufficient time to permit its inspection by plaintiff"); *Toussie*, 2018 WL 11451597, at *4-7 (upholding preservation order); *Wager v. G4S Secure Integration, LLC*, No. 19-CV-3547, 2021 WL 5304321, at *2 (S.D.N.Y. Nov. 15, 2021) (referencing the court's injunction preserving evidence).

Finally, Whinstone is fully "capab[le] of . . . maintain[ing] the evidence sought to be preserved[.]" *In re Complaint of Specialist*, 2016 WL 6884919, at *3 (quoting *Treppel*, 233 F.R.D.

at 370). Whinstone has hosted GMO's operating machines for over three years—including 15 months since GMO filed this action—so there is no reason it cannot continue to host operating machines. In these circumstances, Whinstone cannot reasonably argue that hosting GMO's machines for the purpose of fulfilling its discovery obligation to preserve relevant evidence is unreasonable or unduly burdensome. This is especially true because GMO will still pay Whinstone its monthly hosting fees (as it indisputably always has) through this period of time.

### C. A bond is inappropriate, given GMO's order to show cause requests that Whinstone abide by its discovery obligations, and Whinstone will not suffer costs and damages.

To obtain injunctive relief, GMO would generally need to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, "[t]he language of Rule 65(c) confers broad discretion on the trial judge to set the amount of the bond, even to dispense with the bond requirement altogether." *DeWitt Stern Grp., Inc. v. Eisenberg*, No. 13 CIV. 3060, 2013 WL 2420835, at *6 (S.D.N.Y. June 4, 2013) (quoting *Inflight Newspapers v. Magazines In–Flight, L.L.C.*, 990 F. Supp. 119, 140 (E.D.N.Y.1997)); *see Vozzolo v. Air Canada*, No. 20-CV-03503, 2021 WL 5113387, at *8 n. 6 (S.D.N.Y. Nov. 3, 2021).

Here, a bond is inappropriate because GMO only seeks to enforce Whinstone's "obligations to preserve relevant evidence for use in discovery and at trial, thereby ensuring the integrity and fairness of the adjudicative process." *See Toussie*, 2018 WL 11451597, at *6; *see also ComLab*, 815 F. App'x at 600; *Kronisch*, 150 F.3d at 126; Fed. R. Civ. P. 37(e). Further, Whinstone will not suffer any undue "costs or damages" from compliance with its discovery obligations. This is particularly true because, as noted above, the relief GMO requests merely requires Whinstone to continue hosting GMO's machines for a couple of months in exchange for GMO's payment of monthly hosting fees, as it has done for over three years. *See, e.g., DeWitt*

*Stern Grp.*, 2013 WL 2420835, at *6 (finding that defendant "failed to establish that he is likely to suffer any harm absent the posting of a bond and as such the bond requirement is unnecessary.").

## CONCLUSION

For the reasons above, this Court should grant GMO a temporary restraining order and preliminary injunction prohibiting Whinstone from removing and powering down GMO's machines through the discovery period, which is scheduled to complete on October 27, 2023. Alternatively, the Court should grant injunctive relief prohibiting Whinstone from removing and powering down GMO's machines through October 1, 2023. GMO seeks all other and further relief to which it may be entitled, and otherwise reserves all further rights and remedies in connection with Whinstone's actions.

Dated:   July 31, 2023
             New York, New York

Respectfully submitted,

By: */s/ Leslie C. Thorne*
Leslie C. Thorne
leslie.thorne@haynesboone.com
Alexandra Larkin
alexandra.larkin@haynesboone.com
Michael Freyberg
michael.freyberg@haynesboone.com
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989

**ATTORNEYS FOR GMO
GAMECENTER USA, INC. and GMO
INTERNET GROUP, INC.**

17

## CERTIFICATE OF SERVICE

I, Leslie Thorne, declare under penalty of perjury that on July 31, 2023, I served this GMO'S MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER TO PRESERVE EVIDENCE AND THE STATUS QUO on all counsel of record via ECF filing.

By: */s/ Leslie C. Thorne*
Leslie C. Thorne
leslie.thorne@haynesboone.com
Alexandra Larkin
alexandra.larkin@haynesboone.com
Michael Freyberg
michael.freyberg@haynesboone.com
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989

**ATTORNEYS FOR GMO
GAMECENTER USA, INC. and GMO
INTERNET GROUP, INC.**