# EXHIBIT 1

**GMO**
**Visitor Name: Leslie Thorne**
**Access Date: March 23, 2023**

**WHINSTONE US, INC.**
**VISITOR RELEASE AND WAIVER OF LIABILITY AGREEMENT**

I, the undersigned visitor ("Visitor"), in consideration of the grant of limited access to the private data center facility owned and operated by Whinstone US, Inc., a Delaware corporation, ("Whinstone") located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567 (the "Premises") during the Access Date(s) specified above (the "Access Date(s)") granted hereby, which access I acknowledge and agree would not be granted but for my acceptance and agreement to be bound by the terms of this Visitor Release and Waiver of Liability agreement (this "Agreement"), and for other good and valuable consideration, the receipt and sufficiency of which I hereby acknowledge, agree as follows:

1.      **Limited Access.**  I understand and agree that the Whinstone Premises is a private facility, located on private property in unincorporated Texas accessible solely by private road, and that my limited access to the Premises is: (a) conditioned upon my acceptance and adherence to the terms of this Agreement and exclusive to me, the person signing this Agreement; (b) limited solely to the purposes agreed by an authorized Whinstone representative; (c) limited to the Access Date(s) and to those areas and times as specified by authorized Whinstone representatives; (d) voluntarily granted by Whinstone and may be immediately revoked at Whinstone's sole and exclusive discretion, with or without notice, for any reason or for no reason; and (e) not granted in exchange for any consideration paid by me or on my behalf other than my agreement to be bound by the terms hereof, and that I have no enforceable right to access the Premises, whether on the Access Date(s) or otherwise.

2.      **Use of Premises.**  I understand and agree that my access to the Premises is exclusively for the purposes agreed by an authorized Whinstone representative, and that I will be accompanied by an authorized representative of Whinstone throughout my visit, whose instructions I hereby agree to follow. Further, I hereby acknowledge and agree that, at all times while I am present on the Premises (including during ingress to and egress from the Premises), I will: (1) adhere to the Whinstone Data Center Rules and Acceptable Use Policy, as currently in effect at the Premises, (the "Facility Rules") which I hereby acknowledge and agree that I have read and understood, and which are incorporated by this reference herein; (2) conduct myself with all due caution as a reasonable person would undertake when present at an active work site with the inherent risks and hazards discussed in Section 4 hereof below; (3) immediately follow all instructions given to me by a representative of Whinstone; and (4) be responsible for my use of the Premises and of any property thereon, and liable for the replacement cost of any such property which is damaged, destroyed or lost by reason of my negligence or misconduct.

3.      **Responsibility for Personal Property.**  I acknowledge and agree that I am fully and solely responsible for any of my property and personal belongings that I bring onto the Premises and that Whinstone will not be responsible for or provide any security for my property and personal belongings, other than to store any of personal property which I am required to surrender to Whinstone Security as a condition of my access to the Premises; provided, however, that Whinstone's liability for any such surrendered property shall not exceed $500.00.

4.      **Assumption of Risk.**  I understand and acknowledge that I am voluntarily and freely accessing the Premises, which may be dangerous and may involve the risk that I will sustain serious injury, temporary or permanent disability, death, and/or property damage.   I understand and acknowledge that the Premises is an active construction site, with all of the inherent risks associated with such a site, including, but not limited to, exposure to operating heavy machinery, construction

equipment, and other dangerous instrumentalities.  I further understand and acknowledge the presence open and obvious hazards at the Premises, as well as other hazards which may not be open or obvious. Further, I hereby acknowledge and agree that it would not be reasonable or even possible for Whinstone to eliminate all such potential hazards and, therefore, that I will use reasonable care, as a prudent person having been forewarned of the presence or potential presence of such hazards, to avoid, whether such hazards are clearly marked as hazardous or otherwise.  **ACCORDINGLY, I HEREBY VOLUNTARILY AND FREELY ASSUME ALL RISKS AND DANGERS THAT MAY OCCUR PURSUANT TO MY USE OF AND PARTICIPATION OF ACTIVITIES ON THE PREMISES, INCLUDING THE RISK OF INJURY, DEATH, OR PROPERTY DAMAGE.**

**5.      RELEASE FROM LIABILITY.   I HEREBY AGREE, FOR MYSELF, MY HEIRS AND MY PERSONAL REPRESENTATIVES, TO FULLY AND FOREVER DISCHARGE AND RELEASE WHINSTONE AND ITS AFFILIATES, INCLUDING ITS PARENT COMPANY, RIOT BLOCKCHAIN, INC., A NEVADA CORPORATION, AND THEIR RESPECTIVE PARTNERS, AGENTS, OPERATORS, MANAGERS, EMPLOYEES, AND REPRESENTATIVES ("RELEASED PARTIES") FROM ANY AND ALL CLAIMS I MAY HAVE OR HEREINAFTER HAVE FOR ANY INJURY, TEMPORARY OR PERMANENT DISABILITY, DEATH, DAMAGES, LIABILITIES, EXPENSES AND/OR CAUSES OF ACTION, NOW KNOWN OR HEREINAFTER KNOWN IN ANY JURISDICTION IN THE WORLD, ATTRIBUTABLE OR RELATING IN ANY MANNER TO MY ENTRY UPON AND USE OF THE PREMISES AND PARTICIPATION IN THE ACTIVITY, WHETHER CAUSED BY THE NEGLIGENCE OF THE COMPANY OR ANY OF THE RELEASED PARTIES OR BY ANY OTHER REASON. I ACKNOWLEDGE AND AGREE THAT THIS RELEASE AND WAIVER OF LIABILITY FOR A POTENTIALLY DANGEROUS ACTIVITY IS INTENDED TO BE, AND IS, A COMPLETE RELEASE, AS MUCH AS ALLOWED BY LAW, OF ANY RESPONSIBILITY OF THE RELEASED PARTIES FOR ALL PERSONAL INJURIES, TEMPORARY OR PERMANENT DISABILITY, DEATH, AND/OR PROPERTY DAMAGE SUSTAINED BY ME WHILE ON OR USING THE PREMISES OR PARTICIPATING IN THE ACTIVITY.**

**6.      MEDICAL TREATMENT RELEASE**. I hereby authorize Whinstone to secure, and I consent to, any medical treatment that may be given to me should Whinstone determine, in its sole discretion, that I need medical care, while I am present on the Premises.  I accept full responsibility for all costs related to my medical treatment, including any transport costs, and I release all parties involved from any type of liability for anything that may happen during my treatment or transport.  I further understand and acknowledge that Whinstone does not provide professional medical services and is located a substantial distance from any hospital or other trauma center.  Accordingly, I further understand and acknowledge that any injury I may sustain while on the Premises may be compounded by emergency medical triage efforts undertaken by persons who may not be trained medical professionals and, therefore, **I HEREBY VOLUNTARILY AND FREELY WAIVE ANY AND ALL CLAIMS I MAY HAVE AGAINST WHINSTONE OR ITS PERSONNEL FOR ANY NEGLIGENT AND/OR DELAYED MEDICAL CARE I MAY RECEIVE WHILE PRESENT ON THE PREMISES.  FURTHER, I HEREBY VOLUNTARILY AND FREELY ASSUME ALL RISKS AND DANGERS THAT MAY OCCUR PURSUANT TO MY USE OF AND PARTICIPATION OF ACTIVITIES ON THE PREMISES, INCLUDING THE RISK OF INJURY, DEATH, OR PROPERTY DAMAGE.**

**7.      Covenant Not to Sue.** I agree, for myself and all my heirs, not to sue the Released Parties or initiate or assist in the prosecution of any claim for damages or cause of action against the Released Parties which I or my heirs may have as a result of any personal injury, death or property damage I may sustain while on or using the Premises.

8.    **INDEMNIFICATION.  I HEREBY AGREE TO DEFEND, INDEMNIFY AND HOLD WHINTONE AND THE RELEASED PARTIES HARMLESS FROM AND AGAINST ANY THIRD-PARTY LOSSES, DAMAGES, ACTIONS, SUITS, CLAIMS, JUDGMENTS, SETTLEMENTS, AWARDS, INTEREST, PENALTIES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND COSTS OF ANY KIND FOR ANY PERSONAL INJURY, LOSS OF LIFE OR DAMAGE TO PROPERTY SUSTAINED BY REASON OF OR ARISING OUT OF MY USE OF THE PREMISES OR PARTICIPATION IN ANY ACTIVITIES ON THE PREMISES.**

9.    **No Representations by Whinstone.**  I acknowledge that Whinstone makes no representation as to the condition of the Premises or the safety of any structures or equipment that may be used at the Premises. I accept and shall use the Premises in its "AS IS" condition. I acknowledge and agree that I am not relying upon any representation or statement by the Whinstone or the Whinstone's employees, agents, or representatives regarding this agreement or the Premises, except to the extent such representations are expressly set forth in this Agreement.

10.    **Miscellaneous.** This Agreement is governed by and interpreted in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law of such state.  Any provision of this Agreement providing for performance by either party after termination of this agreement shall survive such termination and shall continue to be effective and enforceable.  If any provision or portion of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions or portions shall remain in full force and effect.  I agree that any action arising out of this Release and Waiver of Liability agreement must be brought exclusively in any state or federal court with jurisdiction over Travis County, Texas.  **I HEREBY FURTHER ACKNOWLEDGE AND AGREE THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES OF LAW AND, THEREFORE, AS A MATERIAL PART OF THE CONSIDERATION TO INDUCE WHINSTONE TO GRANT ME ACCESS TO THE PREMISES, WITHOUT WHICH WHINSTONE WOULD NOT GRANT ME SUCH ACCESS, I HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT I MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT.**  This Agreement is the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreement or communications between the parties, whether written, oral, electronic, or otherwise.  No change, modification, amendment, or addition of or to this Agreement shall be valid unless in writing and signed by authorized representatives of the parties.  No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving party.  The failure of any party to enforce any provision of this agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter.  This Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the parties.

*[SIGNATURE PAGE FOLLOWS – REMAINDER OF PAGE INTENTIONALLY BLANK]*

*[SIGNATURE PAGE TO WHINSTONE VISITOR RELEASE AND WAIVER OF LIABILITY AGREEMENT]*

**IN WITNESS WHEREOF,** I, the undersigned visitor, hereby acknowledge, agree, and represent to Whinstone that: (i) I have fully read and understood each of the above provisions of this Agreement, as well as the Data Center Rules as currently in effect as of the Access Date(s), a copy of which are attached as **Exhibit "A"** to this Agreement; (ii) prior to signing this Agreement, I had sufficient opportunity to consult with an attorney of my choosing to review this Agreement; (iii) I am at least 18 years of age and fully competent; and (iv) I now execute this Agreement voluntarily, freely, and for adequate consideration, intending by my signature below to be fully bound by the terms hereof.

**VISITOR**

_____
(Signature)

_____March 21, 2023_____
(Dated)

_____Leslie C. Thorne_____
(Printed Name)

**4 / 4**

*Version 2023*

<u>**Exhibit "A"**</u>

**PLEASE CAREFULLY REVIEW THESE DATA CENTER RULES AND ACCEPTABLE USE POLICY (THIS "POLICY").  THIS POLICY AFFECTS YOUR ABILITY TO ACCESS THE FACILITY AND LIMITS OUR LIABILITY WITH RESPECT TO INJURIES YOU MAY SUSTAIN WHILE PRESENT AT THE FACILITY.  BY ACCESSING THE FACILITY, YOU AGREE TO BE BOUND AND ABIDE BY THIS POLICY, AND YOU ACCEPT THE LIMITATIONS OF LIABILITY AND OTHER MATTERS SET FORTH HEREIN.  THIS POLICY IS INCORORATED BY REFERENCE INTO, AND FORMS A PART OF, EACH OF THE CLIENT AGREEMENTS BETWEEN WHINSTONE AND ITS CLIENTS.**

**WHINSTONE US, INC.**

<u>**DATA CENTER RULES AND ACCEPTABLE USE POLICY**</u>

Whinstone US, Inc., a Delaware corporation, and its Affiliates, (collectively, "**Whinstone**," the "**Company**," "**we**," "**us**," etc.) limits access to its Data Center Facility, located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567 (the "**Facility**") exclusively to its employees and those of its Affiliates, representatives of Whinstone's Clients, permitted Visitors, and permitted Contractors.  All persons accessing the Facility are, at all times while present at the Facility, bound by and subject to the Data Center Rules attached hereto as <u>**Exhibit A**</u> (the "**Rules**") and the Acceptable Use Policy attached hereto as <u>**Exhibit B**</u> (the "**AUP**"), as the same may be amended from time to time (collectively, the "**Policy**").  All capitalized terms not otherwise defined herein shall have the meanings given to them on <u>**Schedule 1**</u> hereto.

The Policy has been established to provide for the safety of all individuals within the Facility, the uninterrupted operation of the Facility, the protection of Clients' privacy and Confidential Information, and the security of the Facility, including of all Client Mining Equipment, Facility Equipment, and third-party equipment deployed at the Facility.  Accordingly, as all access to the Facility is expressly conditioned on full compliance with the Policy, and any violation of the Policy may result in your immediate removal from the Facility, a breach of the Client Agreement to which your access relates, and personal liability to you.  Whinstone reserves all rights relating to the enforcement of the Policy.

**NOW, THEREFORE,** in exchange for access to the Facility, conditioned on my compliance with the Policy, I, the undersigned releasing party (the "**Releasing Party**"), hereby agree as follows:

**1.      Policy Acknowledgement**.  I hereby acknowledge and agree that I have been provided with the Policy, including the Rules and the AUP, and that I have read and understood the Policy in all respects, including the provisions thereof relating to the limitation of the Company's liability in the event I sustain injury or my property is damaged or lost while entering, present upon, or exiting the Facility premises.

**2.      Compliance with the Policy**.  At all times while I am present at the Facility, I will comply with the Policy in all respects.  I acknowledge and agree that my access to the Facility is conditioned upon my compliance with the Policy, and I understand that my access thereto may be revoked as a result of my failure, or the failure of my persons accompanying me while I am present on the Facility premises, to comply with the Policy.  Further, I hereby consent to my removal from the Facility by Whinstone personnel should I fail to comply with the Policy.

**3.      Assumption of Risk**.  I acknowledge and understand that the Facility is an operating industrial facility and active construction site, with live wires, high voltage electrical transfer equipment, moving parts and machinery, and other hazards, both obvious and non-obvious.  I acknowledge and agree that my access to the Facility is voluntary and that I have been made aware that I may sustain personal injury and/or damage or loss to my personal property in connection with my access to the Facility.  THEREFORE, I  VOLUNTARILY AND FREELY ASSUME ALL RISKS AND DANGERS THAT MAY OCCUR PURSUANT TO MY ACCESS TO THE FACILITY AND ITS PREMISES, AND PARTICIPATION IN ACTIVITIES THEREON, INCLUDING THE RISK OF INJURY, SERIOUS ILLNESS, TEMPORARY OR PERMANENT DISABILITY, DEATH, OR PROPERTY DAMAGE, EVEN IF CAUSED BY NEGLIGENCE OF THE COMPANY.

**4.      Release of Liability**.  I HEREBY AGREE, ON BEHALF OF MYSELF, MY HEIRS AND MY PERSONAL REPRESENTATIVES, TO FULLY AND FOREVER DISCHARGE AND RELEASE COMPANY AND ITS AFFILIATES, AND THEIR  RESPECTIVE  PARTNERS,  AGENTS,  OPERATORS,  MANAGERS,  EMPLOYEES,  AFFILIATES  AND

REPRESENTATIVES ("**RELEASED PARTIES**") FROM ANY AND ALL CLAIMS I MAY HAVE OR HEREINAFTER HAVE FOR ANY INJURY, TEMPORARY OR PERMANENT DISABILITY, DEATH, DAMAGES, LIABILITIES, EXPENSES AND/OR CAUSES OF ACTION, NOW KNOWN OR HEREINAFTER KNOWN IN ANY JURISDICTION IN THE WORLD, ATTRIBUTABLE OR RELATING IN ANY MANNER TO MY ACCESS TO THE FACILITY AND ITS PREMISES, MY USE THEREOF, AND MY PARTICIPATION IN ANY ACTIVITY THEREON, WHETHER CAUSED BY THE NEGLIGENCE OF THE COMPANY OR ANY OF THE RELEASED PARTIES OR BY ANY OTHER REASON. I ACKNOWLEDGE AND AGREE THAT THIS RELEASE AND WAIVER OF LIABILITY FOR A POTENTIALLY DANGEROUS ACTIVITY IS INTENDED TO BE, AND IS, A COMPLETE RELEASE, AS MUCH AS ALLOWED BY LAW, OF ANY RESPONSIBILITY OF THE RELEASED PARTIES FOR ALL PERSONAL INJURIES, TEMPORARY OR PERMANENT DISABILITY, DEATH, AND/OR PROPERTY DAMAGE SUSTAINED BY ME WHILE ON OR USING THE FACILITY OR ITS PREMISES, OR FROM PARTICIPATING IN ANY ACTIVITY THEREON.

**5.**　　　**Covenant Not to Sue**.  I agree, for myself and all my heirs, not to sue the Released Parties or initiate or assist in the prosecution of any claim for damages or cause of action against the Released Parties which I or my heirs may have as a result of any personal injury, death or property damage I may sustain while on or using the Premises or while participating in the Activity.

**6.**　　　**Indemnification.**  I HEREBY AGREE TO DEFEND, INDEMNIFY AND HOLD WHINTONE AND THE RELEASED PARTIES HARMLESS FROM AND AGAINST ANY THIRD-PARTY LOSSES, DAMAGES, ACTIONS, SUITS, CLAIMS, JUDGMENTS, SETTLEMENTS, AWARDS, INTEREST, PENALTIES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND COSTS OF ANY KIND FOR ANY PERSONAL INJURY, LOSS OF LIFE OR DAMAGE TO PROPERTY SUSTAINED BY REASON OF OR ARISING OUT OF MY USE OF THE FACILITY OR PARTICIPATION IN ANY ACTIVITIES ON THE FACILITY.

**7.**　　　**Medical Treatment Release**. I hereby authorize Whinstone to secure, and I consent to, any medical treatment that may be given to me should Whinstone determine, in its sole discretion, that I need medical care, while I am present on the Facility.  I accept full responsibility for all costs related to my medical treatment, including any transport costs, and I release all parties involved from any type of liability for anything that may happen during my treatment or transport.

**8.**　　　**Responsibility for Personal Property.**  I acknowledge and agree that I am fully and solely responsible for any of my property and personal belongings that I bring onto the Facility and that Whinstone will not be responsible for or provide any security for my property and personal belongings.

**9.**　　　**No Representations by Whinstone.**  I acknowledge that Whinstone makes no representation as to the condition of the Facility or the safety of any structures or equipment that may be used at the Facility. I accept and shall use the Facility in its "AS IS" condition. I acknowledge and agree that I am not relying upon any representation or statement by the Whinstone or the Whinstone's employees, agents, or representatives regarding this agreement or the Facility, except to the extent such representations are expressly set forth in this Agreement.

**10.**　　　**Applicable Laws, Choice of Forum, and Jury Trial Waiver.** This Agreement is governed by and interpreted in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law of such state.  Any provision of this Agreement providing for performance by either party after termination of this agreement shall survive such termination and shall continue to be effective and enforceable. If any provision or portion of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions or portions shall remain in full force and effect.  I agree that any action arising out of this Release and Waiver of Liability agreement must be brought exclusively in any state or federal court with jurisdiction over Travis County, Texas.  I HEREBY FURTHER ACKNOWLEDGE AND AGREE THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES OF LAW AND, THEREFORE, AS A MATERIAL PART OF THE CONSIDERATION TO INDUCE WHINSTONE TO GRANT ME ACCESS TO THE FACILITY, WITHOUT WHICH WHINSTONE WOULD NOT GRANT ME SUCH ACCESS, I HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT I MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT.

**11.**　　　**Miscellaneous.** This Agreement is the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreement or communications between the parties, whether

written, oral, electronic, or otherwise.  No change, modification, amendment, or addition of or to this Agreement shall be valid unless in writing and signed by authorized representatives of the parties.  No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving party.  The failure of any party to enforce any provision of this agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter.  This Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the parties.

**IN WITNESS WHEREOF**, I, the undersigned Releasing Party, for myself and for my Affiliates, hereby acknowledge that I have received, read, and understood the Policy, including the provisions thereof relating to the limitation of the Company's liability in the event I sustain personal injury, including serious injury, illness, disability, or death, or my property is damaged or lost, in connection with my access to the Facility, and I hereby agree to abide and be bound by the Policy, as the same may be amended from time to time by the Company.

**RELEASING PARTY**

_____          ___March 21, 2023___
(Signature of Releasing Party)                                    (Dated)


___Leslie C. Thorne_____
(Printed Name of Releasing Party)

*Version 2023*

<u>**Schedule 1**</u>

**DEFINED TERMS**

As used in the Policy, the following terms shall have the meanings ascribed to them below, unless otherwise defined herein or therein:

"**Affiliate**" means, when referring to an entity, the entity's parent organization, subsidiary organization or sibling organization sharing substantially identical ownership and control with the entity, and, when referring to an individual, means members of that individual's close family.

"**Applicable Law**" means, as in effect from time to time, any law, rule, regulation, declaration, decree, directive, statute or other enactment, order, mandate or resolution, interpretation, writ, judgment, injunction, license, or permit, issued or enacted by any Governmental Authority, which is applicable to a Party under this Agreement, including securities laws, tax laws, tariff and trade laws, and data laws.

"**Bitcoin Mining**" means the operation of computational servers utilizing the 256-bit hashing algorithm protocol (or the equivalent thereof, as may be adopted by the Bitcoin Blockchain) to conduct transaction verification services on the Bitcoin Blockchain to obtain Bitcoin rewards in a process known as "solving a block."

"**Building Unit**" means each separate building within the Facility.

"**Business Day**" means a day which is not a Saturday, Sunday or a public holiday in Texas.

"**Client**" means the counterparty to a Client Agreement with Whinstone.

"**Client Agreement**" means any Master Colocation Services Agreement or other agreement between Whinstone and a Client pursuant to which Whinstone is providing colocation services to the Client at the Facility.

"**Client Mining Equipment**" means the Client's Miners specified on Schedule 2 to this Agreement, as well as any other hardware equipment (including required PDUs) that is provided by Client and/or installed by Whinstone at the Client's request in the Licensed Area to support operation of the Client's Miners, including all software and firmware on such equipment other than any software and firmware owned or licensed by Whinstone.

"**Confidential Information**" means all material, nonpublic information disclosed directly or indirectly by Whinstone or its Representatives to another person or its Representatives (the "Receiving Party"), whether written, oral, electronic, or otherwise, through any means of communication or observation. "**Confidential Information**" *includes*, without limitation, the following: (i) business matters, such as information about prices; costs; bids; proposals; quotes; negotiations; legal information; accounting information; profits; markets; sales; business plans; proposals; and other confidential plans; (ii) technical matters, such as the Whinstone's trade and engineering secrets; know-how; ideas; formulae; algorithms; processes; inventions; source and object code; other works of authorship; improvements; discoveries; databases; experimental results; and research; (iii) information derived from other Confidential Information; (iv) information that a reasonable person would consider to be confidential; and (v) any Confidential Information of any of Whinstone's customers, partners, and other third parties doing business at the Premises. "**Confidential Information**" *does not include* information that the Receiving Party can demonstrate, with reasonable documentary evidence: (i) was in the Receiving Party's possession prior to disclosure by the Whinstone; (ii) was generally known to the public, or becomes so known through the acts of others; (iii) came into the Receiving Party's possession from a third party under no confidentiality obligation to the Whinstone; or (iv) the Receiving Party developed independently of, and without reference to, any Confidential Information. A combination of pieces of Confidential Information, taken as a whole, does not fall within any of these exclusions simply because a piece of that combination loses its confidential status (e.g., a confidential memorandum containing or referring to non-confidential information, such as publicly disclosed financial information, is and remains "**Confidential Information**" unless and until the memorandum itself ceases to be "**Confidential Information**").

"**Contractor**" means any person contracted by Whinstone for any kind of service at the Property.

"**Facility**" means the grounds, structures, and infrastructure comprising the data center and colocation/managed hosting services facility operated by Whinstone located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567.

"**Miner**" means an individual Bitcoin Mining computational server (which may operate an application-specific integrated circuit (ASIC) graphics processing unit (GPU) or other technology, as may be applicable).

"**Representative**" means, a person's Affiliates, directors, officers, employees, partners, agents, consultants or contractors, as well as any persons with whom such party shares Confidential Information with respect to the Discussions or which such party involves in the Discussions.

"**Visitor**" means any individual on Property who is not a Whinstone

"**Visitor Access Hours**" means 08:30 A.M. – 5:00 P.M. Central Time (08:00-17:00 UTC-6) Representative, which includes all Clients and Contractors, and the undersigned.

*Version 2023*

<u>DATA CENTER RULES</u>

Whinstone US, Inc. ("<u>Whinstone</u>") has adopted these Data Center Rules (these "<u>Rules</u>") for the safety of all persons present at the Premises.  Accordingly, by accessing its private data center hosting facility located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567 (the "<u>Premises</u>").  By accessing the Premises, you agree to be bound by these Rules, which are set forth as follows:

**I.      ACCESS AND REGISTRATION**

**A.      Access Restricted**.  The Facility is a private industrial property and an operating construction site that is not open to the public and is generally not designed to accommodate Visitors; therefore, Whinstone strictly controls access to the Premises and has the absolute right to remove anyone from the Premises property at any time, for any reason or for no reason.  Visitors are only permitted access to the Premises during Visitor Access Hours, which are 8:30 A.M – 5:00 PM, local time.  Further, access to the Premises is limited to individuals who: (i) are at least 18 years of age and of legal majority; (ii) do not require adult supervision; (iii) have registered with Whinstone at least 24 hours in advance of accessing the Premises; and (iv) have been granted permission by Whinstone to access the Premises, which permission may be revoked at any time at Whinstone's sole and absolute discretion.

