# EXHIBIT 9

# HAYNES BOONE

July 24, 2023

<u>Via Email</u>

Debevoise & Plimpton LLP
66 Hudson Blvd E, New York, NY 10001
Attn: Elliot Greenfield, egreenfield@debevoise.com
Attn: Maeve O'Connor, mloconnor@debevoise.com
Attn: Brandon Fetzer, bfetzer@debevoise.com

**Re:** *Notice of Termination of the W Colocation Services Agreement (Texas), dated October 16, 2019, as amended (the "Texas Agreement")*

Dear Counsel:

We write concerning (i) Defendant Whinstone US, Inc.'s ("Whinstone") Notice of Termination, sent to our clients, GMO Internet Group, Inc.'s and GMO Gamecenter USA, Inc.'s (collectively, "GMO"), on June 29, 2023, (ii) Whinstone's simultaneous disconnection of power to GMO's mining machines at the Texas Data Center, and (iii) Whinstone's July 24, 2023 letter, in which Whinstone states it "will immediately begin removing" GMO's machines from the Texas Data Center if GMO does not remove them before July 29 at 18:00 CST. We and our clients are baffled by Whinstone's actions, particularly given that Whinstone's wrongful termination and power shutoff significantly increase GMO's damages in the pending litigation between GMO and Whinstone (the "Litigation"). The only logical conclusions we and our clients can draw from Whinstone's actions are that (i) Whinstone is willing to risk a substantial increase in damages in the Litigation in order to try and secure a more favorable colocation agreement than the Texas Agreement from another mining customer, and (ii) Whinstone aims to spoliate and interfere with the collection of relevant evidence by halting GMO's operations at the Texas Data Center prior to the parties' experts' visits to the Texas Data Center, which visits you initially proposed in your May 24, 2023 letter to us as a means to preserve relevant evidence.

*First*, Whinstone's Notice of Termination, which purports to terminate the Texas Agreement pursuant to Section 15.2 of the Texas Agreement, is improper under the express terms of the Texas Agreement and New York law. As Whinstone is no doubt aware, Section 15.2 of the Texas Agreement only permits the "Non-Defaulting Party" to terminate if the "Defaulting Party" commits and fails to cure "a material breach of any of its material obligations under this Agreement[,] including failing to pay any sums payable under this Agreement by the due date . . . ." Whinstone is not a "Non-Defaulting Party" capable of terminating under Section 15.2. As GMO has made clear, Whinstone breached the Texas Agreement by continuously failing to provide sufficient power to GMO's machines, failing to indemnify GMO pursuant to Section 16.3, improperly removing GMO's machines from operation, and improperly charging GMO for power

# HAYNES BOONE

surcharges. Whinstone's Notice of Termination and simultaneous power-down constitute additional breaches by Whinstone, for the reasons set forth below.

Moreover, Whinstone's allegations against GMO as stated in its June 13, 2022 letter (the "June 2022 Letter"), which Whinstone relies upon in support of its wrongful termination, are entirely baseless:

- With respect to the alleged breach for failing to use the "Specified Power Draw," the Texas Agreement does not require GMO to use the Specified Power Draw. Instead, the Agreement requires Whinstone to make the Specified Power Draw available. *See* Texas Agreement § 4.3. Whinstone's reliance on Section 4.3.3 of the Texas Agreement in an attempt to impose a requirement on GMO to use any specified amount of power is patently improper.

- With respect to the alleged breach for failing to negotiate a new colocation agreement in good faith under Sections 4.3.3 and 20.6, these Sections require that, once certain sums are paid, the parties "enter into discussions in good faith about agreeing [to] a minimum commitment for power usage as was contained in the Louisiana Agreement" and "enter into discussions in good faith to renegotiate this Agreement based on the hosting agreement usually offered by Whinstone for colocation services." Here, the relevant communications between Whinstone and GMO unambiguously reflect that GMO attempted to negotiate a new colocation agreement with Whinstone in accordance with the terms of Sections 4.3.3 and 20.6. It was *Whinstone* that repeatedly stonewalled efforts to enter into a new agreement. Whinstone's allegations are particularly disingenuous in light of the fact that its last proposed agreement before Whinstone's June 2022 Letter, which the Notice of Termination relies upon, (i) did not include *any* minimum commitment for the usage of power, and (ii) proposed *increasing* the colocation fee, despite Section 16.3's requirement that Whinstone *lower* the fee to indemnify GMO for the Loss of Profit by Power Shortage.

Whinstone's attempt to terminate the Texas Agreement based on a year-old letter also violates New York law because Whinstone continuously accepted performance of (*i.e.*, GMO's payments under) the Texas Agreement between the June 2022 Letter and the Notice of Termination. *See Lockheed Martin Transportation Sec. Sols. v. MTA Cap. Constr. Co.*, No. 09 CIV. 4077 (PGG), 2014 WL 12560686, at *20-21 (S.D.N.Y. Sept. 16, 2014) ("Because the MTA continued to perform and accept performance under the Contract Documents well after these purported breaches occurred, the MTA may not rely on these breaches to justify its termination of Lockheed."); *Marathon Enterprises, Inc. v. Schroter GMBH & Co.*, No. 01 CIV. 0595 (DC), 2003 WL 355238, at *6 (S.D.N.Y. Feb. 18, 2003) ("A non-breaching party that either continues to perform or accepts the performance of the breaching party affirms the contract and waives its right to terminate . . . Even if defendants' allegations of Marathon's material breach are assumed to be true, a reasonable fact finder could conclude that Bril–Tech elected to continue the parties'

# HAYNES BOONE

agreement when it accepted Marathon's late payment. If that is the case, Bril–Tech cannot now seek to terminate the contract.").

