# Exhibit A

| | |
|---|---|
| **From:** | Fetzer, Brandon |
| **To:** | Freyberg, Michael; Thorne, Leslie; Greenfield, Elliot |
| **Cc:** | O"Connor, Maeve; Tancil, Jillian |
| **Subject:** | RE: GMO v. Whinstone |
| **Date:** | Monday, August 7, 2023 8:03:56 PM |

**EXTERNAL:** Sent from outside Haynes and Boone, LLP

Mike,

Per our email below, the parties cannot make progress if GMO is unwilling to make any movement off of the position it has maintained since the outset. GMO continues to insist that its expert receive eight additional weeks of access to the Texas Facility. This is the same proposal reflected in GMO's Order to Show Cause that prompted the Court to order the Parties to meet and confer. GMO's elaboration on its reasoning is not a compromise.

With respect to GMO's position on paying Whinstone for power at the contract rate, GMO offered to do precisely that in its Order to Show Cause. But as Whinstone has already articulated, this position is insufficient as the contract rate for power is less than the market rate Whinstone would ultimately pay under your proposal. Further, GMO's decision to withdraw this offer at the outset of our meet and confer negotiations and then place this offer back on the table in the spirit of "compromise" is not meaningful movement.

As stated below, if GMO is unwilling to offer a material compromise, we are at an impasse in our negotiations and must proceed with the August 9 hearing.

Brandon

**Brandon Fetzer** | Associate | Debevoise & Plimpton LLP | bfetzer@debevoise.com | +1 212 909 6880 |
www.debevoise.com

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise. Instead, please notify us immediately by return e-mail (including the original message in your reply) and by telephone (you may call us collect in New York at 1-212-909-6000) and then delete and discard all copies of the e-mail. Thank you.
The latest version of our Privacy Policy, which includes information about how we collect, use and protect personal data, is at www.debevoise.com.

**From:** Freyberg, Michael [mailto:Michael.Freyberg@haynesboone.com]
**Sent:** Monday, August 07, 2023 14:47
**To:** Fetzer, Brandon; Thorne, Leslie; Greenfield, Elliot
**Cc:** O'Connor, Maeve; Tancil, Jillian
**Subject:** RE: GMO v. Whinstone

**\*EXTERNAL\***

Brandon,

As we understand your email, Whinstone is not providing any counter-proposal, despite GMO confirming per your request that it will pay for the power, revising its offer to specify the rate at which GMO would pay for power, and providing further information and explanation to address Whinstone's other points, including as to the plans for replacing inoperable transformers. GMO has now provided substantial information concerning the justification behind GMO's proposals, in response to your request for such justification. Yet we read your email as a disappointing indication that Whinstone wishes to shut down negotiations, in contravention of the Court's order that the parties attempt to reach a resolution in good faith. Please let us know if we are mistaken and Whinstone intends to make a counter-proposal.

**HAYNES BOONE**

**Michael Freyberg** | Associate | He/Him/His
michael.freyberg@haynesboone.com | (t) +1 303.382.6233

**From:** Fetzer, Brandon <bfetzer@debevoise.com>
**Sent:** Monday, August 7, 2023 8:09 AM
**To:** Freyberg, Michael <Michael.Freyberg@haynesboone.com>; Thorne, Leslie <Leslie.Thorne@haynesboone.com>; Greenfield, Elliot <egreenfield@debevoise.com>
**Cc:** O'Connor, Maeve <mloconnor@debevoise.com>; Tancil, Jillian <jtancil@debevoise.com>
**Subject:** RE: GMO v. Whinstone

**EXTERNAL:** Sent from outside Haynes and Boone, LLP

Mike,

Thanks for sending. This proposal isn't any different than the one made on Friday. Although this iteration includes a provision concerning GMO's payment for power at the rate reflected in a contract that has been terminated, we had already understood that GMO was willing to pay for power at that rate. GMO had years to preserve the evidence it now claims to need for trial and can't do so at Whinstone's expense. If GMO is willing to move off of the position it has maintained since we started this process, we are happy to continue the discussions. If this is GMO's final offer, we are at an impasse.

