UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GMO GAMECENTER USA, INC. and GMO INTERNET GROUP, INC., <br><br> *Plaintiffs*, <br><br> - against - <br><br> WHINSTONE US, INC., <br><br> *Defendant.* | Civil Action No. 1:22-cv-05974-JPC |
| WHINSTONE US, INC., <br><br> *Counterclaim Plaintiff*, <br><br> - against - <br><br> GMO GAMECENTER USA, INC. and GMO INTERNET GROUP, INC., <br><br> *Counterclaim Defendants*. | |

### SUPPLEMENTAL DECLARATION OF KENYON HAYWARD IN SUPPORT OF GMO'S ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER TO PRESERVE EVIDENCE AND THE STATUS QUO

KENYON HAYWARD, pursuant to 28 U.S.C. 1746, declares as follows:

1. I am the Co-Founder of HashWatt, Inc., a Bitcoin mining company based in the United States. I have an extensive understanding of Bitcoin mining operations, including Bitcoin mining protocols, custody layer, security protocols, pool development, energy development, partner and channel development for hosting, capital formation, P&L responsibilities, Bitcoin data center build out, electrical engineering, service deliveries, power purchase agreements, and custody for physical and digital asset management. My understanding of Bitcoin mining operations stems from, among other things, (i) eight years in the Bitcoin investment/blockchain trading field;

(ii) founding and operating HashWatt, including HashWatt's Bitcoin mining data center, since 2019; and (iii) my experience as a cryptocurrency miner since 2016.

2. As it relates to this matter, I have been retained by Haynes and Boone LLP, counsel for Plaintiffs and Counterclaim Defendants GMO Gamecenter USA, Inc. and GMO Internet Group, Inc. (collectively, "GMO") as an expert consultant. I respectfully submit this supplemental declaration in support of GMO's Order to Show Cause for a Temporary Restraining Order to Preserve Evidence and the Status Quo (the "OSC") against Defendant and Counterclaim Plaintiff Whinstone US, Inc. ("Whinstone"), and for such other and further relief as this Court deems just and proper.

3. I am submitting this supplemental declaration in support of the OSC because my prior Declaration in Support of the OSC, *see* ECF No. 74 (the "First Hayward Declaration"), pre-dated my two-day visit to Whinstone's Bitcoin mining data center located in Rockdale, Texas (the "Texas Data Center") on August 1 and August 2, 2023. This two-day visit occurred as part of my expert work on behalf of GMO for this matter, and specifically so that I could gather at least initial information about GMO's Bitcoin mining machines in operation at the Texas Data Center and the conditions of the Texas Data Center.

4. As noted in the First Hayward Declaration, based on my review of GMO's Third Amended Complaint (ECF No. 30), Whinstone's Answer and Counterclaims (ECF No. 34), GMO's Answer to Whinstone's Counterclaims (ECF No. 37), and the parties' initial disclosures filed in this matter, there are many claims and defenses made by the parties that concern the operation of GMO's machines and Whinstone's handling of such machines. Specifically, and by way of example only, GMO has alleged that Whinstone has failed to provide adequate power to GMO's machines and that Whinstone has removed GMO's machines from operation. Whinstone

has alleged that GMO's machines were/are old and in a state of disrepair. Both parties have asserted that the other party has caused GMO's machines to operate less efficiently, due to a variety of factors including power supply, the construction and/or conditions of the Texas Data Center, the age and condition of GMO's machines, GMO's machine repair process, the installation of GMO's machines, and a variety of other technical factors affecting the operations of GMO's machines at the Texas Data Center.

5. My two-day visit to the Texas Data Center on August 1 and August 2, 2023, validated the opinions expressed in the First Hayward Declaration, *i.e.*, that:

    a. While it is better than not visiting at all, my single visit on August 1 and August 2, 2023, was not sufficient for me to fully and properly assess the conditions at the Texas Data Center and their effect on GMO's Bitcoin mining machines.

    b. In order to fully and properly assess the operations of GMO's Bitcoin mining machines at the Texas Data Center and the parties' claims, defenses, and damages asserted in this matter, I need to visit the Texas Data Center to observe and document GMO's operating machines on multiple occasions over the course of at least two months and with the benefit of having reviewed Whinstone and GMO's technical documents concerning GMO's operations at the Texas Data Center that will be exchanged over the course of discovery.

