UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GMO GAMECENTER USA, INC. and GMO INTERNET GROUP, INC.,<br><br>        *Plaintiffs*,<br><br>- against -<br><br>WHINSTONE US, INC.,<br><br>        *Defendant.* | Civil Action No. 1:22-cv-05974-JPC-KHP |
| WHINSTONE US, INC.,<br><br>        *Counterclaim Plaintiff*,<br><br>- against -<br><br>GMO GAMECENTER USA, INC. and GMO INTERNET GROUP, INC.,<br><br>        *Counterclaim Defendant*. | **ESI Plan and [Proposed] Order** |

The parties in this action stipulate and agree that the following ESI Plan and [Proposed] Order shall govern the preservation, collection and production of electronically stored information and documents in this action.

**(1)    Description of Claims/Counterclaims/Crossclaims**:

Description of Plaintiffs' Claims: Plaintiffs GMO Gamecenter USA, Inc. and GMO Internet Group, Inc. (collectively, "GMO") assert claims of breach of contract on the basis of Whinstone's breaches of the Colocation Services Agreement (Texas) (the "Texas Agreement").

Description of Defendant's Counterclaims: Defendant/Counterclaim Plaintiff Whinstone asserts counterclaims of breach of contract, unjust enrichment and declaratory judgment on the basis of GMO's breaches of the Texas Agreement.

    **(a)    Plaintiff's Estimated Monetary Damages and Description of Other Relief Sought:** An amount determined at trial, but no less than $156,000,000.

    **(b)    Defendant's Estimated Damages on any Counterclaim/Cross-Claims and Description of Other Relief Sought:** An amount to be determined at trial, but at least $40,000,000.

> *By signing below, counsel for the parties confirm that they have factored in the potential damages and relief sought in this case, as well as the resources of the parties, to develop an ESI Plan that is proportional to the needs of this case.*

**(2)** **Meet and Confer**. Pursuant to Fed. R. Civ. P. 26(f), counsel are required to meet and confer regarding certain matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel hereby certify that they have met and conferred to discuss these issues.

Date(s) of parties' meet-and-confer conference(s): GMO's counsel and Whinstone's prior counsel held a meet and confer on September 22, 2022 in advance of the Rule 16 Conference on October 25, 2022. GMO's counsel and Whinstone's current counsel held a meet and confer on April 20, 2023, in advance of the Case Management Conference on the same date.

> *By signing below, the parties confirm that they have reviewed Judge Parker's Discussion Topics for Rule 26(f) Meeting.*

**(3)** **Preservation.**

    **(a)** **The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: (e.g., retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc.)**

The Parties' Joint Response: The parties have agreed to generally cooperate with regard to the scope and methods of preservation. Each party is aware of the other party's (i) custodians whose electronic data is being preserved, and (ii) issuance of a litigation hold to all potential custodians. To the extent issues arise concerning the obligation to preserve relevant ESI, the parties will meet and confer to address these issues.

    **(b)** **State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications.**

The Parties' Joint Response: The parties have acknowledged that they have distributed such communications to all potential custodians.

**(4)** **Collection**

    **(a)**     **State the extent to which the parties have agreed on the scope of documents to be collected (e.g., custodians and files/folders, servers, databases) for search and review and agreement on methods of collection.**

The Parties' Joint Response: The parties are collaborating on the scope of documents to be collected, as well as the methods concerning searching for, reviewing, and collecting such documents. The parties have already exchanged proposed search terms and custodians, and will continue to work together on document collection, searches, and review.

To the extent discovery in this case so requires, the parties will meet and confer regarding the procedures for the collection and preservation of physical evidence, which may be memorialized and submitted to the court in a separate stipulation if necessary.

    **(b)**     **Source(s) of Electronically Stored Information. The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information [e.g., email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data, etc.]:**

Plaintiff(s): Emails, other communications including Chatwork and Slack, texts/WhatsApp messages, applications (including Monday.com), cloud systems, external drives, local drives, and databases or networks containing information about the status or performance of GMO's miners.

Defendant(s): Emails, other communications including Discord, Signal, texts/WhatsApp messages, applications (including Monday.com), cloud systems, external drives, local drives, and databases or networks containing information about the status or performance of GMO's miners.

    **(c)**     **Custodians/Databases. The parties have agreed that data will be collected from the following custodians/databases for review:**

Plaintiff(s): Hidetoshi Kawagome, Hideyuki Matsui, Hiroya Tsukahara, Masaya Yanagi, Miki Yato, Satoshi Makita, Ami Matsumoto, Yoshiaki Sato, Hirofumi Yamashita, and Tadashi Ito.

Defendant(s): Chad Harris, David Schatz, Heath Davidson, Lauren Matherne, Lyle Theriot, Megan Brooks-Anderson and Ashton Harris.

Both sides have proposed additional custodians that the other side has objected to using, but the parties have agreed to table these discussions until after the next production of documents. The parties reserve the right to seek documents from additional custodians if doing so becomes necessary during the course of discovery.

**(5)**     **Search and Review**

    **(a)**     **The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. (Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc.) To the extent the parties have reached agreement as to search and review methods, provide details below:**

<u>The Parties' Joint Response:</u> The parties have agreed to exchange proposed search terms and ultimately agree on search terms to be applied to their respective custodians' documents and repositories. As part of this process, the parties may exchange hit reports and responsiveness rates. The parties have also discussed translating search terms to be applied to GMO's documents into Japanese and having Japanese-speaking attorneys review documents written in Japanese.

