# EXHIBIT B

μk /ᴌ

# W Colocation Services Agreement
# GMO Internet Group



# CONTENTS

**Clause**                                                                          **Page**

1    DEFINITIONS                                              3
2    ORDER PROCEDURE                                          5
3    SERVICE DESCRIPTION                                      7
4    SERVICE SPECIFICATION                                    9
5    OPERATIONS                                               9
6    INTERNET PROTOCOL ADDRESS                               13
7    CHARGES AND PAYMENT                                     13
8    CONFIDENTIALITY                                         15
9    LIABILITY                                               16
10   ASSIGNMENT                                              17
11   INTELLECTUAL PROPERTY RIGHTS                            18
12   FORCE MAJEURE                                           18
13   NOTICES                                                 18
14   SUSPENSION OF SERVICE                                   19
15   TERMINATION                                             20
16   ANTI-BRIBERY AND CORRUPTION                             21
17   APPLICABLE LAW                                          21
18   MISCELLANEOUS                                           22
19   ENTIRE AGREEMENT                                        22
20   COUNTERPARTS                                            23
21   THIRD PARTIES                                           23
22   FURTHER ASSURANCE                                       23

SCHEDULE: ACCEPTABLE USE POLICY

Initial: 

## W Colocation Services Agreement

**THIS AGREEMENT** (defined below) shall be effective upon the date of receipt of the electronic signature by Whinstone US, LLC

**BY AND BETWEEN**

**Whinstone US, LLC**, a company operating and existing under the laws of the state of Louisiana and having its registered office located at 4304 Firestone Road, Metairie, LA 70001 ("**Whinstone US, LLC**")

**AND**

The company listed on the Order Form (the "**Customer**"),

**WHEREAS**

Following discussions between the parties, the Customer wishes to purchase colocation services from Whinstone US, LLC.

**NOW THEREFORE,** the parties hereby agree as follows:

## 1   DEFINITIONS

1.1     In this Agreement (except where the context otherwise requires) the following words and expressions shall have the meanings set out below. Additional terms may be defined in the context of particular provisions of this Agreement:

"**Agreement**" means these terms and conditions and all Orders and any amendments or additions or replacements to any of the aforementioned;

"**AUP**" or "**Acceptable Usage Policy**" means Whinstone US LLC Acceptable Usage Policy from time to time which, at the date of this Agreement, is set out in Schedule to this Agreement;

"**Basic Remote Hands Service**" means the service detailed in Clause 3.2 below;

"**Business Day**" means a day which is not a Saturday, Sunday or a public holiday in United States;

"**Canadian Location**" means the service detailed in Clause 15.1 below;

"**Charges**" means the installation and rental charges and all other amounts stated to be payable by the Customer to Whinstone US, LLC for the Services on the Order Form;

"**Commencement Date**" means the date that the Customer accepts a quotation;

"**Confidential Information**" means the terms of this Agreement and all information whether in written or any other form which has been or may be disclosed in the course of the discussions leading up to the entering into or performance of this Agreement and which is identified as confidential or is clearly by its nature confidential including information relating to this Agreement or the Services, data used or generated in the provision of the Services, or any of Customer's products, operations, processes, plans or intentions, know- how, trade secrets, market opportunities, customers and business affairs;

Initial: _M K /⁄_

"**Connection**" means the connection between the CPE and the Internet;

"**Control**" means the power of a person to secure (whether by the holding of shares, possession of voting rights or by virtue of any powers conferred by articles of association, constitution, partnership agreement or other document regulating such person) that the affairs of another are conducted in accordance with its wishes and "Controlled" shall be construed accordingly;

"**CPE**" means Whinstone US Equipment located at a Site;

"**Customer Equipment**" means the Customer equipment installed in the Licensed Area;

"**Data Centre**" means Whinstone US, LLC 4304 Firestone Road Metairie, LA 70001;

"**Data Centre Rules**" means the rules applying to the Customer's use of the Data Centre;

"**Data Protection Laws**" means the laws and regulations governing the use of personal data;

"**Defaulting Party**" shall have the meaning set out in Clause 15.2 below;

"**Extended Term**" shall have the meaning set out in Clause 15.1 below;

"**Employment Liabilities**" means any action, award, claim, cost (including legal costs), damage, loss, demand, expense, liability, interest, fine, penalty or proceeding;

"**Force Majeure**" means any event beyond the reasonable control of either or both of the parties including war, civil war, armed conflict or acts of terrorism or a public enemy or other catastrophes, riot, civil commotion, malicious damage, compliance with any law or governmental order, rule or regulation or direction coming into force after the date of this Agreement, epidemics, pressure waves caused by devices travelling at supersonic speeds, nuclear accident, and acts of God and strikes, slowdowns, lockouts or other labor stoppages due to the employees other than the employees of Whinstone US, LLC affecting third parties which in each case causes either party to be unable to comply with all or a material part of its obligations under this Agreement;

"**Hardware**" means any firewall supplied by Whinstone US, LLC together with any other related equipment provided by Whinstone US, LLC hereunder as specified on the relevant Order Form;

"**Incoming Service Provider**" means any third party who will carry out activities for or on behalf of the Customer which previously comprised all or part of the Services;

"**Initial Term**" shall have the meaning set out in Clause 15.1 below;

"**Intellectual Property**" means all intellectual property, including patents, utility models, trade and service marks, trade names, domain names, rights in designs, copyrights, moral rights, topography rights, rights in databases, trade secrets and know-how, in all cases whether or not registered or registrable and including registrations and applications for registration of any of these and rights to apply for the same, rights to receive equitable remuneration in respect of any of these and all rights and forms of protection of a similar nature or having equivalent or similar effect to any of these anywhere in the world;

"**IP Connection Service**" means the connection to the Customer Equipment permitting communication with the Internet as specified in the Order Form;

"**legislation**" shall have the meaning set out in Clause 1.3.3 below;

"**Licensed Area**" means the floor area for the Customer Equipment being 1 square meter per 10KW of power or as otherwise specified in the Order Form;

"**Maintenance**" means any work carried out by Whinstone US, LLC in order to upgrade, improve or maintain the Service including any modification, change, addition or replacement which

Initial: _M k //_

does not detract from, reduce or impair the overall quality or performance of the Service;

**"Non-Defaulting Party"** shall have the meaning set out in Clause 15.2 below;

**"Order"** means a request for the provision of Services on an Order Form;

**"Order Form"** means an order form in the format provided by Whinstone US, LLC pursuant to which the Customer may request Services;

**"Owners"** shall have the meaning set out in Clause 11.1 below;

**"Personal Data"** shall have the meaning as defined under the Data Protection Laws;

**"party"** means Whinstone US, LLC and the Customer (as the case may be) and shall include their permitted assignees and **"parties"** shall mean both of them;

**"Renewal Term"** shall have the meaning set out in Clause 15.1 below;

**"Representatives"** means, in relation to any party, its officers, employees and agents;

**"RFU Date"** shall have the meaning set out in Clause 7.3 below;

**"Scheduled Maintenance"** means Maintenance that is: (i) carried out between the hours of 00.00am to 06.00am; and (ii) notified to the Customer at least five (5) Business Days in advance;

**"Service"** means the colocation service at the Data Center;

**"Specified Power Draw"** shall have the meaning set out in Clause 4.3.2 below;

**"Whinstone US Equipment"** means any equipment which is supplied by or on behalf of Whinstone US to the Customer for the purpose of providing the Services and includes any equipment specified on an Order Form; and

**"Working Hours"** means 08.00am to 05.00pm on a Business Day.

1.2    In the event of any conflict between any of the documents referred to in this Clause 1.2, they shall be given the following order of priority:

1.2.1    the terms of the relevant Order Form;

1.2.2    the terms set out in this Agreement; and

1.2.3    the terms set out in the AUP.

1.3    In the Agreement (except where the context otherwise requires):

1.3.1    except where the context expressly requires otherwise, references to Clauses, paragraphs and sub paragraphs are references to clauses, paragraphs, sub-paragraphs of or to this Agreement;

1.3.2    the headings contained in this Agreement are for convenience only and shall not influence the interpretation of this Agreement;

1.3.3    any reference to a statute, statutory provision, subordinate legislation, code or guideline (**"legislation"**) is a reference to such legislation as amended and in force from time to time and to any legislation which re-enacts or consolidates (with or without modification) any such legislation.

