UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GMO GAMECENTER USA, INC. and GMO
INTERNET GROUP, INC.,

    *Plaintiffs,*

 - against -

WHINSTONE US, INC.,

    *Defendant.*

WHINSTONE US, INC.,

    *Counterclaim Plaintiff,*

 - against -

GMO GAMECENTER USA, INC. and GMO
INTERNET GROUP, INC.,

    *Counterclaim Defendant.*

Civil Action No. 1:22-cv-05974-JPC

**GMO'S ANSWER AND AFFIRMATIVE DEFENSES
TO WHINSTONE'S COUNTERCLAIMS**

   Plaintiffs and Counterclaim Defendants GMO Gamecenter USA, Inc. and GMO Internet Group, Inc. (collectively, "GMO"), by and through their attorneys, Haynes and Boone, LLP, for their Answer and Affirmative Defenses to the Counterclaims (Dkt. No. 113, the "Counterclaims") of Defendant and Counterclaim Plaintiff Whinstone US, Inc. ("Whinstone," and collectively with GMO, the "Parties") in this action, deny all substantive allegations except where expressly admitted and state on knowledge as to their own acts and on information and belief as to all other matters except as indicated as follows:[1]

---

[1] Capitalized terms not defined herein shall have the definitions used in the Counterclaims, GMO's Fourth Amended Complaint (the "Fourth Amended Complaint"), and/or the Texas Agreement.

## AS AND FOR A RESPONSE TO WHINSTONE'S COUNTERCLAIMS

1.     As the first Paragraph of the Counterclaims attempts to characterize the Counterclaims asserted by Whinstone, no response is required.  To the extent a response is required, GMO refers to the Counterclaims for the substance of the claims asserted therein.  To the extent Paragraph 1 of the Counterclaims asserts that the Texas Agreement was properly terminated on June 29, 2023, GMO denies that the Texas Agreement was properly terminated.

### PARTIES

2.     GMO admits the allegations set forth in Paragraph 2 of the Counterclaims.

3.     GMO admits the allegations set forth in Paragraph 3 of the Counterclaims.

4.     GMO admits the allegations set forth in Paragraph 4 of the Counterclaims.

### JURISDICTION AND VENUE

5.     GMO admits the allegations set forth in Paragraph 5 of the Counterclaims.

6.     GMO admits the allegations set forth in Paragraph 6 of the Counterclaims.

7.     GMO admits the allegations set forth in Paragraph 7 of the Counterclaims.

### FACTS COMMON TO ALL COUNTS

8.     GMO denies each and every allegation set forth in Paragraph 8 of the Counterclaims, except GMO admits that in 2018, it was involved in the business of bitcoin mining and that the Parties discussed Whinstone's provision of colocation and hosting services to GMO in 2018.

9.     GMO admits the allegations set forth in Paragraph 9 of the Counterclaims, except to the extent Paragraph 9 of the Counterclaims attempts to excerpt, characterize, or summarize the Louisiana Agreement.  GMO denies any excerpt, summary, or characterization inconsistent with the Louisiana Agreement and refers to the Louisiana Agreement for a full and accurate statement of its contents.

10.     GMO denies each and every allegation set forth in Paragraph 10 of the Counterclaims, except GMO admits that Whinstone breached the Louisiana Agreement and in order to address that breach, the Parties executed the Texas Agreement, pursuant to which Whinstone agreed to, among other things, provide GMO colocation and hosting services and GMO agreed to advance certain funding to Whinstone. To the extent Paragraph 10 of the Counterclaims attempts to excerpt, characterize, or summarize the Texas Agreement, GMO denies any excerpt, summary, or characterization inconsistent with the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

11.     GMO admits the allegations set forth in Paragraph 11 of the Counterclaims, except to the extent Paragraph 11 of the Counterclaims attempts to excerpt, characterize, or summarize the Texas Agreement. GMO denies any excerpt, summary, or characterization inconsistent with the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

12.     GMO admits the allegations set forth in Paragraph 12 of the Counterclaims, except states that the Loss of Profit by Power Shortage could not be calculated at the time the Texas Agreement was signed. To the extent Paragraph 12 of the Counterclaims attempts to excerpt, characterize, or summarize the Texas Agreement, GMO denies any excerpt, summary, or characterization inconsistent with the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

13.     GMO admits the allegations set forth in Paragraph 13 of the Counterclaims, except to the extent Paragraph 13 of the Counterclaims attempts to excerpt, characterize, or summarize the Texas Agreement. GMO denies any excerpt, summary, or characterization inconsistent with the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

14.     GMO denies each and every allegation set forth in Paragraph 14 of the Counterclaims, except admits that the Texas Facility reached operation of 5MW on June 2, 2020.

