# HAYNES BOONE

July 23, 2024

**Via ECF**

The Hon. Judge Katharine H. Parker
United States Magistrate Judge
District Court for the Southern District of New York
500 Pearl Street, Room 750
New York, New York 10007

      Re:    *GMO Gamecenter USA, Inc., et al. v. Whinstone US, Inc.*, No. 1:22-cv-5974
              Letter Motion Requesting Discovery Conference

Dear Magistrate Judge Parker:

      Pursuant to Your Individual Practices in Civil Cases Rule I.b, Plaintiffs GMO Gamecenter USA, Inc. and GMO Internet Group, Inc. (collectively, "GMO") hereby submit this letter motion requesting a discovery conference to address a discovery dispute between GMO and Defendant Whinstone US, Inc. ("Whinstone" and with GMO, the "Parties"). Counsel for the parties have engaged in numerous telephonic meet-and-confers and emails throughout June and July in a good faith effort to resolve this dispute without Court involvement, and while the parties have successfully resolved many of their issues, there are a few items on which the Parties do or may require the Court's intervention.

      *First*, the Parties have reached an impasse as to whether Whinstone will search for and produce documents relating to the negotiation and interpretation of the agreement between TXU and Whinstone (the "TXU Agreement"). It is GMO's understanding that the TXU Agreement controls the terms pursuant to which Whinstone is able to sell power back into the grid under ERCOT's Demand Response / LRS Program (the "Demand Response Program"). As the Court may recall, GMO has made a claim for 50% of all benefits Whinstone received for its participation in the Demand Response Program for the Texas Facility as a whole. As such, the circumstances surrounding Whinstone's participation in the Demand Response Program – including the negotiation history of the TXU Agreement (and any other relevant agreements pertinent to Whinstone's participation in the Demand Response Program), Whinstone's interpretations of the provisions thereof, and how Whinstone recognizes the benefits thereunder – are all squarely relevant to the issues in this action. For example, during the course of the negotiations of the TXU Agreement, GMO was given periodic updates on the negotiations from Whinstone and third-party Priority Power Management, but was largely excluded from the actual negotiations. What Whinstone and Priority Power Management were telling TXU and discussing internally regarding Whinstone's obligations to GMO, if any, go to the heart of the issues in this case, in which GMO helped fund the Texas Facility and made an initial deposit with TXU in exchange for, among other

**HAYNES BOONE**

The Hon. Judge Katharine H. Parker
July 23, 2024
Page 2

things, the ability to mine bitcoin at the Texas Facility and to split the upside benefits of the Demand Response Program that Whinstone received from TXU.

*Second*, there are several issues which the Parties continue to discuss and hope to resolve prior to requiring the Court's intervention. However, in the interest of time and conservation of judicial resources, we wanted to flag these as potential issues for discussion at a discovery conference.

- <u>Documents and communications referencing GMO and/or the Texas Agreement not by name, but as part of a larger group or business strategy</u>. Whinstone's reviewers were instructed that certain documents (*e.g.*, documents relating to Whinstone's participation in the Demand Response Program and documents relating to Whinstone/Riot's decision to terminate all or a majority of the existing, legacy colocation agreements) were not responsive unless they specifically mentioned (i) GMO or (ii) the contract between Whinstone and GMO (the "Texas Agreement") by name. Due to this limitation, documents relating to issues relevant to GMO (*e.g.*, participation in the Demand Response Program or termination of the legacy agreements) would not have been captured simply because the document discussed the issue in a broader context. GMO has asked Whinstone to have substantive discussions with relevant Whinstone and Riot personnel to determine what sorts of discussions of these issues might have taken place, between whom, and how those communications were made so the Parties can determine the best way to effectively search for these communications, and is awaiting Whinstone's response.

- <u>Construction of the Texas Facility</u>. GMO has requested that Whinstone produce documents relating to the construction of Building A, which is the building at the data center that GMO occupied. Given that GMO also invested a significant amount of money to fund construction of the Texas Facility as a whole, GMO has also requested that Whinstone produce documents related to the development of any other portion of the Texas Facility or its operations for which GMO's investment funds were utilized. GMO has asked Whinstone to consider this request and is awaiting Whinstone's response.

- <u>Installation of Non-GMO Miners in Building A</u>. One of GMO's claims in this action is that Whinstone improperly removed GMO's machines from Building A and allowed another entity (either Whinstone, Riot, or a third party) to install and operate machines in Building A in GMO's stead. Whinstone has confirmed that a third party occupied a portion of Building A and has produced the contract governing that relationship. However, the contract alone would not speak to key issues relevant to this claim, including: (i) whether the actual installation and mining differed from the terms of the contract (for example, if the third party used more space or power in Building A than was contracted for (and should

# HAYNES BOONE

The Hon. Judge Katharine H. Parker
July 23, 2024
Page 3

have been made available to GMO instead)); (ii) whether the third party identified any of the same issues with Building A that GMO alleges (*e.g.*, temperature issues, dust issues, failure of power supply, etc.) that inhibit miner performance; or (iii) the circumstances relating to Whinstone's decision to allow the third party to mine in Building A (*e.g.*, if Whinstone unilaterally removed GMO's miners to make room for the other entity's machines or determined GMO was not allowed to use any portion of Building A). Whinstone has indicated that it has confidentiality concerns with disclosing third-party information and is considering the request.

For the foregoing reasons, GMO believes that scheduling a discovery conference may help the Parties resolve the above-outlined issues.

Respectfully submitted,

Leslie C. Thorne
leslie.thorne@haynesboone.com
Direct Phone Number:  212.835.4848