**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
GMO GAMECENTER USA, INC. and GMO
INTERNET, INC.,

                                    Plaintiffs,

                 -against-

WHINSTONE US, CORPORATION,

                                    Defendant.

-----------------------------------------------------------------X

**22-CV-5974 (JPC) (KHP)**

**PARTIAL RULING ON MOTION FOR PROTECTIVE ORDER**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Defendant Whinstone US, Inc. ("Whinstone) has moved for a protective order striking certain topics contained in the Rule 30(b)(6) notice served by Plaintiffs GMO Gamecenter USA, Inc. and GMO Internet Group, Inc. (collectively, "GMO"). (ECF No. 208.)

The parties have agreed that Whinstone will make two 30(b)(6) witnesses available. The first, David Schatz, was deposed on December 16, 2024, concerning 14 topics, seven of which the parties agreed on in full, and seven of which the Court previously ruled on at ECF No. 251. Whinstone has also selected a second 30(b)(6) witness, Jeff McGonegal, who will be deposed in January 2025 on the remaining topics, which are the subject of this Order.

This Order is limited to deposition topics 1-7, 9, 11-13, 15-21, 23, 26, 39 and 41. For the reasons set forth below, Whinstone's motion for a protective order as to these topics is denied in part, and granted in part insofar as the Court revises certain topics as noted below.

### DISCUSSION

The topics which remain in dispute are the following:

Topic 1. The negotiation, drafting, execution, performance and/or non-performance of the Louisiana Agreement.

Topic 2. The negotiation, drafting, execution, performance and/or non-performance of the Texas Agreement.

Topic 3. The Parties' negotiations of a new, revised, or amended colocation agreement following the Parties' execution of the Texas Agreement, including but not limited to: (i) the basis for Whinstone's refusal to respond to or provide comments on the draft agreement provided by GMO to Whinstone in mid-June of 2021 including terms regarding the Loss of Profit by Power Shortage and (ii) the basis for Whinstone's allegation in its counterclaims that GMO "refused to negotiate in good faith a new, revised, or amended colocation agreement."

Topic 4. The Loss of Profit by Power Shortage and any other amounts owed to GMO for failing to deliver power to GMO's mining machines.

Topic 5. Whinstone's hosting agreements, including but not limited to the "hosting agreement[s] usually offered by Whinstone for colocation services" referenced in the Texas Agreement.

Topic 6. Whinstone's practice of powering down miners as part of ERCOT demand response programs (or otherwise) in exchange for credits or other benefits ("Power Sales").

Topic 7. The credits and/or benefits Whinstone receives from TXU, ERCOT, and/or any other entity for Power Sales.

Topic 9. GMO's potential sale of power pursuant to Section 4.3.7 of the Texas Agreement.

Topic 11. GMO's use of power at the Texas Data Center, including but not limited to Whinstone's allegations in Whinstone's Counterclaims that "GMO has failed and refused to

agree on and pay for a minimum usage commitment as required under Section 4.3.3 of the Agreement and instead has used no more than 50MW of available power since the inception of the Agreement."

Topic 12. The acquisition of Whinstone by Riot Platforms, Inc. ("Riot") in May 2021, including but not limited to any discussion or analysis of the Texas Agreement or other of Whinstone's "legacy" hosting contracts.

Topic 13. Riot's involvement in the day-to-day operations of the Texas Facility.

Topic 15. Whinstone's directors, employees (including but not limited to corporate officers), or assets that are or have been shared between Riot and Whinstone since Riot's acquisition of Whinstone in May 2021.

Topic 16. Riot's involvement or control over Whinstone's conduct and decision-making since Riot's acquisition of Whinstone in May 2021, including but not limited to Whinstone's conduct or decision-making in connection with GMO, the Texas Agreement, and/or the Texas Data Center.

Topic 17. Riot's performance of Whinstone's contractual obligations since Riot's acquisition of Whinstone in May 2021, including but not limited to Riot's performance of Whinstone's obligations under the Texas Agreement.

Topic 18. Statements in Riot's Form 8-K reported on August 16, 2022 that it engaged in Power Sales and/or sold power to a third party for a significant profit.

Topic 19. Statements in Riot's SEC Form 10Qs and 10K released in 2023 in which Riot disclosed that it engaged in Power Sales for profits totaling $27.3 million in 2022, and $16.5 million in 2023.

Topic 20. Whinstone, Riot, and any of their affiliates' refusal to provide information to GMO regarding profits and other benefits Whinstone enjoyed from any Power Sales.

Topic 21. Whinstone's and/or Riot's business strategy regarding Power Sales, including but not limited to Whinstone's business strategy regarding sharing profits and/or credits from Power Sales with mining clients at the Texas Data Center.

Topic 23. The negotiation, drafting, execution, performance and/or non-performance of the Base Contract for Supply of Electricity, entered into May 2020, between Whinstone and TXU Energy Retail Company ("TXU"), referenced in Riot's Form 10-K for the fiscal year ended December 31, 2021.

Topic 26. Whinstone's termination of the Texas Agreement and other "legacy" hosting contracts, including the bases for Whinstone's terminations.

Topic 39. Whinstone's and/or Riot's financial incentives for proposing that GMO upgrade its miners, including but not limited to GMO's purchase or financing of new miners through any particular third party.

Topic 41. The portion(s) of the Texas Facility that were developed and/or constructed using funds provided by GMO.

