```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GMO GAMECENTER USA, INC. and GMO
INTERNET, INC.,
                                        Plaintiffs,

                -against-                                           22-CV-5974 (JPC) (KHP)

 WHINSTONE US, CORPORATION,                                         DISCOVERY ORDER


                                        Defendant.
-----------------------------------------------------------------X
```

**KATHARINE H. PARKER, United States Magistrate Judge:**

The Court is in receipt of the parties' letter setting forth each side's position on search terms that reference GMO or the Texas Agreement as part of a larger group or business strategy. (ECF No. 286.) In an Order dated November 18, 2024, the Honorable John P. Cronan found that this discovery is relevant to claims and defenses in this case. (*See* ECF No. 227.) However, he deferred to the undersigned to determine proportionality. Thus, the sole issue remaining regarding this dispute is whether the additional discovery sought by GMO is proportional to the needs of the case or, alternatively, unduly burdensome to Whinstone.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). When assessing proportionality, courts weigh: (1) the importance of the issues at stake in the case, (2) the amount in controversy, (3) the parties' access to relevant information, (4) the parties' resources, (5) the importance of the requested discovery in resolving the issues in the case, and (6) whether the burden or expense of the requested discovery outweighs its likely benefit. *Id.*

The court has broad discretion in weighing these Rule 26(b)(1) factors. *ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*, 2021 WL 630910, at * 2 (W.D.N.Y. Feb. 18, 2021). The Advisory Committee Notes indicate that all parties are obliged to consider proportionality "in making discovery requests, responses, or objections." Advisory Committee Note for 2015 Amendment to Rule 26. The party seeking discovery does not bear the sole burden of addressing all proportionality considerations. *Id.* Rather, it is the "collective responsibility" of the court and parties to address "the proportionality of all discovery." *Id.*

The party seeking discovery has the initial burden of demonstrating relevance and proportionality. *See Winfield v. City of New York*, No. 15-CV-5236 (LTS) (KHP), 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018); *Sheindlin v. Brady*, No. 21-CV-01124 (LJL) (SDA), 2021 WL 2075483, at *2 (S.D.N.Y. May 24, 2021) (citing *In re Subpoena to Loeb & Loeb LLP*, No. 19-MC-00241 (PAE), 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019)), *aff'd*, 2021 WL 2689592 (S.D.N.Y. June 30, 2021). The burden then shifts to the party resisting discovery to show undue burden (or a lack of proportionality). *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016). The Advisory Committee Notes emphasize that courts must determine "the burden or expense of proposed discovery" in a "realistic way." Advisory Committee Note for 2015 Amendment to Rule 26.

## DISCUSSION

A. **Search Terms**

The Court has reviewed each side's proposed search terms, as well as the hit reports, and concludes that many of GMO's proposed search terms are overbroad after considering all of the proportionality factors set forth in Rule 26. At the outset, the Court notes that

Whinstone has already searched for and responded to GMO's requests for documents relating to the termination of the Texas Agreement. Further, in Judge Cronan's ruling on GMO's requests for documents that reference GMO or the Texas Agreement as part of a larger group or business strategy, he described GMO's requests as "narrow" and as involving a "limited scope of materials[.]"[1] But, search terms such as "Legacy" or "legac* AND client*" are extremely broad, and would require significant additional discovery where there is little evidence that such broad requests would yield responsive documents that have not already been produced. The parties have already engaged in significant discovery and taken several depositions. Given discovery already produced and the somewhat factually light basis for believing that the second search for documents will yield responsive and relevant documents that are meaningful to the litigation, it is not appropriate to require a re-search of documents with such broad terms. To do so, after taking into account the proportionality factors set forth in Rule 26, would be to sanction a scorched-earth approach to discovery that is not permitted under Rule 1 or Rule 26 principles of proportionality.[2] Accordingly, the Court has narrowed and limited the search terms so that they are more targeted and result in a lower quantity of documents to review, proportionate to the needs of the case at the current stage of litigation and given what has already been searched and produced. Whinstone shall use the search terms listed in Appendix A.

---

[1] Judge Cronan also held that GMO's requests "would not reach 'documents and communications concerning Whinstone's dealings with other users of the Texas data center,' to the extent they 'have no bearing on GMO's claims under the Texas Agreement[.]'"

[2] GMO's suggestion that the Court require Whinstone to produce all non-privileged documents that contain its proposed search terms without a responsiveness review is inappropriate and rejected.

**B. Custodians**

The parties dispute the custodians who should be searched. Whinstone contends that the custodians should be limited to Jeff McGonegal and Chad Harris and that search of additional custodians would be unlikely to result in unique, responsive and relevant emails. In response, GMO argues that McGonegal and Harris alone would be insufficient because Harris' employment was terminated months before GMO's contract was terminated, and therefore he would not have been included on all responsive communications. GMO further contends that Whinstone produced documents regarding termination of the legacy contracts that included Haugen, Zhang, Jackman, Chung and Barman but did not include McGonegal, demonstrating that searching McGonegal's ESI would not capture all responsive communications. Instead, GMO asserts that the following custodians should be searched: Jeff McGonegal, Kevin Haugen, Chad Harris, Megan Brooks-Anderson, Gordon Zhang, William Jackman, Jason Chung and Ghazaleh Barman. At the last Case Management Conference, the issue of search terms was discussed, and when the Court asked counsel for GMO to identify the two most important custodians on this topic, counsel stated Jason Les and Gordon Zhang. In its most recent letter on the search terms issue, GMO did not list Jason Les as a proposed custodian.

