```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/17/2025
```

Whinstone shall respond to this letter by Monday, July 21, 2025.

SO ORDERED:  07/17/2025

*Katharine H. Parker*

HON. KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE

July 16, 2025

Y.

New York, NY 10007

Re: *GMO Gamecenter USA, Inc., et al. v. Whinstone US, Inc.*, No. 1:22-cv-05974

Dear Judge Parker:

Pursuant to the Court's instruction at the June 16, 2025 conference, Plaintiffs GMO Gamecenter USA Inc. and GMO Internet, Inc. (collectively, "GMO") respectfully submit this letter request for a stay of the deposition of Masatoshi Kumagai while GMO's Rule 72 Objection to the May 23, 2025 Order denying GMO's motion for a protective order (ECF No. 388, the "Objection") remains pending before Judge Cronan.

On May 23, 2025, this Court denied GMO's motion for a protective order, which sought to prevent the apex deposition of Mr. Kumagai, GMO's CEO. ECF No. 367. On June 6, GMO filed its Objection with Judge Cronan, requesting that GMO's motion for a protective order be granted and that Mr. Kumagai be relieved of the burden of his apex deposition. ECF No. 388. At the June 16 status conference, GMO requested a stay of the Kumagai deposition while the Objection is pending, and the Court instructed GMO to request a stay within 30 days. *See* ECF No. 408, June 16 Tr. at 8:2-15. GMO now makes its stay request.

Courts in this District have held that "[f]our factors guide a court's exercise of [its] discretion" to stay a discovery order pending a Rule 72 objection: "(1) whether the stay applicant has made a strong showing that [they are] likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19-cv-9193, 2023 WL 5498962, at *4 (S.D.N.Y. Aug. 25, 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)). Other courts in this District have held that a party seeking such a stay must demonstrate "good cause," *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508 (S.D.N.Y. 2013), which standard balances "the breadth of discovery sought, the burden of responding to it, the prejudice that would result to the party opposing the stay, and the strength of the pending motion forming the basis of the request for stay." *Brawer v. Egan-Jones Ratings Co.*, 348 F.R.D. 182, 185 (S.D.N.Y. 2025). GMO addresses these overlapping standards in turn.

1. **Without a Stay, GMO Would Be Irreparably Harmed Given the Burden and Breadth of the Requested Apex Deposition Subject to the Pending Objection.**

If this Court does not stay Mr. Kumagai's apex deposition, GMO's pending Objection will be rendered moot, since it would be forced to proceed with the deposition despite the possibility that its Objection is granted. Mr. Kumagai's deposition would create an immense and unretractable burden on GMO (and a lesser but substantial burden on Whinstone, for that matter) that may not be necessary after Judge Cronan rules on the Objection.

**HAYNES BOONE** 

The Court's May 23 Order correctly recognized that Mr. Kumagai is an apex executive and as such, "there is a rebuttable presumption that [his] deposition represents an undue burden." ECF No. 367 at 2; *Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002) (because of the "possibility of harassment and the potential disruption of business" courts can "deny a request to depose a high ranking corporate official when lower ranking executives have access to the same information."); *United States ex rel. Galmines v. Novartis Pharms. Corp.*, No. 06-cv-3213, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 19, 2015) (The apex doctrine "recognizes that depositions of high-level officers severely burden those officers and the entities they represent, and that adversaries might use this severe burden to their unfair advantage."). Indeed, Mr. Kumagai's apex deposition would subject GMO to a significant burden and expense that could never be undone. While any deposition of Mr. Kumagai would severely disrupt GMO's business due to the amount of preparation, travel, and deposition time required, Whinstone's (latest) request to depose Mr. Kumagai in New York for 14 hours, if granted, could prevent Mr. Kumagai from leading GMO for days, if not a full week. The deposition would also subject GMO and Whinstone to significant legal fees for counsel's preparation for and attendance at the deposition. There is no need to impose such an immense burden on GMO, when Judge Cronan may grant the Objection and dispense with the deposition altogether. *Amron v. 3M Minnesota Mining & Mfg. Co.*, No. 23-cv-08959, 2024 WL 263010, at *3 (E.D.N.Y. Jan. 24, 2024) (stay of discovery warranted "because the parties could avoid substantial burden and waste of precious resources by staying discovery").

**2. GMO is Likely to Succeed on its Objection.**

Mr. Kumagai should not be subject to an apex deposition given the high legal standard for such discovery and because he does not have unique, relevant knowledge. *See* ECF No. 367 at 2 (May 23 Order holding that "unless an executive 'has unique evidence, personal knowledge of the claims at issue,' and 'other witnesses are incapable of providing testimony about the conduct alleged, executives are protected from being deposed,'" citing cases). Specifically, and as explained in detail in GMO's Objection, the evidence shows that (1) other (already deposed) GMO employees share Mr. Kumagai's relevant knowledge, and (2) Mr. Kumagai's mere signing of the Texas Agreement does not demonstrate unique, relevant knowledge because he signed in a representative capacity and was not involved in its negotiation. *See* ECF No. 388 at 12-21; *Invs. Ins. Co. of Am. v. Dorinco Reinsurance Co.*, 917 F.2d 100, 105 (2d Cir. 1990) ("Browne's testimony, however, provides only limited evidence of Investors' intent, as Browne was not a primary participant in the negotiations between Investors and Dorinco.").

