**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** ___07/18/2025___

> Upon review of the parties letters, including ECF Nos. 449 and 455, the requested stay is DENIED. The stay request is untimely and Whinstone has not shown likelihood of success on the objection. The documents may be produced with an applicable degree of confidentiality to ensure against misuse. The Clerk is respectfully directed to terminate the motion at ECF No. 443.
>
> SO ORDERED:
>
> *Katharine H. Parker*    07/18/2025
> HON. KATHARINE H. PARKER
> UNITED STATES MAGISTRATE JUDGE

United States District Court
500 Pearl Street, Room
New York, NY 10007

Re: *GMO Internet Group, Inc. et al. v. Whinstone US, Inc.*, No. 1:22-cv-05974-JPC-KHP

Dear Judge Parker:

We represent Whinstone US, Inc. ("Whinstone") and write to request a stay of the portion of the Court's Order entered on June 26, 2025 that required Whinstone to produce by July 10 documents concerning the termination of its contract with GMO Internet Group, Inc. and GMO Gamecenter USA, Inc. (collectively, "GMO") that Whinstone believes are privileged under Second Circuit law. (*See* ECF No. 420.) Whinstone filed an objection to the Order on July 10 (the "Objection"), which Whinstone believed stayed its obligation to produce those documents, but GMO has asserted otherwise. (*See* ECF No. 432.) Whinstone respectfully submits that a stay is warranted because the Objection is supported by Second Circuit law and Whinstone will be irreparably injured if it is required to produce the documents, which were prepared by and at the direction of counsel and which evaluated the potential impact of termination on this lawsuit. Requiring Whinstone to produce the termination documents while the Objection is pending would entirely defeat the purpose of the Objection, as even if the documents are subsequently clawed back, GMO cannot unsee them.

In deciding whether to grant a stay of an order, courts consider four factors: (1) whether the stay applicant has made a strong showing of a likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies. The greater the likelihood of irreparable harm, the less a party needs to demonstrate a likelihood of success on the merits. *See In re Gorsoan Ltd.*, 2020 WL 4194822, at *5 (S.D.N.Y. July 21, 2020) ("The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury."). While all of the factors weigh in favor of a stay, courts specifically recognize the irreparable injury arising from the production of privileged documents while an appeal is pending or contemplated. *See Nat'l Council of La Raza v. Dep't of Just.*, 2004 WL 2314455, at *2 (S.D.N.Y. Oct. 14, 2004) (granting stay to permit appeal because party "would be injured irreparably" if it "later were determined that the privilege had not been waived").

**I. Whinstone Is Likely to Succeed on the Objection.**

Whinstone respectfully submits that is likely to succeed on the Objection. As explained in the Objection, CAT 20, 21, 49, 51 and 52 were prepared by and at the direction of counsel for purposes of evaluating the potential impact termination could have on this lawsuit. For example, CAT 21 and 49 are May 2023 and June 2023 versions of the presentation discussed in CAT 16,

which the Court held was properly withheld because it "ma[de] clear that in-house business and legal personnel are preparing something for outside counsel in connection with outside counsel's damages analysis." (Order at 19, 36-37.) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The Court's conclusion that these materials are not privileged because the documents pertain to a business decision and include financial analyses is contrary to Second Circuit law. While the Second Circuit acknowledges that work product protection is withheld from documents "prepared in the ordinary course of business in a form that would not vary regardless of whether litigation was expected," *Schaeffler v. United States*, 806 F.3d 34, 43-44 (2d Cir. 2015), the termination documents do not fall within this narrow exclusion.

The Second Circuit has explicitly rejected the idea that a document must be "produced primarily or exclusively to assist in litigation" to fall within Rule 26(b)(3)'s scope. *United States v. Adlman*, 134 F.3d 1194, 1198 (2d Cir. 1998) (recognizing that such a requirement would be "at odds with the text and the policies of the Rule"). Instead, the Rule "clearly sweeps more broadly" and includes documents made "'because of' existing or expected litigation . . . despite the fact that their purpose is not to 'assist in' litigation" – a formulation that includes documents "intended to inform a business decision influenced by the prospects of the litigation." *Id*. That the communications at issue may also "serve other functions apart from litigation does not mean that they should not be protected by work-product immunity," as the documents "reveal directly or indirectly the mental impressions or opinions of the attorney." *Id.* at 1202.