**B.      Security Check-In and Screening**.  All persons shall enter and exit the Premises through the main security gate, where they will be checked in and out by Whinstone Security personnel.  All persons entering the Premises must produce a valid form of government-issued identification (driver's license or passport) when checking-in.  All personal items, such as bags, laptops, purses, backpacks, weapons of any kind, and cellular devices, must be checked in at the main security desk, and are subject to search.  **VISITORS ARE NOT PERMITTED TO BRING FIREARMS OR OTHER WEAPONS ONTO THE PREMISES.**

Upon entering the Premises, all persons shall be subjected to a security check in process, which may include the use of physical screening devices (for example: metal detectors, infrared scans or other similar non-invasive tools) to help ensure the security of the Premises, its personnel, and the assets contained therein.  Further, by entering the Premises, you consent to physical security screening, including pat downs by security staff and the physical searching and/or scanning of all containers, boxes, bags, laptops, purses, backpacks, or equipment carried into or out of the Premises.  Individuals who refuse such screening will not be permitted access to the Premises.  Visitors are prohibited from entering the Premises with any items that are not required for the approved purpose of the access.

**YOU HEREBY ACKNOWLEDGE AND AGREE THAT: (I) THIS SECURITY SCREENING IS A CONDITION PRECEDENT TO ANY ACCESS TO THE FACILITY; (II) YOU HAVE EXPRESSLY CONSENTED TO SUCH SECURITY SCREENING; (III) YOU WILL BE DENIED ENTRY TO THE PREMISES IF YOU FAIL TO SUBMIT TO AND SUCCESSFULLY PASS SUCH SECURITY SCREENING; AND (IV) YOU HEREBY CONSENT TO YOUR IMMEDIATE REMOVAL FROM THE PREMISES IF YOU FAIL TO SUBMIT TO AND SUCCESSFULLY PASS SUCH SECURITY SCREENING.**

**C.      Identification Badges and Escorts**.  The Facility is an operating industrial facility and construction site, with various obvious and non-obvious hazards.  As such, portions of the Premises are restricted, and no Visitor shall enter or attempt to enter such restricted areas without Whinstone's express consent and only while accompanied by Whinstone personnel.  Further, Whinstone may require you to exit the Premises on little or no notice in response to exigencies, and we must be able to clearly identify you at all times.  Therefore, all non-Whinstone personnel accessing the Premises shall be issued a visitor's identification badge to be worn on the chest, which must be prominently displayed and clearly visible at all times while on the Premises property.  Further, All persons other than Whinstone personnel are required to be accompanied by a Whinstone employee and remain within designated areas while present at the Premises.

**D.      Proper Attire**.  At all times while on the Premises, Visitors must wear appropriate footwear (for example: no open-toe shoes, sandals or flip-flops are permitted) and attire, and must properly use all personal protective equipment ("**PPE**") provided or otherwise approved by Whinstone, which may include but is not limited to a hard hat, protective goggles, ear plugs/protectors, shoe covers and facemasks.

E.      **Access Accommodations**.  All Visitors represent that they are required to be familiar with and adhere to all relevant written and posted Occupational Safety and Health Administration ("**OSHA**") standards, including but not limited to those associated with work in a computer room or hot environment.  Further, persons with severe photosensitivity, who require the use of service animals, or who experience sever claustrophobia should be aware that operation of our Facility and the active construction occurring on-site produces a significant volume of noise and heat, contains a number of tight access routes, and employs a large number of blinking lights.  Because the Premises are located in a rural area with wild animals, heavy machinery in operation, high voltage power transmission equipment, abundant noise and scent stimuli, and other various dangers to animals who are not used to the site, no pets or other animals are permitted at the Premises without Whinstone's express permission, which shall be granted only as required by law and subject to the conditions set forth herein.

Persons who believe they may require accommodation in connection with these factors must contact Whinstone to arrange reasonable accommodations no later than 48 hours in advance of arrival at the Premises. Whinstone will make reasonable accommodations as required by law, including with respect to permitted service animal access; however, such exceptions shall be granted only if proper documentation is presented no later than 48 hours in advance of arrival at the Premises.

II.      **PROHIBITED ITEMS**

Except by Whinstone's prior written approval, all persons accessing the Premises are prohibited from transporting, carrying, or otherwise possessing the following items while on the Premises:

- Firearms, explosives or weapons of any kind;

- Hazardous, combustible, or radioactive materials;

- Food, drink, and other liquids, including alcohol, controlled substances and other intoxicating or illegal substances;

- Tobacco products and electronic cigarettes (smoking is permitted only in designated areas outside the buildings);

- Skateboards, hoverboards, scooters, skates or other similar vehicles;

- USB storage devices, External hard drives, and other portable digital storage devices;

- Two-way radios, audio-visual recording devices, devices utilizing ultra-wideband communication technology or Bluetooth technology (e.g., cellphones, which will be surrendered at check-in, stored securely, and returned to you upon departure);

- Electro-magnetic devices which could unreasonably interfere with electronic or telecommunications equipment; and

- Such other items as Whinstone may determine in its sole and absolute discretion.

III.      **CODE OF CONDUCT**

All persons accessing the Premises must comply with the following code of conduct at all times while present on the Premises:

A.      **Do Not Engage in Prohibited Behavior**.

**YOU SHALL NOT:**

- physically harm, assault, or otherwise make unsolicited physical contact with any

other person, including Whinstone's personnel, Contractors and other Visitors;

- harass or abuse (including verbally, in any language) any individual, including Whinstone's personnel, Contractors and other Visitors;

- engage in any disruptive behavior, including any lewd and lascivious conduct, canvassing, soliciting and peddling);

- engage in any activity that is in violation of the law or aids or assists any criminal activity at the Premises;

- make physical alterations or modifications to any equipment, cabling or infrastructure at the Premises;

- tamper with, misuse, abuse, or in any manner adversely affect, equipment, infrastructure, organization, inventory, security, monitoring, and/or safety systems or labels within the Premises or affixed to any equipment or packaging;

- take or allow any person in your group to take photographs, or video or audio recordings within or of the Premises at any area or at any time other than as permitted by Whinstone during the visit;

- attempt to copy, record, duplicate, or reverse-engineer any of: the Bitcoin Mining equipment in use at the Premises, including the Miners, racks, power supply and delivery infrastructure; the cooling equipment, processes, and infrastructure used in the Premises, including any liquid-immersion cooling equipment software, firmware, or other technology; or any other equipment, process, or technology employed at the Premises; or

- use or operate equipment such as tools, dollies, carts, server lifts, monitor and keyboards within the Premises without Whinstone's prior approval and the presence of Whinstone personnel.

**B.      Comply with All Directives**.

**YOU SHALL:**

- comply with instructions given by Whinstone personnel;

- remove from the Premises any debris, trash or other refuse they create;

- immediately report any defects or other dangerous conditions within the Premises or with respect to any equipment therein, or any violations of these Rules of which they become aware to Whinstone personnel; and

- otherwise cooperate with Whinstone in ensuring that the Premises and every part thereof are secure and that all Facility operations and systems remain uninterrupted.

**C.      Observe all Security Requirements**.   You shall also observe and comply with the following security and safety requirements at all times while present at the Premises:

- All doors and other access points should remain shut unless in use and should only be opened by Whinstone personnel, except in emergency situations.

- **VISITORS ARE ADVISED THAT OPERATIONS OF THE FACILITY INCLUDE LIVE WIRES, ELECTRICAL HAZARD (INCLUDING HIGH VOLTAGE) AND MOVING PARTS AND VISITORS SHOULD THEREFORE REFRAIN FROM TOUCHING ANY PART OF THE EQUIPMENT OR INFRASTRUCTURE**

**(INCLUDING, BUT NOT LIMITED TO, CABLING, BREAKERS, FANS).**

- Visitors, Contractors, and other non-Whinstone personnel shall take due care, and are solely responsible for, maintaining adherence to proper safety precautions when they are within the Premises, including but not limited to avoiding contact with open electrical wiring/ power supply boards or other potential sources of electrical shock, and avoiding any open floors/ceilings which may be kept open for maintenance or other purposes.

- Emergency exit and evacuation instructions are clearly posted throughout the Premises.  Visitors are solely responsible for reading and understanding all such instructions upon entering the Premises.  **IF THE EMERGENCY HORNS AND STROBES ACTIVATE, ALL VISITORS MUST EVACUATE THE BUILDING IMMEDIATELY AND FOLLOW INSTRUCTIONS GIVEN BY WHINSTONE PERSONNEL.**

    **D.**     **Removal**.  Whinstone has the right to remove or require the Client or Contractor to remove from the Premises any of its Representatives whom Whinstone deems incompetent, careless, or otherwise objectionable (including but not limited to individuals who appear to be intoxicated or otherwise deemed unsuitable), or any person whose actions the Whinstone deems to be contrary to public interests or inconsistent with the best interest of the Whinstone or other individuals on the Premises.  Whinstone Security personnel are armed licensed security professionals and are authorized to eject from the Premises any person who violates these Rules.  Persons attempting to access the Premises outside of normal Visitor Hours or without the express written invitation of Whinstone will be prohibited access to the Premises by Whinstone Security personnel, and such persons may be detained by Whinstone Security personnel until local authorities arrive on site.  Violations of these Rules, included those observed by camera, will be prosecuted to the fullest extent of the law.

**IV.**     <u>**CONFIDENTIALITY**</u>

You understand and acknowledge that, by accessing the Premises, you may gain access or otherwise be exposed to valuable Confidential Information (as defined below).  You further acknowledge and agree that such Confidential Information is extremely valuable and is sufficiently secret to permit the owners thereof to derive significant economic value, actual or potential, from such Confidential Information not being generally known by others, including Whinstone's competitors, and is the subject of efforts that are reasonable to maintain its secrecy or confidentiality.

Whinstone will make every effort to limit your access to the Premises to only those areas that do not contain Confidential information of any third party, including any customers or business partners to whom Whinstone may have a duty of confidentiality; however, Whinstone cannot guarantee that you will not inadvertently gain such access during your visit to the Premises.  Further, Whinstone will make every effort not to share material, nonpublic information with you regarding your visit; however, you may still inadvertently gain access to such material, nonpublic information.  Accordingly, you agree to hold in the strictest confidence, and not use or disclose to others, any and all Confidential Information to which you may gain access to or possession of in connection with your access to the Premises, including the fact that you have accessed such Confidential Information.  Further, you shall not remove any document, equipment, or other materials from the Premises without Whinstone's prior written consent.

You hereby acknowledge and agree that, because the risk that you may inadvertently gain access to Confidential Information during your visit to the Premises, you hereby agree to provide Whinstone's legal counsel with preliminary, confidential and exclusive pre-access to any account, documentary, video or other publication pertaining to your visit to the Premises *solely to permit Whinstone's legal counsel to ascertain whether any Confidential Information is contained in such publication*.  You agree to work with Whinstone's legal counsel to eliminate, obfuscate or otherwise limit the disclosure of any Confidential Information in any such account, documentary, video or other publication pertaining to your visit to the Premises that you may produce.  Further, you acknowledge and agree that Whinstone's parent company, Riot Blockchain, Inc., is a publicly traded company subject to applicable disclosure rules under U.S. securities laws and, therefore, may make public announcement of your account, documentary, video or other publication pertaining to your visit to the Premises if it reasonably determines that such publication is reasonably likely to contain material,

nonpublic information subject to Regulation FD under the Securities Exchange Act of 1934, as amended.

For the avoidance of doubt, this confidentiality provision shall be subordinate to any non-disclosure and confidentiality agreement, or agreement containing confidentiality provisions covering the matters set forth herein, previously entered into between you and Whinstone or any affiliate of Whinstone.

As used herein, "Confidential Information" means all material, nonpublic information disclosed directly or indirectly by Whinstone or its Representatives to another person or its Representatives (the "Receiving Party"), whether written, oral, electronic, or otherwise, through any means of communication or observation. "Confidential Information" *includes*, without limitation, the following: (i) business matters, such as information about prices; costs; bids; proposals; quotes; negotiations; legal information; accounting information; profits; markets; sales; business plans; proposals; and other confidential plans; (ii) technical matters, such as the Whinstone's trade and engineering secrets; know-how; ideas; formulae; algorithms; processes; inventions; source and object code; other works of authorship; improvements; discoveries; databases; experimental results; and research; (iii) information derived from other Confidential Information; (iv) information that a reasonable person would consider to be confidential; and (v) any Confidential Information of any of Whinstone's customers, partners, and other third parties doing business at the Premises. "Confidential Information" *does not include* information that the Receiving Party can demonstrate, with reasonable documentary evidence: (i) was in the Receiving Party's possession prior to disclosure by the Whinstone; (ii) was generally known to the public, or becomes so known through the acts of others; (iii) came into the Receiving Party's possession from a third party under no confidentiality obligation to the Whinstone; or (iv) the Receiving Party developed independently of, and without reference to, any Confidential Information. A combination of pieces of Confidential Information, taken as a whole, does not fall within any of these exclusions simply because a piece of that combination loses its confidential status (*e.g.*, a confidential memorandum containing or referring to non-confidential information, such as publicly disclosed financial information, is and remains "Confidential Information" unless and until the memorandum itself ceases to be "Confidential Information").

## V.    SURVEILLANCE/CCTV

Closed-circuit television (CCTV) cameras, audio monitoring devices, infrared and other electronic surveillance devices are used to monitor all areas of the Premises.  All CCTV cameras are monitored by Whinstone Security personnel, and captured images are retained and may be used as Whinstone may determine in its sole discretion.  **BY ACCESSING THE FACILITY, YOU ARE HEREBY NOTIFIED OF THE USE OF SUCH SURVEILLANCE TECHNIQUES AND YOU CONSENT TO SUCH MONITORING AND RECORDING, INCLUDING THE STORAGE AND USE OF SURVEILLANCE RECORDINGS**.

## VI.   ASSUMPTION OF RISK

**BY ACCESSING THE FACILITY, YOU ACKNOWLEDGE AND AGREE THAT YOU VOLUNTARILY ASSUME ALL RISKS, HAZARDS AND DANGERS** incident to your access to the Facility and related activities, including the risk of serious personal injury, temporary and permanent disability, or death, including arising from exposure to communicable diseases, viruses, bacteria or illnesses or the causes thereof, and property damage or loss, whether occurring before, during, or after you have accessed the Facility, however caused and whether inside or outside of the Facility, and you hereby waive all claims and potential claims relating to such risks, hazards and dangers.

## VII.  RELEASE, WAIVER, AND COVENANT NOT TO SUE

A.    **Medical Treatment Release**.  By accessing the Facility, you authorize Whinstone to secure, and consent to receive, any medical treatment that may be given to you should Whinstone determine, in its sole discretion, that you need medical care as a result of injuries you may sustain while present on the Facility premises.  Further, you acknowledge that Whinstone does not provide professional medical services and that the Facility is located in a rural area, with limited hospital trauma center coverage.  Accordingly, you, by accessing the Facility, acknowledge that you understand that any injury you may sustain while present at the Facility may be compounded by delayed medical service due to such lack of ready access to hospital and/or any negligent or delayed assistance you may receive from Whinstone personnel.   You accept full responsibility for all costs related to such medical treatment, including any transport costs, and you release Whinstone and its

Affiliates from any type of liability for anything that may happen during such treatment or transport.

**B.      General Liability Release and Covenant Not to Sue**.  By accessing the Facility you, for you and on behalf of your related persons hereby release (and covenant not to sue) each of the Released Parties with respect to any and all claims that you or any of Visitor's Related Persons may have (or hereafter accrue), against any of the Released Parties, that relate to any of the risks, hazards and dangers described above, including without limitation any and all claims that arise out of or relate in any way to (i) exposure to communicable diseases while at the Facility, including COVID-19; (ii) your entry into, or presence within or around, the Facility (including all risks related thereto, and including without limitation in parking areas or entry gates) or compliance with any protocols applicable to your access to the Facility; or (iii) any interaction between you and any personnel of any of the Released Parties at the Facility, in each case whether caused by any action, inaction or negligence of any Released Party or otherwise.

**VIII.      LIABILITY AND INDEMNIFICATION**

By accessing the Facility, you acknowledge that your failure to comply with these Rules may result in expense to Whinstone, which may include charges for time and materials required to remedy such failure, damages (including lost profit).  Further, you agree you shall indemnify and hold harmless Whinstone, its affiliates, and each of its and their respective officers, stockholders, directors, employees, and agents (collectively, the "**Whinstone Indemnified Parties**") from and against any and all liabilities, obligations, losses, damages, allegations, claims, demands, suits, actions, deficiencies, penalties, charges, taxes, levies, fines, judgments, settlements, costs, expenses, interest, attorneys' fees and disbursements, and accountants' fees and disbursements (collectively, "**Losses**") or threatened Losses due to third-party claims arising out of or relating to any of the following: (i) your negligence, fraud, or willful misconduct; (ii) damage to the Property, Whinstone's systems (including equipment), or any equipment of Whinstone's Clients, suppliers, contractors or other third parties caused by you, your Representatives, or your equipment; (iii) your breach of any confidentiality obligations hereunder; (iv) if applicable, your breach of any representations or warranties under a Client Agreement to which you are a party or acting as a Representative of a party thereto: or (iv) your indemnification obligations hereunder.  Your liability in connection with any breach of, or non-compliance with these Rules, or the applicable Client Agreement, shall, in each case, be unlimited in type and amount. Accordingly, having read and understood these Rules, you acknowledge and agree that, by accessing the Facility, you are responsible for Whinstone's expenses incurred in connection with your violation of these Rules.

**IX.      MISCELLANEOUS**

**A.      Signage**.  No sign or signs will be allowed in or upon the Facility, other than those with Whinstone's express written approval.

**B.      Authority**.  Each Client Representative is deemed to have the authority to act on behalf of the Client, unless the Client otherwise notifies Whinstone otherwise in advance of a Client Representative accessing the Facility.

**C.      Amendments**.   Visitor acknowledges that these Rules may be amended, restated or replaced at any time without notice, and that Visitor will review the then-current terms prior to each visit to the Facility.

<u>ACCEPTABLE USE POLICY</u>

This Acceptable Use Policy ("**AUP**") governs the access to and use of the Services (as defined in the applicable Client Agreement) provided by Whinstone.  This AUP and the accompanying Data Center Rules (the "**Rules**" and, together with this AUP, the "**Policy**") form a part of and are incorporated by reference into any Client Agreement.

This AUP applies to all persons accessing the Facility and anyone using any of the Services (each, a "**User**").  Any reference to "you" shall be interpreted to mean you and anybody you allow to use the Services.  You are responsible for the use of the Services by any person you allow to use it.

Notwithstanding anything to the contrary in any other agreement, policy, or other document, the following rules and regulations set forth in this AUP govern the acceptable use of the Services.  Any violation of this AUP will be a violation of your obligations under the Rules and will constitute a material breach of the applicable Client Agreement.   Any questions regarding this AUP and the accompanying Rules should be directed to legal@riotblockchain.com.

**NOW, THEREFORE**, by accessing the Facility and/or using the Services, you agree to be bound by this AUP and abide by the following rules:

I. **No Illegal Use**

The Services may only be used for lawful purposes in accordance with Applicable Law.  For the avoidance of doubt, you may not, nor permit any other person (whether intentionally or otherwise) to, use the Services to send, receive, store, distribute, transmit, post, upload or download any materials or data which: violates any Applicable Law; violates any of the Company's policies, as now in place or as may in the future be amended or adopted by the Company; is defamatory, offensive, abusive, indecent, obscene, or constitutes harassment; is in breach of any third-party rights (including any third-party intellectual property rights); has any fraudulent purpose or effect; or adversely affects or may, in the Company's sole and absolute estimate, adversely affect the Company's business and/or reputation.

II. **System and Network Security**

The Services may not be used in any manner which compromises, is intended to compromise, or which is likely, in the Company's sole and absolute estimation, to compromise the security of any person's systems or network.  For the avoidance of doubt, you must not, nor permit any other person (whether intentionally or otherwise) to, engage in any of the following: unauthorized access to or use of data, systems or networks, including any attempt to probe, scan or test the vulnerability of a system or network; unauthorized monitoring of data or traffic on any network or system without the express authorization of the owner of the system or network; or unauthorized interference with any user, host, system or network without the express authorization of the owner of the system or network.

Further, you must not send, receive, store, distribute, transmit, post, upload or download any materials that are designed to violate the security of the Company's network and other systems, or that of any other person.  Examples of such prohibited material may include (but are not limited to): programs containing viruses or Trojan horses; tools designed to compromise the security of other sites; programs or services designed to send or facilitate the sending of unsolicited advertisements; or programs or services designed to encourage or facilitate a breach of this AUP or any acceptable use policy of another Internet services provider.

In addition, you must not, nor permit any other person (whether intentionally or otherwise) to, connect to the Services any insecure device or service able to be exploited by others to carry out actions which would constitute a breach of this AUP if carried out by you, including without limitation, the following: the transmission of unsolicited bulk email or email containing infected attachments; attempts to disrupt websites and/or connectivity; or any other attempts to compromise the security of other users of the Company's network and systems, or of any other

1

person's system.

You are responsible for all data and/or traffic originating from the machines and/or networks that you have connected to the Services.  You must immediately disconnect (and subsequently secure prior to reconnection) machines generating data and/or traffic which contravenes this AUP upon your becoming aware of the same and/or once notified of such activity by the Company.

**III.**          **Advertising and Other Impermissible Communications**

The Services may not be used to send unsolicited electronic mail (email) or any other form of electronic communication (including commercial advertising communications) or any abusive or offensive communication whatsoever.  In particular, unsolicited advertising mailings (whether commercial or informational) are strictly prohibited - only send advertising material to recipients who have specifically requested it.  Accordingly, you must not, nor permit any other person (whether intentionally or otherwise) to, use our Services to send such communications to any person who has not consented to the receipt thereof.  Further, you must not, nor permit any other person (whether intentionally or otherwise) to, use any device which is connected or permitted to connect to our Services to send such unsolicited communications.  Finally, you must not suggest or imply that any email you send is from, or otherwise authorized or endorsed by, the Company or any other person other than you, except with such person's express prior consent.

**IV.**          **Impermissible Internet Usage**

The Services must not be used to connect to any illegal, illicit, or compromised Internet websites or other online services.  Accordingly, you must not, nor permit any other person (whether intentionally or otherwise) to, use the Services to connect to any such websites or services.  Further, you may not, nor permit any other person (whether intentionally or otherwise) to, use any device which is connected or permitted to connect to our Services to connect to such websites.  You are solely responsible for your use of the Internet and any web pages owned and/or operated by you or anyone you permit to use the Services and that are connected to the Services.  In addition, you may not, nor permit any other person (whether intentionally or otherwise) to, use the Services or any device connected or permitted to connect to the Service, to use the Internet in any way that would violate any part of this AUP or to disrupt or attempt to disrupt any other person's use of or experience using the Internet.

**V.**          **Confidentiality**

You acknowledge and agree that, as a condition of receiving the Services and/or accessing the Facility, you shall not to use or disclose any Confidential Information, whether or not related to the Services and/or any licensed proprietary technology, processes, equipment, or other inventions imparted to you in connection with the Services or as a consequence of any visit to the Facility, except as required by the applicable Colocation Services Agreement or by applicable law.

**VI.**          **Consequences for Policy Violations**

You must at all times be aware of who is using or has access to your devices.  We will block any electronic communication that we reasonably consider to be in violation of this AUP.  Further, if you have breached this AUP, or we reasonably suspect that you may have breached this AUP, we will notify you (provided that this notification does not prejudice any investigation) and we may also take any of the following actions:

- immediately suspend your access to the Services until such time as we are satisfied the impermissible activity has ceased and the breach of this AUP has been cured;

- immediately suspend the provision of the Services and, if we determine your breach of this AUP is material, terminate your Client Agreement;

- investigate the alleged breach of the AUP, which may include gathering information from you and/or

the complaining party (if any) and the examination of any other data or material on our network or our servers;

- notify and/or pass on the details of the breach of the AUP to any relevant government, statutory, self-regulatory or law enforcement agency; or

- remove (either temporarily or permanently), copy, store, monitor or otherwise deal with data and/or other material on our network and/or our servers.

Further, by accessing the Services, you authorize the Company to use your personal data and other account information in connection with any investigation carried out by Whinstone in accordance with this AUP, including by disclosing it to any third-party authority that Whinstone considers has a legitimate interest in any such investigation or its outcome.  For the avoidance of doubt, the Company has the absolute right to terminate the Services with immediate effect and without further obligation or liability to you as required by any law enforcement organization or by the courts or any relevant regulatory authority.

**VII.**          **Liability**

You agree to indemnify and hold the Company, its affiliates, officers, employees, and agents harmless against all claims, actions, demands, costs (including legal costs and disbursements), expenses, losses and damages arising out of or incurred as a consequence of your breach of this AUP or breach of this AUP by anyone permitted to use the Services by you. In many instances a breach of this AUP would constitute a breach of law and may in some cases carry criminal liability.