For the reasons set forth above, Whinstone's Notice of Termination and simultaneous disconnection of power supplied to GMO's machines violate the Texas Agreement and New York law. As a result, the Notice of Termination has exposed Whinstone to significant additional lost profit damages GMO will incur as a result of losing its full benefit of the bargain of the Texas Agreement, *i.e.*, as a result of not being able to mine Bitcoin through the Texas Agreement's contemplated completion date of December 31, 2029. *See* Texas Agreement §§ 9.1, 15.1.

*Second*, Whinstone's power-down violates its obligation to preserve relevant evidence, given GMO's claims for lost profits resulting from Whinstone's breaches of the Texas Agreement, as well as Whinstone's defenses to those claims. Specifically, GMO has alleged, *inter alia*, that Whinstone has improperly failed to provide sufficient power to GMO's machines, removed GMO's machines from operation (and "stored" them in utter disarray), and failed to construct and/or maintain the Texas Data Center in a manner required by the Texas Agreement, in turn preventing GMO's machines from mining Bitcoin. In response, Whinstone has alleged that GMO's machines are "broken" or otherwise not operating at full capacity, despite Whinstone's own failure to properly maintain its facilities being the cause of any such problems. As such, and as you know, GMO's mining machines must be operating for the parties and their experts to evaluate the parties' claims.

Further compounding the outrageousness of Whinstone's attempted termination and disconnection of power are your recent accusations that we and our clients have destroyed evidence, and recent proposal to have the parties' expert consultants visit the Texas Data Center. *See* your May 24, 2023 Letter (stating GMO and Haynes Boone's actions "constitute[] alteration and/or destruction of highly relevant evidence[,]" and "we propose that each side arrange for an appropriate consultant to visit the facility as soon as possible[.]"). It is these actions by Whinstone – in addition to Whinstone's admitted failure to preserve video evidence, *see* your June 23, 2023 Letter ("With respect to GMO's request for video footage or recordings, we understand that Whinstone maintains security footage of Building A for a period of 30 days.")[1] – that constitute "alteration and/or destruction of highly relevant evidence[,]" and that significantly interfere with the parties' and their experts' ability to assess the claims and defenses in the Litigation. As such, Whinstone's unilateral power-down and admitted failure to preserve video evidence unquestionably constitute

---

[1] GMO sought video evidence concerning the parties' claims in GMO's First and Second Sets of Requests for the Production of Documents (served on November 14, 2022 and April 28, 2023, respectively) and we specifically reiterated our request for such evidence in our May 30, 2023 letter to you. Even absent these specific requests, Whinstone had an obligation to preserve all evidence, including such video evidence when the dispute between the parties arose – at latest, in April 2022. Whinstone's failure to properly preserve such video evidence is even more appalling in light of its (i) use of undisclosed photographic evidence during the February 28, 2023 settlement conference in an effort to convince Magistrate Judge Parker of its position, and (ii) refusal to allow GMO's counsel access to the Texas Data Center in March 2023 absent an agreement not to take photographs.

# HAYNES BOONE

spoliation of relevant evidence in this action.  Furthermore, should Whinstone follow through on its threat to "immediately begin removing" GMO's machines, *see* your July 24, 2023 Letter, such removal would similarly constitute "alteration and/or destruction of highly relevant evidence."  In light of Whinstone's undeniable alteration and/or destruction of relevant evidence, the only logical conclusion that GMO can draw from Whinstone's artificial accusations of spoliation and repeated insistence that GMO preserve all relevant evidence is that Whinstone is disingenuously attempting to "level the playing field" by accusing GMO of the very impropriety abused by Whinstone.

In light of the foregoing, GMO hereby demands that Whinstone immediately retract its Notice of Termination and re-supply power to GMO's mining machines at the Texas Data Center.  Whinstone's failure to immediately undo its improper actions or follow through on its threats to *again* remove GMO's machines from operation will result in GMO pursuing all available recourse against Whinstone under the Texas Agreement and applicable law.  Such recourse includes, but is not limited to, (i) amending GMO's complaint to add significant additional damages based on Whinstone's wrongful termination, disconnection of power, and removal of GMO's machines, and (ii) pursuing all remedies due to Whinstone's spoliation and interference with the collection of relevant evidence, including adverse inference charges and sanctions.

Nothing in this letter shall be deemed a waiver of any rights, claims, remedies or defenses to which GMO may be entitled at law or in equity, all of which are expressly reserved.

Very truly yours,

*Thorne*

Leslie C. Thorne
leslie.thorne@haynesboone.com
Direct Phone Number:  212.835.4848