Brandon

**Brandon Fetzer** | Associate | Debevoise & Plimpton LLP | bfetzer@debevoise.com | +1 212 909 6880 |
www.debevoise.com

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise. Instead, please notify us immediately by return e-mail (including the original message in your reply) and by telephone (you may call us collect in New York at 1-212-909-6000) and then delete and discard all copies of the e-mail. Thank you.
The latest version of our Privacy Policy, which includes information about how we collect, use and protect personal data, is at www.debevoise.com.

**From:** Freyberg, Michael [mailto:Michael.Freyberg@haynesboone.com]
**Sent:** Sunday, August 06, 2023 11:16
**To:** Fetzer, Brandon; Thorne, Leslie; Greenfield, Elliot

**Cc:** O'Connor, Maeve; Tancil, Jillian
**Subject:** RE: GMO v. Whinstone

***EXTERNAL***

Brandon,

We appreciate you sending over Whinstone's counter-proposal. Below is GMO's response. As we noted previously, the below represents a significant compromise from what GMO is entitled to, particularly in light of the fact that expert submissions are not due until December. Whinstone's counter-proposal improperly narrows GMO's right to conduct expert discovery to an unreasonable timeframe. Further, while Whinstone's purported "financial harm" is not a legitimate basis to cutoff GMO's right to discovery, item 5 below addresses the "harm" cited by Whinstone. With that issue now addressed, we hope we are now better positioned to reach an agreement without the need for the August 9 hearing.

1. GMO's expert will make three additional visits to the data center, spread over eight weeks.
    a. We note that your email below states, "[w]e believe two weeks is more than sufficient time for GMO's expert to observe the facility in operation[,]" but, in contrast to my email below, provides no basis for this belief.
    b. Your reference to the varying temperatures each day is not compelling. While, of course, temperatures change throughout a single day, different days that are spread apart increase the likelihood for varied temperatures. By way of example, if GMO's expert visits on August 10, then again on September 10, then again on October 10, the high outdoor temperature will be more likely to vary significantly amongst these days, and so will the delta between Building A high temperature and outdoor high temperature (which delta is a meaningful statistic for our expert to analyze).
2. GMO's machines will remain installed with the power up and running for the entirety of the time between GMO's expert visits (*i.e.*, for eight weeks).
    a. Both of our proposals acknowledge the importance of the machines remaining in continuous operation during the expert assessment period.
    b. As explained in my email below, continuous provision of power will permit our expert to visit on days that reflect power supply and heat conditions closer to how it was before Whinstone fully powered down GMO's machines on June 29, *i.e.*, GMO's machines were not powering up and down every day, prior to that time. In addition, powering up and down GMO's machines negatively impacts their performance, as compared to a more consistent power supply.
3. Whinstone will replace the inoperable transformers servicing GMO's machines with working transformers of the same model from other parts of Building A, within approximately one week of the beginning of the eight weeks, provided that those replacement transformers are not currently operating/servicing Building A. If the replacement transformers are operating and servicing Building A currently, their deployment in place of the inoperable transformers will result in a net loss of power supply to Building A, causing a heat reduction in Building A and potentially other condition changes. Please confirm whether the transformers that Whinstone intends to use for GMO's machines are currently servicing Building A.
4. GMO will install temperature monitoring devices in Building A at the beginning of the eight