6. I made several observations during my two-day visit to the Texas Data Center that underscore the reasons why additional inspections are important to fully and properly assess the operations of GMO's Bitcoin mining machines at the Texas Data Center, including the following:

    a. While viewing Building A of the Texas Data Center, I noticed that many of GMO's mining machines in Building A were not powered on. Representatives of

    Whinstone and its parent company, Riot Blockchain, Inc. ("Riot"), explained that at least three of Building A's transformers had malfunctioned, and so were not supplying power to many – approximately 15% to 20% – of GMO's machines in Building A. Therefore, I was unable to observe and assess many of GMO's machines in operation during my two-day visit. Also, if the transformers were operating and therefore 15% to 20% more of GMO's machines were running, the heat profile in Building A would significantly differ. My understanding is that Whinstone/Riot plans on fixing these transformers, at which point I could assess many more of GMO's machines in operation under a heat profile that is more representative of the number of machines GMO operated in Building A prior to Whinstone's June 29, 2023 shut down of GMO's machines.

b. Whinstone/Riot advised that it had powered on the electricity to GMO's machines and the evaporative cooling system in Building A just before my arrival at the Texas Data Center at approximately 9:45 a.m. on August 1. As a result, conditions at the Texas Data Center affecting GMO's machine operations (in particular, the temperature of the facility) were not representative of GMO's operations pre-dating Whinstone/Riot's power-down of GMO's machines on or about June 29, 2023. Prior to that date, GMO's machines were generally supplied electricity and cooling for longer periods of time, rather than electricity and cooling being started up on the morning of each day. In other words, mining machines operate very differently directly following electricity and cooling systems initiation, versus when they have been running for longer periods of time (*e.g.*, weeks or months).

c. During my visit, the evaporative cooling system provided by Whinstone/Riot was not operating in all areas where GMO's machines were running. Evaporative cooling reduces the temperature under which the machines operate, and therefore optimizes their performance. An opportunity to observe and document the operating machines on additional occasions, including potential changes in performance based on changes in the evaporative cooling system's operation, would be materially helpful to my assessment.

d. Several racks in Building A (which together can hold many thousands of machines) did not have any mining machines on them. During my visit, I was told by a Whinstone/Riot representative that GMO's machines had been removed from these racks in 2022 and replaced with machines from a different customer, but that other customer had recently asked for their machines to be removed from the racks.

e. On August 1 (the first day of my visit), I was told by a Whinstone/Riot representative that power to Building A would be shut off by mid-afternoon due to an ERCOT request to curtail power at the Texas Data Center. I was left with the impression that this is a daily or regular occurrence, but I do not currently have additional information regarding the frequency of power curtailment. Additional, periodic visits to the Texas Data Center will help provide me with information concerning the frequency of power curtailment and how it may affect GMO's operations.

f. During my visit, I also learned that Whinstone/Riot moved GMO's machines to different locations throughout the Texas Data Center over the course of the last three years, including over the last two months. For instance, many of GMO's

machines have been uninstalled, reinstalled, moved between Building A and Building X, packaged, stored, wrapped in plastic, and reorganized in various ways. As such, additional visits to the Texas Data Center over the discovery period will inform my understanding concerning these changes and how they impact GMO's operations and the performance of GMO's mining equipment.

7. My understanding from GMO's counsel is that Whinstone has stated that it does not maintain records concerning the temperature inside of Building A. If that is the case, then Whinstone is not adhering to best mining practices, and my assessment of GMO's operations would significantly benefit from GMO's installation of temperature monitoring devices inside of Building A at the beginning of the requested (at least) two-month period during which I would continue to observe GMO's operations at the Texas Data Center.

8. My visit to the Texas Data Center allowed me to gain some level of understanding of the processes employed by Whinstone/Riot that affect GMO's machine operations. However, to fully and properly analyze how exactly these processes affect GMO's operations on a day-to-day basis, I need to observe Whinstone/Riot's Texas Data Center processes affecting conditions regularly over a longer period of time and compare those operations to simultaneously generated machine data collected by GMO. By way of further explanation, it is very important for data centers housing Bitcoin mining machines to provide conditions for optimal performance (*e.g.*, proper cooling and dust filtration). My analysis would substantially benefit from evaluating machine performance by reviewing the data reflecting such performance and comparing it to the actual conditions as they exist at the facility. Combining the in-person visits with the simultaneous ability to track GMO's mining efficiency through GMO's system data will produce the most informed expert opinions concerning GMO's operations.