**(6)**     **Production**

    **(a)**     **Limitations on Production. The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) date ranges for which potentially relevant data will be drawn; (iii) timing of productions (including phased discovery or rolling productions); (iv) prioritization of review; and (v) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:**

<u>The Parties' Joint Response:</u> The parties are collaborating on the scope of production, including custodians, search terms, and date ranges. The parties will meet and confer regarding any issues pertaining to (iii), (iv) and (v) above in a good faith effort to come to an agreement.

    **(b)**     **Form(s) of Production and Metadata to be produced:**

        **(1)**     **The parties have readied the following agreements regarding the form(s) of productions and metadata fields to be produced:**

<u>The Parties' Joint Response:</u> All electronically stored information ("ESI") shall be produced in accordance with the following specifications: all documents are to be

produced in searchable, bates-stamped, single-page TIFF format (or JGP format if in color) images (300 DPI) with accompanying load file identifying document breaks, with a placeholder image for files produced in native form, and document level text or OCR for documents without extractable text. All spreadsheet files (*e.g.*, Microsoft Excel documents), PowerPoint documents, video, audio, and database-type files (*e.g.*, Microsoft Access) will be produced in native format. Parent-child relationships (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved.  Further, the load files will contain the following metadata:

- a. For all documents: Beginning Bates Number (ProdBeg), Ending Bates Number (ProdEnd), Beginning Bates Number of Attachment(s) (BegAttach), Ending Bates Number of Attachment(s) (EndAttach), Production Volume (ProdVol), Page Count, Custodian, All Custodians, Document Type, and Text File Path.
- b. For e-mails, the following fields: To, From, Subject, CC, BCC, Date (Sent and Received), Time (Sent and Received), Time Zone (UTC), File Extension, and Custodian.
- c. For e-mail attachments and other documents with families or embedded documents or links, the following fields: BegDoc, EndDoc, BegAttach, End Attach, GroupID, File Name, Native File Path, and File Extension.
- d. For non-e-mail documents: Custodian, File Type, File Name, Document Title, File Extension, Author, Company, Date/Time Created, and Date/Time Last Modified.
- e. For all e-mails and documents, the following should also be produced: MD5Hash, Doc Extension, and File Name.
- f. The metadata will be produced together with the corresponding documents.

**(2)     Please specify any exceptions to the form(s) of production indicated above (e.g., word processing documents in TIFF with load files, but spreadsheets in native form):**

<u>The Parties' Joint Response:</u> See above.

**(3)     Methods to expedite review. The parties have discussed and agree to the following (e.g., de-deduplication, email threading, etc.)**

<u>The Parties' Joint Response:</u> The parties agree that they may use generally accepted methods of de-duplicating and email threading to expedite review, but that any unique documents or documents (such as emails) with attachments will be produced. Emails will be deduplicated at the family level so that component messages and attachments are not removed during deduplication.

  **(4)**  **Privileged Material.**

    **(a)**  **Identification. The parties have agreed to the following method(s) for the identification (e.g., form of logs, acceptability of categorical logs for certain categories of communications, production of metadata log in lieu of or in advance of more limited document by document log, categories of documents that need not be logged, disclosure of number of documents withheld pursuant to certain privileges in lieu of document by document log), and the redaction of privileged documents:**

The Parties' Joint Response: The parties will exchange detailed, document-by-document metadata privilege logs listing the documents over which any privilege is asserted. Privileged attachments shall be logged separately from, but consecutively with, the privileged emails enclosing the attachments. The parties shall meet and confer to discuss the timing for the exchange of logs and the appropriate treatment of privileged communications regarding this litigation post-dating the filing of the complaint.

    **(b)**  **Inadvertent Production / Claw-Back Agreements. Pursuant to Fed R. Civ. Proc. 26(b)(5) and F.R.E. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g. "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to F.R.E. 502(d), etc.) (the parties are referred to the Rule 502 order in Judge Parker's form confidentiality order):**

The Parties' Joint Response: The parties have entered into a confidentiality order, which was approved by Judge Parker on January 10, 2023. The confidentiality order governs the issues raised above.

    **(c)**  **The parties have discussed a 502(d) Order. Yes <u>X</u>; No \_**

**(5) Cost of Production. The parties have analyzed their client's data repositories and have estimated the costs associated with the production of electronically stored information. The factors and components underlying these costs are estimated as follows:**

  **(1)**  **Costs:** Unknown at this time.

  **(2)**  **Cost Allocation. The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any:** None.

  **(3)**  **Cost Savings. The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:** None.

<u>The Parties' Joint Response</u>: The parties are in the process of fully understanding the volume of data held by each custodian and repository to be searched for relevant documents. The costs of production will depend significantly on the volume of data, translation costs, and other factors. The parties have agreed to bear their own costs related to producing their own documents. The parties will make efforts to reduce costs related to collection, review, and production of documents.

**The preceding constitutes the agreement(s) reached between the parties to certain matters concerning electronic discovery as of this date. Counsel certify that in connection with preparation of this ESI Plan and [Proposed] Order they are sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.**

**Party:  GMO Internet Group, Inc. and  GMO  Gamecenter  USA,  Inc.**

By: *Leslie C. Thorne*

**Party:   Whinstone US,  Inc.**

By: *Maeve O'Connor*

**Dated:_____, 20___**

SO ORDERED:

**Katharine H. Parker United Stated Magistrate Judge**