1.4    Whinstone US, LLC and the Customer each represents and warrants to each other that it has the power to enter into, exercise its rights under and perform and comply with its obligations under this Agreement and all actions, conditions and things required to be taken, fulfilled and done by it to so enter into, exercise its rights under and perform and comply with its obligations under this Agreement and ensure that those obligations are valid, legally binding and enforceable have been taken, fulfilled and done.

## 2   ORDER PROCEDURE

2.1    The Customer may at any time request that Whinstone US, LLC provide the Service. Following such a request, Whinstone US, LLC will prepare an Order Form for the requested

Initial: *M k / ℒ*

Service (subject to availability) and send such Order Form to the Customer. Each such Order Form shall be binding only when Whinstone US, LLC provides electronic written acceptance. Whinstone US, LLC shall not refuse to send an Order Form and to provide electronic written acceptance upon the receipt of an Order Form from the Customer which meet the format requirements.

Initial: _M k /ᐧ_

2.2    The Customer shall only be entitled to cancel a Service upon full payment of all Charges in respect of such Service that have been provided up to the date of the written notice of cancellation. In case of cancellation attributable to Whinstone US, LLC, the Customer shall have the right to cancel a Service free of any Charges. Any such Charges shall be invoiced on or after the date of cancellation of the Service by the Customer and payable in accordance with Clause 7.

# 3   SERVICE DESCRIPTION

3.1    Data Centre Facilities

3.1.1    Whinstone US, LLC will provide an installation environment for the Customer Equipment including, but not limited to, the Licensed Area in two buildings, rack systems, electricity supply (including PDU), transforming equipment, free air cooling (including evaporative-cooling), smoke detection, IP Connection Service and physical security. Physical security includes 24 hour patrol, camera security, and a fence around the Licensed Area.

3.1.2    The Customer shall be granted, free of charge, escorted access to the Data Centre for equipment installation, removal, additions, subtractions or physical maintenance by prior appointment.

3.1.3    With written prior consent of the Customer, Whinstone US, LLC may relocate the Customer Equipment within the Data Centre or to another facility operated by Whinstone US, LLC. Any such relocation of the Customer Equipment will be carried out by Whinstone US, LLC. Any costs incurred in relation to such relocation will be borne by Whinstone US, LLC.

3.1.4    The Customer shall at all times comply with the Data Centre Rules that have been provided to the Customer in advance; provided, however, that the Customer shall only be obligated to comply with such Data Centre Rules to the extent that they are reasonable.

3.2    Basic Remote Hands Service

3.2.1    Basic Remote Hands Service is available twenty-four (24) hours a day, seven (7) days a week at the rates set out in the Order Form. Where requested by the Customer, Whinstone US, LLC staff shall be available to perform the following tasks only on the instructions of the Customer in respect of the Customer Equipment:

i.    Pushing a button;

ii.    Switching a toggle;

iii.    Power cycling (turning on/off) the Customer Equipment;

iv.    Re-setting, rebooting the Customer Equipment;

v.    Securing cabling to connections

vi.    Observing, describing and/or reporting to the Customer indicator lights or display information on machines or consoles;

vii.    Cable organization;

viii.    Modifying basic cable layout, labelling and/or re-labelling of the Customer Equipment;

ix.    Cable patching;

x.    Checking alarms for faults; and/or

Initial: _M k /L_

   xi.  Inserting/removing discs or equivalent storage devices
      into/from the Customer Equipment.

3.2.2    Charges for the Basic Remote Hands Service are set out in the OrderForm.

*M k/k*

3.2.3 The Customer shall be responsible for labelling the Customer Equipment and any cabling to enable Whinstone US, LLC staff to perform the Basic Remote Hands Service. Whinstone US, LLC reserves the right to refuse to perform this Basic Remote Hands Service only where the Customer Equipment is not adequately labelled or where instructions from the Customer are insufficient or unclear to perform the Basic Remote Hands Service. In such case, Whinstone US, LLC shall immediately contact the Customer and shall follow the Customer's instructions to perform the Basic Remote Hands Service.

3.2.4 The following services, are not included in the Basic Remote Hands Service, but may be provided by Whinstone US, LLC to the Customer on a best efforts basis pursuant to the prior agreement between the parties:

    i.     Installing applications or software to the Customer Equipment;

    ii.     Uploading of data to the Customer Equipment;

    iii.     Configuring the Customer Equipment operating system;

    iv.     Configuring any software or applications on the Customer Equipment;

    v.     Hardware fault diagnosis;

    vi.     Software fault diagnosis;

    vii.     Rectifying problems caused by the Customer Equipment or software;

    viii.     Rectifying problems caused by the Customer; or

    ix.     Any service whatsoever requiring the opening of the outer casing of any of the Customer Equipment.

3.2.5 Any Basic Remote Hands Service provided by Whinstone US, LLC shall be billed in thirty (30) minute segments with each event rounded up to the next 30-minute segment based on a rate of $70.00 per hour. The Customer will be informed of the total time incurred after each time Whinstone US, LLC provides the Basic Remote Hands Service. Whinstone US, LLC shall log such time incurred for the Basic Remote Hands Service both on the Whinstone US, LLC internal system and physically on the Licensed Area.

3.2.6 Subject to clause 3.2.1, Whinstone US, LLC shall endeavor to respond to any Customer request for support of the Basic Remote Hands Service within approximately 30 minutes of receipt by Whinstone US, LLC of such request and in any case no later than 4 hours after receiving such request. Requests for support of the Basic Remote Hands Service shall be made by phone or tickets system to the notified supportnumber.

Initial: _M k /k_

3.2.7   No element of technical diagnosis, analysis or advice is provided under the Basic Remote Hands Service. No liability is accepted by Whinstone US, LLC for any loss or damage suffered by the Customer due to Whinstone US, LLC staff following instructions issued by or on behalf of the Customer, except that this Clause 3.2.7 shall not apply in cases of Whinstone US, LLC's willful misconduct or negligence.

3.2.8   Other than in respect of the services specified in this Clause as being included in the Basic Remote Hands Service, it is the Customer's responsibility to maintain and support the Customer Equipment.

# 4   SERVICE SPECIFICATION

4.1   The following services are included in the standard Service for which no extra fee is caused:

4.1.1   License of the Licensed Area;

4.1.2   Provision of the cabling necessary in accordance with the Networking-sheet (Exhibit 1) for a connection to the IP Connection Service by way of a CAT 5 Ethernet cable;

4.1.3   Escorted access by the Customer's employees to the Customer Equipment at anytime 24 hours a day;

4.1.4   Monitored alarm and security call out service;

4.1.5   Single feed power connection to the PDU with a specified power draw as detailed in Clause 4.3 below (the "Specified Power Draw");

4.1.6   Fire detection and alarm system;

4.1.7   After the RFU Date, acceptance of delivery of the Customer Equipment between 10.00am to 4.00pm on Business Days, subject to two (2) Business Days' notice, to be stored prior to installation;

4.1.8   Initial construction work of Customer Equipment (including unpacking, assembly and installation, LAN cable and power cable connection, initial setting and garbage disposal)

4.1.9   Dual power circuits

4.1.10   Access circuits

4.1.11   Cabling services (except the services provided in clause 4.2.1)

4.1.12   IP address and domain names

4.1.13   Whinstone US, LLC will be solely responsible to handle any complaints from neighbors of the building with respect to the noise from the Customer Equipment and shall hold the Customer harmless from any responsibility or costs arising out of or in relation to such complaints.

4.2   The following Services are not included in the standard Service and are not included in this Agreement unless specified in the relevant Order Form:

4.2.1   Power cable, miner and cable that is removable and relocatable

4.2.2   Power supplies

4.3   Specified Power Draw

4.3.1   Whinstone US, LLC will provide the Customer with power as specified in the Order Form.

4.3.2   Customers who use over and above the specified power draw ("**Specified Power Draw**") will be charged for additional usage at Whinstone US, LLC's then- current standard rates for over-usage.