15.     GMO admits the allegations set forth in Paragraph 15 of the Counterclaims.

16.     GMO admits the allegations set forth in Paragraph 16 of the Counterclaims.

17.     GMO denies each and every allegation set forth in Paragraph 17 of the Counterclaims.

18.     GMO denies each and every allegation set forth in Paragraph 18 of the Counterclaims.

19.     GMO denies each and every allegation set forth in Paragraph 19 of the Counterclaims, except GMO admits that Whinstone acknowledged it is liable and shall indemnify GMO for the Loss of Profit By Power Shortage, and refers to the Texas Agreement for a full and accurate statement of its contents.

20.     GMO denies each and every allegation set forth in Paragraph 20 of the Counterclaims, except GMO admits that because the Loss of Profit by Power Shortage is calculated from January 5, 2019 to the date the Texas Data Center starts operation of 5MW, and because the Texas Data Center had not started operation of 5MW as of the date the Texas Agreement was signed, it was not possible to calculate the Loss of Profit by Power Shortage as of the date the Texas Agreement was signed.  To the extent Paragraph 20 attempts to excerpt, characterize, or summarize the Texas Agreement, GMO denies any excerpt, summary, or characterization inconsistent with the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

21.     GMO denies each and every allegation set forth in Paragraph 21 of the Counterclaims.  To the extent Paragraph 21 of the Counterclaims attempts to excerpt, characterize, or summarize the Texas Agreement, GMO denies any excerpt, summary, or characterization

inconsistent with the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

22.     GMO denies each and every allegation set forth in Paragraph 22 of the Counterclaims, except GMO admits that the Texas Facility reached operation of 5MW on June 2, 2020, and admits that the Loss of Profit by Power Shortage is calculated from January 5, 2019, to the date when the Texas Data Center starts operation of 5MW less the amount of the Loss of Profit by Power Suspension.  To the extent Paragraph 22 of the Counterclaims attempts to excerpt, characterize, or summarize the Texas Agreement, GMO denies any excerpt, summary, or characterization inconsistent with the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

23.     GMO denies each and every allegation set forth in Paragraph 23 of the Counterclaims.

24.     GMO denies each and every allegation set forth in Paragraph 24 of the Counterclaims.

25.     GMO denies each and every allegation set forth in Paragraph 25 of the Counterclaims.  To the extent Paragraph 25 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the Parties' communications, GMO denies any excerpt, summary, or characterization inconsistent with the contents of the Parties' communications and refers to those communications for a full and accurate statement of their contents.

26.     GMO denies each and every allegation set forth in Paragraph 26 of the Counterclaims.

27.     GMO denies each and every allegation set forth in Paragraph 27 of the Counterclaims.

28.     GMO denies each and every allegation set forth in Paragraph 28 of the

Counterclaims.

29.    GMO denies each and every allegation set forth in Paragraph 29 of the Counterclaims.

30.    GMO denies each and every allegation set forth in Paragraph 30 of the Counterclaims.  To the extent Paragraph 30 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the Texas Agreement, GMO denies any excerpt, summary, or characterization inconsistent with the terms of the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

31.    GMO denies each and every allegation set forth in Paragraph 31 of the Counterclaims.

32.    GMO denies each and every allegation set forth in Paragraph 32 of the Counterclaims.

33.    GMO admits the allegations set forth in Paragraph 33 of the Counterclaims, except to the extent Paragraph 33 of the Counterclaims attempts to excerpt, summarize, or characterize the contents of the Parties' communications.  GMO denies any excerpt, summary, or characterization inconsistent with the contents of the Parties' communications and refers to those communications for a full and accurate statement of their contents.

34.    GMO denies each and every allegation set forth in Paragraph 34 of the Counterclaims.

35.    GMO denies each and every allegation set forth in Paragraph 35, except GMO admits that on November 5, 2021, after multiple requests from GMO, in-house counsel for Whinstone sent a Form of Hosting Agreement without any economic terms to counsel for GMO. To the extent Paragraph 35 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the November 5 draft or any of the Parties' communications related thereto, GMO

denies any excerpt, summary, or characterization inconsistent with the contents of the draft and communications and refers to the draft and communications for a full and accurate statement of their contents.