District courts possess "broad discretion to manage the manner in which discovery proceeds." *Diamond v. 500 SLD LLC*, 2022 WL 956262, at *2 (S.D.N.Y. Mar. 30, 2022) (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003)). A court may issue a protective order to safeguard a party "from annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c), "but the moving party bears the burden of establishing good cause for such a protective order." *Rekor Sys., Inc. v. Loughlin*, 2022 WL

488941, at *1 (S.D.N.Y. Feb. 17, 2022) (quoting *Qube Films Ltd. v. Padell*, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015)).  Good cause exists where a "party shows that disclosure will result in a clearly defined, specific and serious injury." *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (internal quotation marks omitted). Ultimately, "[t]he grant and nature of protection is singularly within the discretion of the district court[.]" *Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992).

Pursuant to Federal Rule of Civil Procedure 26(b)(3), all 30(b)(6) deposition topics must seek information relevant to the claims and defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(3); *City of Almaty, Kazakhstan v. Sater*, No. 19CV2645JGKKHP, 2022 WL 10374082, at *3 (S.D.N.Y. Oct. 18, 2022).  Further, the party seeking the deposition must describe the deposition topics with "reasonable particularity." Fed. R. Civ. P. 30(b)(6). "Reasonable particularity" means that the topic must be specific to a subject area and have discernible boundaries.  *Winfield v. City of New York*, 15-cv-5236, 2018 WL 840085, *5 (S.D.N.Y. Feb. 12, 2018).  Courts must scrutinize Rule 30(b)(6) deposition topics to ensure they are not a tool for abuse of the discovery process.

Whinstone objects to many of the deposition topics on grounds of relevance, overbreadth, failure to describe a topic with reasonable particularity, and because Whinstone claims some of the topics contain argumentative phrasing, concern information exclusively in the possession of Riot, or seek a legal conclusion.  The Court has reviewed the parties' briefs and communications regarding the disputed deposition topics.  Generally, the topics are relevant and described with enough particularity to put Whinstone on notice of the subject matter for which its witness should be prepared to testify.  Accordingly, Whinstone's motion for

a protective order as to deposition topics 2-3, 6-7, 12, 26 and 41 is denied. However, Whinstone's motion for a protective order is granted insofar as the Court has revised or limited certain topics as noted below. The following topics are revised as follows:

Topic 1: The negotiation, drafting, execution, performance and/or non-performance of the Louisiana Agreement, insofar as such topic is relevant to the negotiation and terms of the Texas Agreement.

Topic 4: Whinstone's business understanding of the Loss of Profit by Power Shortage, if any, and any other amounts owed to GMO for failing to deliver power to GMO's mining machines.

Topic 5: Whinstone's hosting agreements, including but not limited to Whinstone's business understanding of the "hosting agreement[s] usually offered by Whinstone for colocation services" as referenced in the Texas Agreement.

Topic 9: Whinstone's business understanding of GMO's potential or permitted sale of power, as described in Section 4.3.7 of the Texas Agreement.

Topic 11: GMO's use of power at the Texas Data Center, including but not limited to the factual basis for Whinstone's allegations in Whinstone's Counterclaims that "GMO has failed and refused to agree on and pay for a minimum usage commitment as required under Section 4.3.3 of the Agreement and instead has used no more than 50MW of available power since the inception of the Agreement."

Topic 13: Whinstone's knowledge of Riot's involvement in the day-to-day operations of the Texas Facility.

Topic 15: Whinstone's directors, employees (including but not limited to corporate officers), or assets that are or have been shared between Riot and Whinstone since Riot's acquisition of Whinstone in May 2021, insofar as those directors, employees or assets relate to or directed action concerning GMO.

Topic 16: Riot's involvement or control over Whinstone's conduct and decision-making since Riot's acquisition of Whinstone in May 2021, as it relates to Whinstone's conduct or decision-making in connection with GMO, the Texas Agreement, and/or the Texas Data Center.

Topic 17: Riot's performance of Whinstone's contractual obligations under the Texas Agreement since Riot's acquisition of Whinstone in May 2021.

Topic 18: Whinstone's business understanding of statements in Riot's Form 8-K reported on August 16, 2022 that it engaged in Power Sales and/or sold power to a third party for a significant profit.

Topic 19: Whinstone's business understanding of statements in Riot's SEC Form 10Qs and 10K released in 2023 in which Riot disclosed that it engaged in Power Sales for profits totaling $27.3 million in 2022, and $16.5 million in 2023.

Topic 20: To the extent known by Whinstone, Whinstone, Riot, and any of their affiliates' refusal to provide information to GMO regarding profits and other benefits Whinstone enjoyed from any Power Sales.

Topic 21: To the extent known by Whinstone, Whinstone's and/or Riot's business strategy regarding Power Sales, including but not limited to Whinstone's business strategy regarding sharing profits and/or credits from Power Sales with mining clients at the Texas Data Center.

Topic 23: Whinstone's business understanding of the terms of the Base Contract for Supply of Electricity, and the extent to which GMO was mentioned or discussed in negotiations of such contract, and credits Whinstone received pursuant to such contract for power under-usage at the Texas Data Center, particularly if attributable to Building A and the monetary value of such credits.

Topic 39: To the extent known by Whinstone, Whinstone's and/or Riot's financial incentives for proposing that GMO upgrade its miners, including but not limited to GMO's purchase or financing of new miners through any particular third party.

## CONCLUSION

Accordingly, Whinstone's motion for a protective order is denied in part and granted in part insofar as the topics are revised as described above.

**SO ORDERED.**

DATED:   New York, New York
         December 23, 2024

_____
KATHARINE H. PARKER
United States Magistrate Judge