Given GMO's concern that using McGonegal and Harris as custodians would not yield comprehensive results and GMO's representation to the Court that Zhang is a key custodian on this issue of terminating legacy contracts, Whinstone shall use McGonegal, Harris and Zhang as custodians. Searching additional custodians beyond Zhang is not proportional to the needs of the case considering the significant discovery that has already taken place and the likelihood that additional custodians would serve to yield duplicative results and the other Rule 26

proportionality factors. *See Blackrock Allocation Target Shares: Series S Portfolio v. Bank of New York Mellon*, No. 14CIV9372GBDHBP, 2018 WL 2215510, at *7 (S.D.N.Y. May 15, 2018) ("Discovery disputes concerning the collection, review and production of ESI present special challenges that standard discovery disputes do not, including the substantial likelihood that the data possessed by the responding party is voluminous, stored in multiple formats and is duplicative across custodians."); *In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 347 F.R.D. 572, 587 (E.D.N.Y. 2024) (observing that courts will grant motions to compel disclosure of additional custodians when the moving party can show the custodians "will have additional, highly relevant materials that were not previous[ly] shared.") (internal citations omitted).

C. **Date Range**

GMO argues that the appropriate start date for the search is January 1, 2021, while Whinstone contends that communications prior to May 26, 2021 are likely to generate false hits because Riot's acquisition of Whinstone did not close until May 26, 2021. Having considered the Rule 26 proportionality factors, I find that expanding the date range to January 2021 is disproportionate to the needs of the case because of the discovery that has already been exchanged and the lack of evidence that discovery from this additional time period will produce responsive documents. Accordingly, the date range to be used for the search shall be May 26, 2021 to October 31, 2023.

D. **Supplemental Discovery**

GMO also asserts that Whinstone and Riot should produce several documents without the use of search terms. Specifically, GMO requests the production of Riot board minutes, Riot board presentations, investor presentations and financial projections of mining scenarios at the

Rockdale facility if they concern GMO or the Texas Agreement. But GMO has not explained why such documents would not be located using search terms described in this Order or search terms previously used by Whinstone. Further, Whinstone represented at the last Case Management Conference that some responsive documents falling into these categories have been produced. Discovery in this case began over a year ago and the parties cannot continue to expand the scope of discovery ad infinitum. Accordingly, GMO's request that Whinstone independently produce these documents, without the use of search terms is denied as disproportionate to the needs of the case after considering all of the Rule 26 proportionality factors. To the extent these documents are located in Whinstone's use of the search terms ordered by the Court, Whinstone shall produce them if they are responsive and non-privileged.

## CONCLUSION

Accordingly, Whinstone shall conduct a search using the search terms listed in Appendix A for the period of May 26, 2021 – October 31, 2023. The search terms shall be run against the following custodians' emails and custodial documents: Jeff McGonegal, Chad Harris, and Gordon Zhang. Whinstone shall produce responsive, non-privileged documents from the search and shall produce a privilege log of any redacted or withheld documents by the close of fact discovery.

**SO ORDERED.**

DATED:    New York, New York
          March 5, 2025                    _____
                                            KATHARINE H. PARKER
                                            United States Magistrate Judge

**Appendix A**

| | | |
|---|---|---|
| (customer* w/10 cancel*) w/20 (contract OR agreement) | (Whinstone w/3 phase) AND "self-min*" | inherit* w/25 host* |
| (customer* w/10 default*) w/20 (contract OR agreement) | below-market w/25 agreement* | inherit* w/25 Terminat* |
| (host* w/10 Terminat*) w/20 (contract OR agreement) | below-market AND cancel* | pro Riot AND agreement* |
| (legac* w/20 agreement*) AND (cancel OR terminate) | below-market w/25 client* | pro Riot AND client* |
| (legac* w/20 client*) AND (cancel OR terminate) | below-market w/25 colocat* | pro Riot AND contract* |
| (legac* w/20 contract*) AND (cancel OR terminate) | below-market w/25 contract* | pro Riot AND customer* |
| (legac* w/20 default*) AND (cancel OR terminate) | below-market w/25 customer* | pro Riot AND host* |
| (legac* w/20 host*) AND (cancel OR terminate) | below-market AND free up | pro Whinstone AND agreement* |
| ("Data Center Hosting") w/25 "below-market" | below-market w/25 host* | pro Whinstone AND client* |
| ("Data Center Hosting") w/25 "free-up" | below-market w/25 Terminat* | pro Whinstone AND colocat* |
| ("Data Center Hosting") w/15 self-min* | colocat* AND "free up" | pro Whinstone AND contract* |
| (Riot w/3 "1.0") AND "self-min*" | colocat* w/25 cancel* | pro Whinstone AND customer* |
| (Riot w/3 "2.0") AND "self-min*" | colocat* w/25 default* | pro Whinstone AND host* |
| (Riot w/3 phase) AND "self-min*" | colocat* w/25 Terminat* | pro-Whinstone AND Terminat* |
| (Rockdale w/3 "1.0") AND "self-min*" | customer* w/25 "free up" | self-min* AND "free up" |
| (Rockdale w/3 "2.0") AND "self-min*" | host* AND "free up" | self-min* w/25 cancel* |
| (Rockdale w/3 phase) AND "self-min*" | inherit* w/20 default* | self-min* w/25 default* |
| (Texas w/3 "1.0") AND "self-min*" | inherit* w/25 agreement* | self-min* w/25 Terminat* |
| (Texas w/3 "2.0") AND "self-min*" | inherit* w/25 cancel* | unfavorable w/25 host* |
| (Texas w/3 phase) AND "self-min*" | inherit* w/25 client* | unfavorable w/25 Terminat* |
| (Whinstone w/3 "1.0") AND "self-min*" | inherit* w/25 contract* | unfavorable w/20 contract* |
| (Whinstone w/3 "2.0") AND "self-min*" | inherit* w/25 customer* | |