GMO's Objection alternatively seeks a ruling that Mr. Kumagai's deposition (1) be limited to two hours in duration on specified areas of inquiry (if any) where the Court finds that Mr. Kumagai has unique knowledge on important issues and (2) take place at the U.S. Consulate in Tokyo. ECF No. 388 at 25. Since the Court's May 23 Order, Whinstone has made clear its intent to use the deposition solely to harass GMO and Mr. Kumagai. Whinstone initially represented to this Court (before Mr. Kumagai's deposition was ordered) that it was "willing to hold his deposition . . . at the consulate in Japan if available (or another location in Asia) if Mr. Kumagai would prefer." ECF No. 361 at 21. Yet after GMO provided Whinstone with dates on which the consulate was available, Whinstone changed its mind, arguing that the deposition should occur in New York because a deposition in Japan would be inconvenient, despite Whinstone's counsel having an office in Tokyo. ECF No. 404 at 23. Whinstone also has *made no effort* to book Mr. Kumagai's available dates at the U.S. Consulate in Tokyo. That is because Whinstone does not

actually need the deposition, and instead only wants to harass GMO's highest-ranking executive. *Consol. Rail Corp. v. Primary Indus. Corp.*, No. 1:92-cv-4927, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) ("[P]ermitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation.").

Under these circumstances, and for the reasons set forth in the Objection, the Objection is likely to succeed in whole or in part on GMO's alternative requests. The Court should issue a stay to prevent Whinstone from taking Mr. Kumagai's apex deposition while the Objection is pending, as the deposition may not occur at all, or may otherwise occur on a limited basis.

### 3.  A Stay Causes No Injury or Prejudice to Whinstone.

A limited stay of Mr. Kumagai's apex deposition while the Objection is pending imposes no burden on Whinstone, as it would still depose Mr. Kumagai if the Objection is denied. At most, Whinstone need only wait for Judge Cronan's ruling on the Objection before deposing Mr. Kumagai. Briefing on the Objection was completed on July 3, ECF No. 426, and under the current case schedule, motions for summary judgment are not due until December 11, 2025. ECF No. 396. Therefore, assuming Whinstone pursues Mr. Kumagai's deposition diligently, ample time remains to obtain a ruling on the Objection and incorporate Mr. Kumagai's potential deposition testimony into any summary judgment motions. Whinstone's stated reasons for taking Mr. Kumagai's deposition—to understand Mr. Kumagai's subjective motives and intent regarding the Texas Agreement and GMO's mining strategy, ECF No. 403 at 3-7—have no bearing on expert reports, so a stay pending GMO's Objection has no impact on near-term submissions in this case.

To the extent Whinstone opposes GMO's stay request, it cannot credibly do so because Riot Platforms, Inc., Whinstone's 100% owner and parent company, has requested a stay of its own corporate representative's deposition pending resolution of it and Whinstone's objection to this Court's order requiring that it produce documents they improperly withheld on privilege grounds. *See* ECF No. 444.

### 4.  The Public Interest is Best Served by a Stay.

The public interest is best served by permitting the stay of Mr. Kumagai's deposition while the Objection remains pending before Judge Cronan. If a stay is not permitted, GMO's Objection will be rendered moot and GMO's legal right pursuant to Rule 72 to object to Mr. Kumagai's apex deposition will be eviscerated. GMO respectfully submits that a stay preserving a party's ability to file a Rule 72 objection to a key apex deposition furthers the public policy behind the Federal Rule's objection procedures. *Houser v. Torres*, No. 07-cv-0954, 2007 WL 766356, at *4 (E.D.N.Y. Mar. 8, 2007) (staying magistrate judge's order pending the district court's decision on Rule 72(a) objection because otherwise the "defendants w[ould] be denied the opportunity to seek such reconsideration"). Permitting a stay also furthers the interest behind the apex doctrine, which furthers Rule 26(b)'s aim to limit burdensome discovery by protecting high-ranking executives from the burden of a deposition where they have no unique, relevant knowledge. *See Choi v. Tower Rsch. Cap. LLC*, No. 14-cv-9912, 2019 WL 6271324, at *2 (S.D.N.Y. Nov. 25, 2019) ("Undergirding [the apex doctrine] is Rule 26(b)(2), which limits discovery that is unreasonably cumulative or duplicative or is obtainable from a 'more convenient, less burdensome, or less expensive' source").

**HAYNES BOONE**

Respectfully submitted,

*/s/ L. Thorne*

Leslie C. Thorne