The termination documents were prepared *because of* Whinstone's ongoing litigation with GMO. As part of the legal team's evaluation of the impact termination might have on this case, it communicated with members of the business team and helped create the presentation discussed above, which counsel then relied upon to provide legal advice. (*See, e.g.*, CAT 16 at 2-3 (requesting clarification concerning outside counsel's legal analysis and discussing revisions to the deck following meeting with in-house counsel); Wooding Decl. ¶¶ 5-10.) To the extent the analysis touches on "business considerations," it did so only insofar as was necessary to evaluate termination's net financial impact, and there is no evidence that Whinstone would have prepared such an analysis but for this lawsuit. Here, as in *Schaeffler*, the termination documents were not mere "records and papers" prepared "in the ordinary course of business" but instead were "specifically aimed at" assessing various damages scenarios arising from the termination of a contract subject to ongoing litigation. *See Schaeffler*, 806 F.3d at 44.

**II. Producing the Termination Documents Will Irreparably Harm Whinstone and Is Contrary to the Public Interest.**

Requiring Whinstone to produce the termination documents while the Objection is pending will irreparably harm Whinstone, as GMO will be able to view Whinstone's privileged damages analysis, which GMO cannot unsee even if the documents are eventually clawed back. Another

court recognized the irreparable injury arising from such an outcome. In *National Council of La Raza*, the court stayed the enforcement of an order requiring production of documents over which a party asserted privilege to permit the party to appeal because of the irreparable injury arising from the production of privileged documents. 2004 WL 2314455, at *2. Even the courts that have declined to implement a stay when an order required the production of documents have recognized that the inclusion of privileged documents would change the calculus. *See In re Gushlak*, 2012 WL 2564466, at *7 (E.D.N.Y. Jan. 30, 2012) ("[T]he compelled production of non-privileged discovery material, standing alone, does not constitute irreparable injury warranting a stay pending appeal."); *In re Platinum Partners Value Arbitrage Fund L.P.*, 2018 WL 3207119, at *6 (S.D.N.Y. June 29, 2018) (declining to stay order because the party "made no assertion that the documents . . . are privileged or otherwise protected").

It also would be contrary to the public interest to require the production of documents that Whinstone respectfully submits are work product and protected by the attorney-client privilege. The fundamental purpose of the attorney work product doctrine is to "establish a zone of privacy for strategic litigation planning" and to "prevent one party from piggybacking on the adversary's preparation." *O'Gorman v. Kitchen*, 2021 WL 1292907, at *5 (S.D.N.Y. Apr. 7, 2021); *Adlman*, 134 F.3d at 1198 ("Rule 26(b)(3) is intended to ratify the principles that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side.") (internal quotations omitted). If Whinstone is required to produce the documents, GMO will get an up-close view of Whinstone's preparatory work and strategic thinking.

GMO will not be injured by a stay. It does not need Whinstone's internal, theoretical damages calculations to prosecute its claims. Whinstone has otherwise complied with the Order by producing the other documents referenced in it and is in the process of "re-review[ing] its other withheld documents to see if the principles articulated" in the Order "require production of additional documents (in whole or in part) that have been withheld as privileged." (Order at 39.) To the extent GMO argues that Whinstone should be required to produce the documents because Whinstone did not seek to stay the Order in tandem with its Objection, that would be an unduly harsh result. *See Samad Bros., Inc. v. Bokara Rug Co., Inc.*, 2011 WL 4357188, at *6 (S.D.N.Y. Sep. 19, 2011) ("Defendants are entitled to object to a Magistrate Judge's discovery order and are generally not required to comply with that order while the objection is pending."). Denying the stay on this ground would effectively result in a privilege waiver and permit GMO access to some of the most sensitive documents in this case irrespective of the eventual outcome of the Objection. The status quo should be maintained until the Objection is addressed.

Respectfully submitted,

*/s/ Brandon Fetzer*
Brandon Fetzer