**VIII.**   **Amendments**

You acknowledge and agree that the Company may amend this AUP from time to time in its discretion, including to reflect any changes in the law or community standards or whenever the Company, in its sole and absolute discretion, deems it appropriate.

**GMO**
**Visitor Name: Masaya Yanagi**
**Access Date: March 23, 2023**

**WHINSTONE US, INC.**
**VISITOR RELEASE AND WAIVER OF LIABILITY AGREEMENT**

I, the undersigned visitor ("Visitor"), in consideration of the grant of limited access to the private data center facility owned and operated by Whinstone US, Inc., a Delaware corporation, ("Whinstone") located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567 (the "Premises") during the Access Date(s) specified above (the "Access Date(s)") granted hereby, which access I acknowledge and agree would not be granted but for my acceptance and agreement to be bound by the terms of this Visitor Release and Waiver of Liability agreement (this "Agreement"), and for other good and valuable consideration, the receipt and sufficiency of which I hereby acknowledge, agree as follows:

**1.     Limited Access.**  I understand and agree that the Whinstone Premises is a private facility, located on private property in unincorporated Texas accessible solely by private road, and that my limited access to the Premises is: (a) conditioned upon my acceptance and adherence to terms of this Agreement and exclusive to me, the person signing this Agreement; (b) limited solely to the purposes agreed by an authorized Whinstone representative; (c) limited to the Access Date(s) and to those areas and times as specified by authorized Whinstone representatives; (d) voluntarily granted by Whinstone and may be immediately revoked at Whinstone's sole and exclusive discretion, with or without notice, for any reason or for no reason; and (e) not granted in exchange for any consideration paid by me or on my behalf other than my agreement to be bound by the terms hereof, and that I have no enforceable right to access the Premises, whether on the Access Date(s) or otherwise.

**2.     Use of Premises.**  I understand and agree that my access to the Premises is exclusively for the purposes agreed by an authorized Whinstone representative, and that I will be accompanied by an authorized representative of Whinstone throughout my visit, whose instructions I hereby agree to follow. Further, I hereby acknowledge and agree that, at all times while I am present on the Premises (including during ingress to and egress from the Premises), I will: (1) adhere to the Whinstone Data Center Rules and Acceptable Use Policy, as currently in effect at the Premises, (the "Facility Rules") which I hereby acknowledge and agree that I have read and understood, and which are incorporated by this reference herein; (2) conduct myself with all due caution as a reasonable person would undertake when present at an active work site with the inherent risks and hazards discussed in Section 4 hereof below; (3) immediately follow all instructions given to me by a representative of Whinstone; and (4) be responsible for my use of the Premises and of any property thereon, and liable for the replacement cost of any such property which is damaged, destroyed or lost by reason of my negligence or misconduct.

**3.     Responsibility for Personal Property.**  I acknowledge and agree that I am fully and solely responsible for any of my property and personal belongings that I bring onto the Premises and that Whinstone will not be responsible for or provide any security for my property and personal belongings, other than to store any of personal property which I am required to surrender to Whinstone Security as a condition of my access to the Premises; provided, however, that Whinstone's liability for any such surrendered property shall not exceed $500.00.

**4.     Assumption of Risk.**  I understand and acknowledge that I am voluntarily and freely accessing the Premises, which may be dangerous and may involve the risk that I will sustain serious injury, temporary or permanent disability, death, and/or property damage.  I understand and acknowledge that the Premises is an active construction site, with all of the inherent risks associated with such a site, including, but not limited to, exposure to operating heavy machinery, construction

equipment, and other dangerous instrumentalities.  I further understand and acknowledge the presence open and obvious hazards at the Premises, as well as other hazards which may not be open or obvious. Further, I hereby acknowledge and agree that it would not be reasonable or even possible for Whinstone to eliminate all such potential hazards and, therefore, that I will use reasonable care, as a prudent person having been forewarned of the presence or potential presence of such hazards, to avoid, whether such hazards are clearly marked as hazardous or otherwise.  **ACCORDINGLY, I HEREBY VOLUNTARILY AND FREELY ASSUME ALL RISKS AND DANGERS THAT MAY OCCUR PURSUANT TO MY USE OF AND PARTICIPATION OF ACTIVITIES ON THE PREMISES, INCLUDING THE RISK OF INJURY, DEATH, OR PROPERTY DAMAGE.**

**5.      RELEASE FROM LIABILITY.  I HEREBY AGREE, FOR MYSELF, MY HEIRS AND MY PERSONAL REPRESENTATIVES, TO FULLY AND FOREVER DISCHARGE AND RELEASE WHINSTONE AND ITS AFFILIATES, INCLUDING ITS PARENT COMPANY, RIOT BLOCKCHAIN, INC., A NEVADA CORPORATION, AND THEIR RESPECTIVE PARTNERS, AGENTS, OPERATORS, MANAGERS, EMPLOYEES, AND REPRESENTATIVES ("**RELEASED PARTIES**") FROM ANY AND ALL CLAIMS I MAY HAVE OR HEREINAFTER HAVE FOR ANY INJURY, TEMPORARY OR PERMANENT DISABILITY, DEATH, DAMAGES, LIABILITIES, EXPENSES AND/OR CAUSES OF ACTION, NOW KNOWN OR HEREINAFTER KNOWN IN ANY JURISDICTION IN THE WORLD, ATTRIBUTABLE OR RELATING IN ANY MANNER TO MY ENTRY UPON AND USE OF THE PREMISES AND PARTICIPATION IN THE ACTIVITY, WHETHER CAUSED BY THE NEGLIGENCE OF THE COMPANY OR ANY OF THE RELEASED PARTIES OR BY ANY OTHER REASON. I ACKNOWLEDGE AND AGREE THAT THIS RELEASE AND WAIVER OF LIABILITY FOR A POTENTIALLY DANGEROUS ACTIVITY IS INTENDED TO BE, AND IS, A COMPLETE RELEASE, AS MUCH AS ALLOWED BY LAW, OF ANY RESPONSIBILITY OF THE RELEASED PARTIES FOR ALL PERSONAL INJURIES, TEMPORARY OR PERMANENT DISABILITY, DEATH, AND/OR PROPERTY DAMAGE SUSTAINED BY ME WHILE ON OR USING THE PREMISES OR PARTICIPATING IN THE ACTIVITY.**

**6.      MEDICAL TREATMENT RELEASE**. I hereby authorize Whinstone to secure, and I consent to, any medical treatment that may be given to me should Whinstone determine, in its sole discretion, that I need medical care, while I am present on the Premises.  I accept full responsibility for all costs related to my medical treatment, including any transport costs, and I release all parties involved from any type of liability for anything that may happen during my treatment or transport.  I further understand and acknowledge that Whinstone does not provide professional medical services and is located a substantial distance from any hospital or other trauma center.  Accordingly, I further understand and acknowledge that any injury I may sustain while on the Premises may be compounded by emergency medical triage efforts undertaken by persons who may not be trained medical professionals and, therefore, **I HEREBY VOLUNTARILY AND FREELY WAIVE ANY AND ALL CLAIMS I MAY HAVE AGAINST WHINSTONE OR ITS PERSONNEL FOR ANY NEGLIGENT AND/OR DELAYED MEDICAL CARE I MAY RECEIVE WHILE PRESENT ON THE PREMISES.  FURTHER, I HEREBY VOLUNTARILY AND FREELY ASSUME ALL RISKS AND DANGERS THAT MAY OCCUR PURSUANT TO MY USE OF AND PARTICIPATION OF ACTIVITIES ON THE PREMISES, INCLUDING THE RISK OF INJURY, DEATH, OR PROPERTY DAMAGE.**

**7.      Covenant Not to Sue.** I agree, for myself and all my heirs, not to sue the Released Parties or initiate or assist in the prosecution of any claim for damages or cause of action against the Released Parties which I or my heirs may have as a result of any personal injury, death or property damage I may sustain while on or using the Premises.

**8.      INDEMNIFICATION.  I HEREBY AGREE TO DEFEND, INDEMNIFY AND HOLD WHINTONE AND THE RELEASED PARTIES HARMLESS FROM AND AGAINST ANY THIRD-PARTY LOSSES, DAMAGES, ACTIONS, SUITS, CLAIMS, JUDGMENTS, SETTLEMENTS, AWARDS, INTEREST, PENALTIES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND COSTS OF ANY KIND FOR ANY PERSONAL INJURY, LOSS OF LIFE OR DAMAGE TO PROPERTY SUSTAINED BY REASON OF OR ARISING OUT OF MY USE OF THE PREMISES OR PARTICIPATION IN ANY ACTIVITIES ON THE PREMISES.**

**9.      No Representations by Whinstone.**  I acknowledge that Whinstone makes no representation as to the condition of the Premises or the safety of any structures or equipment that may be used at the Premises. I accept and shall use the Premises in its "AS IS" condition. I acknowledge and agree that I am not relying upon any representation or statement by the Whinstone or the Whinstone's employees, agents, or representatives regarding this agreement or the Premises, except to the extent such representations are expressly set forth in this Agreement.

**10.      Miscellaneous.** This Agreement is governed by and interpreted in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law of such state.  Any provision of this Agreement providing for performance by either party after termination of this agreement shall survive such termination and shall continue to be effective and enforceable.  If any provision or portion of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions or portions shall remain in full force and effect.  I agree that any action arising out of this Release and Waiver of Liability agreement must be brought exclusively in any state or federal court with jurisdiction over Travis County, Texas.  **I HEREBY FURTHER ACKNOWLEDGE AND AGREE THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES OF LAW AND, THEREFORE, AS A MATERIAL PART OF THE CONSIDERATION TO INDUCE WHINSTONE TO GRANT ME ACCESS TO THE PREMISES, WITHOUT WHICH WHINSTONE WOULD NOT GRANT ME SUCH ACCESS, I HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT I MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT.**  This Agreement is the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreement or communications between the parties, whether written, oral, electronic, or otherwise.  No change, modification, amendment, or addition of or to this Agreement shall be valid unless in writing and signed by authorized representatives of the parties.  No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving party.  The failure of any party to enforce any provision of this agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter.  This Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the parties.

***[SIGNATURE PAGE FOLLOWS – REMAINDER OF PAGE INTENTIONALLY BLANK]***

*[SIGNATURE PAGE TO WHINSTONE VISITOR RELEASE AND WAIVER OF LIABILITY AGREEMENT]*

**IN WITNESS WHEREOF,** I, the undersigned visitor, hereby acknowledge, agree, and represent to Whinstone that: (i) I have fully read and understood each of the above provisions of this Agreement, as well as the Data Center Rules as currently in effect as of the Access Date(s), a copy of which are attached as **Exhibit "A"** to this Agreement; (ii) prior to signing this Agreement, I had sufficient opportunity to consult with an attorney of my choosing to review this Agreement; (iii) I am at least 18 years of age and fully competent; and (iv) I now execute this Agreement voluntarily, freely, and for adequate consideration, intending by my signature below to be fully bound by the terms hereof.

**VISITOR**

_____          March 21, 2023
(Signature)                                       (Dated)

  Masaya Yanagi
(Printed Name)

*Version 2023*

## Exhibit "A"

**PLEASE CAREFULLY REVIEW THESE DATA CENTER RULES AND ACCEPTABLE USE POLICY (THIS "POLICY").  THIS POLICY AFFECTS YOUR ABILITY TO ACCESS THE FACILITY AND LIMITS OUR LIABILITY WITH RESPECT TO INJURIES YOU MAY SUSTAIN WHILE PRESENT AT THE FACILITY.  BY ACCESSING THE FACILITY, YOU AGREE TO BE BOUND AND ABIDE BY THIS POLICY, AND YOU ACCEPT THE LIMITATIONS OF LIABILITY AND OTHER MATTERS SET FORTH HEREIN.  THIS POLICY IS INCORORATED BY REFERENCE INTO, AND FORMS A PART OF, EACH OF THE CLIENT AGREEMENTS BETWEEN WHINSTONE AND ITS CLIENTS.**

**WHINSTONE US, INC.**

**DATA CENTER RULES AND ACCEPTABLE USE POLICY**

Whinstone US, Inc., a Delaware corporation, and its Affiliates, (collectively, "**Whinstone**," the "**Company**," "**we**," "**us**," etc.) limits access to its Data Center Facility, located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567 (the "**Facility**") exclusively to its employees and those of its Affiliates, representatives of Whinstone's Clients, permitted Visitors, and permitted Contractors.  All persons accessing the Facility are, at all times while present at the Facility, bound by and subject to the Data Center Rules attached hereto as **Exhibit A** (the "**Rules**") and the Acceptable Use Policy attached hereto as **Exhibit B** (the "**AUP**"), as the same may be amended from time to time (collectively, the "**Policy**").  All capitalized terms not otherwise defined herein shall have the meanings given to them on **Schedule 1** hereto.

The Policy has been established to provide for the safety of all individuals within the Facility, the uninterrupted operation of the Facility, the protection of Clients' privacy and Confidential Information, and the security of the Facility, including of all Client Mining Equipment, Facility Equipment, and third-party equipment deployed at the Facility.  Accordingly, as all access to the Facility is expressly conditioned on full compliance with the Policy, and any violation of the Policy may result in your immediate removal from the Facility, a breach of the Client Agreement to which your access relates, and personal liability to you.  Whinstone reserves all rights relating to the enforcement of the Policy.

**NOW, THEREFORE,** in exchange for access to the Facility, conditioned on my compliance with the Policy, I, the undersigned releasing party (the "**Releasing Party**"), hereby agree as follows:

**1.** **Policy Acknowledgement**.  I hereby acknowledge and agree that I have been provided with the Policy, including the Rules and the AUP, and that I have read and understood the Policy in all respects, including the provisions thereof relating to the limitation of the Company's liability in the event I sustain injury or my property is damaged or lost while entering, present upon, or exiting the Facility premises.

**2.** **Compliance with the Policy**.  At all times while I am present at the Facility, I will comply with the Policy in all respects.  I acknowledge and agree that my access to the Facility is conditioned upon my compliance with the Policy, and I understand that my access thereto may be revoked as a result of my failure, or the failure of my persons accompanying me while I am present on the Facility premises, to comply with the Policy.  Further, I hereby consent to my removal from the Facility by Whinstone personnel should I fail to comply with the Policy.

**3.** **Assumption of Risk**.  I acknowledge and understand that the Facility is an operating industrial facility and active construction site, with live wires, high voltage electrical transfer equipment, moving parts and machinery, and other hazards, both obvious and non-obvious.  I acknowledge and agree that my access to the Facility is voluntary and that I have been made aware that I may sustain personal injury and/or damage or loss to my personal property in connection with my access to the Facility.  THEREFORE, I  VOLUNTARILY AND FREELY ASSUME ALL RISKS AND DANGERS THAT MAY OCCUR PURSUANT TO MY ACCESS TO THE FACILITY AND ITS PREMISES, AND PARTICIPATION IN ACTIVITIES THEREON, INCLUDING THE RISK OF INJURY, SERIOUS ILLNESS, TEMPORARY OR PERMANENT DISABILITY, DEATH, OR PROPERTY DAMAGE, EVEN IF CAUSED BY NEGLIGENCE OF THE COMPANY.

**4.** **Release of Liability**.  I HEREBY AGREE, ON BEHALF OF MYSELF, MY HEIRS AND MY PERSONAL REPRESENTATIVES, TO FULLY AND FOREVER DISCHARGE AND RELEASE COMPANY AND ITS AFFILIATES, AND THEIR  RESPECTIVE  PARTNERS,  AGENTS,  OPERATORS,  MANAGERS,  EMPLOYEES,  AFFILIATES  AND

REPRESENTATIVES ("**RELEASED PARTIES**") FROM ANY AND ALL CLAIMS I MAY HAVE OR HEREINAFTER HAVE FOR ANY INJURY, TEMPORARY OR PERMANENT DISABILITY, DEATH, DAMAGES, LIABILITIES, EXPENSES AND/OR CAUSES OF ACTION, NOW KNOWN OR HEREINAFTER KNOWN IN ANY JURISDICTION IN THE WORLD, ATTRIBUTABLE OR RELATING IN ANY MANNER TO MY ACCESS TO THE FACILITY AND ITS PREMISES, MY USE THEREOF, AND MY PARTICIPATION IN ANY ACTIVITY THEREON, WHETHER CAUSED BY THE NEGLIGENCE OF THE COMPANY OR ANY OF THE RELEASED PARTIES OR BY ANY OTHER REASON. I ACKNOWLEDGE AND AGREE THAT THIS RELEASE AND WAIVER OF LIABILITY FOR A POTENTIALLY DANGEROUS ACTIVITY IS INTENDED TO BE, AND IS, A COMPLETE RELEASE, AS MUCH AS ALLOWED BY LAW, OF ANY RESPONSIBILITY OF THE RELEASED PARTIES FOR ALL PERSONAL INJURIES, TEMPORARY OR PERMANENT DISABILITY, DEATH, AND/OR PROPERTY DAMAGE SUSTAINED BY ME WHILE ON OR USING THE FACILITY OR ITS PREMISES, OR FROM PARTICIPATING IN ANY ACTIVITY THEREON.

**5.** **Covenant Not to Sue**.  I agree, for myself and all my heirs, not to sue the Released Parties or initiate or assist in the prosecution of any claim for damages or cause of action against the Released Parties which I or my heirs may have as a result of any personal injury, death or property damage I may sustain while on or using the Premises or while participating in the Activity.

**6.** **Indemnification.**  I HEREBY AGREE TO DEFEND, INDEMNIFY AND HOLD WHINTONE AND THE RELEASED PARTIES HARMLESS FROM AND AGAINST ANY THIRD-PARTY LOSSES, DAMAGES, ACTIONS, SUITS, CLAIMS, JUDGMENTS, SETTLEMENTS, AWARDS, INTEREST, PENALTIES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND COSTS OF ANY KIND FOR ANY PERSONAL INJURY, LOSS OF LIFE OR DAMAGE TO PROPERTY SUSTAINED BY REASON OF OR ARISING OUT OF MY USE OF THE FACILITY OR PARTICIPATION IN ANY ACTIVITIES ON THE FACILITY.

**7.** **Medical Treatment Release**. I hereby authorize Whinstone to secure, and I consent to, any medical treatment that may be given to me should Whinstone determine, in its sole discretion, that I need medical care, while I am present on the Facility.  I accept full responsibility for all costs related to my medical treatment, including any transport costs, and I release all parties involved from any type of liability for anything that may happen during my treatment or transport.

**8.** **Responsibility for Personal Property.**  I acknowledge and agree that I am fully and solely responsible for any of my property and personal belongings that I bring onto the Facility and that Whinstone will not be responsible for or provide any security for my property and personal belongings.

**9.** **No Representations by Whinstone.**  I acknowledge that Whinstone makes no representation as to the condition of the Facility or the safety of any structures or equipment that may be used at the Facility. I accept and shall use the Facility in its "AS IS" condition. I acknowledge and agree that I am not relying upon any representation or statement by the Whinstone or the Whinstone's employees, agents, or representatives regarding this agreement or the Facility, except to the extent such representations are expressly set forth in this Agreement.

**10.** **Applicable Laws, Choice of Forum, and Jury Trial Waiver.** This Agreement is governed by and interpreted in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law of such state.  Any provision of this Agreement providing for performance by either party after termination of this agreement shall survive such termination and shall continue to be effective and enforceable. If any provision or portion of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions or portions shall remain in full force and effect.  I agree that any action arising out of this Release and Waiver of Liability agreement must be brought exclusively in any state or federal court with jurisdiction over Travis County, Texas.  I HEREBY FURTHER ACKNOWLEDGE AND AGREE THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES OF LAW AND, THEREFORE, AS A MATERIAL PART OF THE CONSIDERATION TO INDUCE WHINSTONE TO GRANT ME ACCESS TO THE FACILITY, WITHOUT WHICH WHINSTONE WOULD NOT GRANT ME SUCH ACCESS, I HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT I MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT.

**11.** **Miscellaneous.** This Agreement is the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreement or communications between the parties, whether

written, oral, electronic, or otherwise.   No change, modification, amendment, or addition of or to this Agreement shall be valid unless in writing and signed by authorized representatives of the parties.  No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving party.  The failure of any party to enforce any provision of this agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter.  This Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the parties.

**IN WITNESS WHEREOF**, I, the undersigned Releasing Party, for myself and for my Affiliates, hereby acknowledge that I have received, read, and understood the Policy, including the provisions thereof relating to the limitation of the Company's liability in the event I sustain personal injury, including serious injury, illness, disability, or death, or my property is damaged or lost, in connection with my access to the Facility, and I hereby agree to abide and be bound by the Policy, as the same may be amended from time to time by the Company.

**RELEASING PARTY**

_____          March 21, 2023
(Signature of Releasing Party)                     (Dated)

 Masaya Yanagi                         
(Printed Name of Releasing Party)

*Version 2023*

## Schedule 1

### DEFINED TERMS

As used in the Policy, the following terms shall have the meanings ascribed to them below, unless otherwise defined herein or therein:

"**Affiliate**" means, when referring to an entity, the entity's parent organization, subsidiary organization or sibling organization sharing substantially identical ownership and control with the entity, and, when referring to an individual, means members of that individual's close family.

"**Applicable Law**" means, as in effect from time to time, any law, rule, regulation, declaration, decree, directive, statute or other enactment, order, mandate or resolution, interpretation, writ, judgment, injunction, license, or permit, issued or enacted by any Governmental Authority, which is applicable to a Party under this Agreement, including securities laws, tax laws, tariff and trade laws, and data laws.

"**Bitcoin Mining**" means the operation of computational servers utilizing the 256-bit hashing algorithm protocol (or the equivalent thereof, as may be adopted by the Bitcoin Blockchain) to conduct transaction verification services on the Bitcoin Blockchain to obtain Bitcoin rewards in a process known as "solving a block."

"**Building Unit**" means each separate building within the Facility.

"**Business Day**" means a day which is not a Saturday, Sunday or a public holiday in Texas.

"**Client**" means the counterparty to a Client Agreement with Whinstone.

"**Client Agreement**" means any Master Colocation Services Agreement or other agreement between Whinstone and a Client pursuant to which Whinstone is providing colocation services to the Client at the Facility.

"**Client Mining Equipment**" means the Client's Miners specified on Schedule 2 to this Agreement, as well as any other hardware equipment (including required PDUs) that is provided by Client and/or installed by Whinstone at the Client's request in the Licensed Area to support operation of the Client's Miners, including all software and firmware on such equipment other than any software and firmware owned or licensed by Whinstone.

"**Confidential Information**" means all material, nonpublic information disclosed directly or indirectly by Whinstone or its Representatives to another person or its Representatives (the "Receiving Party"), whether written, oral, electronic, or otherwise, through any means of communication or observation. "**Confidential Information**" *includes*, without limitation, the following: (i) business matters, such as information about prices; costs; bids; proposals; quotes; negotiations; legal information; accounting information; profits; markets; sales; business plans; proposals; and other confidential plans; (ii) technical matters, such as the Whinstone's trade and engineering secrets; know-how; ideas; formulae; algorithms; processes; inventions; source and object code; other works of authorship; improvements; discoveries; databases; experimental results; and research; (iii) information derived from other Confidential Information; (iv) information that a reasonable person would consider to be confidential; and (v) any Confidential Information of any of Whinstone's customers, partners, and other third parties doing business at the Premises. "**Confidential Information**" *does not include* information that the Receiving Party can demonstrate, with reasonable documentary evidence: (i) was in the Receiving Party's possession prior to disclosure by the Whinstone; (ii) was generally known to the public, or becomes so known through the acts of others; (iii) came into the Receiving Party's possession from a third party under no confidentiality obligation to the Whinstone; or (iv) the Receiving Party developed independently of, and without reference to, any Confidential Information. A combination of pieces of Confidential Information, taken as a whole, does not fall within any of these exclusions simply because a piece of that combination loses its confidential status (e.g., a confidential memorandum containing or referring to non-confidential information, such as publicly disclosed financial information, is and remains "**Confidential Information**" unless and until the memorandum itself ceases to be "**Confidential Information**").

"**Contractor**" means any person contracted by Whinstone for any kind of service at the Property.

"**Facility**" means the grounds, structures, and infrastructure comprising the data center and colocation/managed hosting services facility operated by Whinstone located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567.

"**Miner**" means an individual Bitcoin Mining computational server (which may operate an application-specific integrated circuit (ASIC) graphics processing unit (GPU) or other technology, as may be applicable).

"**Representative**" means, a person's Affiliates, directors, officers, employees, partners, agents, consultants or contractors, as well as any persons with whom such party shares Confidential Information with respect to the Discussions or which such party involves in the Discussions.

"**Visitor**" means any individual on Property who is not a Whinstone

"**Visitor Access Hours**" means 08:30 A.M. – 5:00 P.M. Central Time (08:00-17:00 UTC-6) Representative, which includes all Clients and Contractors, and the undersigned.

*Version 2023*

Whinstone US, Inc. ("Whinstone") has adopted these Data Center Rules (these "Rules") for the safety of all persons present at the Premises. Accordingly, by accessing its private data center hosting facility located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567 (the "Premises"). By accessing the Premises, you agree to be bound by these Rules, which are set forth as follows:

**I.   ACCESS AND REGISTRATION**

**A.   Access Restricted**. The Facility is a private industrial property and an operating construction site that is not open to the public and is generally not designed to accommodate Visitors; therefore, Whinstone strictly controls access to the Premises and has the absolute right to remove anyone from the Premises property at any time, for any reason or for no reason. Visitors are only permitted access to the Premises during Visitor Access Hours, which are 8:30 A.M – 5:00 PM, local time. Further, access to the Premises is limited to individuals who: (i) are at least 18 years of age and of legal majority; (ii) do not require adult supervision; (iii) have registered with Whinstone at least 24 hours in advance of accessing the Premises; and (iv) have been granted permission by Whinstone to access the Premises, which permission may be revoked at any time at Whinstone's sole and absolute discretion.