weeks to monitor the temperature throughout the eight-week period.
5. GMO will pay Whinstone for power in the same amount as it did under the Texas Agreement.
6. Whinstone will disclose the technical records described in GMO's original proposal concerning Whinstone's operations of Building A, at least two weeks prior to the third and final expert visit.
    a. On this, your statement that "[t]here is no need to accelerate the production of this historical information for purposes of evidence preservation" does not address the value of GMO's expert having these documents in advance of his visit, which I described in prior email. As noted below, the requested documents will allow GMO's expert to compare the records against observations made during in-person visits, and allows him to query investigation of certain items ascertained from the records.
    b. Further, to the extent the production of this information is "accelerated," it is not undue or prejudicial given that these materials were requested on April 28, 2023 and so their production is past due in any event. Moreover, the discovery period ends on October 27 meaning that GMO is only requesting that this information be produced approximately one month before all documents and information must be produced in any event.
7. GMO agrees to the testing of miners stored in Building X, as long as it can participate in that process, as well as any process for testing machines that are ultimately removed from operation in Building A. However, Whinstone needs to provide specific details concerning how it plans on testing GMO's machines, so that GMO can adequately prepare for the testing process.

We're happy to answer any questions you have on this. Please let us know by tomorrow if this proposal is acceptable to Whinstone.

**HAYNES BOONE**

**Michael Freyberg** | Associate | He/Him/His
michael.freyberg@haynesboone.com | (t) +1 303.382.6233

**From:** Fetzer, Brandon <bfetzer@debevoise.com>
**Sent:** Saturday, August 5, 2023 8:12 AM
**To:** Freyberg, Michael <Michael.Freyberg@haynesboone.com>; Thorne, Leslie <Leslie.Thorne@haynesboone.com>; Greenfield, Elliot <egreenfield@debevoise.com>
**Cc:** O'Connor, Maeve <mloconnor@debevoise.com>; Tancil, Jillian <jtancil@debevoise.com>
**Subject:** RE: GMO v. Whinstone

**EXTERNAL:** Sent from outside Haynes and Boone, LLP

Mike,

Thanks for sharing GMO's proposal.  We believe it goes far beyond what is necessary and propose below a path that is designed to permit GMO's expert to observe the facility in operation while balancing the financial harm to Whinstone from further delay.

- Whinstone will replace the inoperable transformers with working transformers of the

    same model from other parts of Building A.  We expect that process will take one week.

- During the time it takes to move the transformers plus one week after, GMO's expert is free to take whatever steps he would like to observe GMO's operation, including the installation of temperature monitoring devices.

- Building A will remain powered on during this approximately two-week period.  Within 14 days after the end of this period, GMO will pay Whinstone for the power used at Whinstone's cost and turn over any bitcoin that GMO mined.

- Testing of miners stored in Building X will commence immediately so that the parties have a record of their condition prior to shipment.  GMO is welcome to participate in that process.

We can confirm that Whinstone does not maintain temperature or dust data concerning GMO's operation or Building A.  We believe two weeks is more than sufficient time for GMO's expert to observe the facility in operation.  The high-low outdoor temperature range in Austin varies by over 20 degrees each day, which is a larger swing than GMO would see by visiting the facility at the same time on each visit.

GMO's document requests relate to historical materials that would be exchanged during the normal course of discovery.  There is no need to accelerate the production of this historical information for purposes of evidence preservation.

We are available to discuss if you have any questions.  Since we are short on time, please let us know by tomorrow if this proposal is acceptable to GMO.

Brandon

**Brandon Fetzer** │ Associate │ Debevoise & Plimpton LLP │ bfetzer@debevoise.com │ +1 212 909 6880 │
www.debevoise.com

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise. Instead, please notify us immediately by return e-mail (including the original message in your reply) and by telephone (you may call us collect in New York at 1-212-909-6000) and then delete and discard all copies of the e-mail. Thank you.
The latest version of our Privacy Policy, which includes information about how we collect, use and protect personal data, is at www.debevoise.com.

**From:** Freyberg, Michael [mailto:Michael.Freyberg@haynesboone.com]
**Sent:** Friday, August 04, 2023 12:23
**To:** Thorne, Leslie; Greenfield, Elliot
**Cc:** O'Connor, Maeve; Fetzer, Brandon
**Subject:** RE: GMO v. Whinstone

**\*EXTERNAL\***

Maeve and Elliot,

Thank you for the call yesterday. Preliminarily, the below is obviously subject to our clients' review and approval. After further discussion with GMO's technical expert, here is GMO's specific proposal for a compromise, with explanatory notes.