9. Especially in light of the size and resulting complexities of GMO's operations at the Texas Data Center that I observed during my August 1 and 2 visit, two days is a mere snippet in time compared to the three-plus years that GMO's machines have been hosted at the Texas Data Center. The opportunity to make visits on days that are spread apart over at least a two-month period will allow me to observe varied conditions affecting GMO's operations that were not able to be captured by my August 1 and 2 visit, including, among other things: weather conditions,[1] the number of operational transformers and evaporative walls, the number of GMO's machines supplied with power, shutdowns related to demand response (or otherwise), the temperature inside Building A, and GMO's miner repair activities. The variation in conditions increases the likelihood that I will be able to document GMO's operations and Building A under different, representative conditions, given GMO has operated its machines at the Texas Data Center for over three years.

10. To fully and properly assess the operations of GMO's Bitcoin mining machines at the Texas Data Center, power must be continuously supplied to GMO's mining machines for the (at least) two-month period during which I could observe and document GMO's operations at the Texas Data Center. This is because the continuous provision of power will allow me to observe and document GMO's machines under power supply and heat conditions closer to how they were before Whinstone powered down GMO's machines on June 29. In other words, GMO's machines were not powered up and down every day, prior to that time, nor would powering up and down the machines every day constitute best mining practices. In addition, powering up and down GMO's

---

[1] While the outside temperature will vary throughout any single day, different days that are spread apart increase the variation of outside temperatures. By way of example, if I visit the Texas Data Center on August 10, then again on September 10, then again on October 10, the high outdoor temperature will be more likely to vary significantly amongst these days, and so will the delta between Building A high temperature and outdoor high temperature (which delta is a meaningful statistic for me to analyze).

7

machines negatively impacts their performance, as compared to a more consistent power supply. Furthermore, the continuous supply of power is important to my ability to monitor the temperature of Building A, which monitoring will significantly benefit my expert analysis in light of the fact that Whinstone/Riot does not maintain records concerning the temperature inside of Building A.

11. A two-month (or longer) period during which I could continue to assess GMO's machine operations at the Texas Data Center will also provide time for Whinstone and/or Riot to (i) fix the inoperable transformers I observed during my August 1 and August 2 visit, and (ii) disclose technical documents that will be useful to me during future visits to the Texas Data Center. Records that will be useful to me (and from my understanding from GMO's counsel, have not yet been disclosed by Whinstone in this action), include, but are not limited to: (i) day-to-day records tracking power supply to Building A, including transformer-level reporting; (ii) day-to-day temperature records of Building A, should Whinstone in fact possess these records;[2] (iii) records reflecting repair activities on transformers, cooling walls, and dust removal; (iv) records reflecting GMO's machine conditions; and (v) records of the location of GMO's mining machines, including records concerning relocation/removal of GMO's machines and the timing thereof. Analyzing these records before my last visit to the Texas Data Center will allow me to compare the records against observations made during in-person visits, and further allow me to query investigation of certain items ascertained from the records during my in-person visits.

    a. Some specific examples of how these records will make my future Texas Data Center visits more productive include the following: (i) my review of records concerning Building A transformer breakdowns will allow me to determine

---

[2] As noted above, my understanding from GMO's counsel is that Whinstone has stated that it does not maintain records concerning the temperature inside of Building A.

whether any future observations of inoperable transformers is representative of historic conditions, (ii) my review of records concerning machine conditions will allow me to query during my in-person visits whether any suboptimal conditions reflected on the records were caused by particular conditions (*e.g.*, temperature or dust) observed at the Texas Data Center, and (iii) my review of records showing where GMO's machines were located at particular points in time will allow me to investigate whether such locations of GMO's machines influenced mining performance, in light of my observations of varied conditions amongst different buildings of the Texas Data Center.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 8, 2023.

                                                                    _____
                                                                      KENYON HAYWARD

**CERTIFICATE OF SERVICE**

I, Leslie Thorne, declare under penalty of perjury that on August 8, 2023, I served this SUPPLEMENTAL DECLARATION OF KENYON HAYWARD IN SUPPORT OF GMO'S ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER TO PRESERVE EVIDENCE AND THE STATUS QUO on all counsel of record via ECF filing.

By: */s/ Leslie C. Thorne*
Leslie C. Thorne
leslie.thorne@haynesboone.com
Alexandra Larkin
alexandra.larkin@haynesboone.com
Michael Freyberg
michael.freyberg@haynesboone.com
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989

**ATTORNEYS FOR GMO GAMECENTER USA, INC. and GMO INTERNET GROUP, INC.**