4.3.3   If Whinstone US, LLC determines that the over-usage of power cannot be

4304 Firestone Road Metairie, LA 70001

Initial: _MK//_

reasonably permitted , Whinstone US, LLC reserves the right to require the Customer to remove or deactivate sufficient Customer Equipment to prevent such over-usage within 24 hours of notification  which describes in detail such reason for the removal or deactivation. Whinstone US, LLC shall consult with the Customer in good faith before the notification.

4304 Firestone Road Metairie, LA 70001

11

Initial: _M k /_

# 5  OPERATIONS

5.1    Whinstone US, LLC reserves the right to vary the technical specifications of the Service where necessary for operational reasons and without detracting from, reducing or impairing the overall quality or performance of the Service, after giving reasonable written notice to the Customer (except in the case of an emergency where notice is not possible; provided, however, that in such case, Whinstone US, LLC shall provide notice to the Customer then as soon as reasonably possible).

5.2    Without prejudice to Clause 5.1, Whinstone US, LLC reserves the right to, after providing the Customer with reasonable advanced written notice (provided, however, that in the event of an emergency, as soon as reasonably possible) at any time to make any change, addition to or replacement of any part of the Services where this is required to conform with any applicable safety, statutory or legal requirement, provided that this does not detract from, reduce or impair the overall quality or performance of the Service.

5.3    The Customer may report any claims including failures of performance of the Service by Whinstone US LLC  to the Whinstone US, LLC support center at any time. Whinstone US, LLC shall take all actions necessary to remedy such failures as soon as possible.

Initial: _M K / K_

## 6   INTERNET PROTOCOL ADDRESS

6.1   The Customer will have a non-transferable license to use any IP address allocated by Whinstone US, LLC to the Customer for the duration of this Agreement. If this Agreement is terminated for any reason, the Customer's license to use the IP address shall automatically terminate.

## 7   CHARGES AND PAYMENT

7.1   In consideration of the provision of the Services, the Customer shall pay the Charges in accordance with this Clause 7.

7.2   Whinstone US, LLC shall issue to Customer an invoice for all necessary equipment, power supplies, network cables, and similar components to take the Customer's miners online in conformance with the terms of this Agreement, and Customer shall pay the amount set forth in the invoice within fourteen (14) calendar days of receipt of such invoice for power supplies and within thirty (30) calendar days of receipt of such invoice for all amounts incurred for charges other than power supplies by wire transfer to Whinstone US, LLC's bank account. Whinstone US, LLC shall separately provide the Customer with the details of such bank account in advance.

7.3   Whinstone US, LLC shall notify the Customer of the date on which the Service is ready for use ("**RFU Date**"). Unless the Customer notifies Whinstone US, LLC that it does not consider the Service to be ready for use in writing within five (5) Business Days of the receipt date of the notice from Whinstone US, LLC (including details of any deficiency of the Service), the Customer shall be deemed to have accepted the Service on the RFU Date.

7.4   Whinstone US, LLC shall have the right to invoice the Customer for the Charges after completing delivery of the Service.

7.5   Whinstone US, LLC shall be entitled to invoice the Customer for any and all changes to the Service requested by the Customer pursuant to the agreement between the parties.

Initial: _M lc_

7.6 If the Customer fails to pay any amount owed under this Agreement by the dates set forth herein:

7.6.1 Whinstone US, LLC shall be entitled but not obliged to charge the Customer interest in the amount equal to 5% per year on the overdue amount from the due date up to the date of actual payment; and

7.6.2 Whinstone US, LLC has a general and particular lien over the Customer Equipment in an amount that corresponds to the sums that the Customer owes to Whinstone US, LLC that remain outstanding, and the Customer hereby grants a possessory pledge over the Customer Equipment for all sums owing by the Customer to Whinstone US, LLC until such sums have been paid and in which event:

(i) if any sums owing remain outstanding for a period of six (6) months from the relevant payment date, Whinstone US, LLC may (a) sell any or all of the Customer Equipment in an amount that corresponds to, but in no event shall exceed, the remaining outstanding sums owed by the Customer to Whinstone US, LLC, and (b) cease provision of the Services and shall not be in breach of this Agreement by doing so; and

(ii) the proceeds of sale or use of any Customer Equipment (including any digital currency generated) shall be applied in or towards the satisfaction of the lien, pledge and all sums owing by the Customer to Whinstone US, LLC, and Whinstone US, LLC shall pay to the Customer any surplus proceeds of sale after deduction of its costs of enforcing its right pursuant to this clause,

and the Customer agrees and acknowledges that it shall not remove any Customer Equipment in the range corresponding to the accrued payments from the Data Centre without the consent of Whinstone US, LLC in writing and that any access to the Customer Equipment or the Licensed Area by or on behalf of the Customer is subject to Whinstone US, LLC's consent each time and shall not invalidate this lien and pledge.

7.7 All Charges and payments referred to in this Agreement are stated exclusive of value added tax and all similar taxes and duties payable in respect of such payments. To the extent that such tax is properly chargeable to the Customer, the Customer shall pay at the time that the payment becomes due an amount equal to the value added tax properly chargeable upon such payment. Whinstone US, LLC shall provide the Customer with a value added tax invoice with respect to the payment.

7.8 All amounts due under this Agreement shall be paid in full without any deduction or withholding other than as required by law and the Customer shall not be entitled to assert any credit, deduction, counterclaim or abatement of any nature whatsoever against Whinstone US, LLC in order to justify withholding payment of any such amount in whole or in part.

Initial: _M k / k_

7.9     In the event of any failure by the Customer to make full payment to Whinstone US, LLC of any and all amounts due to Whinstone US, LLC pursuant to this Agreement, the Customer shall be responsible for all costs and expenses (including legal fees) which Whinstone US, LLC reasonably incurs in collecting such amounts.

7.10    The Customer is not required to pay charges for any period during which Whinstone US, LLC fails to provide the Services due to a reason attributable to Whinstone US, LLC.

# 8 CONFIDENTIALITY

8.1     The parties agree that Confidential Information:

     8.1.1     shall be used solely for the purpose for which it was furnished in connection with performance of this Agreement;

     8.1.2     shall be maintained in strict confidence and shall not be disclosed to third parties, provided, however, that Whinstone US, LLC and the Customer may disclose Confidential Information to its affiliates and sub-contractors and their respective employees who need to have access to such Confidential Information for the purposes of providing and receiving the Services on the condition that Whinstone US, LLC and the Customer shall procure compliance by such sub-contractors or affiliates and their respective employees with the terms of this Clause 8 ; provided, however, that Whinstone US, LLC and the Customer shall be responsible for any breach of the obligations set forth in this Clause 8 by such sub-contractors or affiliates and their respective employees; and

     8.1.3     upon termination of this Agreement shall be returned to the disclosing party, together with all copies, or (at the disclosing party's option) destroyed.

8.2     Any disclosure of Confidential Information permitted under Clause 8.1.2 shall be in confidence, and only be to the extent that any persons to whom the information is disclosed need to know the same for the performance of their duties and the receiving party shall be obliged to procure that all such persons are aware of the obligation of confidentiality and undertake to comply with it.

8.3     The obligations of confidentiality and restricted use set out in Clauses 8.1 and 8.2 are not applicable to Confidential Information that:

     8.3.1     was previously or becomes known to the receiving party, free from any obligation to keep the same confidential (provided that Confidential Information disclosed in contemplation of the provision of the Services shall still remain subject to such obligations);

     8.3.2     is or becomes generally available to the public, other than as a direct or indirect result of unauthorized disclosure by the receiving party, its affiliates or a person engaged by the receiving party or its affiliates contrary to their respective obligations of confidentiality;

     8.3.3     is shown to have been independently developed by the receiving party, its officers, employees, agents or contractors;

     8.3.4     the parties agree in writing that it need not be kept confidential; or

     8.3.5     is required to be disclosed by law or by regulation or by the order of any governmental authority or court provided that, to the extent permitted by law, prior to any disclosure, the receiving party notifies the disclosing party of the information to be disclosed and the circumstances in which the disclosure is alleged to be required as early as reasonably possible before such disclosure must be made and, at the disclosing party's request and cost, assists the disclosing party in avoiding or limiting any such disclosure.