36.     GMO denies each and every allegation set forth in Paragraph 36 of the Counterclaims, except GMO admits that on December 9, 2021, in-house counsel for Whinstone sent a new draft of a Form of Hosting Agreement, which dramatically changed the terms of the Form of Hosting Agreement provided to GMO on November 5, 2021. To the extent Paragraph 36 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the November 5 draft, December 9 draft, or any of the Parties' communications related thereto, GMO denies any excerpt, summary, or characterization inconsistent with the contents of those drafts and communications and refers to those drafts and communications for a full and accurate statement of their contents.

37.     GMO denies each and every allegation set forth in Paragraph 37 of the Counterclaims, except GMO admits that on December 23, 2021, counsel for GMO sent Whinstone comments on the November 5, 2021 Form of Hosting Agreement provided by Whinstone to GMO. To the extent Paragraph 37 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the drafts exchanged by the Parties or any of the Parties' communications related thereto, GMO denies any excerpt, summary, or characterization inconsistent with the contents of those drafts and communications and refers to those drafts and communications for a full and accurate statement of their contents.

38.     GMO denies each and every allegation set forth in Paragraph 38 of the Counterclaims.

39.     GMO denies each and every allegation set forth in Paragraph 39 of the Counterclaims, except GMO admits that in January 2022, due to Whinstone's bad-faith refusal to

negotiate a new agreement, counsel for GMO suggested to in-house counsel for Whinstone that the most productive step forward might be to first reach agreement on the amount of Whinstone's obligations for Loss of Profit by Power Shortage. To the extent Paragraph 39 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the Parties' communications, GMO denies any excerpt, summary, or characterization inconsistent with the contents of those communications and refers to those communications for a full and accurate statement of their contents.

40.     GMO denies each and every allegation set forth in Paragraph 40 of the Counterclaims, except GMO admits that on March 7, 2022, in-house counsel for Whinstone sent a proposal to GMO. To the extent Paragraph 40 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of that proposal, GMO denies any excerpt, summary, or characterization inconsistent with the contents of that proposal and refers to that proposal for a full and accurate statement of its contents.

41.     GMO denies each and every allegation set forth in Paragraph 41 of the Counterclaims, except GMO admits that on April 12, 2022, counsel for GMO sent in-house counsel for Whinstone a letter which stated, among other things, that "GMO's most recent estimate was that its combined claim for indemnification would be in the amount of $84MM or more through the end of February 2022." GMO also admits that GMO's claim for the Loss of Profit by Power Shortage is in excess of $35 million. To the extent Paragraph 41 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the April 12, 2022 letter or the Fourth Amended Complaint, GMO denies any excerpt, summary, or characterization inconsistent with the contents of the April 12, 2022 letter or the Fourth Amended Complaint and refers to the April 12, 2022 letter and the Fourth Amended Complaint for a full and accurate statement of their contents.

42.     GMO denies each and every allegation set forth in Paragraph 42 of the Counterclaims.

43.     GMO denies each and every allegation set forth in Paragraph 43 of the Counterclaims.

44.     GMO denies each and every allegation set forth in Paragraph 44 of the Counterclaims, and to the extent Paragraph 44 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the Texas Agreement, GMO denies any excerpt, summary, or characterization inconsistent with the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

45.     GMO admits the allegations set forth in Paragraph 45 of the Counterclaims, except to the extent Paragraph 45 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the Texas Agreement.  GMO denies any excerpt, summary, or characterization inconsistent with the terms of the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

46.     GMO admits the allegations set forth in Paragraph 46 of the Counterclaims, except to the extent Paragraph 46 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the Texas Agreement.  GMO denies any excerpt, summary, or characterization inconsistent with the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

47.     GMO denies each and every allegation set forth in Paragraph 47 of the Counterclaims.  To the extent Paragraph 47 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the Louisiana Agreement and/or Texas Agreement, GMO denies any excerpt, summary, or characterization inconsistent with the Louisiana Agreement and/or Texas Agreement and refers to the Louisiana Agreement and Texas Agreement for a full and accurate

9

statement of their contents.

48.      GMO denies each and every allegation set forth in Paragraph 48 of the Counterclaims, except GMO admits (as further detailed in the Fourth Amended Complaint) that Whinstone failed to meet operational deadlines set forth in the Texas Agreement, gave priority to other customers over GMO, and did not supply GMO with the contractually-required power under Section 4.3 of the Texas Agreement.