**B.   Security Check-In and Screening**. All persons shall enter and exit the Premises through the main security gate, where they will be checked in and out by Whinstone Security personnel. All persons entering the Premises must produce a valid form of government-issued identification (driver's license or passport) when checking-in. All personal items, such as bags, laptops, purses, backpacks, weapons of any kind, and cellular devices, must be checked in at the main security desk, and are subject to search. **VISITORS ARE NOT PERMITTED TO BRING FIREARMS OR OTHER WEAPONS ONTO THE PREMISES.**

Upon entering the Premises, all persons shall be subjected to a security check in process, which may include the use of physical screening devices (for example: metal detectors, infrared scans or other similar non-invasive tools) to help ensure the security of the Premises, its personnel, and the assets contained therein. Further, by entering the Premises, you consent to physical security screening, including pat downs by security staff and the physical searching and/or scanning of all containers, boxes, bags, laptops, purses, backpacks, or equipment carried into or out of the Premises. Individuals who refuse such screening will not be permitted access to the Premises. Visitors are prohibited from entering the Premises with any items that are not required for the approved purpose of the access.

**YOU HEREBY ACKNOWLEDGE AND AGREE THAT: (I) THIS SECURITY SCREENING IS A CONDITION PRECEDENT TO ANY ACCESS TO THE FACILITY; (II) YOU HAVE EXPRESSLY CONSENTED TO SUCH SECURITY SCREENING; (III) YOU WILL BE DENIED ENTRY TO THE PREMISES IF YOU FAIL TO SUBMIT TO AND SUCCESSFULLY PASS SUCH SECURITY SCREENING; AND (IV) YOU HEREBY CONSENT TO YOUR IMMEDIATE REMOVAL FROM THE PREMISES IF YOU FAIL TO SUBMIT TO AND SUCCESSFULLY PASS SUCH SECURITY SCREENING.**

**C.   Identification Badges and Escorts**. The Facility is an operating industrial facility and construction site, with various obvious and non-obvious hazards. As such, portions of the Premises are restricted, and no Visitor shall enter or attempt to enter such restricted areas without Whinstone's express consent and only while accompanied by Whinstone personnel. Further, Whinstone may require you to exit the Premises on little or no notice in response to exigencies, and we must be able to clearly identify you at all times. Therefore, all non-Whinstone personnel accessing the Premises shall be issued a visitor's identification badge to be worn on the chest, which must be prominently displayed and clearly visible at all times while on the Premises property. Further, All persons other than Whinstone personnel are required to be accompanied by a Whinstone employee and remain within designated areas while present at the Premises.

**D.   Proper Attire**. At all times while on the Premises, Visitors must wear appropriate footwear (for example: no open-toe shoes, sandals or flip-flops are permitted) and attire, and must properly use all personal protective equipment ("**PPE**") provided or otherwise approved by Whinstone, which may include but is not limited to a hard hat, protective goggles, ear plugs/protectors, shoe covers and facemasks.

**E.     Access Accommodations**.  All Visitors represent that they are required to be familiar with and adhere to all relevant written and posted Occupational Safety and Health Administration ("**OSHA**") standards, including but not limited to those associated with work in a computer room or hot environment.  Further, persons with severe photosensitivity, who require the use of service animals, or who experience sever claustrophobia should be aware that operation of our Facility and the active construction occurring on-site produces a significant volume of noise and heat, contains a number of tight access routes, and employs a large number of blinking lights.  Because the Premises are located in a rural area with wild animals, heavy machinery in operation, high voltage power transmission equipment, abundant noise and scent stimuli, and other various dangers to animals who are not used to the site, no pets or other animals are permitted at the Premises without Whinstone's express permission, which shall be granted only as required by law and subject to the conditions set forth herein.

Persons who believe they may require accommodation in connection with these factors must contact Whinstone to arrange reasonable accommodations no later than 48 hours in advance of arrival at the Premises. Whinstone will make reasonable accommodations as required by law, including with respect to permitted service animal access; however, such exceptions shall be granted only if proper documentation is presented no later than 48 hours in advance of arrival at the Premises.

**II.     PROHIBITED ITEMS**

Except by Whinstone's prior written approval, all persons accessing the Premises are prohibited from transporting, carrying, or otherwise possessing the following items while on the Premises:

- Firearms, explosives or weapons of any kind;

- Hazardous, combustible, or radioactive materials;

- Food, drink, and other liquids, including alcohol, controlled substances and other intoxicating or illegal substances;

- Tobacco products and electronic cigarettes (smoking is permitted only in designated areas outside the buildings);

- Skateboards, hoverboards, scooters, skates or other similar vehicles;

- USB storage devices, External hard drives, and other portable digital storage devices;

- Two-way radios, audio-visual recording devices, devices utilizing ultra-wideband communication technology or Bluetooth technology (e.g., cellphones, which will be surrendered at check-in, stored securely, and returned to you upon departure);

- Electro-magnetic devices which could unreasonably interfere with electronic or telecommunications equipment; and

- Such other items as Whinstone may determine in its sole and absolute discretion.

**III.     CODE OF CONDUCT**

All persons accessing the Premises must comply with the following code of conduct at all times while present on the Premises:

**A.     Do Not Engage in Prohibited Behavior**.

**YOU SHALL NOT:**

- physically harm, assault, or otherwise make unsolicited physical contact with any

other person, including Whinstone's personnel, Contractors and other Visitors;

- harass or abuse (including verbally, in any language) any individual, including Whinstone's personnel, Contractors and other Visitors;

- engage in any disruptive behavior, including any lewd and lascivious conduct, canvassing, soliciting and peddling;

- engage in any activity that is in violation of the law or aids or assists any criminal activity at the Premises;

- make physical alterations or modifications to any equipment, cabling or infrastructure at the Premises;

- tamper with, misuse, abuse, or in any manner adversely affect, equipment, infrastructure, organization, inventory, security, monitoring, and/or safety systems or labels within the Premises or affixed to any equipment or packaging;

- take or allow any person in your group to take photographs, or video or audio recordings within or of the Premises at any area or at any time other than as permitted by Whinstone during the visit;

- attempt to copy, record, duplicate, or reverse-engineer any of: the Bitcoin Mining equipment in use at the Premises, including the Miners, racks, power supply and delivery infrastructure; the cooling equipment, processes, and infrastructure used in the Premises, including any liquid-immersion cooling equipment software, firmware, or other technology; or any other equipment, process, or technology employed at the Premises; or

- use or operate equipment such as tools, dollies, carts, server lifts, monitor and keyboards within the Premises without Whinstone's prior approval and the presence of Whinstone personnel.

**B.      Comply with All Directives**.

**YOU SHALL:**

- comply with instructions given by Whinstone personnel;

- remove from the Premises any debris, trash or other refuse they create;

- immediately report any defects or other dangerous conditions within the Premises or with respect to any equipment therein, or any violations of these Rules of which they become aware to Whinstone personnel; and

- otherwise cooperate with Whinstone in ensuring that the Premises and every part thereof are secure and that all Facility operations and systems remain uninterrupted.

**C.      Observe all Security Requirements**.   You shall also observe and comply with the following security and safety requirements at all times while present at the Premises:

- All doors and other access points should remain shut unless in use and should only be opened by Whinstone personnel, except in emergency situations.

- **VISITORS ARE ADVISED THAT OPERATIONS OF THE FACILITY INCLUDE LIVE WIRES, ELECTRICAL HAZARD (INCLUDING HIGH VOLTAGE) AND MOVING PARTS AND VISITORS SHOULD THEREFORE REFRAIN FROM TOUCHING ANY PART OF THE EQUIPMENT OR INFRASTRUCTURE**

**(INCLUDING, BUT NOT LIMITED TO, CABLING, BREAKERS, FANS).**

- Visitors, Contractors, and other non-Whinstone personnel shall take due care, and are solely responsible for, maintaining adherence to proper safety precautions when they are within the Premises, including but not limited to avoiding contact with open electrical wiring/ power supply boards or other potential sources of electrical shock, and avoiding any open floors/ceilings which may be kept open for maintenance or other purposes.

- Emergency exit and evacuation instructions are clearly posted throughout the Premises.  Visitors are solely responsible for reading and understanding all such instructions upon entering the Premises.  **IF THE EMERGENCY HORNS AND STROBES ACTIVATE, ALL VISITORS MUST EVACUATE THE BUILDING IMMEDIATELY AND FOLLOW INSTRUCTIONS GIVEN BY WHINSTONE PERSONNEL.**

**D.**     **Removal**.  Whinstone has the right to remove or require the Client or Contractor to remove from the Premises any of its Representatives whom Whinstone deems incompetent, careless, or otherwise objectionable (including but not limited to individuals who appear to be intoxicated or otherwise deemed unsuitable), or any person whose actions the Whinstone deems to be contrary to public interests or inconsistent with the best interest of the Whinstone or other individuals on the Premises.  Whinstone Security personnel are armed licensed security professionals and are authorized to eject from the Premises any person who violates these Rules.  Persons attempting to access the Premises outside of normal Visitor Hours or without the express written invitation of Whinstone will be prohibited access to the Premises by Whinstone Security personnel, and such persons may be detained by Whinstone Security personnel until local authorities arrive on site.  Violations of these Rules, included those observed by camera, will be prosecuted to the fullest extent of the law.

## IV.     CONFIDENTIALITY

You understand and acknowledge that, by accessing the Premises, you may gain access or otherwise be exposed to valuable Confidential Information (as defined below).  You further acknowledge and agree that such Confidential Information is extremely valuable and is sufficiently secret to permit the owners thereof to derive significant economic value, actual or potential, from such Confidential Information not being generally known by others, including Whinstone's competitors, and is the subject of efforts that are reasonable to maintain its secrecy or confidentiality.

Whinstone will make every effort to limit your access to the Premises to only those areas that do not contain Confidential information of any third party, including any customers or business partners to whom Whinstone may have a duty of confidentiality; however, Whinstone cannot guarantee that you will not inadvertently gain such access during your visit to the Premises.  Further, Whinstone will make every effort not to share material, nonpublic information with you regarding your visit; however, you may still inadvertently gain access to such material, nonpublic information.  Accordingly, you agree to hold in the strictest confidence, and not use or disclose to others, any and all Confidential Information to which you may gain access to or possession of in connection with your access to the Premises, including the fact that you have accessed such Confidential Information.  Further, you shall not remove any document, equipment, or other materials from the Premises without Whinstone's prior written consent.

You hereby acknowledge and agree that, because the risk that you may inadvertently gain access to Confidential Information during your visit to the Premises, you hereby agree to provide Whinstone's legal counsel with preliminary, confidential and exclusive pre-access to any account, documentary, video or other publication pertaining to your visit to the Premises *solely to permit Whinstone's legal counsel to ascertain whether any Confidential Information is contained in such publication*.  You agree to work with Whinstone's legal counsel to eliminate, obfuscate or otherwise limit the disclosure of any Confidential Information in any such account, documentary, video or other publication pertaining to your visit to the Premises that you may produce.  Further, you acknowledge and agree that Whinstone's parent company, Riot Blockchain, Inc., is a publicly traded company subject to applicable disclosure rules under U.S. securities laws and, therefore, may make public announcement of your account, documentary, video or other publication pertaining to your visit to the Premises if it reasonably determines that such publication is reasonably likely to contain material,

nonpublic information subject to Regulation FD under the Securities Exchange Act of 1934, as amended.

For the avoidance of doubt, this confidentiality provision shall be subordinate to any non-disclosure and confidentiality agreement, or agreement containing confidentiality provisions covering the matters set forth herein, previously entered into between you and Whinstone or any affiliate of Whinstone.

As used herein, "Confidential Information" means all material, nonpublic information disclosed directly or indirectly by Whinstone or its Representatives to another person or its Representatives (the "Receiving Party"), whether written, oral, electronic, or otherwise, through any means of communication or observation. "Confidential Information" *includes*, without limitation, the following: (i) business matters, such as information about prices; costs; bids; proposals; quotes; negotiations; legal information; accounting information; profits; markets; sales; business plans; proposals; and other confidential plans; (ii) technical matters, such as the Whinstone's trade and engineering secrets; know-how; ideas; formulae; algorithms; processes; inventions; source and object code; other works of authorship; improvements; discoveries; databases; experimental results; and research; (iii) information derived from other Confidential Information; (iv) information that a reasonable person would consider to be confidential; and (v) any Confidential Information of any of Whinstone's customers, partners, and other third parties doing business at the Premises. "Confidential Information" *does not include* information that the Receiving Party can demonstrate, with reasonable documentary evidence: (i) was in the Receiving Party's possession prior to disclosure by the Whinstone; (ii) was generally known to the public, or becomes so known through the acts of others; (iii) came into the Receiving Party's possession from a third party under no confidentiality obligation to the Whinstone; or (iv) the Receiving Party developed independently of, and without reference to, any Confidential Information. A combination of pieces of Confidential Information, taken as a whole, does not fall within any of these exclusions simply because a piece of that combination loses its confidential status (*e.g.*, a confidential memorandum containing or referring to non-confidential information, such as publicly disclosed financial information, is and remains "Confidential Information" unless and until the memorandum itself ceases to be "Confidential Information").

## V.       SURVEILLANCE/CCTV

Closed-circuit television (CCTV) cameras, audio monitoring devices, infrared and other electronic surveillance devices are used to monitor all areas of the Premises.  All CCTV cameras are monitored by Whinstone Security personnel, and captured images are retained and may be used as Whinstone may determine in its sole discretion.  **BY ACCESSING THE FACILITY, YOU ARE HEREBY NOTIFIED OF THE USE OF SUCH SURVEILLANCE TECHNIQUES AND YOU CONSENT TO SUCH MONITORING AND RECORDING, INCLUDING THE STORAGE AND USE OF SURVEILLANCE RECORDINGS**.

## VI.      ASSUMPTION OF RISK

**BY ACCESSING THE FACILITY, YOU ACKNOWLEDGE AND AGREE THAT YOU VOLUNTARILY ASSUME ALL RISKS, HAZARDS AND DANGERS** incident to your access to the Facility and related activities, including the risk of serious personal injury, temporary and permanent disability, or death, including arising from exposure to communicable diseases, viruses, bacteria or illnesses or the causes thereof, and property damage or loss, whether occurring before, during, or after you have accessed the Facility, however caused and whether inside or outside of the Facility, and you hereby waive all claims and potential claims relating to such risks, hazards and dangers.

## VII.     RELEASE, WAIVER, AND COVENANT NOT TO SUE

**A.       Medical Treatment Release**.  By accessing the Facility, you authorize Whinstone to secure, and consent to receive, any medical treatment that may be given to you should Whinstone determine, in its sole discretion, that you need medical care as a result of injuries you may sustain while present on the Facility premises.  Further, you acknowledge that Whinstone does not provide professional medical services and that the Facility is located in a rural area, with limited hospital trauma center coverage.  Accordingly, you, by accessing the Facility, acknowledge that you understand that any injury you may sustain while present at the Facility may be compounded by delayed medical service due to such lack of ready access to hospital and/or any negligent or delayed assistance you may receive from Whinstone personnel.   You accept full responsibility for all costs related to such medical treatment, including any transport costs, and you release Whinstone and its

Affiliates from any type of liability for anything that may happen during such treatment or transport.

      **B.**    **General Liability Release and Covenant Not to Sue**.  By accessing the Facility you, for you and on behalf of your related persons hereby release (and covenant not to sue) each of the Released Parties with respect to any and all claims that you or any of Visitor's Related Persons may have (or hereafter accrue), against any of the Released Parties, that relate to any of the risks, hazards and dangers described above, including without limitation any and all claims that arise out of or relate in any way to (i) exposure to communicable diseases while at the Facility, including COVID-19; (ii) your entry into, or presence within or around, the Facility (including all risks related thereto, and including without limitation in parking areas or entry gates) or compliance with any protocols applicable to your access to the Facility; or (iii) any interaction between you and any personnel of any of the Released Parties at the Facility, in each case whether caused by any action, inaction or negligence of any Released Party or otherwise.

**VIII.**    <u>**LIABILITY AND INDEMNIFICATION**</u>

By accessing the Facility, you acknowledge that your failure to comply with these Rules may result in expense to Whinstone, which may include charges for time and materials required to remedy such failure, damages (including lost profit).  Further, you agree you shall indemnify and hold harmless Whinstone, its affiliates, and each of its and their respective officers, stockholders, directors, employees, and agents (collectively, the "**Whinstone Indemnified Parties**") from and against any and all liabilities, obligations, losses, damages, allegations, claims, demands, suits, actions, deficiencies, penalties, charges, taxes, levies, fines, judgments, settlements, costs, expenses, interest, attorneys' fees and disbursements, and accountants' fees and disbursements (collectively, "**Losses**") or threatened Losses due to third-party claims arising out of or relating to any of the following: (i) your negligence, fraud, or willful misconduct; (ii) damage to the Property, Whinstone's systems (including equipment), or any equipment of Whinstone's Clients, suppliers, contractors or other third parties caused by you, your Representatives, or your equipment; (iii) your breach of any confidentiality obligations hereunder; (iv) if applicable, your breach of any representations or warranties under a Client Agreement to which you are a party or acting as a Representative of a party thereto; or (iv) your indemnification obligations hereunder.  Your liability in connection with any breach of, or non-compliance with these Rules, or the applicable Client Agreement, shall, in each case, be unlimited in type and amount.  Accordingly, having read and understood these Rules, you acknowledge and agree that, by accessing the Facility, you are responsible for Whinstone's expenses incurred in connection with your violation of these Rules.

**IX.**    <u>**MISCELLANEOUS**</u>

      **A.**    **Signage**.  No sign or signs will be allowed in or upon the Facility, other than those with Whinstone's express written approval.

      **B.**    **Authority**.  Each Client Representative is deemed to have the authority to act on behalf of the Client, unless the Client otherwise notifies Whinstone otherwise in advance of a Client Representative accessing the Facility.

      **C.**    **Amendments**.  Visitor acknowledges that these Rules may be amended, restated or replaced at any time without notice, and that Visitor will review the then-current terms prior to each visit to the Facility.

<u>**ACCEPTABLE USE POLICY**</u>

This Acceptable Use Policy ("**AUP**") governs the access to and use of the Services (as defined in the applicable Client Agreement) provided by Whinstone.  This AUP and the accompanying Data Center Rules (the "**Rules**" and, together with this AUP, the "**Policy**") form a part of and are incorporated by reference into any Client Agreement.

This AUP applies to all persons accessing the Facility and anyone using any of the Services (each, a "**User**").  Any reference to "you" shall be interpreted to mean you and anybody you allow to use the Services.  You are responsible for the use of the Services by any person you allow to use it.

Notwithstanding anything to the contrary in any other agreement, policy, or other document, the following rules and regulations set forth in this AUP govern the acceptable use of the Services.  Any violation of this AUP will be a violation of your obligations under the Rules and will constitute a material breach of the applicable Client Agreement.   Any questions regarding this AUP and the accompanying Rules should be directed to legal@riotblockchain.com.

**NOW, THEREFORE**, by accessing the Facility and/or using the Services, you agree to be bound by this AUP and abide by the following rules:

**I.**              **No Illegal Use**

The Services may only be used for lawful purposes in accordance with Applicable Law.  For the avoidance of doubt, you may not, nor permit any other person (whether intentionally or otherwise) to, use the Services to send, receive, store, distribute, transmit, post, upload or download any materials or data which: violates any Applicable Law; violates any of the Company's policies, as now in place or as may in the future be amended or adopted by the Company; is defamatory, offensive, abusive, indecent, obscene, or constitutes harassment; is in breach of any third-party rights (including any third-party intellectual property rights); has any fraudulent purpose or effect; or adversely affects or may, in the Company's sole and absolute estimate, adversely affect the Company's business and/or reputation.

**II.**      **System and Network Security**

The Services may not be used in any manner which compromises, is intended to compromise, or which is likely, in the Company's sole and absolute estimation, to compromise the security of any person's systems or network.  For the avoidance of doubt, you must not, nor permit any other person (whether intentionally or otherwise) to, engage in any of the following: unauthorized access to or use of data, systems or networks, including any attempt to probe, scan or test the vulnerability of a system or network; unauthorized monitoring of data or traffic on any network or system without the express authorization of the owner of the system or network; or unauthorized interference with any user, host, system or network without the express authorization of the owner of the system or network.

Further, you must not send, receive, store, distribute, transmit, post, upload or download any materials that are designed to violate the security of the Company's network and other systems, or that of any other person.  Examples of such prohibited material may include (but are not limited to): programs containing viruses or Trojan horses; tools designed to compromise the security of other sites; programs or services designed to send or facilitate the sending of unsolicited advertisements; or programs or services designed to encourage or facilitate a breach of this AUP or any acceptable use policy of another Internet services provider.

In addition, you must not, nor permit any other person (whether intentionally or otherwise) to, connect to the Services any insecure device or service able to be exploited by others to carry out actions which would constitute a breach of this AUP if carried out by you, including without limitation, the following: the transmission of unsolicited bulk email or email containing infected attachments; attempts to disrupt websites and/or connectivity; or any other attempts to compromise the security of other users of the Company's network and systems, or of any other

1

person's system.

You are responsible for all data and/or traffic originating from the machines and/or networks that you have connected to the Services. You must immediately disconnect (and subsequently secure prior to reconnection) machines generating data and/or traffic which contravenes this AUP upon your becoming aware of the same and/or once notified of such activity by the Company.

III.         **Advertising and Other Impermissible Communications**

The Services may not be used to send unsolicited electronic mail (email) or any other form of electronic communication (including commercial advertising communications) or any abusive or offensive communication whatsoever. In particular, unsolicited advertising mailings (whether commercial or informational) are strictly prohibited - only send advertising material to recipients who have specifically requested it. Accordingly, you must not, nor permit any other person (whether intentionally or otherwise) to, use our Services to send such communications to any person who has not consented to the receipt thereof. Further, you must not, nor permit any other person (whether intentionally or otherwise) to, use any device which is connected or permitted to connect to our Services to send such unsolicited communications. Finally, you must not suggest or imply that any email you send is from, or otherwise authorized or endorsed by, the Company or any other person other than you, except with such person's express prior consent.

IV.         **Impermissible Internet Usage**

The Services must not be used to connect to any illegal, illicit, or compromised Internet websites or other online services. Accordingly, you must not, nor permit any other person (whether intentionally or otherwise) to, use the Services to connect to any such websites or services. Further, you may not, nor permit any other person (whether intentionally or otherwise) to, use any device which is connected or permitted to connect to our Services to connect to such websites. You are solely responsible for your use of the Internet and any web pages owned and/or operated by you or anyone you permit to use the Services and that are connected to the Services. In addition, you may not, nor permit any other person (whether intentionally or otherwise) to, use the Services or any device connected or permitted to connect to the Service, to use the Internet in any way that would violate any part of this AUP or to disrupt or attempt to disrupt any other person's use of or experience using the Internet.

V.          **Confidentiality**

You acknowledge and agree that, as a condition of receiving the Services and/or accessing the Facility, you shall not to use or disclose any Confidential Information, whether or not related to the Services and/or any licensed proprietary technology, processes, equipment, or other inventions imparted to you in connection with the Services or as a consequence of any visit to the Facility, except as required by the applicable Colocation Services Agreement or by applicable law.

VI.         **Consequences for Policy Violations**

You must at all times be aware of who is using or has access to your devices. We will block any electronic communication that we reasonably consider to be in violation of this AUP. Further, if you have breached this AUP, or we reasonably suspect that you may have breached this AUP, we will notify you (provided that this notification does not prejudice any investigation) and we may also take any of the following actions:

- immediately suspend your access to the Services until such time as we are satisfied the impermissible activity has ceased and the breach of this AUP has been cured;

- immediately suspend the provision of the Services and, if we determine your breach of this AUP is material, terminate your Client Agreement;

- investigate the alleged breach of the AUP, which may include gathering information from you and/or

the complaining party (if any) and the examination of any other data or material on our network or our servers;

- notify and/or pass on the details of the breach of the AUP to any relevant government, statutory, self-regulatory or law enforcement agency; or

- remove (either temporarily or permanently), copy, store, monitor or otherwise deal with data and/or other material on our network and/or ourservers.

Further, by accessing the Services, you authorize the Company to use your personal data and other account information in connection with any investigation carried out by Whinstone in accordance with this AUP, including by disclosing it to any third-party authority that Whinstone considers has a legitimate interest in any such investigation or its outcome.  For the avoidance of doubt, the Company has the absolute right to terminate the Services with immediate effect and without further obligation or liability to you as required by any law enforcement organization or by the courts or any relevant regulatory authority.

**VII.** **Liability**

You agree to indemnify and hold the Company, its affiliates, officers, employees, and agents harmless against all claims, actions, demands, costs (including legal costs and disbursements), expenses, losses and damages arising out of or incurred as a consequence of your breach of this AUP or breach of this AUP by anyone permitted to use the Services by you. In many instances a breach of this AUP would constitute a breach of law and may in some cases carry criminalliability.

**VIII.** **Amendments**

You acknowledge and agree that the Company may amend this AUP from time to time in its discretion, including to reflect any changes in the law or community standards or whenever the Company, in its sole and absolute discretion, deems it appropriate.