1. <u>GMO's expert will make three additional visits to the data center, spread evenly over eight weeks, assuming that the transformers can be repaired by the end of this eight-week period, and prior to the final expert visit.</u> (Our expert requested three visits over three months, but indicated he can live with eight weeks in the spirit of compromise.)
    a. Three visits spread over eight weeks will permit our expert to visit the data center on completely separate days, each of which may have different circumstances/conditions that may bear on the machines' operations including, among other things: weather conditions, the number of operational transformers and evaporative walls, the number of GMO's machines supplied with power, shutdowns related to demand response (or otherwise), and the temperature inside Building A. The variation in conditions increases the likelihood of GMO's expert documenting GMO's operations and Building A under different, representative conditions. If, on the other hand, GMO's expert were to visit the data center on three successive days, or even three successive weeks, GMO's expert would be more likely to visit and document GMO's operations and Building A on days that are substantially similar to each other in terms of conditions. There have been many changes that have occurred at the data center over the course of the Texas Agreement, and spreading the days apart increases the likelihood of capturing that variation.
        i. Moreover, multiple Building A transformers were down during GMO's expert's visit earlier this week, causing a significant number of GMO's miners to be inoperable (GMO's expert estimated 15%-20% of the total installed were inoperable due to the transformers being down). If the transformers were operational, more miners would be running and observable/documentable by GMO's expert. Also, if 15-20% more of GMO's machines were running, the heat profile in Building A would significantly differ. With further regard to heat, if the evaporative walls were operational (as some were not during the expert's visit), the expert could observe how that may offset the added heat caused by the additional operating machines.
        ii. Eight weeks should also provide sufficient time for Whinstone to fix its broken transformers.
            1. We note that your email below states: "We are waiting to hear back on timing for the transformer" and would restate our understanding that at least three transformers supplying power to GMO's machines in Building A are currently down.  To reiterate, our timing proposal is contingent on the transformers being operational before the final visit. (As you might expect, we would much prefer the machines be up and running for all three visits but, again, we are trying to find a reasonable middle ground.)
    b. Eight weeks also provides Whinstone with time to disclose documents concerning its operations of Building A, which the expert will benefit from analyzing prior to his visits

   (see bullet 3 below for details).
 c. Eight weeks provides GMO's expert opportunity to compare GMO's real-time performance data with observations made during in-person visits.

2. <u>The power must be up and running for the entirety of the time between GMO's expert visits.</u>
    a. Continuous provision of power will also permit our expert to visit on days that reflect power supply and heat conditions closer to how it was before Whinstone fully powered down GMO's machines on June 29, *i.e.*, GMO's machines were not powering up and down every day, prior to that time. In addition, powering up and down GMO's machines negatively impacts their performance, as compared to a more consistent power supply.

3. <u>Whinstone must disclose certain technical records concerning Whinstone's operations of Building A, at least two weeks prior to the third and final expert visit.</u> (Again, we would prefer to have the benefit of these records prior to the first visit but make this concession as a compromise.)
    a. Such records include:
        i. Day-to-day records tracking power supply to Building A, including transformer-level reporting.
        ii. Day-to-day temperature records of Building A.
        iii. Records reflecting repair activities on transformers, cooling walls, and dust removal.
            1. We note that your email below states Whinstone does not "maintain temperature or dust data regarding GMO's mining operation at the Texas Facility[,]" however, what we are asking for is temperature and dust data concerning Building A, which is maintained by Whinstone, and which influences GMO's operations. Please confirm whether Whinstone maintains temperature records for Building A. If Whinstone does not monitor the temperature in the building, we intend to install temperature monitoring devices on the first visit that we will retrieve upon the removal of GMO's machines and we will need Whinstone's commitment in this respect.
        iv. Records reflecting GMO's machine conditions.
        v. Records of the location of GMO's mining machines, including records concerning relocation/removal of GMO's machines and the timing thereof.
    b. Analyzing these records before the expert's last visit allows him to compare the records against observations made during in-person visits, and allows him to query investigation of certain items ascertained from the records.