Initial: _M K / K_

8.4    Without prejudice to any other rights and remedies that the disclosing party may have, the receiving party agrees that if Confidential Information is used or disclosed or threatened to be used or disclosed other than in accordance with the terms of this Agreement, the

Initial: _M k / k_

disclosing party shall, without proof of special damage, be entitled to seek an injunction, specific performance or other equitable relief for any actual or threatened breach of this Clause 8.

8.5   Notwithstanding Clause 8.1, Whinstone US, LLC and its affiliates may make reasonable references to the Customer as a customer of the Services in its advertising and/or promotional literature and other materials with the prior written consent of the Customer.

8.6   In order for Whinstone US, LLC to provide the Service, the Customer will need to supply certain information or data. Where such information or data constitutes Personal Data, Whinstone US, LLC will comply with the Data Protection Laws. The parties shall duly observe and comply with all their obligations under the Data Protection Laws in relation to any Personal Data processed in connection with this Agreement and shall render such assistance and co- operation as is reasonably necessary or reasonably requested by the other party in respect thereto.

8.7   It shall be the Customer's responsibility to keep any Personal Data provided to Whinstone US, LLC up to date and the Customer warrants and undertakes to Whinstone US, LLC that all of its Personal Data and contact details are accurate and complete.

8.8   Whinstone US, LLC may pass the Customer's Personal Data to Whinstone US, LLC affiliates and to any third-party suppliers Whinstone US, LLC may use to provide services that involve processing data on Whinstone US, LLC's behalf for the purpose of providing the Services and as contemplated by the terms of this Agreement; provided, however, that Whinstone US, LLC shall be responsible for any breach of the obligations set forth in this Clause 8 by such affiliates and third party suppliers.

# 9   LIABILITY

9.1   Neither party excludes or limits its liability to the other party for:

9.1.1   death or personal injury caused by its negligence;

9.1.2   fraud or fraudulent misrepresentation.

9.2   **Intentionally deleted**

9.3   Subject to Clauses 9.1, 9.4 and 9.5, and save in respect of Clause 11 and claims for outstanding payment but notwithstanding anything else in this Agreement, the aggregate liability of each party to the other in contract, tort (including negligence), for breach of a statutory duty or otherwise arising under or in connection with this Agreement or its subject matter shall be limited to a sum equal to the greater of: (i) the aggregate Charges payable by the Customer to Whinstone US, LLC in the twelve-month period immediately prior to the date on which the cause of action first arose or, if the Agreement had been in force for less than twelve months at that date, the annualized amount of the Charges payable by that date; and (ii) USD 250,000.

9.4   Subject to Clause 9.1 but notwithstanding anything else in this Agreement, the aggregate liability of:

Initial: _MK/L_

9.4.1   the Customer to Whinstone US, LLC for damage to property, in contract, (including negligence) or otherwise arising under or in connection with this Agreement shall be limited to the sum of USD 1,000,000 in aggregate; and

9.4.2   Whinstone US, LLC to the Customer for damage to property, in contract, tort (including negligence) or otherwise arising under or in connection with this Agreement shall be limited to a sum equal to the aggregate Charges payable by the Customer to Whinstone US, LLC in the twelve-month period immediately prior to the date on which the cause of action first arose or, if the Agreement has been in force for less than twelve months on such date, the annualized amount of the Charges payable by that date.

9.5   Subject to Clause 9.1 but notwithstanding anything else in this Agreement, in no event does either party accept liability to the other in contract, tort (including negligence), for breach of a statutory duty or otherwise arising under or in connection with this Agreement for, and the other party hereby waives and releases any claims it might otherwise have to be compensated in respect of, any of the following:

9.5.1   loss of revenue, loss of profit, loss of goodwill, loss of reputation, loss of anticipated savings, loss of business, loss of contracts;

9.5.2   any indirect, special or consequential loss or damage.

9.6   In no event will Whinstone US, LLC have any liability for non-provision or delay in the provision of the Services which:

9.6.1   can be reasonably attributed to the acts or omissions of the Customer, its affiliates, employees, workers, sub-contractors, agents or customers including but not limited to failure to provide complete, accurate information in a timely manner for Whinstone US, LLC;

9.6.2   arises from or as a consequence of use of the Services other than in accordance with the express terms of this Agreement; and/or

9.6.3   occurs during any period of suspension in accordance with Clause 14,

provided, however, that this Clause 9.6 shall not apply in the case of willful misconduct or negligence by Whinstone US, LLC, its affiliates, employees, workers, sub-contractors or agents.

9.7   The Customer acknowledges that Whinstone US, LLC would not enter into this Agreement at the prices herein without the foregoing limitations of liability. Each party acknowledges that the allocation of risk in this Agreement (including the exclusions and limitations set out in this Clause 9) has been freely negotiated at arm's length and is regarded by it as reasonable. The Customer acknowledges that it has had an opportunity to consider adequate insurance cover and to obtain professional advice in relation to this Clause 9.

9.8   In the event that any exclusion in Clause 9.5 is held to be invalid for any reason and either party becomes liable for loss of damage that may lawfully be limited, such liability shall be limited to the aggregate liability set out in Clauses 9.3 and 9.4.

9.9   Whinstone US, LLC shall not be liable for any claim arising under this Agreement unless the Customer gives Whinstone US, LLC written notice of the claim within twelve months of becoming aware of the circumstances giving rise to the claim.

9.10   Whinstone US, LLC will maintain a minimum insurance coverage of USD 7,000,000 per occurrence of general liability insurance for its facilities. This coverage will not include business income interruption coverage.

Initial: _M k / k_

# 10 ASSIGNMENT

10.1   The Service is provided for the Customer and the Customer's affiliates' use only (subject always to such use being in accordance with the terms of this Agreement) and the Customer undertakes not to otherwise resell, or lease the Service to any third party except for its affiliates without the prior written consent of Whinstone US, LLC. The Customer is and shall remain liable to Whinstone US, LLC for any act or omission of any of its Representatives and/or customers.

10.2   Whinstone US, LLC may, upon receipt of the Customer's prior written consent, assign, sub-license or deal in any other manner with this Agreement or any rights under the Agreement, or sub-contract any or all of any or all of obligations under this Agreement to one or more of its affiliates or to any third party upon a sale of all or substantially all of its assets and will provide notice to the Customer of any such assignment, provided, however, that the Customer is provided with the Services under the same terms and conditions as those of this Agreement until the expiration of the Initial Term or the relevant Extended Term, as the case may be, of this Agreement.

Initial: _MK/L_

# 11 INTELLECTUAL PROPERTY RIGHTS

11.1   All Intellectual Property in the Whinstone US Equipment and/or owned or used by Whinstone US, LLC and/or its affiliates, sub-contractors, agents and/or suppliers (**"Owners"**) in the performance of this Agreement shall be and will remain vested in the Owners and except as expressly provided in this Agreement, the Customer shall not acquire any rights, title or interest in or to any Intellectual Property owned and/or used by the Owners provided that the Customer is hereby granted at no additional cost a non-exclusive license to use all such Intellectual Property as is required to use the Service and the IP Connection Service in accordance with the terms of this Agreement until this Agreement is terminated or expires. The Customer shall indemnify Whinstone US, LLC in respect of any and all claims from third parties relating to infringement of third-party licenses or terms and conditions applicable to the use of the Service and the IP Connection Service by the Customer and/or its Representatives or customers, except in the case that the infringement is caused by the Intellectual Property of the Owners or the Whinstone US Equipment.

# 12 FORCE MAJEURE

12.1   Neither party shall in any circumstances be liable to the other for any loss of any kind whatsoever including any damages whether directly or indirectly caused or incurred by the other party by reason of any failure or delay in the performance of its obligations hereunder which is due to Force Majeure.

12.2   intentionally deleted

12.3   If either of the parties becomes aware of circumstances of Force Majeure which give rise to or which are likely to prevent the performance of any obligations on its part, it shall as soon as reasonably possible and in any event within five (5) Business Days after commencement of the Force Majeure serve notice in writing on the other party specifying the nature and extent of the circumstances giving rise to Force Majeure.