49.      GMO denies each and every allegation set forth in Paragraph 49 of the Counterclaims.

50.      GMO denies each and every allegation set forth in Paragraph 50 of the Counterclaims, except GMO admits (as further detailed in the Fourth Amended Complaint) that Whinstone failed to meet operational deadlines set forth in the Texas Agreement, gave priority to other customers over GMO, and did not supply GMO with the contractually-required power under Section 4.3 of the Texas Agreement.

51.      GMO denies each and every allegation set forth in Paragraph 51 of the Counterclaims.

52.      GMO denies each and every allegation set forth in Paragraph 52 of the Counterclaims.

53.      GMO denies each and every allegation set forth in Paragraph 53 of the Counterclaims.

54.      As Paragraph 54 of the Counterclaims asserts conclusions of law and/or legal argument, no response is required.  To the extent a response to Paragraph 54 of the Counterclaims is required, GMO denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Counterclaims.

55.      GMO admits the allegations set forth in Paragraph 55 of the Counterclaims, except

to the extent Paragraph 55 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the Texas Agreement. GMO denies any excerpt, summary, or characterization inconsistent with the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

56.    GMO denies each and every allegation set forth in Paragraph 56 of the Counterclaims.

57.    GMO denies each and every allegation set forth in Paragraph 57 of the Counterclaims, except GMO admits that Whinstone sent invoices to GMO purporting to charge GMO for an increase of 0.0015 per kWh on February 23, 2022 (for $275,147.40), March 28, 2022 (for $54,484.01), April 1, 2022 (for $34,921.26) and May 1, 2022 (for $19,946.67) (collectively, the "Improper Invoices"), and that GMO is not liable to Whinstone for the amounts included in the Improper Invoices. To the extent Paragraph 57 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the Improper Invoices, GMO denies any excerpt, summary, or characterization inconsistent with the contents of the Improper Invoices and refers to the Improper Invoices for a full and accurate statement of their contents.

58.    GMO denies each and every allegation set forth in Paragraph 58 of the Counterclaims, except GMO admits that it has not paid, and has no obligation to pay, the unilateral surcharge Whinstone is attempting to pass on to GMO.

59.    GMO denies each and every allegation set forth in Paragraph 59 of the Counterclaims.

60.    GMO denies each and every allegation set forth in Paragraph 60 of the Counterclaims, except GMO admits that on June 29, 2023, Whinstone sent GMO a notice purporting to terminate the Texas Agreement (the "Notice of Termination").

61.    GMO denies each and every allegation set forth in Paragraph 61 of the

Counterclaims, except GMO admits that the Notice of Termination demanded that GMO preserve all relevant evidence concerning its mining operations at the Texas Data Center and remove its equipment from the Texas Data Center by July 29, 2023.

62.     GMO denies each and every allegation set forth in Paragraph 62 of the Counterclaims, except GMO admits that it responded to Whinstone's Notice of Termination on July 24, 2023, and in such response stated that Whinstone's removal of GMO's machines prior to the Parties' experts' visit to the Texas Data Center would constitute spoliation of evidence.

63.     GMO denies each and every allegation set forth in Paragraph 63 of the Counterclaims, except GMO admits that on July 26, 2023, GMO requested that Whinstone delay removal of GMO's machines to allow GMO's expert to visit the Texas Data Center to observe GMO's machines in operation for purposes of expert discovery, and that on July 27, 2023, Whinstone stated that it would remove GMO's machines on August 2, 2023.

64.     GMO admits the allegations set forth in Paragraph 64 of the Counterclaims, except states that GMO's emergency motion filed on July 31, 2023 sought an order enjoining Whinstone from removing and powering down GMO's machines through October 27, 2023, or in the alternative, through October 1, 2023, and otherwise refers to GMO's emergency motion for a full and accurate statement of its contents.

65.     GMO admits the allegations set forth in Paragraph 65 of the Counterclaims, except to the extent Paragraph 65 of the Counterclaims attempts to excerpt, characterize, or summarize the Court's statements at the August 9, 2023 hearing and/or the Court's August 9, 2023 order on GMO's emergency motion (collectively, the "August 9 Order").  GMO denies any excerpt, summary, or characterization inconsistent with the August 9 Order and refers to such Order for a full and accurate statement of its contents.