**GMO**
**Visitor Name: Michael Freyberg**
**Access Date: March 23, 2023**

WHINSTONE US, INC.
**VISITOR RELEASE AND WAIVER OF LIABILITY AGREEMENT**

I, the undersigned visitor ("Visitor"), in consideration of the grant of limited access to the private data center facility owned and operated by Whinstone US, Inc., a Delaware corporation, ("Whinstone") located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567 (the "Premises") during the Access Date(s) specified above (the "Access Date(s)") granted hereby, which access I acknowledge and agree would not be granted but for my acceptance and agreement to be bound by the terms of this Visitor Release and Waiver of Liability agreement (this "Agreement"), and for other good and valuable consideration, the receipt and sufficiency of which I hereby acknowledge, agree as follows:

**1.    Limited Access**.  I understand and agree that the Whinstone Premises is a private facility, located on private property in unincorporated Texas accessible solely by private road, and that my limited access to the Premises is: (a) conditioned upon my acceptance and adherence to the terms of this Agreement and exclusive to me, the person signing this Agreement; (b) limited solely to the purposes agreed by an authorized Whinstone representative; (c) limited to the Access Date(s) and to those areas and times as specified by authorized Whinstone representatives; (d) voluntarily granted by Whinstone and may be immediately revoked at Whinstone's sole and exclusive discretion, with or without notice, for any reason or for no reason; and (e) not granted in exchange for any consideration paid by me or on my behalf other than my agreement to be bound by the terms hereof, and that I have no enforceable right to access the Premises, whether on the Access Date(s) or otherwise.

**2.    Use of Premises.**  I understand and agree that my access to the Premises is exclusively for the purposes agreed by an authorized Whinstone representative, and that I will be accompanied by an authorized representative of Whinstone throughout my visit, whose instructions I hereby agree to follow. Further, I hereby acknowledge and agree that, at all times while I am present on the Premises (including during ingress to and egress from the Premises), I will: (1) adhere to the Whinstone Data Center Rules and Acceptable Use Policy, as currently in effect at the Premises, (the "Facility Rules") which I hereby acknowledge and agree that I have read and understood, and which are incorporated by this reference herein; (2) conduct myself with all due caution as a reasonable person would undertake when present at an active work site with the inherent risks and hazards discussed in Section 4 hereof below; (3) immediately follow all instructions given to me by a representative of Whinstone; and (4) be responsible for my use of the Premises and of any property thereon, and liable for the replacement cost of any such property which is damaged, destroyed or lost by reason of my negligence or misconduct.

**3.    Responsibility for Personal Property.**  I acknowledge and agree that I am fully and solely responsible for any of my property and personal belongings that I bring onto the Premises and that Whinstone will not be responsible for or provide any security for my property and personal belongings, other than to store any of personal property which I am required to surrender to Whinstone Security as a condition of my access to the Premises; provided, however, that Whinstone's liability for any such surrendered property shall not exceed $500.00.

**4.    Assumption of Risk.**  I understand and acknowledge that I am voluntarily and freely accessing the Premises, which may be dangerous and may involve the risk that I will sustain serious injury, temporary or permanent disability, death, and/or property damage.   I understand and acknowledge that the Premises is an active construction site, with all of the inherent risks associated with such a site, including, but not limited to, exposure to operating heavy machinery, construction

equipment, and other dangerous instrumentalities.  I further understand and acknowledge the presence open and obvious hazards at the Premises, as well as other hazards which may not be open or obvious. Further, I hereby acknowledge and agree that it would not be reasonable or even possible for Whinstone to eliminate all such potential hazards and, therefore, that I will use reasonable care, as a prudent person having been forewarned of the presence or potential presence of such hazards, to avoid, whether such hazards are clearly marked as hazardous or otherwise.  **ACCORDINGLY, I HEREBY VOLUNTARILY AND FREELY ASSUME ALL RISKS AND DANGERS THAT MAY OCCUR PURSUANT TO MY USE OF AND PARTICIPATION OF ACTIVITIES ON THE PREMISES, INCLUDING THE RISK OF INJURY, DEATH, OR PROPERTY DAMAGE.**

**5.      RELEASE FROM LIABILITY.  I HEREBY AGREE, FOR MYSELF, MY HEIRS AND MY PERSONAL REPRESENTATIVES, TO FULLY AND FOREVER DISCHARGE AND RELEASE WHINSTONE AND ITS AFFILIATES, INCLUDING ITS PARENT COMPANY, RIOT BLOCKCHAIN, INC., A NEVADA CORPORATION, AND THEIR RESPECTIVE PARTNERS, AGENTS, OPERATORS, MANAGERS, EMPLOYEES, AND REPRESENTATIVES ("**<u>**RELEASED PARTIES**</u>**") FROM ANY AND ALL CLAIMS I MAY HAVE OR HEREINAFTER HAVE FOR ANY INJURY, TEMPORARY OR PERMANENT DISABILITY, DEATH, DAMAGES, LIABILITIES, EXPENSES AND/OR CAUSES OF ACTION, NOW KNOWN OR HEREINAFTER KNOWN IN ANY JURISDICTION IN THE WORLD, ATTRIBUTABLE OR RELATING IN ANY MANNER TO MY ENTRY UPON AND USE OF THE PREMISES AND PARTICIPATION IN THE ACTIVITY, WHETHER CAUSED BY THE NEGLIGENCE OF THE COMPANY OR ANY OF THE RELEASED PARTIES OR BY ANY OTHER REASON. I ACKNOWLEDGE AND AGREE THAT THIS RELEASE AND WAIVER OF LIABILITY FOR A POTENTIALLY DANGEROUS ACTIVITY IS INTENDED TO BE, AND IS, A COMPLETE RELEASE, AS MUCH AS ALLOWED BY LAW, OF ANY RESPONSIBILITY OF THE RELEASED PARTIES FOR ALL PERSONAL INJURIES, TEMPORARY OR PERMANENT DISABILITY, DEATH, AND/OR PROPERTY DAMAGE SUSTAINED BY ME WHILE ON OR USING THE PREMISES OR PARTICIPATING IN THE ACTIVITY.**

**6.      MEDICAL TREATMENT RELEASE**. I hereby authorize Whinstone to secure, and I consent to, any medical treatment that may be given to me should Whinstone determine, in its sole discretion, that I need medical care, while I am present on the Premises.  I accept full responsibility for all costs related to my medical treatment, including any transport costs, and I release all parties involved from any type of liability for anything that may happen during my treatment or transport.   I further understand and acknowledge that Whinstone does not provide professional medical services and is located a substantial distance from any hospital or other trauma center.   Accordingly, I further understand and acknowledge that any injury I may sustain while on the Premises may be compounded by emergency medical triage efforts undertaken by persons who may not be trained medical professionals and, therefore, **I HEREBY VOLUNTARILY AND FREELY WAIVE ANY AND ALL CLAIMS I MAY HAVE AGAINST WHINSTONE OR ITS PERSONNEL FOR ANY NEGLIGENT AND/OR DELAYED MEDICAL CARE I MAY RECEIVE WHILE PRESENT ON THE PREMISES.  FURTHER, I HEREBY VOLUNTARILY AND FREELY ASSUME ALL RISKS AND DANGERS THAT MAY OCCUR PURSUANT TO MY USE OF AND PARTICIPATION OF ACTIVITIES ON THE PREMISES, INCLUDING THE RISK OF INJURY, DEATH, OR PROPERTY DAMAGE.**

**7.      Covenant Not to Sue.** I agree, for myself and all my heirs, not to sue the Released Parties or initiate or assist in the prosecution of any claim for damages or cause of action against the Released Parties which I or my heirs may have as a result of any personal injury, death or property damage I may sustain while on or using the Premises.

**2 / 4**

8.    **INDEMNIFICATION.  I HEREBY AGREE TO DEFEND, INDEMNIFY AND HOLD WHINTONE AND THE RELEASED PARTIES HARMLESS FROM AND AGAINST ANY THIRD-PARTY LOSSES, DAMAGES, ACTIONS, SUITS, CLAIMS, JUDGMENTS, SETTLEMENTS, AWARDS, INTEREST, PENALTIES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND COSTS OF ANY KIND FOR ANY PERSONAL INJURY, LOSS OF LIFE OR DAMAGE TO PROPERTY SUSTAINED BY REASON OF OR ARISING OUT OF MY USE OF THE PREMISES OR PARTICIPATION IN ANY ACTIVITIES ON THE PREMISES.**

9.    **No Representations by Whinstone.**  I acknowledge that Whinstone makes no representation as to the condition of the Premises or the safety of any structures or equipment that may be used at the Premises. I accept and shall use the Premises in its "AS IS" condition. I acknowledge and agree that I am not relying upon any representation or statement by the Whinstone or the Whinstone's employees, agents, or representatives regarding this agreement or the Premises, except to the extent such representations are expressly set forth in this Agreement.

10.    **Miscellaneous.** This Agreement is governed by and interpreted in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law of such state.  Any provision of this Agreement providing for performance by either party after termination of this agreement shall survive such termination and shall continue to be effective and enforceable.  If any provision or portion of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions or portions shall remain in full force and effect.  I agree that any action arising out of this Release and Waiver of Liability agreement must be brought exclusively in any state or federal court with jurisdiction over Travis County, Texas.  **I HEREBY FURTHER ACKNOWLEDGE AND AGREE THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES OF LAW AND, THEREFORE, AS A MATERIAL PART OF THE CONSIDERATION TO INDUCE WHINSTONE TO GRANT ME ACCESS TO THE PREMISES, WITHOUT WHICH WHINSTONE WOULD NOT GRANT ME SUCH ACCESS, I HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT I MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT.**  This Agreement is the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreement or communications between the parties, whether written, oral, electronic, or otherwise.  No change, modification, amendment, or addition of or to this Agreement shall be valid unless in writing and signed by authorized representatives of the parties.  No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving party.  The failure of any party to enforce any provision of this agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter.  This Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the parties.

*[SIGNATURE PAGE FOLLOWS – REMAINDER OF PAGE INTENTIONALLY BLANK]*

*[SIGNATURE PAGE TO WHINSTONE VISITOR RELEASE AND WAIVER OF LIABILITY AGREEMENT]*

**IN WITNESS WHEREOF,** I, the undersigned visitor, hereby acknowledge, agree, and represent to Whinstone that: (i) I have fully read and understood each of the above provisions of this Agreement, as well as the Data Center Rules as currently in effect as of the Access Date(s), a copy of which are attached as **Exhibit "A"** to this Agreement; (ii) prior to signing this Agreement, I had sufficient opportunity to consult with an attorney of my choosing to review this Agreement; (iii) I am at least 18 years of age and fully competent; and (iv) I now execute this Agreement voluntarily, freely, and for adequate consideration, intending by my signature below to be fully bound by the terms hereof.

**VISITOR**


*Michael Freyberg*
(Signature)

03/21/2023
(Dated)

Michael Freyberg
(Printed Name)

*Version 2023*

<u>**Exhibit "A"**</u>

**PLEASE CAREFULLY REVIEW THESE DATA CENTER RULES AND ACCEPTABLE USE POLICY (THIS "POLICY").  THIS POLICY AFFECTS YOUR ABILITY TO ACCESS THE FACILITY AND LIMITS OUR LIABILITY WITH RESPECT TO INJURIES YOU MAY SUSTAIN WHILE PRESENT AT THE FACILITY.  BY ACCESSING THE FACILITY, YOU AGREE TO BE BOUND AND ABIDE BY THIS POLICY, AND YOU ACCEPT THE LIMITATIONS OF LIABILITY AND OTHER MATTERS SET FORTH HEREIN.  THIS POLICY IS INCORORATED BY REFERENCE INTO, AND FORMS A PART OF, EACH OF THE CLIENT AGREEMENTS BETWEEN WHINSTONE AND ITS CLIENTS.**

**WHINSTONE US, INC.**

**<u>DATA CENTER RULES AND ACCEPTABLE USE POLICY</u>**

Whinstone US, Inc., a Delaware corporation, and its Affiliates, (collectively, "**Whinstone**," the "**Company**," "**we**," or "**us**," etc.) limits access to its Data Center Facility, located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567 (the "**Facility**") exclusively to its employees and those of its Affiliates, representatives of Whinstone's Clients, permitted Visitors, and permitted Contractors.  All persons accessing the Facility are, at all times while present at the Facility, bound by and subject to the Data Center Rules attached hereto as **<u>Exhibit A</u>** (the "**Rules**") and the Acceptable Use Policy attached hereto as **<u>Exhibit B</u>** (the "**AUP**"), as the same may be amended from time to time (collectively, the "**Policy**").  All capitalized terms not otherwise defined herein shall have the meanings given to them on **<u>Schedule 1</u>** hereto.

The Policy has been established to provide for the safety of all individuals within the Facility, the uninterrupted operation of the Facility, the protection of Clients' privacy and Confidential Information, and the security of the Facility, including of all Client Mining Equipment, Facility Equipment, and third-party equipment deployed at the Facility.  Accordingly, as all access to the Facility is expressly conditioned on full compliance with the Policy, and any violation of the Policy may result in your immediate removal from the Facility, a breach of the Client Agreement to which your access relates, and personal liability to you.  Whinstone reserves all rights relating to the enforcement of the Policy.

**NOW, THEREFORE,** in exchange for access to the Facility, conditioned on my compliance with the Policy, I, the undersigned releasing party (the "**Releasing Party**"), hereby agree as follows:

**1.**      **Policy Acknowledgement**.  I hereby acknowledge and agree that I have been provided with the Policy, including the Rules and the AUP, and that I have read and understood the Policy in all respects, including the provisions thereof relating to the limitation of the Company's liability in the event I sustain injury or my property is damaged or lost while entering, present upon, or exiting the Facility premises.

**2.**      **Compliance with the Policy**.  At all times while I am present at the Facility, I will comply with the Policy in all respects.  I acknowledge and agree that my access to the Facility is conditioned upon my compliance with the Policy, and I understand that my access thereto may be revoked as a result of my failure, or the failure of my persons accompanying me while I am present on the Facility premises, to comply with the Policy.  Further, I hereby consent to my removal from the Facility by Whinstone personnel should I fail to comply with the Policy.

**3.**      **Assumption of Risk**.  I acknowledge and understand that the Facility is an operating industrial facility and active construction site, with live wires, high voltage electrical transfer equipment, moving parts and machinery, and other hazards, both obvious and non-obvious.   I acknowledge and agree that my access to the Facility is voluntary and that I have been made aware that I may sustain personal injury and/or damage or loss to my personal property in connection with my access to the Facility.  THEREFORE, I  VOLUNTARILY AND FREELY ASSUME ALL RISKS AND DANGERS THAT MAY OCCUR PURSUANT TO MY ACCESS TO THE FACILITY AND ITS PREMISES, AND PARTICIPATION IN ACTIVITIES THEREON, INCLUDING THE RISK OF INJURY, SERIOUS ILLNESS, TEMPORARY OR PERMANENT DISABILITY, DEATH, OR PROPERTY DAMAGE, EVEN IF CAUSED BY NEGLIGENCE OF THE COMPANY.

**4.**      **Release of Liability**.  I HEREBY AGREE, ON BEHALF OF MYSELF, MY HEIRS AND MY PERSONAL REPRESENTATIVES, TO FULLY AND FOREVER DISCHARGE AND RELEASE COMPANY AND ITS AFFILIATES, AND THEIR  RESPECTIVE  PARTNERS,  AGENTS,  OPERATORS,  MANAGERS,  EMPLOYEES,  AFFILIATES  AND

REPRESENTATIVES ("**RELEASED PARTIES**") FROM ANY AND ALL CLAIMS I MAY HAVE OR HEREINAFTER HAVE FOR ANY INJURY, TEMPORARY OR PERMANENT DISABILITY, DEATH, DAMAGES, LIABILITIES, EXPENSES AND/OR CAUSES OF ACTION, NOW KNOWN OR HEREINAFTER KNOWN IN ANY JURISDICTION IN THE WORLD, ATTRIBUTABLE OR RELATING IN ANY MANNER TO MY ACCESS TO THE FACILITY AND ITS PREMISES, MY USE THEREOF, AND MY PARTICIPATION IN ANY ACTIVITY THEREON, WHETHER CAUSED BY THE NEGLIGENCE OF THE COMPANY OR ANY OF THE RELEASED PARTIES OR BY ANY OTHER REASON. I ACKNOWLEDGE AND AGREE THAT THIS RELEASE AND WAIVER OF LIABILITY FOR A POTENTIALLY DANGEROUS ACTIVITY IS INTENDED TO BE, AND IS, A COMPLETE RELEASE, AS MUCH AS ALLOWED BY LAW, OF ANY RESPONSIBILITY OF THE RELEASED PARTIES FOR ALL PERSONAL INJURIES, TEMPORARY OR PERMANENT DISABILITY, DEATH, AND/OR PROPERTY DAMAGE SUSTAINED BY ME WHILE ON OR USING THE FACILITY OR ITS PREMISES, OR FROM PARTICIPATING IN ANY ACTIVITY THEREON.

**5.**      **Covenant Not to Sue**.  I agree, for myself and all my heirs, not to sue the Released Parties or initiate or assist in the prosecution of any claim for damages or cause of action against the Released Parties which I or my heirs may have as a result of any personal injury, death or property damage I may sustain while on or using the Premises or while participating in the Activity.

**6.**      **Indemnification.**  I HEREBY AGREE TO DEFEND, INDEMNIFY AND HOLD WHINTONE AND THE RELEASED PARTIES HARMLESS FROM AND AGAINST ANY THIRD-PARTY LOSSES, DAMAGES, ACTIONS, SUITS, CLAIMS, JUDGMENTS, SETTLEMENTS, AWARDS, INTEREST, PENALTIES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND COSTS OF ANY KIND FOR ANY PERSONAL INJURY, LOSS OF LIFE OR DAMAGE TO PROPERTY SUSTAINED BY REASON OF OR ARISING OUT OF MY USE OF THE FACILITY OR PARTICIPATION IN ANY ACTIVITIES ON THE FACILITY.

**7.**      **Medical Treatment Release**. I hereby authorize Whinstone to secure, and I consent to, any medical treatment that may be given to me should Whinstone determine, in its sole discretion, that I need medical care, while I am present on the Facility.  I accept full responsibility for all costs related to my medical treatment, including any transport costs, and I release all parties involved from any type of liability for anything that may happen during my treatment or transport.

**8.**      **Responsibility for Personal Property.**  I acknowledge and agree that I am fully and solely responsible for any of my property and personal belongings that I bring onto the Facility and that Whinstone will not be responsible for or provide any security for my property and personal belongings.

**9.**      **No Representations by Whinstone.**  I acknowledge that Whinstone makes no representation as to the condition of the Facility or the safety of any structures or equipment that may be used at the Facility. I accept and shall use the Facility in its "AS IS" condition. I acknowledge and agree that I am not relying upon any representation or statement by the Whinstone or the Whinstone's employees, agents, or representatives regarding this agreement or the Facility, except to the extent such representations are expressly set forth in this Agreement.

**10.**      **Applicable Laws, Choice of Forum, and Jury Trial Waiver.** This Agreement is governed by and interpreted in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law of such state.  Any provision of this Agreement providing for performance by either party after termination of this agreement shall survive such termination and shall continue to be effective and enforceable. If any provision or portion of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions or portions shall remain in full force and effect.  I agree that any action arising out of this Release and Waiver of Liability agreement must be brought exclusively in any state or federal court with jurisdiction over Travis County, Texas.  I HEREBY FURTHER ACKNOWLEDGE AND AGREE THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES OF LAW AND, THEREFORE, AS A MATERIAL PART OF THE CONSIDERATION TO INDUCE WHINSTONE TO GRANT ME ACCESS TO THE FACILITY, WITHOUT WHICH WHINSTONE WOULD NOT GRANT ME SUCH ACCESS, I HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT I MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT.

**11.**      **Miscellaneous.** This Agreement is the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreement or communications between the parties, whether

written, oral, electronic, or otherwise.   No change, modification, amendment, or addition of or to this Agreement shall be valid unless in writing and signed by authorized representatives of the parties.  No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving party.  The failure of any party to enforce any provision of this agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter.  This Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the parties.

**IN WITNESS WHEREOF**, I, the undersigned Releasing Party, for myself and for my Affiliates, hereby acknowledge that I have received, read, and understood the Policy, including the provisions thereof relating to the limitation of the Company's liability in the event I sustain personal injury, including serious injury, illness, disability, or death, or my property is damaged or lost, in connection with my access to the Facility, and I hereby agree to abide and be bound by the Policy, as the same may be amended from time to time by the Company.

**RELEASING PARTY**


*Michael Freyberg*
_____
(Signature of Releasing Party)

03/21/2023
_____
(Dated)


 Michael Freyberg
_____
(Printed Name of Releasing Party)

*Version 2023*

<u>**Schedule 1**</u>

**DEFINED TERMS**

As used in the Policy, the following terms shall have the meanings ascribed to them below, unless otherwise defined herein or therein:

"**Affiliate**" means, when referring to an entity, the entity's parent organization, subsidiary organization or sibling organization sharing substantially identical ownership and control with the entity, and, when referring to an individual, means members of that individual's close family.

"**Applicable Law**" means, as in effect from time to time, any law, rule, regulation, declaration, decree, directive, statute or other enactment, order, mandate or resolution, interpretation, writ, judgment, injunction, license, or permit, issued or enacted by any Governmental Authority, which is applicable to a Party under this Agreement, including securities laws, tax laws, tariff and trade laws, and data laws.

"**Bitcoin Mining**" means the operation of computational servers utilizing the 256-bit hashing algorithm protocol (or the equivalent thereof, as may be adopted by the Bitcoin Blockchain) to conduct transaction verification services on the Bitcoin Blockchain to obtain Bitcoin rewards in a process known as "solving a block."

"**Building Unit**" means each separate building within the Facility.

"**Business Day**" means a day which is not a Saturday, Sunday or a public holiday in Texas.

"**Client**" means the counterparty to a Client Agreement with Whinstone.

"**Client Agreement**" means any Master Colocation Services Agreement or other agreement between Whinstone and a Client pursuant to which Whinstone is providing colocation services to the Client at the Facility.

"**Client Mining Equipment**" means the Client's Miners specified on Schedule 2 to this Agreement, as well as any other hardware equipment (including required PDUs) that is provided by Client and/or installed by Whinstone at the Client's request in the Licensed Area to support operation of the Client's Miners, including all software and firmware on such equipment other than any software and firmware owned or licensed by Whinstone.

"**Confidential Information**" means all material, nonpublic information disclosed directly or indirectly by Whinstone or its Representatives to another person or its Representatives (the "Receiving Party"), whether written, oral, electronic, or otherwise, through any means of communication or observation. "**Confidential Information**" *includes*, without limitation, the following: (i) business matters, such as information about prices; costs; bids; proposals; quotes; negotiations; legal information; accounting information; profits; markets; sales; business plans; proposals; and other confidential plans; (ii) technical matters, such as the Whinstone's trade and engineering secrets; know-how; ideas; formulae; algorithms; processes; inventions; source and object code; other works of authorship; improvements; discoveries; databases; experimental results; and research; (iii) information derived from other Confidential Information; (iv) information that a reasonable person would consider to be confidential; and (v) any Confidential Information of any of Whinstone's customers, partners, and other third parties doing business at the Premises. "**Confidential Information**" *does not include* information that the Receiving Party can demonstrate, with reasonable documentary evidence: (i) was in the Receiving Party's possession prior to disclosure by the Whinstone; (ii) was generally known to the public, or becomes so known through the acts of others; (iii) came into the Receiving Party's possession from a third party under no confidentiality obligation to the Whinstone; or (iv) the Receiving Party developed independently of, and without reference to, any Confidential Information. A combination of pieces of Confidential Information, taken as a whole, does not fall within any of these exclusions simply because a piece of that combination loses its confidential status (e.g., a confidential memorandum containing or referring to non-confidential information, such as publicly disclosed financial information, is and remains "**Confidential Information**" unless and until the memorandum itself ceases to be "**Confidential Information**").

"**Contractor**" means any person contracted by Whinstone for any kind of service at the Property.

"**Facility**" means the grounds, structures, and infrastructure comprising the data center and colocation/managed hosting services facility operated by Whinstone located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567.

"**Miner**" means an individual Bitcoin Mining computational server (which may operate an application-specific integrated circuit (ASIC) graphics processing unit (GPU) or other technology, as may be applicable).

"**Representative**" means, a person's Affiliates, directors, officers, employees, partners, agents, consultants or contractors, as well as any persons with whom such party shares Confidential Information with respect to the Discussions or which such party involves in the Discussions.

"**Visitor**" means any individual on Property who is not a Whinstone

"**Visitor Access Hours**" means 08:30 A.M. – 5:00 P.M. Central Time (08:00-17:00 UTC-6) Representative, which includes all Clients and Contractors, and the undersigned.

*Version 2023*

<u>DATA CENTER RULES</u>

Whinstone US, Inc. ("<u>Whinstone</u>") has adopted these Data Center Rules (these "<u>Rules</u>") for the safety of all persons present at the Premises.  Accordingly, by accessing its private data center hosting facility located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567 (the "<u>Premises</u>").  By accessing the Premises, you agree to be bound by these Rules, which are set forth as follows:

**I.      ACCESS AND REGISTRATION**

**A.      Identification Restricted**.  The Facility is a private industrial property and an operating construction site that is not open to the public and is generally not designed to accommodate Visitors; therefore, Whinstone strictly controls access to the Premises and has the absolute right to remove anyone from the Premises property at any time, for any reason or for no reason.  Visitors are only permitted access to the Premises during Visitor Access Hours, which are 8:30 A.M – 5:00 PM, local time.  Further, access to the Premises is limited to individuals who: (i) are at least 18 years of age and of legal majority; (ii) do not require adult supervision; (iii) have registered with Whinstone at least 24 hours in advance of accessing the Premises; and (iv) have been granted permission by Whinstone to access the Premises, which permission may be revoked at any time at Whinstone's sole and absolute discretion.