**HAYNES BOONE**

**Michael Freyberg** | Associate | He/Him/His
michael.freyberg@haynesboone.com | (t) +1 303.382.6233

**From:** Thorne, Leslie <Leslie.Thorne@haynesboone.com>
**Sent:** Friday, August 4, 2023 6:32 AM

**To:** Greenfield, Elliot <egreenfield@debevoise.com>
**Cc:** O'Connor, Maeve <mloconnor@debevoise.com>; Freyberg, Michael <Michael.Freyberg@haynesboone.com>; Fetzer, Brandon <bfetzer@debevoise.com>
**Subject:** Re: GMO v. Whinstone

Appreciate it—we'll circulate a new zoom shortly.

Leslie C. Thorne
Haynes Boone
(t) 212.835.4848
(t) 512.867.8445

> On Aug 4, 2023, at 7:42 AM, Greenfield, Elliot <egreenfield@debevoise.com> wrote:
>
> **EXTERNAL:** Sent from outside Haynes and Boone, LLP
>
> No problem. That works for us.  Thanks.
>
> Sent from my iPhone
>
>> On Aug 3, 2023, at 11:52 PM, Thorne, Leslie <Leslie.Thorne@haynesboone.com> wrote:
>>
>> **\*EXTERNAL\***
>>
>> Thanks so much for sending, Elliot.
>>
>> I've just had an emergency issue arise and need to reschedule our call tomorrow—are you all available at 1pm instead?  I'm very sorry for the late notice.
>>
>> Thanks,
>> Leslie
>>
>> <image001.jpg>
>>
>> **Leslie C. Thorne** | Partner | She/Her/Hers
>> leslie.thorne@haynesboone.com | (t) +1 212.835.4848
>>
>> **From:** Greenfield, Elliot <egreenfield@debevoise.com>
>> **Sent:** Thursday, August 3, 2023 6:36 PM
>> **To:** Thorne, Leslie <Leslie.Thorne@haynesboone.com>; O'Connor, Maeve <mloconnor@debevoise.com>; Freyberg, Michael

<Michael.Freyberg@haynesboone.com>
**Cc:** Fetzer, Brandon <bfetzer@debevoise.com>
**Subject:** RE: GMO v. Whinstone

**EXTERNAL:** Sent from outside Haynes and Boone, LLP

Leslie,

Following up on our call today:

1. Whinstone does not record or maintain temperature or dust data regarding GMO's mining operation at the Texas Facility.
2. The testing that Whinstone plans to do as part of the removal process would record largely the same data received by GMO's real-time network feed, which is not available to Whinstone, and would ensure that Whinstone has a record of the condition of GMO's machines before they are crated for transport.
3. We are waiting to hear back on timing for the transformer.

We look forward to speaking again tomorrow morning.

Thanks,
Elliot


**Elliot Greenfield** | Debevoise & Plimpton LLP | egreenfield@debevoise.com | +1 212 909 6772 | 66 Hudson Boulevard, New York, NY 10001 | www.debevoise.com

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise. Instead, please notify us immediately by return e-mail (including the original message in your reply) and by telephone (you may call us collect in New York at 1-212-909-6000) and then delete and discard all copies of the e-mail. Thank you.
The latest version of our Privacy Policy, which includes information about how we collect, use and protect personal data, is at www.debevoise.com.

**From:** Thorne, Leslie [mailto:Leslie.Thorne@haynesboone.com]
**Sent:** Wednesday, August 02, 2023 21:19
**To:** O'Connor, Maeve; Freyberg, Michael
**Cc:** Greenfield, Elliot; Fetzer, Brandon
**Subject:** RE: GMO v. Whinstone

**\*EXTERNAL\***

Maeve,

I'm not sure about Mike (as he's traveling at the moment) but that works

for me.  Could you send a zoom invite?