12.4   If either party is prevented from performance of substantially all of its obligations by Force Majeure for a continuous of more than two (2) months in total, the other party may terminate this Agreement by giving notice in writing to the other party at any time, in which case neither party shall have any liability to the other except that rights and liabilities which accrued prior to such termination shall continue to subsist. For the avoidance of doubt, the Customer may elect to continue this Agreement even after such two (2) months; provided, however, that the Customer shall not be required to pay any charges for the period that Whinstone US, LLC is prevented from performance of its obligations by Force Majeure.

# 13 NOTICES

13.1   Any notice given or made under this Agreement or required by law or regulation shall be in writing and in English and signed by or on behalf of the party giving it and shall be served by hand delivering it or sending it by courier (with signature required) to the address and for the attention of the relevant party set out in Clause 13.2 (or as otherwise notified by that

Initial: _M k̸/L̸_

party under this clause). Any notice shall be deemed to have been received at the time of delivery.

13.2   The addresses of the parties for the purposes of Clause 13.1 are:

    **13.2.1   Whinstone US, LLC**
        **4304 Firestone Road Metairie, LA 70001**
        **Marked for the attention of: Lyle Theriot**

    13.2.2    The Customer address as detailed on the Order Form.

13.3   In proving service, it shall be sufficient to prove that the envelope containing such notice was addressed to the address of the relevant party set out in Clause 13.2 (or as otherwise notified by that party under this Clause) and delivered to that address.

13.4   For the avoidance of doubt, notice given under this Agreement shall not be validly served if sent by email.

13.5   Either party may at any time notify the other of a change of address or person for the purposes of the serving of notices and the provisions of this Clause 13 shall apply to such notice.

# 14 SUSPENSION OF SERVICE

14.1   Whinstone US, LLC reserves the right to suspend this Service for the following reasons:

    14.1.1    to carry out Maintenance with the prior written consent of the Customer;

    14.1.2    to make any modification, change, addition to, or replacement of, the Whinstone US, LLC Equipment or any part of the IP Connection Service or the Service where this is required to conform with any applicable safety, statutory or legal requirements, provided that such modification, change, addition or replacement does not detract from, reduce or impair the overall quality or performance of the Services with prior written consent of the Customer;

    14.1.3    where the Customer fails to pay any Charges in accordance with Clause 7;

    14.1.4    where Whinstone US, LLC is obliged to comply with an order, instruction or request of Government, court, law enforcement agency or other competent administrative or regulatory authority;

    14.1.5    in an emergency; or

    14.1.6    where Whinstone US, LLC has reason to terminate this Agreement in accordance with its terms.

Initial: _MK/L_

14.2   Where suspension of the Services is necessary in accordance with the provisions of Clause 14.1.2, Whinstone US, LLC will carry out such work as Scheduled Maintenance but in circumstances where this is not possible, Whinstone US, LLC shall use all reasonable endeavors to perform such work between the hours of midnight and 6am and shall restore the Service as soon as reasonably practical in the circumstances.

14.3   Except where Whinstone US, LLC is entitled to and subsequently elects to terminate this Agreement in respect of such Service in accordance with the terms of this Agreement, in the case that Whinstone US, LLC suspends the Service in accordance with the provisions of Clause 14.1.3 or 14.1.6, Whinstone US, LLC shall use commercially reasonable efforts to reinstate the Service as soon as is reasonably practical upon Whinstone US, LLC's reasonable satisfaction that the grounds for suspension set forth in this Clause 14.2 are no longer applicable and subject to the Customer having paid to Whinstone US, LLC a reinstatement fee in respect of the restoration of such Service(s) in the amount of USD 250.00 (or such other amount as may be notified to the Customer from time to time) for each Service, which fee shall constitute **"Charges"** for the purposes of this Agreement. The provisions of Clause 9 shall apply to such reinstatement fees

14.4   If Whinstone US, LLC exercises its right of suspension under this Clause, this will not exclude its right to terminate this Agreement later in respect of that or any other event, nor will it prevent Whinstone US, LLC claiming damages from the Customer in respect of any breach.

## 15 TERMINATION

15.1   This Agreement shall commence on the Commencement Date and shall continue for a period of 120 months from the RFU Date (**"Initial Term"**) unless and until terminated in accordance with this Clause 15.

This Agreement shall be automatically extended for a period of 60 months (**"Extended Term"**) at the end of the Initial Term and at the end of each Extended Term.

The Customer has the right to relocate after the initial 36 months of the Initial Term from the Data Center to the another data center which Whinstone US, LLC plans to construct in Canada (**"Canadian Location"**) or any other available location that Whinstone US, LLC manages. If the customer relocates to the Canadian Location or any other available location that Whinstone US, LLC manages pursuant to the execution of its right set forth above, the Initial Term of the contract will renew automatically for an additional 24 month period ("Renewal Term").

The Customer can terminate the contract after the initial 36 months of the Initial Term with no penalty by notifying Whinstone US, LLC in writing 120 days prior to the end of the contract. Unless notified in writing, the Customer contract will renew automatically for an additional Renewal Term at any Whinstone US Colocation Sites.

The Customer may give written notice to Whinstone US, LLC not later than 120 Business Days before the end of the Initial Term or the relevant Extended Term, to terminate this Agreement at the end of the Initial Term or the relevant Extended Term, as the case may be. Unless the Customer gives written notices aforementioned to Whinstone US, LLC, the Term of this Agreement is extended under same conditions.

Initial: _M k/_

15.2 Either party (the **"Non-Defaulting Party"**) may terminate this Agreement (without prejudice to its other rights and remedies) with immediate effect by written notice to the other party (the **"Defaulting Party"**) if:

15.2.1 the Defaulting Party commits a material breach of any of its material obligations under this Agreement (including failing to pay any sums payable under this Agreement by the due date and failing to provide the Services) and if the breach is capable of remedy, fails to remedy it during the period of 30 days starting on the date of receipt of notice from the Non-Defaulting Party specifying the breach and requiring it to be remedied; or

15.2.2 the Defaulting Party becomes insolvent (including being unable to pay its debts as they fall due and/or that the value of its assets is less than the amount of its liabilities taking into account its contingent and prospective liabilities), proposes an individual, company or partnership voluntary arrangement, has a receiver, administrator or manager appointed over the whole or any part of its business or assets; if any petition shall be presented, order shall be made or resolution passed for its winding up (except for the purpose of a bona fide amalgamation or reconstruction), bankruptcy or dissolution (including the appointment of provisional liquidators/interim receivers or special managers); if it shall otherwise propose or enter into any composition or arrangement with its

Initial: _M K /F_

creditors or any class of them; if it ceases or threatens to cease to carry on business or if it claims the benefit of any statutory moratorium; or

15.2.3 the Defaulting Party suffers or there occurs in relation to that party, any event which is analogous to any of the events referred to in Clause 15.2.2 in any part of the world.

15.3 Either party reserves the right to terminate this Agreement with immediate effect by written notice and without further obligation or liability to the Customer as required by any law enforcement or other government or regulatory organization or authority or by the courts.

15.4 All rights and obligations of the parties shall cease to have effect immediately upon termination of this Agreement except that termination shall not affect:

15.4.1 accrued rights and obligations of the parties at the date of termination; and

15.4.2 the continued survival and validity of the rights and obligations of the parties under Clauses 8, 9, this Clause 15.4 and Clauses 17, 19 and 21 and any other provisions of this Agreement necessary for the interpretation or enforcement of this Agreement.

15.5 For the avoidance of doubt, save where otherwise agreed in writing between the parties, termination of any Service at a Site does not constitute termination of this Agreement, and, where this Agreement has been terminated in accordance with its terms, all Services will automatically terminate upon such termination.

15.6 Upon expiration or termination of the Service or of this Agreement, the Customer shall surrender the Licensed Area in good condition, except for any reasonable wear and tear.