66.     GMO admits the allegations set forth in Paragraph 66 of the Counterclaims, except

to the extent Paragraph 66 of the Counterclaims attempts to excerpt, characterize, or summarize the contents of the September 11, 2023 letter.   GMO denies any excerpt, summary, or characterization inconsistent with the September 11, 2023 letter and refers to the letter for a full and accurate statement of its contents. GMO also states that in letters dated August 22, 2023 and September 8, 2023, GMO notified Whinstone that Whinstone had violated the August 9 Order by failing to provide power to GMO's machines for at least three weeks.  GMO demanded a three-week extension of the Expert Assessment Period, and on September 11, 2023, Whinstone agreed to extend the Expert Examination Period by three weeks, or until October 4, 2023 at 5:00 p.m. CST.

67.     GMO denies each and every allegation set forth in Paragraph 67 of the Counterclaims.

68.     GMO admits the allegations set forth in Paragraph 68 of the Counterclaims.

69.     GMO denies each and every allegation set forth in Paragraph 69 of the Counterclaims.

### FIRST COUNTERCLAIM (BREACH OF CONTRACT)

70.     As Paragraph 70 of the Counterclaims is merely an incorporation of the prior allegations, no response is required.  To the extent a response is required, GMO incorporates by reference its responses to Paragraphs 1 through 69 of the Counterclaims as if set forth fully herein.

71.     GMO admits the allegations set forth in Paragraph 71 of the Counterclaims, except to the extent those allegations assert or imply that the Texas Agreement was properly terminated.

72.     GMO denies each and every allegation set forth in Paragraph 72 of the Counterclaims.

73.     GMO denies each and every allegation set forth in Paragraph 73 of the Counterclaims.

74.    GMO denies each and every allegation set forth in Paragraph 74 of the Counterclaims.  To the extent Paragraph 74 attempts to excerpt, characterize, or summarize the contents of the Texas Agreement, GMO denies any excerpt, summary, or characterization inconsistent with the Texas Agreement and refers to the Texas Agreement for a full and accurate statement of its contents.

75.    GMO denies each and every allegation set forth in Paragraph 75 of the Counterclaims.  To the extent Paragraph 75 attempts to excerpt, characterize, or summarize the contents of the Louisiana Agreement and/or Texas Agreement, GMO denies any excerpt, summary, or characterization inconsistent with the Louisiana Agreement and/or Texas Agreement and refers to the Louisiana Agreement and Texas Agreement for a full and accurate statement of their contents.

76.    GMO denies each and every allegation set forth in Paragraph 76 of the Counterclaims.

77.    GMO denies each and every allegation set forth in Paragraph 77 of the Counterclaims.

78.    GMO denies each and every allegation set forth in Paragraph 78 of the Counterclaims.

79.    GMO admits that the quoted language in Paragraph 79 of the Counterclaims appears in the Texas Agreement but denies that Section 7.9 is applicable to this litigation.

80.    GMO denies each and every allegation set forth in Paragraph 80 of the Counterclaims.

### SECOND COUNTERCLAIM (UNJUST ENRICHMENT)

81.    As Paragraph 81 of the Counterclaims is merely an incorporation of the prior allegations, no response is required.  To the extent a response is required, GMO incorporates by

reference its responses to Paragraphs 1 through 80 of the Counterclaims as if set forth fully herein.

82.     GMO denies each and every allegation set forth in Paragraph 82 of the Counterclaims, except GMO admits that GMO mined bitcoin at the Texas Data Center during the Expert Examination Period.

83.     GMO denies each and every allegation set forth in Paragraph 83 of the Counterclaims.

84.     GMO denies each and every allegation set forth in Paragraph 84 of the Counterclaims, except GMO admits that it filed an emergency motion on July 31, 2023 seeking an order enjoining Whinstone from removing and powering down GMO's machines through October 27, 2023, or in the alternative, through October 1, 2023, and otherwise refers to GMO's emergency motion for a full and accurate statement of its contents.

85.     GMO denies each and every allegation set forth in Paragraph 85 of the Counterclaims.

### THIRD COUNTERCLAIM (DECLARATORY JUDGMENT)

86.     As Paragraph 86 of the Counterclaims is merely an incorporation of the prior allegations, no response is required.  To the extent a response is required, GMO incorporates by reference its responses to Paragraphs 1 through 85 of the Counterclaims as if set forth fully herein

87.     As Paragraph 87 of the Counterclaims asserts conclusions of law and/or legal argument, no response is required.  To the extent a response to Paragraph 87 of the Counterclaims is required, GMO denies each and every allegation set forth in Paragraph 87 of the Counterclaims.