**B.      Security Check-In and Screening**.  All persons shall enter and exit the Premises through the main security gate, where they will be checked in and out by Whinstone Security personnel.  All persons entering the Premises must produce a valid form of government-issued identification (driver's license or passport) when checking-in.  All personal items, such as bags, laptops, purses, backpacks, weapons of any kind, and cellular devices, must be checked in at the main security desk, and are subject to search.  **VISITORS ARE NOT PERMITTED TO BRING FIREARMS OR OTHER WEAPONS ONTO THE PREMISES.**

Upon entering the Premises, all persons shall be subjected to a security check in process, which may include the use of physical screening devices (for example: metal detectors, infrared scans or other similar non-invasive tools) to help ensure the security of the Premises, its personnel, and the assets contained therein.  Further, by entering the Premises, you consent to physical security screening, including pat downs by security staff and the physical searching and/or scanning of all containers, boxes, bags, laptops, purses, backpacks, or equipment carried into or out of the Premises.  Individuals who refuse such screening will not be permitted access to the Premises.  Visitors are prohibited from entering the Premises with any items that are not required for the approved purpose of the access.

**YOU HEREBY ACKNOWLEDGE AND AGREE THAT: (I) THIS SECURITY SCREENING IS A CONDITION PRECEDENT TO ANY ACCESS TO THE FACILITY; (II) YOU HAVE EXPRESSLY CONSENTED TO SUCH SECURITY SCREENING; (III) YOU WILL BE DENIED ENTRY TO THE PREMISES IF YOU FAIL TO SUBMIT TO AND SUCCESSFULLY PASS SUCH SECURITY SCREENING; AND (IV) YOU HEREBY CONSENT TO YOUR IMMEDIATE REMOVAL FROM THE PREMISES IF YOU FAIL TO SUBMIT TO AND SUCCESSFULLY PASS SUCH SECURITY SCREENING.**

**C.      Identification Badges and Escorts**.  The Facility is an operating industrial facility and construction site, with various obvious and non-obvious hazards.  As such, portions of the Premises are restricted, and no Visitor shall enter or attempt to enter such restricted areas without Whinstone's express consent and only while accompanied by Whinstone personnel.  Further, Whinstone may require you to exit the Premises on little or no notice in response to exigencies, and we must be able to clearly identify you at all times.  Therefore, all non-Whinstone personnel accessing the Premises shall be issued a visitor's identification badge to be worn on the chest, which must be prominently displayed and clearly visible at all times while on the Premises property.  Further, All persons other than Whinstone personnel are required to be accompanied by a Whinstone employee and remain within designated areas while present at the Premises.

**D.      Proper Attire**.  At all times while on the Premises, Visitors must wear appropriate footwear (for example: no open-toe shoes, sandals or flip-flops are permitted) and attire, and must properly use all personal protective equipment ("**PPE**") provided or otherwise approved by Whinstone, which may include but is not limited to a hard hat, protective goggles, ear plugs/protectors, shoe covers and facemasks.

E. **Access Accommodations**. All Visitors represent that they are required to be familiar with and adhere to all relevant written and posted Occupational Safety and Health Administration ("**OSHA**") standards, including but not limited to those associated with work in a computer room or hot environment. Further, persons with severe photosensitivity, who require the use of service animals, or who experience sever claustrophobia should be aware that operation of our Facility and the active construction occurring on-site produces a significant volume of noise and heat, contains a number of tight access routes, and employs a large number of blinking lights. Because the Premises are located in a rural area with wild animals, heavy machinery in operation, high voltage power transmission equipment, abundant noise and scent stimuli, and other various dangers to animals who are not used to the site, no pets or other animals are permitted at the Premises without Whinstone's express permission, which shall be granted only as required by law and subject to the conditions set forth herein.

Persons who believe they may require accommodation in connection with these factors must contact Whinstone to arrange reasonable accommodations no later than 48 hours in advance of arrival at the Premises. Whinstone will make reasonable accommodations as required by law, including with respect to permitted service animal access; however, such exceptions shall be granted only if proper documentation is presented no later than 48 hours in advance of arrival at the Premises.

II.    **PROHIBITED ITEMS**

Except by Whinstone's prior written approval, all persons accessing the Premises are prohibited from transporting, carrying, or otherwise possessing the following items while on the Premises:

- Firearms, explosives or weapons of any kind;

- Hazardous, combustible, or radioactive materials;

- Food, drink, and other liquids, including alcohol, controlled substances and other intoxicating or illegal substances;

- Tobacco products and electronic cigarettes (smoking is permitted only in designated areas outside the buildings);

- Skateboards, hoverboards, scooters, skates or other similar vehicles;

- USB storage devices, External hard drives, and other portable digital storage devices;

- Two-way radios, audio-visual recording devices, devices utilizing ultra-wideband communication technology or Bluetooth technology (e.g., cellphones, which will be surrendered at check-in, stored securely, and returned to you upon departure);

- Electro-magnetic devices which could unreasonably interfere with electronic or telecommunications equipment; and

- Such other items as Whinstone may determine in its sole and absolute discretion.

III.    **CODE OF CONDUCT**

All persons accessing the Premises must comply with the following code of conduct at all times while present on the Premises:

A.    **Do Not Engage in Prohibited Behavior**.

**YOU SHALL NOT:**

- physically harm, assault, or otherwise make unsolicited physical contact with any

other person, including Whinstone's personnel, Contractors and other Visitors;

- harass or abuse (including verbally, in any language) any individual, including Whinstone's personnel, Contractors and other Visitors;

- engage in any disruptive behavior, including any lewd and lascivious conduct, canvassing, soliciting and peddling;

- engage in any activity that is in violation of the law or aids or assists any criminal activity at the Premises;

- make physical alterations or modifications to any equipment, cabling or infrastructure at the Premises;

- tamper with, misuse, abuse, or in any manner adversely affect, equipment, infrastructure, organization, inventory, security, monitoring, and/or safety systems or labels within the Premises or affixed to any equipment or packaging;

- take or allow any person in your group to take photographs, or video or audio recordings within or of the Premises at any area or at any time other than as permitted by Whinstone during the visit;

- attempt to copy, record, duplicate, or reverse-engineer any of: the Bitcoin Mining equipment in use at the Premises, including the Miners, racks, power supply and delivery infrastructure; the cooling equipment, processes, and infrastructure used in the Premises, including any liquid-immersion cooling equipment software, firmware, or other technology; or any other equipment, process, or technology employed at the Premises; or

- use or operate equipment such as tools, dollies, carts, server lifts, monitor and keyboards within the Premises without Whinstone's prior approval and the presence of Whinstone personnel.

**B.      Comply with All Directives**.

**YOU SHALL:**

- comply with instructions given by Whinstone personnel;

- remove from the Premises any debris, trash or other refuse they create;

- immediately report any defects or other dangerous conditions within the Premises or with respect to any equipment therein, or any violations of these Rules of which they become aware to Whinstone personnel; and

- otherwise cooperate with Whinstone in ensuring that the Premises and every part thereof are secure and that all Facility operations and systems remain uninterrupted.

**C.      Observe all Security Requirements**.   You shall also observe and comply with the following security and safety requirements at all times while present at the Premises:

- All doors and other access points should remain shut unless in use and should only be opened by Whinstone personnel, except in emergency situations.

- **VISITORS ARE ADVISED THAT OPERATIONS OF THE FACILITY INCLUDE LIVE WIRES, ELECTRICAL HAZARD (INCLUDING HIGH VOLTAGE) AND MOVING PARTS AND VISITORS SHOULD THEREFORE REFRAIN FROM TOUCHING ANY PART OF THE EQUIPMENT OR INFRASTRUCTURE**

**(INCLUDING, BUT NOT LIMITED TO, CABLING, BREAKERS, FANS).**

- Visitors, Contractors, and other non-Whinstone personnel shall take due care, and are solely responsible for, maintaining adherence to proper safety precautions when they are within the Premises, including but not limited to avoiding contact with open electrical wiring/ power supply boards or other potential sources of electrical shock, and avoiding any open floors/ceilings which may be kept open for maintenance or other purposes.

- Emergency exit and evacuation instructions are clearly posted throughout the Premises.  Visitors are solely responsible for reading and understanding all such instructions upon entering the Premises.  **IF THE EMERGENCY HORNS AND STROBES ACTIVATE, ALL VISITORS MUST EVACUATE THE BUILDING IMMEDIATELY AND FOLLOW INSTRUCTIONS GIVEN BY WHINSTONE PERSONNEL.**

**D.** **Removal**.  Whinstone has the right to remove or require the Client or Contractor to remove from the Premises any of its Representatives whom Whinstone deems incompetent, careless, or otherwise objectionable (including but not limited to individuals who appear to be intoxicated or otherwise deemed unsuitable), or any person whose actions the Whinstone deems to be contrary to public interests or inconsistent with the best interest of the Whinstone or other individuals on the Premises.  Whinstone Security personnel are armed licensed security professionals and are authorized to eject from the Premises any person who violates these Rules.  Persons attempting to access the Premises outside of normal Visitor Hours or without the express written invitation of Whinstone will be prohibited access to the Premises by Whinstone Security personnel, and such persons may be detained by Whinstone Security personnel until local authorities arrive on site.  Violations of these Rules, included those observed by camera, will be prosecuted to the fullest extent of the law.

## IV.    CONFIDENTIALITY

You understand and acknowledge that, by accessing the Premises, you may gain access or otherwise be exposed to valuable Confidential Information (as defined below).  You further acknowledge and agree that such Confidential Information is extremely valuable and is sufficiently secret to permit the owners thereof to derive significant economic value, actual or potential, from such Confidential Information not being generally known by others, including Whinstone's competitors, and is the subject of efforts that are reasonable to maintain its secrecy or confidentiality.

Whinstone will make every effort to limit your access to the Premises to only those areas that do not contain Confidential information of any third party, including any customers or business partners to whom Whinstone may have a duty of confidentiality; however, Whinstone cannot guarantee that you will not inadvertently gain such access during your visit to the Premises.  Further, Whinstone will make every effort not to share material, nonpublic information with you regarding your visit; however, you may still inadvertently gain access to such material, nonpublic information.  Accordingly, you agree to hold in the strictest confidence, and not use or disclose to others, any and all Confidential Information to which you may gain access to or possession of in connection with your access to the Premises, including the fact that you have accessed such Confidential Information.  Further, you shall not remove any document, equipment, or other materials from the Premises without Whinstone's prior written consent.

You hereby acknowledge and agree that, because the risk that you may inadvertently gain access to Confidential Information during your visit to the Premises, you hereby agree to provide Whinstone's legal counsel with preliminary, confidential and exclusive pre-access to any account, documentary, video or other publication pertaining to your visit to the Premises *solely to permit Whinstone's legal counsel to ascertain whether any Confidential Information is contained in such publication*.  You agree to work with Whinstone's legal counsel to eliminate, obfuscate or otherwise limit the disclosure of any Confidential Information in any such account, documentary, video or other publication pertaining to your visit to the Premises that you may produce.  Further, you acknowledge and agree that Whinstone's parent company, Riot Blockchain, Inc., is a publicly traded company subject to applicable disclosure rules under U.S. securities laws and, therefore, may make public announcement of your account, documentary, video or other publication pertaining to your visit to the Premises if it reasonably determines that such publication is reasonably likely to contain material,

nonpublic information subject to Regulation FD under the Securities Exchange Act of 1934, as amended.

For the avoidance of doubt, this confidentiality provision shall be subordinate to any non-disclosure and confidentiality agreement, or agreement containing confidentiality provisions covering the matters set forth herein, previously entered into between you and Whinstone or any affiliate of Whinstone.

As used herein, "Confidential Information" means all material, nonpublic information disclosed directly or indirectly by Whinstone or its Representatives to another person or its Representatives (the "Receiving Party"), whether written, oral, electronic, or otherwise, through any means of communication or observation. "Confidential Information" *includes*, without limitation, the following: (i) business matters, such as information about prices; costs; bids; proposals; quotes; negotiations; legal information; accounting information; profits; markets; sales; business plans; proposals; and other confidential plans; (ii) technical matters, such as the Whinstone's trade and engineering secrets; know-how; ideas; formulae; algorithms; processes; inventions; source and object code; other works of authorship; improvements; discoveries; databases; experimental results; and research; (iii) information derived from other Confidential Information; (iv) information that a reasonable person would consider to be confidential; and (v) any Confidential Information of any of Whinstone's customers, partners, and other third parties doing business at the Premises. "Confidential Information" *does not include* information that the Receiving Party can demonstrate, with reasonable documentary evidence: (i) was in the Receiving Party's possession prior to disclosure by the Whinstone; (ii) was generally known to the public, or becomes so known through the acts of others; (iii) came into the Receiving Party's possession from a third party under no confidentiality obligation to the Whinstone; or (iv) the Receiving Party developed independently of, and without reference to, any Confidential Information. A combination of pieces of Confidential Information, taken as a whole, does not fall within any of these exclusions simply because a piece of that combination loses its confidential status (*e.g.*, a confidential memorandum containing or referring to non-confidential information, such as publicly disclosed financial information, is and remains "Confidential Information" unless and until the memorandum itself ceases to be "Confidential Information").

## V.    SURVEILLANCE/CCTV

Closed-circuit television (CCTV) cameras, audio monitoring devices, infrared and other electronic surveillance devices are used to monitor all areas of the Premises.  All CCTV cameras are monitored by Whinstone Security personnel, and captured images are retained and may be used as Whinstone may determine in its sole discretion.  **BY ACCESSING THE FACILITY, YOU ARE HEREBY NOTIFIED OF THE USE OF SUCH SURVEILLANCE TECHNIQUES AND YOU CONSENT TO SUCH MONITORING AND RECORDING, INCLUDING THE STORAGE AND USE OF SURVEILLANCE RECORDINGS**.

## VI.    ASSUMPTION OF RISK

**BY ACCESSING THE FACILITY, YOU ACKNOWLEDGE AND AGREE THAT YOU VOLUNTARILY ASSUME ALL RISKS, HAZARDS AND DANGERS** incident to your access to the Facility and related activities, including the risk of serious personal injury, temporary and permanent disability, or death, including arising from exposure to communicable diseases, viruses, bacteria or illnesses or the causes thereof, and property damage or loss, whether occurring before, during, or after you have accessed the Facility, however caused and whether inside or outside of the Facility, and you hereby waive all claims and potential claims relating to such risks, hazards and dangers.

## VII.    RELEASE, WAIVER, AND COVENANT NOT TO SUE

**A.    Medical Treatment Release**.  By accessing the Facility, you authorize Whinstone to secure, and consent to receive, any medical treatment that may be given to you should Whinstone determine, in its sole discretion, that you need medical care as a result of injuries you may sustain while present on the Facility premises.  Further, you acknowledge that Whinstone does not provide professional medical services and that the Facility is located in a rural area, with limited hospital trauma center coverage.  Accordingly, you, by accessing the Facility, acknowledge that you understand that any injury you may sustain while present at the Facility may be compounded by delayed medical service due to such lack of ready access to hospital and/or any negligent or delayed assistance you may receive from Whinstone personnel.   You accept full responsibility for all costs related to such medical treatment, including any transport costs, and you release Whinstone and its

Affiliates from any type of liability for anything that may happen during such treatment or transport.

**B.** **General Liability Release and Covenant Not to Sue**.  By accessing the Facility you, for you and on behalf of your related persons hereby release (and covenant not to sue) each of the Released Parties with respect to any and all claims that you or any of Visitor's Related Persons may have (or hereafter accrue), against any of the Released Parties, that relate to any of the risks, hazards and dangers described above, including without limitation any and all claims that arise out of or relate in any way to (i) exposure to communicable diseases while at the Facility, including COVID-19; (ii) your entry into, or presence within or around, the Facility (including all risks related thereto, and including without limitation in parking areas or entry gates) or compliance with any protocols applicable to your access to the Facility; or (iii) any interaction between you and any personnel of any of the Released Parties at the Facility, in each case whether caused by any action, inaction or negligence of any Released Party or otherwise.

**VIII.**     **LIABILITY AND INDEMNIFICATION**

By accessing the Facility, you acknowledge that your failure to comply with these Rules may result in expense to Whinstone, which may include charges for time and materials required to remedy such failure, damages (including lost profit).  Further, you agree you shall indemnify and hold harmless Whinstone, its affiliates, and each of its and their respective officers, stockholders, directors, employees, and agents (collectively, the "**Whinstone Indemnified Parties**") from and against any and all liabilities, obligations, losses, damages, allegations, claims, demands, suits, actions, deficiencies, penalties, charges, taxes, levies, fines, judgments, settlements, costs, expenses, interest, attorneys' fees and disbursements, and accountants' fees and disbursements (collectively, "**Losses**") or threatened Losses due to third-party claims arising out of or relating to any of the following: (i) your negligence, fraud, or willful misconduct; (ii) damage to the Property, Whinstone's systems (including equipment), or any equipment of Whinstone's Clients, suppliers, contractors or other third parties caused by you, your Representatives, or your equipment; (iii) your breach of any confidentiality obligations hereunder; (iv) if applicable, your breach of any representations or warranties under a Client Agreement to which you are a party or acting as a Representative of a party thereto: or (iv) your indemnification obligations hereunder.  Your liability in connection with any breach of, or non-compliance with these Rules, or the applicable Client Agreement, shall, in each case, be unlimited in type and amount. Accordingly, having read and understood these Rules, you acknowledge and agree that, by accessing the Facility, you are responsible for Whinstone's expenses incurred in connection with your violation of these Rules.

**IX.**     **MISCELLANEOUS**

**A.**     **Signage**.  No sign or signs will be allowed in or upon the Facility, other than those with Whinstone's express written approval.

**B.**     **Authority**.  Each Client Representative is deemed to have the authority to act on behalf of the Client, unless the Client otherwise notifies Whinstone otherwise in advance of a Client Representative accessing the Facility.

**C.**     **Amendments**.  Visitor acknowledges that these Rules may be amended, restated or replaced at any time without notice, and that Visitor will review the then-current terms prior to each visit to the Facility.

<u>**ACCEPTABLE USE POLICY**</u>

This Acceptable Use Policy ("**AUP**") governs the access to and use of the Services (as defined in the applicable Client Agreement) provided by Whinstone.  This AUP and the accompanying Data Center Rules (the "**Rules**" and, together with this AUP, the "**Policy**") form a part of and are incorporated by reference into any Client Agreement.

This AUP applies to all persons accessing the Facility and anyone using any of the Services (each, a "**User**").  Any reference to "you" shall be interpreted to mean you and anybody you allow to use the Services.  You are responsible for the use of the Services by any person you allow to use it.

Notwithstanding anything to the contrary in any other agreement, policy, or other document, the following rules and regulations set forth in this AUP govern the acceptable use of the Services.  Any violation of this AUP will be a violation of your obligations under the Rules and will constitute a material breach of the applicable Client Agreement.    Any questions regarding this AUP and the accompanying Rules should be directed to legal@riotblockchain.com.

**NOW, THEREFORE**, by accessing the Facility and/or using the Services, you agree to be bound by this AUP and abide by the following rules:

**I.          No Illegal Use**

The Services may only be used for lawful purposes in accordance with Applicable Law.  For the avoidance of doubt, you may not, nor permit any other person (whether intentionally or otherwise) to, use the Services to send, receive, store, distribute, transmit, post, upload or download any materials or data which: violates any Applicable Law; violates any of the Company's policies, as now in place or as may in the future be amended or adopted by the Company; is defamatory, offensive, abusive, indecent, obscene, or constitutes harassment; is in breach of any third-party rights (including any third-party intellectual property rights); has any fraudulent purpose or effect; or adversely affects or may, in the Company's sole and absolute estimate, adversely affect the Company's business and/or reputation.

**II.          System and Network Security**

The Services may not be used in any manner which compromises, is intended to compromise, or which is likely, in the Company's sole and absolute estimation, to compromise the security of any person's systems or network.  For the avoidance of doubt, you must not, nor permit any other person (whether intentionally or otherwise) to, engage in any of the following: unauthorized access to or use of data, systems or networks, including any attempt to probe, scan or test the vulnerability of a system or network; unauthorized monitoring of data or traffic on any network or system without the express authorization of the owner of the system or network; or unauthorized interference with any user, host, system or network without the express authorization of the owner of the system or network.

Further, you must not send, receive, store, distribute, transmit, post, upload or download any materials that are designed to violate the security of the Company's network and other systems, or that of any other person.  Examples of such prohibited material may include (but are not limited to): programs containing viruses or Trojan horses; tools designed to compromise the security of other sites; programs or services designed to send or facilitate the sending of unsolicited advertisements; or programs or services designed to encourage or facilitate a breach of this AUP or any acceptable use policy of another Internet services provider.

In addition, you must not, nor permit any other person (whether intentionally or otherwise) to, connect to the Services any insecure device or service able to be exploited by others to carry out actions which would constitute a breach of this AUP if carried out by you, including without limitation, the following: the transmission of unsolicited bulk email or email containing infected attachments; attempts to disrupt websites and/or connectivity; or any other attempts to compromise the security of other users of the Company's network and systems, or of any other

1

person's system.

You are responsible for all data and/or traffic originating from the machines and/or networks that you have connected to the Services. You must immediately disconnect (and subsequently secure prior to reconnection) machines generating data and/or traffic which contravenes this AUP upon your becoming aware of the same and/or once notified of such activity by the Company.

III.        Advertising and Other Impermissible Communications

The Services may not be used to send unsolicited electronic mail (email) or any other form of electronic communication (including commercial advertising communications) or any abusive or offensive communication whatsoever. In particular, unsolicited advertising mailings (whether commercial or informational) are strictly prohibited - only send advertising material to recipients who have specifically requested it. Accordingly, you must not, nor permit any other person (whether intentionally or otherwise) to, use our Services to send such communications to any person who has not consented to the receipt thereof. Further, you must not, nor permit any other person (whether intentionally or otherwise) to, use any device which is connected or permitted to connect to our Services to send such unsolicited communications. Finally, you must not suggest or imply that any email you send is from, or otherwise authorized or endorsed by, the Company or any other person other than you, except with such person's express prior consent.

IV.        Impermissible Internet Usage

The Services must not be used to connect to any illegal, illicit, or compromised Internet websites or other online services. Accordingly, you must not, nor permit any other person (whether intentionally or otherwise) to, use the Services to connect to any such websites or services. Further, you may not, nor permit any other person (whether intentionally or otherwise) to, use any device which is connected or permitted to connect to our Services to connect to such websites. You are solely responsible for your use of the Internet and any web pages owned and/or operated by you or anyone you permit to use the Services and that are connected to the Services. In addition, you may not, nor permit any other person (whether intentionally or otherwise) to, use the Services or any device connected or permitted to connect to the Service, to use the Internet in any way that would violate any part of this AUP or to disrupt or attempt to disrupt any other person's use of or experience using the Internet.

V.        Confidentiality

You acknowledge and agree that, as a condition of receiving the Services and/or accessing the Facility, you shall not to use or disclose any Confidential Information, whether or not related to the Services and/or any licensed proprietary technology, processes, equipment, or other inventions imparted to you in connection with the Services or as a consequence of any visit to the Facility, except as required by the applicable Colocation Services Agreement or by applicable law.

VI.        Consequences for Policy Violations

You must at all times be aware of who is using or has access to your devices. We will block any electronic communication that we reasonably consider to be in violation of this AUP. Further, if you have breached this AUP, or we reasonably suspect that you may have breached this AUP, we will notify you (provided that this notification does not prejudice any investigation) and we may also take any of the following actions:

- immediately suspend your access to the Services until such time as we are satisfied the impermissible activity has ceased and the breach of this AUP has been cured;

- immediately suspend the provision of the Services and, if we determine your breach of this AUP is material, terminate your Client Agreement;

- investigate the alleged breach of the AUP, which may include gathering information from you and/or

2

the complaining party (if any) and the examination of any other data or material on our network or our servers;

- notify and/or pass on the details of the breach of the AUP to any relevant government, statutory, self-regulatory or law enforcement agency; or

- remove (either temporarily or permanently), copy, store, monitor or otherwise deal with data and/or other material on our network and/or our servers.

Further, by accessing the Services, you authorize the Company to use your personal data and other account information in connection with any investigation carried out by Whinstone in accordance with this AUP, including by disclosing it to any third-party authority that Whinstone considers has a legitimate interest in any such investigation or its outcome. For the avoidance of doubt, the Company has the absolute right to terminate the Services with immediate effect and without further obligation or liability to you as required by any law enforcement organization or by the courts or any relevant regulatory authority.

## VII.                Liability

You agree to indemnify and hold the Company, its affiliates, officers, employees, and agents harmless against all claims, actions, demands, costs (including legal costs and disbursements), expenses, losses and damages arising out of or incurred as a consequence of your breach of this AUP or breach of this AUP by anyone permitted to use the Services by you. In many instances a breach of this AUP would constitute a breach of law and may in some cases carry criminal liability.

## VIII.    Amendments

You acknowledge and agree that the Company may amend this AUP from time to time in its discretion, including to reflect any changes in the law or community standards or whenever the Company, in its sole and absolute discretion, deems it appropriate.