Thanks,
Leslie

<image001.jpg>

**Leslie C. Thorne** | Partner | She/Her/Hers
leslie.thorne@haynesboone.com | (t) +1 212.835.4848

**From:** O'Connor, Maeve <mloconnor@debevoise.com>
**Sent:** Wednesday, August 2, 2023 5:18 PM
**To:** Thorne, Leslie <Leslie.Thorne@haynesboone.com>; Freyberg, Michael <Michael.Freyberg@haynesboone.com>
**Cc:** Greenfield, Elliot <egreenfield@debevoise.com>; Fetzer, Brandon <bfetzer@debevoise.com>
**Subject:** GMO v. Whinstone

**EXTERNAL:** Sent from outside Haynes and Boone, LLP

Leslie and Mike, in light of the Court's order let's set a time to discuss in the morning.  We can be available at 10am ET.  Please let us know if that works for you.

Best –
Maeve

**Debevoise & Plimpton**

**Maeve L. O'Connor**

mloconnor@debevoise.com
+1 212 909 6315 (Tel)
+1 917 528 4520 (Mobile)

66 Hudson Boulevard
New York, NY 10001

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise. Instead, please notify us immediately by return e-mail (including the original message in your reply) and by telephone (you may call us collect in New York at 1-212-909-6000) and then delete and discard all copies of the e-mail. Thank you.
The latest version of our Privacy Policy, which includes information about how we collect, use and protect personal data, is at www.debevoise.com.

CONFIDENTIALITY NOTICE: This electronic mail transmission is confidential, may be privileged and should be read or retained only by the intended recipient. If you have received this transmission in error, please immediately notify the sender and delete it from your system.

CONFIDENTIALITY NOTICE: This electronic mail transmission is confidential, may be privileged and should be read or retained only by the intended recipient. If you have received this transmission in error, please immediately notify the sender and delete it from your system.

CONFIDENTIALITY NOTICE: This electronic mail transmission is confidential, may be privileged and should be read or retained only by the intended recipient. If you have received this transmission in error, please immediately notify the sender and delete it from your system.

CONFIDENTIALITY NOTICE: This electronic mail transmission is confidential, may be privileged and should be read or retained only by the intended recipient. If you have received this transmission in error, please immediately notify the sender and delete it from your system.

CONFIDENTIALITY NOTICE: This electronic mail transmission is confidential, may be privileged and should be read or retained only by the intended recipient. If you have received this transmission in error, please immediately notify the sender and delete it from your system.

| | |
|---|---|
| **From:** | Freyberg, Michael |
| **To:** | Tancil, Jillian; Thorne, Leslie |
| **Cc:** | O"Connor, Maeve; Greenfield, Elliot; Fetzer, Brandon |
| **Subject:** | RE: GMO v. Whinstone Joint Letter |
| **Date:** | Tuesday, August 8, 2023 9:51:00 AM |

Jillian and Brandon,

Thanks for your emails.

First, there are certain representations made in Brandon's email from last night that need to be addressed:

1. As made explicitly clear in GMO's motion, that motion requested that GMO's machines remain in place and operating for three months, through the discovery period. This request was based on GMO's expert's need for time to fully and properly evaluate GMO's operations and the conditions of the Texas Data Center. As such, GMO has come down significantly from its initial request. While the motion raised the prospect of a two month period in the alternative, the motion specifically sought three months.

2. Your statement that "GMO's elaboration on its reasoning is not a compromise" is not well-taken. GMO's elaboration on its reasoning was specifically requested by you, and was provided at length in multiple emails for the purposes of moving towards a compromise. Notwithstanding GMO's elaboration of its reasoning, Whinstone has failed to provide *any* reasoning for its unreasonable attempt to obstruct GMO's right to expert discovery, other than vague and unsubstantiated references to "financial harm."

3. Your statement that GMO's offer to pay the contractual power rate "is insufficient as the contract rate for power is less than the market rate Whinstone would ultimately pay under your proposal" is made without your providing any information whatsoever concerning what Whinstone pays for power. How are we expected to negotiate on this point without any information or request as to some specific rate?