15.7 The Customer agrees that until such time as the Licensed Area is surrendered to Whinstone US, LLC free and clear of all of Customer Equipment and property and placed in a neat and orderly condition in accordance with this Agreement, the Customer shall continue to be liable to Whinstone US, LLC for the Charges and shall in addition be liable for any losses and/or damages which Whinstone US, LLC may sustain or become liable for as a result of the failure of the Customer to return the Licensed Area in a timely manner and in a neat and orderly condition.

15.8 Upon termination of this Agreement the Customer shall at its own cost and expense return to Whinstone US, LLC all IP addresses provided to it by Whinstone US, LLC.

# 16 ANTI-BRIBERY AND CORRUPTION

16.1 Each party warrants and represents that it has not and will not carry out any act that could be an offense under anti-bribery laws.

# 17 APPLICABLE LAW

17.1 This Agreement shall be governed by laws of the State of New York and the parties hereby submit to the exclusive jurisdiction of the New York courts. The parties further agree that any non- contractual disputes between them shall be governed by [laws of the State of New York] and subject to the exclusive jurisdiction of the [State of New York courts].

17.2 In the event that the Customer is established in a country other than the United States of America, it shall appoint an agent to receive on its behalf in the United States of America service of any proceedings arising out of or in connection with this Agreement or the legal relationships established by this Agreement and shall give Whinstone US, LLC written notice of the identity of such agent and the agent's address at the same time as entering into this Agreement. Such service shall be deemed completed on delivery to such agent (whether or not it is forwarded to and received by the Customer).

Initial: _M k /L_

If for any reason such agent ceases to be able to act as agent or no longer has an address in the United States of America, the Customer shall forthwith appoint a substitute acceptable to Whinstone US, LLC and deliver to Whinstone US, LLC the new agent's name and address.

## 18 MISCELLANEOUS

18.1   No failure or delay of either party in exercising its rights hereunder (including the right to require performance of any provision of this Agreement) shall be deemed to be a waiver or release of such rights. Any waiver or release must be specifically granted in writing signed by the party waiving its rights and shall:

18.1.1   be confined to the specific circumstances in which it is given;

18.1.2   not affect any other enforcement of the same or any other right; and

18.1.3   unless it is expressed to be irrevocable, be revocable at any time in writing.

Any single or partial exercise of any right, power or remedy provided by law or under this Agreement shall not preclude any other or further exercise of it or the exercise of any other right, power or remedy.

18.2   If at any time any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction that shall not affect or impair:

18.2.1   the legality, validity, or enforceability in that jurisdiction of any other provision of this Agreement; or

18.2.2   the legality, validity, or enforceability under the law of any other jurisdiction of that or any other provision of this Agreement.

18.3   All work performed by Whinstone US, LLC under this Agreement shall be performed as an independent contractor and not as an agent of the Customer and neither party shall be, nor represent itself to be, the employee, agent, representative, partner or joint venture of the other. Neither party shall have the right or authority to assume or create an obligation on behalf of or in the name of the other or to otherwise act on behalf of the other. The performing party shall be responsible for its employees' compliance with all applicable laws, rules, and regulations while performing work under this Agreement.

18.4   No modification, amendment or other Change may be made to this Agreement or any part thereof unless reduced to writing and executed by authorized representatives of Whinstone US, LLC and the Customer. Unless expressly so agreed, no modification or variation of this Agreement shall constitute or be construed as a general waiver of any provisions of this Agreement, nor shall it affect any rights, obligations or liabilities under this Agreement which have already accrued up to the date of such modification or waiver, and the rights and obligations of the parties under this Agreement shall remain in full force and effect, except and only to the extent that they are so modified or varied.

## 19 ENTIRE AGREEMENT

19.1   This Agreement constitutes the entire understanding between the parties concerning the subject matter of the Agreement and supersedes any previous agreement or understanding between the parties in relation to the subject matter.

19.2   With effect from the date of this Agreement all Services shall be provided solely in accordance with the terms of this Agreement and all prior agreements and understandings between the parties in relation to the same shall be deemed terminated from the date hereof. Save in respect of rights and liabilities arising prior to such date, all such prior

Initial: _M k //_

agreements and understandings shall cease to be of effect from the date of signature of this Agreement. In no event shall the pre-printed terms and conditions found on any Customer purchase order, acknowledgement, or other form be considered an amendment or modification of this Agreement, even if such documents are signed by representatives of both parties; such pre-printed terms and conditions shall be null and void and of no force and effect.

19.3   Neither party shall have any liability or remedy in tort (including negligence) in respect of any representation, warranty or other statement (including any contained in this Agreement) being false, inaccurate or incomplete unless it was made fraudulently.

19.4   Each party acknowledges and agrees that in entering into the Agreement or in amending any part of this Agreement, it has not relied on any statement, representation, warranty, understanding, undertaking, promise or assurance (whether negligently or innocently made) of any person (whether party to this Agreement or not) other than as expressly set out in the Agreement. Each party irrevocably and unconditionally waives all claims, rights and remedies which but for this clause it might otherwise have had in relation to any of the foregoing.

19.5   Nothing in Clauses 19.1 to 19.4 (inclusive) shall limit or exclude any liability for fraud.

## 20 COUNTERPARTS

20.1   This Agreement may be executed in any number of counterparts, and by the parties on separate counterparts, but shall not be effective until each of the parties has executed at least one counterpart.

20.2   Each counterpart shall constitute an original, but all the counterparts shall together constitute one and the same instrument.

## 21 THIRD PARTIES

It is agreed that this Agreement is not intended to, and does not give to any other person who is not a party to this Agreement any rights to enforce directly any provisions contained in this Agreement except for any person to whom the benefit of this Agreement is assigned or transferred in accordance with Clause 10.

## 22 FURTHER ASSURANCE

Each party shall, if requested by the other party and at the other party's cost, execute or cause to be executed all documents and do or cause to be done all further acts and things as may be necessary in order to vest in and secure to the other party and its successors in title the full benefit of the assets, rights and benefits to be transferred or granted to the other party under this Agreement and for the protection and enforcement of the same and otherwise to give effect to this Agreement and to the rights and obligations contained within this Agreement.

Initial: _M k /k_

## SCHEDULE

### Acceptable Use Policy

This Acceptable Use Policy applies to you and anybody you allow to use the Service. Any reference to "you" shall be interpreted to mean you and anybody you allow to use the Service. You are responsible for the use of the Service by any person you allow to use it.

Any user of the Service (a "**User**") will need to comply with this Acceptable Use Policy (AUP). Whinstone US, LLC may change the AUP to reflect any changes in the law or community standards or whenever Whinstone US, LLC deems it necessary.

**1.   Don't use the Service illegally!**

The Service may only be used for lawful purposes in accordance with all current and future laws, statutes and regulations in force from time to time in the country (or countries) in which the Service is being used ("**Laws**").

You may not use the Service to send, receive, store, distribute, transmit, post, upload or download any materials or data which:

- violates any Laws;

- violates any Whinstone US, LLC information security policies;

- is defamatory, offensive, abusive, indecent, obscene, or constitutes harassment;

- is in breach of any third-party rights (including any third-party intellectual property rights);

- has any fraudulent purpose or effect; or

- damages or may damage our name and/or reputation

or permit any other person (whether intentionally or otherwise) to do so.

**2.   Do not violate anyone's systems or network security**

You must not use the Service to violate our network security or any third party's system or network security by any method including:

- unauthorized access to or use of data, systems or networks, including any attempt to probe, scan or test the vulnerability of a system or network;

- unauthorized monitoring of data or traffic on any network or system without the express authorization of the owner of the system or network; or

- unauthorized interference with any user, host, system or network without the express authorization of the owner of the system or network.

You must not send, receive, store, distribute, transmit, post, upload or download any

4304 Firestone Road Metairie, LA 70001                                              27

Initial: *M K*

materials that are designed to violate our network security or any third party's system or network security. Examples of such prohibited material may include (but are not limited to):

- programs containing viruses or Trojan horses;

- tools designed to compromise the security of other sites;

- programs or services designed to send or facilitate the sending of unsolicited advertisements; or

- programs or services designed to encourage or facilitate a breach of this AUP or any acceptable use policy of another Internet services provider.