88.     As Paragraph 88 of the Counterclaims asserts conclusions of law and/or legal argument, no response is required.  To the extent a response to Paragraph 88 of the Counterclaims is required, GMO denies each and every allegation set forth in Paragraph 88 of the Counterclaims.

89.     GMO denies each and every allegation set forth in Paragraph 89 of the

Counterclaims.

90.     As Paragraph 90 of the Counterclaims asserts conclusions of law and/or legal argument, no response is required.  To the extent a response to Paragraph 90 of the Counterclaims is required, GMO denies each and every allegation set forth in Paragraph 90 of the Counterclaims.

91.     As Paragraph 91 of the Counterclaims asserts conclusions of law and/or legal argument, no response is required.  To the extent a response to Paragraph 91 of the Counterclaims is required, GMO denies each and every allegation set forth in Paragraph 91 of the Counterclaims.

## DEMAND FOR RELIEF

To the extent the Counterclaims' "WHEREFORE" provisions request relief to which Whinstone believes it is entitled, no response is required.  To the extent a response to the Counterclaims' "WHEREFORE" provisions is required, GMO denies that Whinstone is entitled to any relief sought in the Counterclaims, including without limitation the relief requested in the "WHEREFORE" provisions.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming the burden of proof on any matters where that burden rests on Whinstone, GMO asserts the following affirmative and other defenses to the Counterclaims.

## FIRST DEFENSE

Whinstone's claims for relief are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

## SECOND DEFENSE

Whinstone's claims for relief are barred by the terms of the Texas Agreement and/or the other agreements relevant to this action including, but not limited to, the Louisiana Agreement.

## THIRD DEFENSE

Whinstone's claims for relief are barred, in whole or in part, by its own conduct including Whinstone's failure to comply with and/or perform under the Texas Agreement.

## FOURTH DEFENSE

Whinstone's claims for relief are barred, in whole or in part, by the equitable doctrines of laches, estoppel, and/or unclean hands.

## FIFTH DEFENSE

Whinstone's claims for relief are barred, in whole or in part, by the equitable doctrine of waiver.

## SIXTH DEFENSE

Whinstone's claims for relief are barred, in whole or in part, because it has failed to act in good faith.

## SEVENTH DEFENSE

Whinstone's claims for relief are barred, in whole or in part, by the doctrine of *in pari delicto* because Whinstone's own conduct, as set forth in GMO's Fourth Amended Complaint in this matter, demonstrates that Whinstone was at fault for the events leading to this dispute.

## EIGHTH DEFENSE

Whinstone's claims for relief are barred, in whole or in part, because it has not suffered any legally cognizable damages.

## NINTH DEFENSE

Whinstone's claims for relief are barred, in whole or in part, because, although Whinstone has not suffered any legally cognizable damages, to the extent the Court finds otherwise, Whinstone has failed to mitigate, minimize, or avoid any damages that Whinstone claims it has suffered.

**TENTH DEFENSE**

Whinstone's claims for relief are barred, in whole or in part, due to the failure of one or more condition(s) precedent for relief.

**ELEVENTH DEFENSE**

Whinstone's unjust enrichment claim is barred, in whole or in part, due to the existence of the Texas Agreement and GMO's payment of colocation fees under such agreement for hosting services during the Expert Examination Period.

**TWELFTH DEFENSE**

Whinstone's unjust enrichment claim is barred, in whole or in part, due to GMO's right to conduct expert discovery for purposes of this litigation.

**ADDITIONAL DEFENSES**

Any relief sought by Whinstone against GMO may be barred, in whole or in part, by additional defenses that cannot now be articulated because of the generality of Whinstone's pleading, the fact that discovery is not complete, and other presently undeveloped information. Accordingly, GMO reserves the right to supplement the foregoing defenses and to raise additional defenses as may appear as the case progresses to the full extent allowed by law. Thus, the omission of any such additional defenses at this time is not intended to be a waiver of any such additional defenses—all of which are expressly reserved.

Dated: New York, New York
      December 13, 2023

Respectfully submitted,


By: */s/ Leslie C. Thorne*
Leslie C. Thorne
leslie.thorne@haynesboone.com
Alexandra Larkin
alexandra.larkin@haynesboone.com
Jason Jordan
jason.jordan@haynesboone.com
Aishlinn Bottini
aishlinn.bottini@haynesboone.com
Michael Freyberg
michael.freyberg@haynesboone.com

HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989

**ATTORNEYS FOR GMO
GAMECENTER USA, INC. and GMO
INTERNET GROUP, INC.**