**WHINSTONE US, INC.**
**VISITOR RELEASE AND WAIVER OF LIABILITY AGREEMENT**

I, the undersigned visitor ("Visitor"), in consideration of the grant of limited access to the private data center facility owned and operated by Whinstone US, Inc., a Delaware corporation, ("Whinstone") located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567 (the "Premises") during the Access Date(s) specified above (the "Access Date(s)") granted hereby, which access I acknowledge and agree would not be granted but for my acceptance and agreement to be bound by the terms of this Visitor Release and Waiver of Liability agreement (this "Agreement"), and for other good and valuable consideration, the receipt and sufficiency of which I hereby acknowledge, agree as follows:

1.      **Limited Access**.  I understand and agree that the Whinstone Premises is a private facility, located on private property in unincorporated Texas accessible solely by private road, and that my limited access to the Premises is: (a) conditioned upon my acceptance and adherence to the terms of this Agreement and exclusive to me, the person signing this Agreement; (b) limited solely to the purposes agreed by an authorized Whinstone representative; (c) limited to the Access Date(s) and to those areas and times as specified by authorized Whinstone representatives; (d) voluntarily granted by Whinstone and may be immediately revoked at Whinstone's sole and exclusive discretion, with or without notice, for any reason or for no reason; and (e) not granted in exchange for any consideration paid by me or on my behalf other than my agreement to be bound by the terms hereof, and that I have no enforceable right to access the Premises, whether on the Access Date(s) or otherwise.

2.      **Use of Premises.**  I understand and agree that my access to the Premises is exclusively for the purposes agreed by an authorized Whinstone representative, and that I will be accompanied by an authorized representative of Whinstone throughout my visit, whose instructions I hereby agree to follow. Further, I hereby acknowledge and agree that, at all times while I am present on the Premises (including during ingress to and egress from the Premises), I will: (1) adhere to the Whinstone Data Center Rules and Acceptable Use Policy, as currently in effect at the Premises, (the "Facility Rules") which I hereby acknowledge and agree that I have read and understood, and which are incorporated by this reference herein; (2) conduct myself with all due caution as a reasonable person would undertake when present at an active work site with the inherent risks and hazards discussed in Section 4 hereof below; (3) immediately follow all instructions given to me by a representative of Whinstone; and (4) be responsible for my use of the Premises and of any property thereon, and liable for the replacement cost of any such property which is damaged, destroyed or lost by reason of my negligence or misconduct.

3.      **Responsibility for Personal Property.**  I acknowledge and agree that I am fully and solely responsible for any of my property and personal belongings that I bring onto the Premises and that Whinstone will not be responsible for or provide any security for my property and personal belongings, other than to store any of personal property which I am required to surrender to Whinstone Security as a condition of my access to the Premises; provided, however, that Whinstone's liability for any such surrendered property shall not exceed $500.00.

4.      **Assumption of Risk.**  I understand and acknowledge that I am voluntarily and freely accessing the Premises, which may be dangerous and may involve the risk that I will sustain serious injury, temporary or permanent disability, death, and/or property damage.  I understand and acknowledge that the Premises is an active construction site, with all of the inherent risks associated with such a site, including, but not limited to, exposure to operating heavy machinery, construction

equipment, and other dangerous instrumentalities.  I further understand and acknowledge the presence open and obvious hazards at the Premises, as well as other hazards which may not be open or obvious. Further, I hereby acknowledge and agree that it would not be reasonable or even possible for Whinstone to eliminate all such potential hazards and, therefore, that I will use reasonable care, as a prudent person having been forewarned of the presence or potential presence of such hazards, to avoid, whether such hazards are clearly marked as hazardous or otherwise.  **ACCORDINGLY, I HEREBY VOLUNTARILY AND FREELY ASSUME ALL RISKS AND DANGERS THAT MAY OCCUR PURSUANT TO MY USE OF AND PARTICIPATION OF ACTIVITIES ON THE PREMISES, INCLUDING THE RISK OF INJURY, DEATH, OR PROPERTY DAMAGE.**

5.      **RELEASE FROM LIABILITY.   I HEREBY AGREE, FOR MYSELF, MY HEIRS AND MY PERSONAL REPRESENTATIVES, TO FULLY AND FOREVER DISCHARGE AND RELEASE WHINSTONE AND ITS AFFILIATES, INCLUDING ITS PARENT COMPANY, RIOT BLOCKCHAIN, INC., A NEVADA CORPORATION, AND THEIR RESPECTIVE PARTNERS, AGENTS, OPERATORS, MANAGERS, EMPLOYEES, AND REPRESENTATIVES ("RELEASED PARTIES") FROM ANY AND ALL CLAIMS I MAY HAVE OR HEREINAFTER HAVE FOR ANY INJURY, TEMPORARY OR PERMANENT DISABILITY, DEATH, DAMAGES, LIABILITIES, EXPENSES AND/OR CAUSES OF ACTION, NOW KNOWN OR HEREINAFTER KNOWN IN ANY JURISDICTION IN THE WORLD, ATTRIBUTABLE OR RELATING IN ANY MANNER TO MY ENTRY UPON AND USE OF THE PREMISES AND PARTICIPATION IN THE ACTIVITY, WHETHER CAUSED BY THE NEGLIGENCE OF THE COMPANY OR ANY OF THE RELEASED PARTIES OR BY ANY OTHER REASON. I ACKNOWLEDGE AND AGREE THAT THIS RELEASE AND WAIVER OF LIABILITY FOR A POTENTIALLY DANGEROUS ACTIVITY IS INTENDED TO BE, AND IS, A COMPLETE RELEASE, AS MUCH AS ALLOWED BY LAW, OF ANY RESPONSIBILITY OF THE RELEASED PARTIES FOR ALL PERSONAL INJURIES, TEMPORARY OR PERMANENT DISABILITY, DEATH, AND/OR PROPERTY DAMAGE SUSTAINED BY ME WHILE ON OR USING THE PREMISES OR PARTICIPATING IN THE ACTIVITY.**

6.      **MEDICAL TREATMENT RELEASE**. I hereby authorize Whinstone to secure, and I consent to, any medical treatment that may be given to me should Whinstone determine, in its sole discretion, that I need medical care, while I am present on the Premises.  I accept full responsibility for all costs related to my medical treatment, including any transport costs, and I release all parties involved from any type of liability for anything that may happen during my treatment or transport.   I further understand and acknowledge that Whinstone does not provide professional medical services and is located a substantial distance from any hospital or other trauma center.   Accordingly, I further understand and acknowledge that any injury I may sustain while on the Premises may be compounded by emergency medical triage efforts undertaken by persons who may not be trained medical professionals and, therefore, **I HEREBY VOLUNTARILY AND FREELY WAIVE ANY AND ALL CLAIMS I MAY HAVE AGAINST WHINSTONE OR ITS PERSONNEL FOR ANY NEGLIGENT AND/OR DELAYED MEDICAL CARE I MAY RECEIVE WHILE PRESENT ON THE PREMISES.  FURTHER, I HEREBY VOLUNTARILY AND FREELY ASSUME ALL RISKS AND DANGERS THAT MAY OCCUR PURSUANT TO MY USE OF AND PARTICIPATION OF ACTIVITIES ON THE PREMISES, INCLUDING THE RISK OF INJURY, DEATH, OR PROPERTY DAMAGE.**

7.      **Covenant Not to Sue.** I agree, for myself and all my heirs, not to sue the Released Parties or initiate or assist in the prosecution of any claim for damages or cause of action against the Released Parties which I or my heirs may have as a result of any personal injury, death or property damage I may sustain while on or using the Premises.

**8.     INDEMNIFICATION.  I HEREBY AGREE TO DEFEND, INDEMNIFY AND HOLD WHINTONE AND THE RELEASED PARTIES HARMLESS FROM AND AGAINST ANY THIRD-PARTY LOSSES, DAMAGES, ACTIONS, SUITS, CLAIMS, JUDGMENTS, SETTLEMENTS, AWARDS, INTEREST, PENALTIES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND COSTS OF ANY KIND FOR ANY PERSONAL INJURY, LOSS OF LIFE OR DAMAGE TO PROPERTY SUSTAINED BY REASON OF OR ARISING OUT OF MY USE OF THE PREMISES OR PARTICIPATION IN ANY ACTIVITIES ON THE PREMISES.**

**9.     No Representations by Whinstone.**  I acknowledge that Whinstone makes no representation as to the condition of the Premises or the safety of any structures or equipment that may be used at the Premises. I accept and shall use the Premises in its "AS IS" condition. I acknowledge and agree that I am not relying upon any representation or statement by the Whinstone or the Whinstone's employees, agents, or representatives regarding this agreement or the Premises, except to the extent such representations are expressly set forth in this Agreement.

**10.     Miscellaneous.** This Agreement is governed by and interpreted in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law of such state.  Any provision of this Agreement providing for performance by either party after termination of this agreement shall survive such termination and shall continue to be effective and enforceable.  If any provision or portion of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions or portions shall remain in full force and effect.  I agree that any action arising out of this Release and Waiver of Liability agreement must be brought exclusively in any state or federal court with jurisdiction over Travis County, Texas.  **I HEREBY FURTHER ACKNOWLEDGE AND AGREE THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES OF LAW AND, THEREFORE, AS A MATERIAL PART OF THE CONSIDERATION TO INDUCE WHINSTONE TO GRANT ME ACCESS TO THE PREMISES, WITHOUT WHICH WHINSTONE WOULD NOT GRANT ME SUCH ACCESS, I HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT I MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT.**  This Agreement is the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreement or communications between the parties, whether written, oral, electronic, or otherwise.  No change, modification, amendment, or addition of or to this Agreement shall be valid unless in writing and signed by authorized representatives of the parties.  No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving party.  The failure of any party to enforce any provision of this agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter.  This Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the parties.

*[SIGNATURE PAGE FOLLOWS – REMAINDER OF PAGE INTENTIONALLY BLANK]*

*[SIGNATURE PAGE TO WHINSTONE VISITOR RELEASE AND WAIVER OF LIABILITY AGREEMENT]*

**IN WITNESS WHEREOF,** I, the undersigned visitor, hereby acknowledge, agree, and represent to Whinstone that: (i) I have fully read and understood each of the above provisions of this Agreement, as well as the Data Center Rules as currently in effect as of the Access Date(s), a copy of which are attached as **Exhibit "A"** to this Agreement; (ii) prior to signing this Agreement, I had sufficient opportunity to consult with an attorney of my choosing to review this Agreement; (iii) I am at least 18 years of age and fully competent; and (iv) I now execute this Agreement voluntarily, freely, and for adequate consideration, intending by my signature below to be fully bound by the terms hereof.

**VISITOR**

_____     3/21/2023
(Signature)                          (Dated)

Alexandra Larkin
(Printed Name)

*Version 2023*

<u>**Exhibit "A"**</u>

**PLEASE CAREFULLY REVIEW THESE DATA CENTER RULES AND ACCEPTABLE USE POLICY (THIS "POLICY").  THIS POLICY AFFECTS YOUR ABILITY TO ACCESS THE FACILITY AND LIMITS OUR LIABILITY WITH RESPECT TO INJURIES YOU MAY SUSTAIN WHILE PRESENT AT THE FACILITY.  BY ACCESSING THE FACILITY, YOU AGREE TO BE BOUND AND ABIDE BY THIS POLICY, AND YOU ACCEPT THE LIMITATIONS OF LIABILITY AND OTHER MATTERS SET FORTH HEREIN.  THIS POLICY IS INCORORATED BY REFERENCE INTO, AND FORMS A PART OF, EACH OF THE CLIENT AGREEMENTS BETWEEN WHINSTONE AND ITS CLIENTS.**

**WHINSTONE US, INC.**

**DATA CENTER RULES AND ACCEPTABLE USE POLICY**

Whinstone US, Inc., a Delaware corporation, and its Affiliates, (collectively, "**Whinstone**," the "**Company**," "**we**," "**us**," etc.) limits access to its Data Center Facility, located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567 (the "**Facility**") exclusively to its employees and those of its Affiliates, representatives of Whinstone's Clients, permitted Visitors, and permitted Contractors.  All persons accessing the Facility are, at all times while present at the Facility, bound by and subject to the Data Center Rules attached hereto as <u>**Exhibit A**</u> (the "**Rules**") and the Acceptable Use Policy attached hereto as <u>**Exhibit B**</u> (the "**AUP**"), as the same may be amended from time to time (collectively, the "**Policy**").  All capitalized terms not otherwise defined herein shall have the meanings given to them on <u>**Schedule 1**</u> hereto.

The Policy has been established to provide for the safety of all individuals within the Facility, the uninterrupted operation of the Facility, the protection of Clients' privacy and Confidential Information, and the security of the Facility, including of all Client Mining Equipment, Facility Equipment, and third-party equipment deployed at the Facility.  Accordingly, as all access to the Facility is expressly conditioned on full compliance with the Policy, and any violation of the Policy may result in your immediate removal from the Facility, a breach of the Client Agreement to which your access relates, and personal liability to you.  Whinstone reserves all rights relating to the enforcement of the Policy.

**NOW, THEREFORE,** in exchange for access to the Facility, conditioned on my compliance with the Policy, I, the undersigned releasing party (the "**Releasing Party**"), hereby agree as follows:

**1.** **Policy Acknowledgement**.  I hereby acknowledge and agree that I have been provided with the Policy, including the Rules and the AUP, and that I have read and understood the Policy in all respects, including the provisions thereof relating to the limitation of the Company's liability in the event I sustain injury or my property is damaged or lost while entering, present upon, or exiting the Facility premises.

**2.** **Compliance with the Policy**.  At all times while I am present at the Facility, I will comply with the Policy in all respects.  I acknowledge and agree that my access to the Facility is conditioned upon my compliance with the Policy, and I understand that my access thereto may be revoked as a result of my failure, or the failure of my persons accompanying me while I am present on the Facility premises, to comply with the Policy.  Further, I hereby consent to my removal from the Facility by Whinstone personnel should I fail to comply with the Policy.

**3.** **Assumption of Risk**.  I acknowledge and understand that the Facility is an operating industrial facility and active construction site, with live wires, high voltage electrical transfer equipment, moving parts and machinery, and other hazards, both obvious and non-obvious.  I acknowledge and agree that my access to the Facility is voluntary and that I have been made aware that I may sustain personal injury and/or damage or loss to my personal property in connection with my access to the Facility.  THEREFORE, I  VOLUNTARILY AND FREELY ASSUME ALL RISKS AND DANGERS THAT MAY OCCUR PURSUANT TO MY ACCESS TO THE FACILITY AND ITS PREMISES, AND PARTICIPATION IN ACTIVITIES THEREON, INCLUDING THE RISK OF INJURY, SERIOUS ILLNESS, TEMPORARY OR PERMANENT DISABILITY, DEATH, OR PROPERTY DAMAGE, EVEN IF CAUSED BY NEGLIGENCE OF THE COMPANY.

**4.** **Release of Liability**.  I HEREBY AGREE, ON BEHALF OF MYSELF, MY HEIRS AND MY PERSONAL REPRESENTATIVES, TO FULLY AND FOREVER DISCHARGE AND RELEASE COMPANY AND ITS AFFILIATES, AND THEIR  RESPECTIVE  PARTNERS,  AGENTS,  OPERATORS,  MANAGERS,  EMPLOYEES,  AFFILIATES  AND

REPRESENTATIVES ("**RELEASED PARTIES**") FROM ANY AND ALL CLAIMS I MAY HAVE OR HEREINAFTER HAVE FOR ANY INJURY, TEMPORARY OR PERMANENT DISABILITY, DEATH, DAMAGES, LIABILITIES, EXPENSES AND/OR CAUSES OF ACTION, NOW KNOWN OR HEREINAFTER KNOWN IN ANY JURISDICTION IN THE WORLD, ATTRIBUTABLE OR RELATING IN ANY MANNER TO MY ACCESS TO THE FACILITY AND ITS PREMISES, MY USE THEREOF, AND MY PARTICIPATION IN ANY ACTIVITY THEREON, WHETHER CAUSED BY THE NEGLIGENCE OF THE COMPANY OR ANY OF THE RELEASED PARTIES OR BY ANY OTHER REASON. I ACKNOWLEDGE AND AGREE THAT THIS RELEASE AND WAIVER OF LIABILITY FOR A POTENTIALLY DANGEROUS ACTIVITY IS INTENDED TO BE, AND IS, A COMPLETE RELEASE, AS MUCH AS ALLOWED BY LAW, OF ANY RESPONSIBILITY OF THE RELEASED PARTIES FOR ALL PERSONAL INJURIES, TEMPORARY OR PERMANENT DISABILITY, DEATH, AND/OR PROPERTY DAMAGE SUSTAINED BY ME WHILE ON OR USING THE FACILITY OR ITS PREMISES, OR FROM PARTICIPATING IN ANY ACTIVITY THEREON.

**5.** **Covenant Not to Sue**.  I agree, for myself and all my heirs, not to sue the Released Parties or initiate or assist in the prosecution of any claim for damages or cause of action against the Released Parties which I or my heirs may have as a result of any personal injury, death or property damage I may sustain while on or using the Premises or while participating in the Activity.

**6.** **Indemnification.**  I HEREBY AGREE TO DEFEND, INDEMNIFY AND HOLD WHINTONE AND THE RELEASED PARTIES HARMLESS FROM AND AGAINST ANY THIRD-PARTY LOSSES, DAMAGES, ACTIONS, SUITS, CLAIMS, JUDGMENTS, SETTLEMENTS, AWARDS, INTEREST, PENALTIES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND COSTS OF ANY KIND FOR ANY PERSONAL INJURY, LOSS OF LIFE OR DAMAGE TO PROPERTY SUSTAINED BY REASON OF OR ARISING OUT OF MY USE OF THE FACILITY OR PARTICIPATION IN ANY ACTIVITIES ON THE FACILITY.

**7.** **Medical Treatment Release**. I hereby authorize Whinstone to secure, and I consent to, any medical treatment that may be given to me should Whinstone determine, in its sole discretion, that I need medical care, while I am present on the Facility.  I accept full responsibility for all costs related to my medical treatment, including any transport costs, and I release all parties involved from any type of liability for anything that may happen during my treatment or transport.

**8.** **Responsibility for Personal Property.**  I acknowledge and agree that I am fully and solely responsible for any of my property and personal belongings that I bring onto the Facility and that Whinstone will not be responsible for or provide any security for my property and personal belongings.

**9.** **No Representations by Whinstone.**  I acknowledge that Whinstone makes no representation as to the condition of the Facility or the safety of any structures or equipment that may be used at the Facility. I accept and shall use the Facility in its "AS IS" condition. I acknowledge and agree that I am not relying upon any representation or statement by the Whinstone or the Whinstone's employees, agents, or representatives regarding this agreement or the Facility, except to the extent such representations are expressly set forth in this Agreement.

**10.** **Applicable Laws, Choice of Forum, and Jury Trial Waiver.** This Agreement is governed by and interpreted in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law of such state.  Any provision of this Agreement providing for performance by either party after termination of this agreement shall survive such termination and shall continue to be effective and enforceable. If any provision or portion of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions or portions shall remain in full force and effect.  I agree that any action arising out of this Release and Waiver of Liability agreement must be brought exclusively in any state or federal court with jurisdiction over Travis County, Texas.  I HEREBY FURTHER ACKNOWLEDGE AND AGREE THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES OF LAW AND, THEREFORE, AS A MATERIAL PART OF THE CONSIDERATION TO INDUCE WHINSTONE TO GRANT ME ACCESS TO THE FACILITY, WITHOUT WHICH WHINSTONE WOULD NOT GRANT ME SUCH ACCESS, I HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT I MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT.

**11.** **Miscellaneous.** This Agreement is the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreement or communications between the parties, whether

written, oral, electronic, or otherwise.  No change, modification, amendment, or addition of or to this Agreement shall be valid unless in writing and signed by authorized representatives of the parties.  No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving party.  The failure of any party to enforce any provision of this agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter.  This Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the parties.

**IN WITNESS WHEREOF**, I, the undersigned Releasing Party, for myself and for my Affiliates, hereby acknowledge that I have received, read, and understood the Policy, including the provisions thereof relating to the limitation of the Company's liability in the event I sustain personal injury, including serious injury, illness, disability, or death, or my property is damaged or lost, in connection with my access to the Facility, and I hereby agree to abide and be bound by the Policy, as the same may be amended from time to time by the Company.

**RELEASING PARTY**

| | |
|---|---|
| _(Signature of Releasing Party)_ | 03/21/2023 _(Dated)_ |

Alexandra Larkin

(Printed Name of Releasing Party)

*Version 2023*

## Schedule 1

### DEFINED TERMS

As used in the Policy, the following terms shall have the meanings ascribed to them below, unless otherwise defined herein or therein:

"**Affiliate**" means, when referring to an entity, the entity's parent organization, subsidiary organization or sibling organization sharing substantially identical ownership and control with the entity, and, when referring to an individual, means members of that individual's close family.

"**Applicable Law**" means, as in effect from time to time, any law, rule, regulation, declaration, decree, directive, statute or other enactment, order, mandate or resolution, interpretation, writ, judgment, injunction, license, or permit, issued or enacted by any Governmental Authority, which is applicable to a Party under this Agreement, including securities laws, tax laws, tariff and trade laws, and data laws.

"**Bitcoin Mining**" means the operation of computational servers utilizing the 256-bit hashing algorithm protocol (or the equivalent thereof, as may be adopted by the Bitcoin Blockchain) to conduct transaction verification services on the Bitcoin Blockchain to obtain Bitcoin rewards in a process known as "solving a block."

"**Building Unit**" means each separate building within the Facility.

"**Business Day**" means a day which is not a Saturday, Sunday or a public holiday in Texas.

"**Client**" means the counterparty to a Client Agreement with Whinstone.

"**Client Agreement**" means any Master Colocation Services Agreement or other agreement between Whinstone and a Client pursuant to which Whinstone is providing colocation services to the Client at the Facility.

"**Client Mining Equipment**" means the Client's Miners specified on Schedule 2 to this Agreement, as well as any other hardware equipment (including required PDUs) that is provided by Client and/or installed by Whinstone at the Client's request in the Licensed Area to support operation of the Client's Miners, including all software and firmware on such equipment other than any software and firmware owned or licensed by Whinstone.

"**Confidential Information**" means all material, nonpublic information disclosed directly or indirectly by Whinstone or its Representatives to another person or its Representatives (the "Receiving Party"), whether written, oral, electronic, or otherwise, through any means of communication or observation. "**Confidential Information**" *includes*, without limitation, the following: (i) business matters, such as information about prices; costs; bids; proposals; quotes; negotiations; legal information; accounting information; profits; markets; sales; business plans; proposals; and other confidential plans; (ii) technical matters, such as the Whinstone's trade and engineering secrets; know-how; ideas; formulae; algorithms; processes; inventions; source and object code; other works of authorship; improvements; discoveries; databases; experimental results; and research; (iii) information derived from other Confidential Information; (iv) information that a reasonable person would consider to be confidential; and (v) any Confidential Information of any of Whinstone's customers, partners, and other third parties doing business at the Premises. "**Confidential Information**" *does not include* information that the Receiving Party can demonstrate, with reasonable documentary evidence: (i) was in the Receiving Party's possession prior to disclosure by the Whinstone; (ii) was generally known to the public, or becomes so known through the acts of others; (iii) came into the Receiving Party's possession from a third party under no confidentiality obligation to the Whinstone; or (iv) the Receiving Party developed independently of, and without reference to, any Confidential Information. A combination of pieces of Confidential Information, taken as a whole, does not fall within any of these exclusions simply because a piece of that combination loses its confidential status (e.g., a confidential memorandum containing or referring to non-confidential information, such as publicly disclosed financial information, is and remains "**Confidential Information**" unless and until the memorandum itself ceases to be "**Confidential Information**").

"**Contractor**" means any person contracted by Whinstone for any kind of service at the Property.

"**Facility**" means the grounds, structures, and infrastructure comprising the data center and colocation/managed hosting services facility operated by Whinstone located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567.

"**Miner**" means an individual Bitcoin Mining computational server (which may operate an application-specific integrated circuit (ASIC) graphics processing unit (GPU) or other technology, as may be applicable).

"**Representative**" means, a person's Affiliates, directors, officers, employees, partners, agents, consultants or contractors, as well as any persons with whom such party shares Confidential Information with respect to the Discussions or which such party involves in the Discussions.

"**Visitor**" means any individual on Property who is not a Whinstone

"**Visitor Access Hours**" means 08:30 A.M. – 5:00 P.M. Central Time (08:00-17:00 UTC-6) Representative, which includes all Clients and Contractors, and the undersigned.

*Version 2023*

<u>DATA CENTER RULES</u>

Whinstone US, Inc. ("<u>Whinstone</u>") has adopted these Data Center Rules (these "<u>Rules</u>") for the safety of all persons present at the Premises.  Accordingly, by accessing its private data center hosting facility located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567 (the "<u>Premises</u>").  By accessing the Premises, you agree to be bound by these Rules, which are set forth as follows:

**I.      ACCESS AND REGISTRATION**

**A.      Access Restricted**.  The Facility is a private industrial property and an operating construction site that is not open to the public and is generally not designed to accommodate Visitors; therefore, Whinstone strictly controls access to the Premises and has the absolute right to remove anyone from the Premises property at any time, for any reason or for no reason.  Visitors are only permitted access to the Premises during Visitor Access Hours, which are 8:30 A.M – 5:00 PM, local time.  Further, access to the Premises is limited to individuals who: (i) are at least 18 years of age and of legal majority; (ii) do not require adult supervision; (iii) have registered with Whinstone at least 24 hours in advance of accessing the Premises; and (iv) have been granted permission by Whinstone to access the Premises, which permission may be revoked at any time at Whinstone's sole and absolute discretion.