4. GMO did not "withdraw this offer at the outset of our meet and confer negotiations and then place this offer back on the table[.]" Rather, during our meet and confer, you asked if GMO would pay for Whinstone's power costs, which, according to you, are reflected by a "market rate" that is higher than GMO's contract rate. In sum, GMO's motion anticipated paying GMO's contract rate, and we later clarified (per your request) that GMO would indeed pay power costs at the contract rate. This does not reflect, as you state, GMO "withdrawing [its] offer" before "plac[ing] this offer back on the table."

Notwithstanding our disappointment with how Whinstone has handled these negotiations thus far and its utter refusal to make any counter-offers or offer any reasoning for its position, GMO would propose the following given the Judge's Order that we attempt to reach a resolution:

1. As you know, our expert believes that eight weeks are needed to fully assess GMO's

   operations at the Texas Data Center.  However, if Whinstone is able to move quickly to make the Data Center available for inspection at full capacity, we are willing to offer less in an effort to further a compromise.  We would therefore propose that GMO's expert will make three additional visits to the data center, spread over six weeks, on the conditions that: (1) the power remain up and running for the entirety of the six weeks, (2) Whinstone will replace the inoperable transformers servicing GMO's machines with working transformers of the same model from other parts of Building A by August 18, provided that those replacement transformers are not currently operating/servicing other parts of Building A, and (3) GMO is permitted to install temperature monitoring by Monday, with monitoring to occur for the duration of the six weeks.

2. As stated previously, GMO will pay Whinstone for power at the same rate it paid under the Texas Agreement.

3. As stated previously, GMO agrees to the testing of miners stored in Building X, as long as it can participate in that process, as well as any process for testing machines that are ultimately removed from operation in Building A. However, Whinstone needs to provide specific details concerning how it plans on testing GMO's machines, so that GMO can adequately prepare for the testing process.

We note that the above offer removes GMO's proposed requirement that Whinstone produce certain technical documents in advance of our expert's visit to the Texas Data Center. While we're willing to de-couple this demand from this particular issue, GMO reiterates that it has propounded document requests on these very technical issues, and reserves all rights, including the ability to bring motions to compel, with regard to those document requests. GMO further reserves its right to seek further relief from the Court in the event later productions or positions taken by Whinstone reveal that additional expert inspection would have been necessary.

While Whinstone considers this offer, we will finalize a draft joint letter that includes GMO's position and room for Whinstone's position, and will plan to send that draft to you by around 1:30 EST.

**HAYNES BOONE**

**Michael Freyberg** | Associate | He/Him/His
michael.freyberg@haynesboone.com | (t) +1 303.382.6233

**From:** Tancil, Jillian <jtancil@debevoise.com>
**Sent:** Tuesday, August 8, 2023 7:26 AM
**To:** Freyberg, Michael <Michael.Freyberg@haynesboone.com>; Thorne, Leslie <Leslie.Thorne@haynesboone.com>
**Cc:** O'Connor, Maeve <mloconnor@debevoise.com>; Greenfield, Elliot <egreenfield@debevoise.com>; Fetzer, Brandon <bfetzer@debevoise.com>
**Subject:** GMO v. Whinstone Joint Letter

**EXTERNAL:** Sent from outside Haynes and Boone, LLP

Mike,

Given our recent discussions, we believe it makes sense to proceed as if we are filing the joint letter at 5 pm today.  Please let us know what you have in mind for the exchange of drafts.

Thank you,
Jillian

**Debevoise & Plimpton**

**Jillian Tancil**
Associate

jtancil@debevoise.com
+1 212 909 6530 (Tel)

www.debevoise.com

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise. Instead, please notify us immediately by return e-mail (including the original message in your reply) and by telephone (you may call us collect in New York at 1-212-909-6000) and then delete and discard all copies of the e-mail. Thank you.
The latest version of our Privacy Policy, which includes information about how we collect, use and protect personal data, is at www.debevoise.com.