You must not connect to the Service insecure machines or services able to be exploited by others to carry out actions which constitute a breach of this AUP including but not limited to the transmission of unsolicited bulk email or email containing infected attachments or attempts to disrupt websites and/or connectivity or any other attempts to compromise the security of other users of our network or any other third-party system.

You are responsible for all data and/or traffic originating from the machines and/or networks that you have connected to the Service. You must immediately disconnect (and subsequently secure prior to reconnection) machines generating data and/or traffic which contravenes this AUP upon your becoming aware of the same and/or once notified of such activity by Whinstone US, LLC.

## 3.   E-mail

You must not send email to anyone who does not wish to receive it. We acknowledge that email is an informal method of communication however you must refrain from sending emails to another user after receiving a request to stop.

Unsolicited Bulk Email means email which is both 'Unsolicited', meaning that the recipient has not granted verifiable permission for the message to be sent, and 'Bulk', meaning that the message is sent as part of a larger collection of messages, all having substantively identical content. You must not send Unsolicited Bulk Email or any other form of abusive electronic communication. In particular, unsolicited advertising mailings (whether commercial or informational) are strictly prohibited. You must only send advertising material to recipients that have specifically requested it.

You must not transmit or knowingly reply to mail-bombs. Mail-bombing is either emailing multiple copies of a single message, or sending large or multiple files or messages to a single user or Internet site with the intention of disrupting the recipient's mail service.

You must not use false email headers or alter the headers of email messages to conceal their email address or to prevent Internet users from responding to messages. You must not use any email address that you are not authorized to use.

You must not suggest or imply that any email you send is from, authorized or endorsed by, any Whinstone US, LLC company or any other third party or relates to any Whinstone US, LLC business or any

4304 Firestone Road Metairie, LA 70001                                                        28

Initial: _____

other third-party business without express prior consent.

**4.    Advertising to unsolicited recipients**

You must not operate, host, provide hosting facilities to or assist in any way any web site, email address, or any other online service which is advertised or promoted by means of Unsolicited Bulk Email (whether commercial or informational), any mass messaging facility or any other form of abusive electronic communication. This prohibition applies whether the abusive communication takes place using our network, or otherwise. Hosting providers in particular should take care to ensure that their own acceptable use policy includes a prohibition of services advertising to unsolicited email recipients, since Whinstone US, LLC reserves the right to demand immediate suspension of access to services advertising to unsolicited email recipients, once such services are drawn to the attention of Whinstone US, LLC.

**5.    World Wide Web and surfing the net**

You will be solely responsible for your use of the Internet and any web pages owned and/or operated by you or anyone you permit to use the Service and that are connected to the Service. You must not use world wide web pages within or outside the Service to violate any part of this AUP or to disrupt or attempt to disrupt another Internet user's Internet experience and, in particular, any such web pages must comply at all times with the provisions of clause 1 and clause 2 of this AUP.

**6.    What can we do?**

Firstly, you should be aware that we will block any electronic communication that we reasonably consider to have breached this AUP.

Secondly, if you have breached this AUP, or we reasonably suspect that you may have breached this AUP we will notify you (provided that this notification does not prejudice any investigation) and we may also:

(a)    immediately suspend your access to the Service until such time as we are satisfied the breach has stopped;

(b)    immediately end your contract for the provision of the Service;

(c)    notify and/or pass on the details of the breach of the AUP to any relevant government, statutory, self-regulatory or law enforcement agency (each a "**third party authority**");

(d)    investigate the alleged breach of the AUP, which may include gathering information from you and/or the complaining party (if any) and the examination of any other data or material on our network or our servers; or

(e)    remove (either temporarily or permanently), copy, store, monitor or otherwise deal with data and/or other material on our network and/or our servers.

Initial: _M k / R_

You expressly authorize Whinstone US, LLC to use your personal data and other account information in connection with any investigation carried out by Whinstone US, LLC in accordance with this AUP, including by disclosing it to any third-party authority that Whinstone US, LLC considers has a legitimate interest in any such investigation or its outcome.

Whinstone US, LLC reserves the right to terminate the Service with immediate effect and without further obligation or liability to you as required by any law enforcement organization or by the courts or any relevant regulatory authority.

7.      Your liability to us

You agree to indemnify and hold Whinstone US, LLC and the Whinstone US, LLC group of companies, its affiliates, officers, employees and agents harmless against all claims, actions, demands, costs (including legal costs and disbursements), expenses, losses and damages arising out of or incurred as a consequence of your breach of this AUP or breach of this AUP by anyone permitted to use the Service by you. In many instances a breach of this AUP would constitute a breach of law and may in some cases carry criminal liability.

Accepted by: _____

Print Name:   Masatoshi Kumagai
              GMO Internet, Inc.   Founder & Group CEO

Date:    _28 Nov, 2018_____

Accepted by: _____

Printed Name: Aroosh Thillai for Whinstone US, LLC_____

Date:    _23, Nov. 2018_____





# WHINSTONE

### WhinstoneColocationOrder Form

**Customer Name (Full Registered Company Name):** GMO Internet, Inc.

**Registered Company Number:** 011001029526

**VAT Number:**

**EIN Number**

**Registered Office Address:** CERULEAN TOWER, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo 150-8512, Japan

**Billing Address:** CERULEAN TOWER, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo 150-8512, Japan

**Contact name:** Satoshi Makita, Masaya Yanagi, Hideyuki Matsui

**Contact email:** crypto-sys-account@z.com

**Contact tel:** +81-3-3770-7551

This Order Form, together with the Colocation Services Agreement entered into by Whinstone US, LLC ("Whinstone") and the Customer dated November 28, 2018 (the "Colocation Services Agreement"), comprises the contract for 120 months ("Initial Term") with SLA 99% for the provision of the Services, including regular networking, internet-connection, and cooling services, set forth herein (the Order Form and the Colocation Services Agreement are collectively referred to as the "Contract"), and shall become effective as set forth in the Colocation Services Agreement and only after the delivery from Whinstone to Customer of the signed contract between Whinstone and Entergy Louisiana, LLC, on the provision and purchase of electricity and the signed contract between Whinstone and the rightful owners of the properties where the Customer's miners will be placed (the "Owners"), on the use of the properties ("Delivery"). In case that the Delivery is not made within 1 month from the day of signature of this Order Form, the Customer may terminate this Order Form and the Colocation Service Agreement without any obligation.

Whinstone shall, within a period of 6 months from the date of the RFU, or, in the case where the Direct Contracts (as defined below) have not been concluded within a period of 6 months from the date of the RFU for the reason of the time required for Entergy Louisiana, LLC, as soon as practicable, execute a contract with the Customer and Entergy Louisiana, LLC regarding the supply of electricity from Entergy Louisiana, LLC directly to the Customer in the case where Whinstone becomes unable to supply electricity to the Customer for any reason and a contract with the Customer and the Owners regarding the direct use of the properties by the Customer where the Customer's miners will be placed in the case that Whinstone becomes unable to provide the use of the properties for the Customer for any reason (the "Direct Contracts"). In the case where either of the Direct Contracts is not executed within 6 months from the date of RFU, notwithstanding Clause 10.2 of the Colocation Services Agreement, the Customer shall have the right to terminate the Contract or to require Whinstone to assign its rights and obligations under the Contract to a third party which has sufficient ability to provide the Services, designated by Whinstone and

4304 Firestone Road Metairie, LA 70001

1





## WhinstoneColocationOrder Form

approved by the Customer.

The Customer agrees not to relocate during the first 36 months of the Initial Term from the Louisiana facility located at 4304Firestone Road Metairie, LA 70001 or other sites mutually agreed upon by both parties. After the initial 36 months of the Initial Term, the Customer has the right to relocate to the Canadian location or any other available location that Whinstone manages, and upon completion of such relocation, the term of the Contract will renew automatically for an additional 24 month period.

The Customer can terminate the contract after the initial 36 months of the Initial Term with no penalty by notifying Whinstone in writing 120 days prior to the end of the Contract. Unless notified in writing, the Contract will renew automatically for an additional Renewal Term at any Whinstone Colocation Site.