**B.      Security Check-In and Screening**.  All persons shall enter and exit the Premises through the main security gate, where they will be checked in and out by Whinstone Security personnel.  All persons entering the Premises must produce a valid form of government-issued identification (driver's license or passport) when checking-in.  All personal items, such as bags, laptops, purses, backpacks, weapons of any kind, and cellular devices, must be checked in at the main security desk, and are subject to search.  **VISITORS ARE NOT PERMITTED TO BRING FIREARMS OR OTHER WEAPONS ONTO THE PREMISES.**

Upon entering the Premises, all persons shall be subjected to a security check in process, which may include the use of physical screening devices (for example: metal detectors, infrared scans or other similar non-invasive tools) to help ensure the security of the Premises, its personnel, and the assets contained therein.  Further, by entering the Premises, you consent to physical security screening, including pat downs by security staff and the physical searching and/or scanning of all containers, boxes, bags, laptops, purses, backpacks, or equipment carried into or out of the Premises.  Individuals who refuse such screening will not be permitted access to the Premises.  Visitors are prohibited from entering the Premises with any items that are not required for the approved purpose of the access.

**YOU HEREBY ACKNOWLEDGE AND AGREE THAT: (I) THIS SECURITY SCREENING IS A CONDITION PRECEDENT TO ANY ACCESS TO THE FACILITY; (II) YOU HAVE EXPRESSLY CONSENTED TO SUCH SECURITY SCREENING; (III) YOU WILL BE DENIED ENTRY TO THE PREMISES IF YOU FAIL TO SUBMIT TO AND SUCCESSFULLY PASS SUCH SECURITY SCREENING; AND (IV) YOU HEREBY CONSENT TO YOUR IMMEDIATE REMOVAL FROM THE PREMISES IF YOU FAIL TO SUBMIT TO AND SUCCESSFULLY PASS SUCH SECURITY SCREENING.**

**C.      Identification Badges and Escorts**.  The Facility is an operating industrial facility and construction site, with various obvious and non-obvious hazards.  As such, portions of the Premises are restricted, and no Visitor shall enter or attempt to enter such restricted areas without Whinstone's express consent and only while accompanied by Whinstone personnel.  Further, Whinstone may require you to exit the Premises on little or no notice in response to exigencies, and we must be able to clearly identify you at all times.  Therefore, all non-Whinstone personnel accessing the Premises shall be issued a visitor's identification badge to be worn on the chest, which must be prominently displayed and clearly visible at all times while on the Premises property.  Further, All persons other than Whinstone personnel are required to be accompanied by a Whinstone employee and remain within designated areas while present at the Premises.

**D.      Proper Attire**.  At all times while on the Premises, Visitors must wear appropriate footwear (for example: no open-toe shoes, sandals or flip-flops are permitted) and attire, and must properly use all personal protective equipment ("**PPE**") provided or otherwise approved by Whinstone, which may include but is not limited to a hard hat, protective goggles, ear plugs/protectors, shoe covers and facemasks.

E.     **Access Accommodations**.  All Visitors represent that they are required to be familiar with and adhere to all relevant written and posted Occupational Safety and Health Administration ("**OSHA**") standards, including but not limited to those associated with work in a computer room or hot environment.  Further, persons with severe photosensitivity, who require the use of service animals, or who experience sever claustrophobia should be aware that operation of our Facility and the active construction occurring on-site produces a significant volume of noise and heat, contains a number of tight access routes, and employs a large number of blinking lights.  Because the Premises are located in a rural area with wild animals, heavy machinery in operation, high voltage power transmission equipment, abundant noise and scent stimuli, and other various dangers to animals who are not used to the site, no pets or other animals are permitted at the Premises without Whinstone's express permission, which shall be granted only as required by law and subject to the conditions set forth herein.

Persons who believe they may require accommodation in connection with these factors must contact Whinstone to arrange reasonable accommodations no later than 48 hours in advance of arrival at the Premises. Whinstone will make reasonable accommodations as required by law, including with respect to permitted service animal access; however, such exceptions shall be granted only if proper documentation is presented no later than 48 hours in advance of arrival at the Premises.

II.     <u>PROHIBITED ITEMS</u>

Except by Whinstone's prior written approval, all persons accessing the Premises are prohibited from transporting, carrying, or otherwise possessing the following items while on the Premises:

- Firearms, explosives or weapons of any kind;

- Hazardous, combustible, or radioactive materials;

- Food, drink, and other liquids, including alcohol, controlled substances and other intoxicating or illegal substances;

- Tobacco products and electronic cigarettes (smoking is permitted only in designated areas outside the buildings);

- Skateboards, hoverboards, scooters, skates or other similar vehicles;

- USB storage devices, External hard drives, and other portable digital storage devices;

- Two-way radios, audio-visual recording devices, devices utilizing ultra-wideband communication technology or Bluetooth technology (e.g., cellphones, which will be surrendered at check-in, stored securely, and returned to you upon departure);

- Electro-magnetic devices which could unreasonably interfere with electronic or telecommunications equipment; and

- Such other items as Whinstone may determine in its sole and absolute discretion.

III.     <u>CODE OF CONDUCT</u>

All persons accessing the Premises must comply with the following code of conduct at all times while present on the Premises:

A.     **Do Not Engage in Prohibited Behavior**.

**YOU SHALL NOT:**

- physically harm, assault, or otherwise make unsolicited physical contact with any

other person, including Whinstone's personnel, Contractors and other Visitors;

- harass or abuse (including verbally, in any language) any individual, including Whinstone's personnel, Contractors and other Visitors;

- engage in any disruptive behavior, including any lewd and lascivious conduct, canvassing, soliciting and peddling;

- engage in any activity that is in violation of the law or aids or assists any criminal activity at the Premises;

- make physical alterations or modifications to any equipment, cabling or infrastructure at the Premises;

- tamper with, misuse, abuse, or in any manner adversely affect, equipment, infrastructure, organization, inventory, security, monitoring, and/or safety systems or labels within the Premises or affixed to any equipment or packaging;

- take or allow any person in your group to take photographs, or video or audio recordings within or of the Premises at any area or at any time other than as permitted by Whinstone during the visit;

- attempt to copy, record, duplicate, or reverse-engineer any of: the Bitcoin Mining equipment in use at the Premises, including the Miners, racks, power supply and delivery infrastructure; the cooling equipment, processes, and infrastructure used in the Premises, including any liquid-immersion cooling equipment software, firmware, or other technology; or any other equipment, process, or technology employed at the Premises; or

- use or operate equipment such as tools, dollies, carts, server lifts, monitor and keyboards within the Premises without Whinstone's prior approval and the presence of Whinstone personnel.

**B.      Comply with All Directives**.

**YOU SHALL:**

- comply with instructions given by Whinstone personnel;

- remove from the Premises any debris, trash or other refuse they create;

- immediately report any defects or other dangerous conditions within the Premises or with respect to any equipment therein, or any violations of these Rules of which they become aware to Whinstone personnel; and

- otherwise cooperate with Whinstone in ensuring that the Premises and every part thereof are secure and that all Facility operations and systems remain uninterrupted.

**C.      Observe all Security Requirements**.   You shall also observe and comply with the following security and safety requirements at all times while present at the Premises:

- All doors and other access points should remain shut unless in use and should only be opened by Whinstone personnel, except in emergency situations.

- **VISITORS ARE ADVISED THAT OPERATIONS OF THE FACILITY INCLUDE LIVE WIRES, ELECTRICAL HAZARD (INCLUDING HIGH VOLTAGE) AND MOVING PARTS AND VISITORS SHOULD THEREFORE REFRAIN FROM TOUCHING ANY PART OF THE EQUIPMENT OR INFRASTRUCTURE**

**(INCLUDING, BUT NOT LIMITED TO, CABLING, BREAKERS, FANS).**

- Visitors, Contractors, and other non-Whinstone personnel shall take due care, and are solely responsible for, maintaining adherence to proper safety precautions when they are within the Premises, including but not limited to avoiding contact with open electrical wiring/ power supply boards or other potential sources of electrical shock, and avoiding any open floors/ceilings which may be kept open for maintenance or other purposes.

- Emergency exit and evacuation instructions are clearly posted throughout the Premises.  Visitors are solely responsible for reading and understanding all such instructions upon entering the Premises.  **IF THE EMERGENCY HORNS AND STROBES ACTIVATE, ALL VISITORS MUST EVACUATE THE BUILDING IMMEDIATELY AND FOLLOW INSTRUCTIONS GIVEN BY WHINSTONE PERSONNEL.**

**D.**   **Removal**.  Whinstone has the right to remove or require the Client or Contractor to remove from the Premises any of its Representatives whom Whinstone deems incompetent, careless, or otherwise objectionable (including but not limited to individuals who appear to be intoxicated or otherwise deemed unsuitable), or any person whose actions the Whinstone deems to be contrary to public interests or inconsistent with the best interest of the Whinstone or other individuals on the Premises.  Whinstone Security personnel are armed licensed security professionals and are authorized to eject from the Premises any person who violates these Rules.  Persons attempting to access the Premises outside of normal Visitor Hours or without the express written invitation of Whinstone will be prohibited access to the Premises by Whinstone Security personnel, and such persons may be detained by Whinstone Security personnel until local authorities arrive on site.  Violations of these Rules, included those observed by camera, will be prosecuted to the fullest extent of the law.

## IV.   CONFIDENTIALITY

You understand and acknowledge that, by accessing the Premises, you may gain access or otherwise be exposed to valuable Confidential Information (as defined below).  You further acknowledge and agree that such Confidential Information is extremely valuable and is sufficiently secret to permit the owners thereof to derive significant economic value, actual or potential, from such Confidential Information not being generally known by others, including Whinstone's competitors, and is the subject of efforts that are reasonable to maintain its secrecy or confidentiality.

Whinstone will make every effort to limit your access to the Premises to only those areas that do not contain Confidential information of any third party, including any customers or business partners to whom Whinstone may have a duty of confidentiality; however, Whinstone cannot guarantee that you will not inadvertently gain such access during your visit to the Premises.  Further, Whinstone will make every effort not to share material, nonpublic information with you regarding your visit; however, you may still inadvertently gain access to such material, nonpublic information.  Accordingly, you agree to hold in the strictest confidence, and not use or disclose to others, any and all Confidential Information to which you may gain access to or possession of in connection with your access to the Premises, including the fact that you have accessed such Confidential Information.  Further, you shall not remove any document, equipment, or other materials from the Premises without Whinstone's prior written consent.

You hereby acknowledge and agree that, because the risk that you may inadvertently gain access to Confidential Information during your visit to the Premises, you hereby agree to provide Whinstone's legal counsel with preliminary, confidential and exclusive pre-access to any account, documentary, video or other publication pertaining to your visit to the Premises *solely to permit Whinstone's legal counsel to ascertain whether any Confidential Information is contained in such publication*.  You agree to work with Whinstone's legal counsel to eliminate, obfuscate or otherwise limit the disclosure of any Confidential Information in any such account, documentary, video or other publication pertaining to your visit to the Premises that you may produce.  Further, you acknowledge and agree that Whinstone's parent company, Riot Blockchain, Inc., is a publicly traded company subject to applicable disclosure rules under U.S. securities laws and, therefore, may make public announcement of your account, documentary, video or other publication pertaining to your visit to the Premises if it reasonably determines that such publication is reasonably likely to contain material,

nonpublic information subject to Regulation FD under the Securities Exchange Act of 1934, as amended.

For the avoidance of doubt, this confidentiality provision shall be subordinate to any non-disclosure and confidentiality agreement, or agreement containing confidentiality provisions covering the matters set forth herein, previously entered into between you and Whinstone or any affiliate of Whinstone.

As used herein, "Confidential Information" means all material, nonpublic information disclosed directly or indirectly by Whinstone or its Representatives to another person or its Representatives (the "Receiving Party"), whether written, oral, electronic, or otherwise, through any means of communication or observation. "Confidential Information" *includes*, without limitation, the following: (i) business matters, such as information about prices; costs; bids; proposals; quotes; negotiations; legal information; accounting information; profits; markets; sales; business plans; proposals; and other confidential plans; (ii) technical matters, such as the Whinstone's trade and engineering secrets; know-how; ideas; formulae; algorithms; processes; inventions; source and object code; other works of authorship; improvements; discoveries; databases; experimental results; and research; (iii) information derived from other Confidential Information; (iv) information that a reasonable person would consider to be confidential; and (v) any Confidential Information of any of Whinstone's customers, partners, and other third parties doing business at the Premises. "Confidential Information" *does not include* information that the Receiving Party can demonstrate, with reasonable documentary evidence: (i) was in the Receiving Party's possession prior to disclosure by the Whinstone; (ii) was generally known to the public, or becomes so known through the acts of others; (iii) came into the Receiving Party's possession from a third party under no confidentiality obligation to the Whinstone; or (iv) the Receiving Party developed independently of, and without reference to, any Confidential Information. A combination of pieces of Confidential Information, taken as a whole, does not fall within any of these exclusions simply because a piece of that combination loses its confidential status (*e.g.*, a confidential memorandum containing or referring to non-confidential information, such as publicly disclosed financial information, is and remains "Confidential Information" unless and until the memorandum itself ceases to be "Confidential Information").

## V.   SURVEILLANCE/CCTV

Closed-circuit television (CCTV) cameras, audio monitoring devices, infrared and other electronic surveillance devices are used to monitor all areas of the Premises. All CCTV cameras are monitored by Whinstone Security personnel, and captured images are retained and may be used as Whinstone may determine in its sole discretion. **BY ACCESSING THE FACILITY, YOU ARE HEREBY NOTIFIED OF THE USE OF SUCH SURVEILLANCE TECHNIQUES AND YOU CONSENT TO SUCH MONITORING AND RECORDING, INCLUDING THE STORAGE AND USE OF SURVEILLANCE RECORDINGS**.

## VI.   ASSUMPTION OF RISK
**BY ACCESSING THE FACILITY, YOU ACKNOWLEDGE AND AGREE THAT YOU VOLUNTARILY ASSUME ALL RISKS, HAZARDS AND DANGERS** incident to your access to the Facility and related activities, including the risk of serious personal injury, temporary and permanent disability, or death, including arising from exposure to communicable diseases, viruses, bacteria or illnesses or the causes thereof, and property damage or loss, whether occurring before, during, or after you have accessed the Facility, however caused and whether inside or outside of the Facility, and you hereby waive all claims and potential claims relating to such risks, hazards and dangers.

## VII.   RELEASE, WAIVER, AND COVENANT NOT TO SUE

**A.   Medical Treatment Release**. By accessing the Facility, you authorize Whinstone to secure, and consent to receive, any medical treatment that may be given to you should Whinstone determine, in its sole discretion, that you need medical care as a result of injuries you may sustain while present on the Facility premises. Further, you acknowledge that Whinstone does not provide professional medical services and that the Facility is located in a rural area, with limited hospital trauma center coverage. Accordingly, you, by accessing the Facility, acknowledge that you understand that any injury you may sustain while present at the Facility may be compounded by delayed medical service due to such lack of ready access to hospital and/or any negligent or delayed assistance you may receive from Whinstone personnel. You accept full responsibility for all costs related to such medical treatment, including any transport costs, and you release Whinstone and its

Affiliates from any type of liability for anything that may happen during such treatment or transport.

**B.        General Liability Release and Covenant Not to Sue**.  By accessing the Facility you, for you and on behalf of your related persons hereby release (and covenant not to sue) each of the Released Parties with respect to any and all claims that you or any of Visitor's Related Persons may have (or hereafter accrue), against any of the Released Parties, that relate to any of the risks, hazards and dangers described above, including without limitation any and all claims that arise out of or relate in any way to (i) exposure to communicable diseases while at the Facility, including COVID-19; (ii) your entry into, or presence within or around, the Facility (including all risks related thereto, and including without limitation in parking areas or entry gates) or compliance with any protocols applicable to your access to the Facility; or (iii) any interaction between you and any personnel of any of the Released Parties at the Facility, in each case whether caused by any action, inaction or negligence of any Released Party or otherwise.

**VIII.      LIABILITY AND INDEMNIFICATION**

By accessing the Facility, you acknowledge that your failure to comply with these Rules may result in expense to Whinstone, which may include charges for time and materials required to remedy such failure, damages (including lost profit).  Further, you agree you shall indemnify and hold harmless Whinstone, its affiliates, and each of its and their respective officers, stockholders, directors, employees, and agents (collectively, the "**Whinstone Indemnified Parties**") from and against any and all liabilities, obligations, losses, damages, allegations, claims, demands, suits, actions, deficiencies, penalties, charges, taxes, levies, fines, judgments, settlements, costs, expenses, interest, attorneys' fees and disbursements, and accountants' fees and disbursements (collectively, "**Losses**") or threatened Losses due to third-party claims arising out of or relating to any of the following: (i) your negligence, fraud, or willful misconduct; (ii) damage to the Property, Whinstone's systems (including equipment), or any equipment of Whinstone's Clients, suppliers, contractors or other third parties caused by you, your Representatives, or your equipment; (iii) your breach of any confidentiality obligations hereunder; (iv) if applicable, your breach of any representations or warranties under a Client Agreement to which you are a party or acting as a Representative of a party thereto; or (iv) your indemnification obligations hereunder.  Your liability in connection with any breach of, or non-compliance with these Rules, or the applicable Client Agreement, shall, in each case, be unlimited in type and amount.  Accordingly, having read and understood these Rules, you acknowledge and agree that, by accessing the Facility, you are responsible for Whinstone's expenses incurred in connection with your violation of these Rules.

**IX.      MISCELLANEOUS**

**A.        Signage**.  No sign or signs will be allowed in or upon the Facility, other than those with Whinstone's express written approval.

**B.        Authority**.  Each Client Representative is deemed to have the authority to act on behalf of the Client, unless the Client otherwise notifies Whinstone otherwise in advance of a Client Representative accessing the Facility.

**C.        Amendments**.  Visitor acknowledges that these Rules may be amended, restated or replaced at any time without notice, and that Visitor will review the then-current terms prior to each visit to the Facility.

<u>**ACCEPTABLE USE POLICY**</u>

This Acceptable Use Policy ("**AUP**") governs the access to and use of the Services (as defined in the applicable Client Agreement) provided by Whinstone. This AUP and the accompanying Data Center Rules (the "**Rules**" and, together with this AUP, the "**Policy**") form a part of and are incorporated by reference into any Client Agreement.

This AUP applies to all persons accessing the Facility and anyone using any of the Services (each, a "**User**"). Any reference to "you" shall be interpreted to mean you and anybody you allow to use the Services. You are responsible for the use of the Services by any person you allow to use it.

Notwithstanding anything to the contrary in any other agreement, policy, or other document, the following rules and regulations set forth in this AUP govern the acceptable use of the Services. Any violation of this AUP will be a violation of your obligations under the Rules and will constitute a material breach of the applicable Client Agreement. Any questions regarding this AUP and the accompanying Rules should be directed to legal@riotblockchain.com.

**NOW, THEREFORE**, by accessing the Facility and/or using the Services, you agree to be bound by this AUP and abide by the following rules:

**I.            No Illegal Use**

The Services may only be used for lawful purposes in accordance with Applicable Law. For the avoidance of doubt, you may not, nor permit any other person (whether intentionally or otherwise) to, use the Services to send, receive, store, distribute, transmit, post, upload or download any materials or data which: violates any Applicable Law; violates any of the Company's policies, as now in place or as may in the future be amended or adopted by the Company; is defamatory, offensive, abusive, indecent, obscene, or constitutes harassment; is in breach of any third-party rights (including any third-party intellectual property rights); has any fraudulent purpose or effect; or adversely affects or may, in the Company's sole and absolute estimate, adversely affect the Company's business and/or reputation.

**II.          System and Network Security**

The Services may not be used in any manner which compromises, is intended to compromise, or which is likely, in the Company's sole and absolute estimation, to compromise the security of any person's systems or network. For the avoidance of doubt, you must not, nor permit any other person (whether intentionally or otherwise) to, engage in any of the following: unauthorized access to or use of data, systems or networks, including any attempt to probe, scan or test the vulnerability of a system or network; unauthorized monitoring of data or traffic on any network or system without the express authorization of the owner of the system or network; or unauthorized interference with any user, host, system or network without the express authorization of the owner of the system or network.

Further, you must not send, receive, store, distribute, transmit, post, upload or download any materials that are designed to violate the security of the Company's network and other systems, or that of any other person. Examples of such prohibited material may include (but are not limited to): programs containing viruses or Trojan horses; tools designed to compromise the security of other sites; programs or services designed to send or facilitate the sending of unsolicited advertisements; or programs or services designed to encourage or facilitate a breach of this AUP or any acceptable use policy of another Internet services provider.

In addition, you must not, nor permit any other person (whether intentionally or otherwise) to, connect to the Services any insecure device or service able to be exploited by others to carry out actions which would constitute a breach of this AUP if carried out by you, including without limitation, the following: the transmission of unsolicited bulk email or email containing infected attachments; attempts to disrupt websites and/or connectivity; or any other attempts to compromise the security of other users of the Company's network and systems, or of any other

1

person's system.

You are responsible for all data and/or traffic originating from the machines and/or networks that you have connected to the Services. You must immediately disconnect (and subsequently secure prior to reconnection) machines generating data and/or traffic which contravenes this AUP upon your becoming aware of the same and/or once notified of such activity by the Company.

**III.        Advertising and Other Impermissible Communications**

The Services may not be used to send unsolicited electronic mail (email) or any other form of electronic communication (including commercial advertising communications) or any abusive or offensive communication whatsoever.  In particular, unsolicited advertising mailings (whether commercial or informational) are strictly prohibited - only send advertising material to recipients who have specifically requested it.  Accordingly, you must not, nor permit any other person (whether intentionally or otherwise) to, use our Services to send such communications to any person who has not consented to the receipt thereof.  Further, you must not, nor permit any other person (whether intentionally or otherwise) to, use any device which is connected or permitted to connect to our Services to send such unsolicited communications.  Finally, you must not suggest or imply that any email you send is from, or otherwise authorized or endorsed by, the Company or any other person other than you, except with such person's express prior consent.

**IV.        Impermissible Internet Usage**

The Services must not be used to connect to any illegal, illicit, or compromised Internet websites or other online services.  Accordingly, you must not, nor permit any other person (whether intentionally or otherwise) to, use the Services to connect to any such websites or services.  Further, you may not, nor permit any other person (whether intentionally or otherwise) to, use any device which is connected or permitted to connect to our Services to connect to such websites.  You are solely responsible for your use of the Internet and any web pages owned and/or operated by you or anyone you permit to use the Services and that are connected to the Services.  In addition, you may not, nor permit any other person (whether intentionally or otherwise) to, use the Services or any device connected or permitted to connect to the Service, to use the Internet in any way that would violate any part of this AUP or to disrupt or attempt to disrupt any other person's use of or experience using the Internet.

**V.        Confidentiality**

You acknowledge and agree that, as a condition of receiving the Services and/or accessing the Facility, you shall not to use or disclose any Confidential Information, whether or not related to the Services and/or any licensed proprietary technology, processes, equipment, or other inventions imparted to you in connection with the Services or as a consequence of any visit to the Facility, except as required by the applicable Colocation Services Agreement or by applicable law.

**VI.        Consequences for Policy Violations**

You must at all times be aware of who is using or has access to your devices.  We will block any electronic communication that we reasonably consider to be in violation of this AUP.  Further, if you have breached this AUP, or we reasonably suspect that you may have breached this AUP, we will notify you (provided that this notification does not prejudice any investigation) and we may also take any of the following actions:

- immediately suspend your access to the Services until such time as we are satisfied the impermissible activity has ceased and the breach of this AUP has been cured;

- immediately suspend the provision of the Services and, if we determine your breach of this AUP is material, terminate your Client Agreement;

- investigate the alleged breach of the AUP, which may include gathering information from you and/or

**2**

the complaining party (if any) and the examination of any other data or material on our network or our servers;

- notify and/or pass on the details of the breach of the AUP to any relevant government, statutory, self-regulatory or law enforcement agency; or

- remove (either temporarily or permanently), copy, store, monitor or otherwise deal with data and/or other material on our network and/or ourservers.

Further, by accessing the Services, you authorize the Company to use your personal data and other account information in connection with any investigation carried out by Whinstone in accordance with this AUP, including by disclosing it to any third-party authority that Whinstone considers has a legitimate interest in any such investigation or its outcome.  For the avoidance of doubt, the Company has the absolute right to terminate the Services with immediate effect and without further obligation or liability to you as required by any law enforcement organization or by the courts or any relevant regulatory authority.

**VII.        Liability**

You agree to indemnify and hold the Company, its affiliates, officers, employees, and agents harmless against all claims, actions, demands, costs (including legal costs and disbursements), expenses, losses and damages arising out of or incurred as a consequence of your breach of this AUP or breach of this AUP by anyone permitted to use the Services by you. In many instances a breach of this AUP would constitute a breach of law and may in some cases carry criminalliability.

**VIII.    Amendments**

You acknowledge and agree that the Company may amend this AUP from time to time in its discretion, including to reflect any changes in the law or community standards or whenever the Company, in its sole and absolute discretion, deems it appropriate.