The Customer agrees to deposit an amount of $4,104,000.00 by November 29, 2018 or the date that is 3 business days from the day of Delivery, whichever is later and completing each decision of starting new trade within the appropriate period. Whinstone will bring the Customer 100 MW live by January 5, 2019 and another 100MW live by June 2019. **Cryptocurrency Payment Option:** In the event the Customer wants to pay for the services using cryptocurrencies, the Customer agrees to pay the merchant fees associated with transferring the payment to the fiat banking system. These fees will be invoiced separately with documentation to support the additional charge and will be due upon receipt.

In the case that the Customer terminates the Contract during the initial 36 months of the Initial Term for the reason that the Services were not provided due to any reason attributable to Whinstone or a Force Majeure event, Whinstone shall, as soon as possible after the termination of the Contract, reimburse the Customer for the remaining amount of the deposit. For the avoidance of doubt, Clause 12.1 of the Colocation Services Agreement shall not apply to the aforesaid reimbursement.

The reoccurring monthly charges stated in this Order Form are invoiced in advance on the 15th day of the immediately preceding calendar month, and the payment terms are defined in the service details described below.

Whinstone cannot be held responsible for delays that are beyond its control, which include but are not limited to delay in shipment of Customer miners, Customer's miners delayed by customs, and similar issues that cannot be controlled by Whinstone. In the event of a delay, Whinstone will immediately notify the Customer and provide an action plan and assist as necessary.



WHINSTONE

WhinstoneColocationOrder Form

**Service Details**

M |< //< Initial

| Service Description | Installation or one-off Charge total USD | Minimum Monthly Rental Charge USD | Hourly rate USD | RFU Date |
|---|---|---|---|---|
| Prepayment Deposit<br><br>Upfront security deposit payable within 3 business days of Delivery. The deposit will be applied towards the energy cost over 36 months of operations and any remaining funds shall be returned at once at time of termination of the contract. Invoicing will be on the 15th day of the relevant month and due no later than the 1st day of the immediately following month. Net 14 days. | $4,104,000 | | | Nov 29, 2018 or within 3 business days after the day of Delivery, whichever is later |
| Monthly billing will be based on usage of power with a minimum consumption of 40MW from January 5, 2019, and 80 MW from February 1, 2019. The minimum term of the contract shall be 36 months from the month that the usage of power begins. Any excess usage when made available and consumed will be billed at the same rate of **0.0285 USD/kwh** | | $820,800 in January 2019 $1,641,600 *From February 2019 | | Jan 5, 2019 |

4304 Firestone Road Metairie, LA 70001

3



# WHINSTONE

## WhinstoneColocationOrder Form


Initial

**Energy Provisional Cost**

- The set price of 0.0285 USD/kwh is based on the customer installing ASIC miners in beginning no later than February 1, 2019. The customer agrees to pay for the usage of energy during the billing cycle of each month. For the avoidance of doubt, the Customer shall not be liable to pay any penalty in the case that the Customer fails to install ASIC miners on the above date.

- The set price set forth above shall not be increased for 10 years from the date of the RFU for any reason, including the change or establishment of laws, regulations, orders or policies by the state or federal government, legislature or court or any other public authority, or adverse change in the market without the mutual agreement between the parties upon consultation in good faith. The parties shall consult with each other in good faith on the set price in 10 years of the date of RFU.

- Customer will be invoiced for all necessary equipment, power supplies, network cables, and similar components to take the customers miners online. This will be billed and due as per the terms of the agreement, standard 14 days. Payment will need to be wired to Whinstone, LLC provided bank account.

- Customer shall be able to sell the electricity that can be used pursuant to the Colocation Services Agreement and this Order Form to any third party.

If the Customer's monthly usage exceeds the energy billed at during the month, they will be invoiced for the additional energy cost billed at 0.0285 USD/kWh, subject to Clause 4.3.2 of the Colocation Services Agreement. Normal working hours are any time between 8:00am and 5:00pm, Monday- Friday (GMT-4). Terms: 14 days invoiced monthly in advance. This contract term is for a period of 120 months from the date of acceptance, subject to renewal under Clause 15.1 of the Colocation Services Agreement.

The Customer agrees to all terms and condition described in the Colocation Services Agreement and pursuant to the execution of the Whinstone Colocation Order, the Customer agrees to all terms and conditions set forth herein.

_____
Signed

28 November 2018
_____
Date

Name   Masatoshi Kumagai
_____

Founder & Group CEO

Accepted by Whinstone, LLC

**Aroosh Thillainathan**

**Whinstone commercial contact:** a.thillia@whinstone.us

4304 Firestone Road Metairie, LA 70001

4



*M k / k*

## WhinstoneColocationOrder Form

This Order Form will be accepted by Whinstone, LLC when countersigned by Aroosh Thillai and any deposit monies indicated are received.

> ***Bank Transfer details:***
> *Currency USD*
> ***Capital One Bank***
> *Name of account: Whinstone US, LLC Routing*
> *Number: 065000090*
> *Account Number: 2082773785 Swift*
> *Code: HIBKUS44*
> *Bank Address: Head Office, Avenue of the Americas*
> *1001 New York, NY 10018*
> *New York, NY United States*



**AMENDMENT**
**TO**
**W Colocation Services Agreement**

This AMENDMENT TO W Colocation Services Agreement (the "**Amendment**") is entered into on the day W Colocation Services Agreement (the "**Original Agreement**") becomes effective ("**Effective Date**") by and between:

**Whinstone US, LLC,** a corporation duly organized and existing under the laws of the state of **Louisiana**, with its business and postal address at 4304 Firestone Road, Metairie, LA 70001, represented herein Aroosh Thillainathan- ("Whinstone").

-and-

**GMO INTERNET, INC.,** a corporation duly organized and existing under the laws of Japan, with its business and postal address at CERULEAN TOWER, 26-1, Sakuragaoka-cho, Shibuya-ku, Tokyo 150-8512, Japan, represented herein by Masatoshi Kumagai ("GMO").

RECITALS

A. WHEREAS, Whinstone and GMO entered into that certain W Colocation Services Agreement dated as of 28 November 2018 (the "**Original Agreement**") or when Delivery is made.

B. WHEREAS, the parties desire to amend the part of the Original Agreement and confirm mutual consent about amendment below.

NOW THEREFORE, in consideration of the mutual covenants and agreements set forth in this Amendment, the parties agree as follows;

1. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Original Agreement.

2. The principles of construction and rules of interpretation set forth in Clause 1.3 of the Original Agreement shall be incorporated by reference into this Amendment.

*M k /K*

3.    Notwithstanding the terms set forth in the Whinstone Colocation Order Form of the Original Agreement, GMO may relocate from the Data Centre to the Canadian Location or any other Whinstone Colocation Site even within the initial 36-months of the Initial Term.

4.    Except as expressly amended by this Amendment, the Original Agreement shall remain in full force and effect in accordance with its terms.

5.    The Original Agreement, as amended and ratified by this Amendment, constitutes the entire understanding between the parties concerning the subject matter thereof and hereof, and supersedes any previous agreement or understanding between the parties in relation to the subject matter.

6.    This Agreement shall be governed by Louisiana law and the parties hereby submit to the exclusive jurisdiction of the Louisiana courts. The parties further agree that any non- contractual disputes between them shall be governed by the laws of the State of New York and subject to the exclusive jurisdiction of the State of New York courts.

7.    If at any time any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction that shall not affect or impair (i) the legality, validity, or enforceability in that jurisdiction of any other provision of this Agreement; or (ii) the legality, validity, or enforceability under the law of any other jurisdiction of that or any other provision of this Agreement.

8.    This Agreement may be executed in any number of counterparts, and by the parties on separate counterparts, but shall not be effective until each of the parties has executed at least one counterpart.    Each counterpart shall constitute an original, but all the counterparts shall together constitute one and the same instrument

IN WITNESS WHEREOF, and intending to be legally bound, Whinstone and GMO have executed this Amendment on the Effective Date.

**WHINSTONE US, LLC.**

By:

Name: Aroosh Thillainathan

Title: Founder, CEO Whinstone US, LLC

Date: 28. Nov. 2018

**GMO INTERNET, INC.**

By:

Name: Masatoshi Kumagai

Title: Founder & Group CEO

Date: