UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
GMO GAMECENTER USA, INC. and GMO
INTERNET, INC.,

          Plaintiffs/Counterclaim-Defendants,

          -against-

WHINSTONE US, Inc.,

          Defendant/Conterclaim-Plaintiff.
------------------------------------------------------------------------------X

**22-CV-5974 (JPC) (KHP)**

**OPINION & ORDER ON MOTION TO AMEND TO FILE FIFTH AMENDED COMPLAINT**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Presently before the Court is a motion brought by GMO Internet Group, Inc. and GMO Gamecenter USA, Inc. (together, "GMO") for leave to file a fifth amended complaint ("FAC"), adding Riot Platforms, Inc. ("Riot") as a defendant in this action with respect to count 1, GMO's breach of contract claim. GMO contends that Riot is Whinstone US, Inc.'s ("Whinstone") alter ego and thus liable to any breach of the relevant contract. Alternatively, it contends that Riot manifested an intent to be bound by the contract and assume Whinstone's obligations thereunder.

For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

The Court assumes familiarity with the facts. *See GMO Gamecenter USA, Inc. v. Whinstone US, Corporation*, No. 22-cv-5974 (JPC) (KHP), 2024 WL 3833882, at *1-3 (S.D.N.Y. Aug. 14, 2025); *GMO Gamecenter USA, Inc. v. Whinstone US, Corporation*, No. 22-cv-5974 (JPC) (KHP), 2025 WL 1763262, at *1-3 (S.D.N.Y. Jun. 25, 2025).

GMO commenced this action on June 13, 2022. Since then it has amended the complaint four times, most recently on October 19, 2023.[1] Fact discovery was originally set to be completed by July 25, 2023. (ECF No. 33.) The deadline was subsequently extended eight times: to October 27, 2023 (ECF Nos. 59-60), to April 10, 2024 (ECF No. 105), to June 5, 2024 (ECF No. 121), to July 3, 2024 (ECF No. 137), to September 2, 2024 (ECF No. 142), to November 22, 2024 (ECF No. 171), to February 21, 2025 (ECF No. 191), to April 21, 2025 (ECF No. 259). Expert discovery was similarly extended multiple time and is now set to be completed by November 20, 2025. (ECF No. 396.) Initial/affirmative expert reports are due August 20, 2025. (*Id.*) On June 4, 2025, after the close of fact discovery, GMO filed a motion to amend the complaint yet again to add Riot as a party on a theory it is liable for Whinstone's alleged breach of the contract between GMO and Whinstone. (ECF No. 377.)

## LEGAL STANDARD

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within specified time periods not applicable here. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (internal quotation marks omitted). Under

---

[1] Its first amended complaint was filed on September 12, 2022 (ECF No. 16), its second amended complaint was filed on October 4, 2022 (ECF No. 26), its third amended complaint was filed on October 18, 2022 (ECF No. 30), and its fourth amended complaint was filed on October 19, 2023 (ECF No. 106).

Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000). "Although Rule 21, and not Rule 15(a)[,] normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule." *Clarke v. Fonix Corp.*, No. 98-cv-6116 (RPP), 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999), *aff'd*, 199 F.3d 1321 (2d Cir. 1999) (internal quotation marks omitted).

However, a different standard applies when a party seeks to amend after a deadline set by the Court – the good cause standard. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021); *Dawkins v. Brandy Libr. Lounge*, LLC, No. 23-cv-00207 (HG), 2023 WL 8455896, at *3 (E.D.N.Y. Dec. 6, 2023). The good cause standard is derived from Rule 16(b)(4), which requires good cause for any modification of a scheduling order, and the primary consideration when assessing good cause is whether the movant can demonstrate diligence. *Dawkins*, 2023 WL 8455896, at *3 (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)). In addition to diligence, courts may also consider whether amendment would significantly prejudice the nonmoving party. *Levy v. Young Adult Inst., Inc.*, No. 13-cv-2861 (JPO) (SN), 2014 WL 6611454, at *3 (S.D.N.Y. Nov. 21, 2014). Because the October 25, 2022 Scheduling Order in this case gave the parties until December 13, 2022 to amend or add parties (ECF No. 33), the deadline for amending pleadings and joining parties has passed. Thus, the good cause standard applies here—which neither side disputes.

Finally, a court may deny a motion to amend a complaint when the proposed amendments are futile. Proposed amendments are futile when they would fail to state a claim under Rule 12(b)(6). *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). "The party opposing the amendment has the burden of demonstrating that leave to amend would be futile." *Margel v. E.G.L. Gem Lab Ltd.*, No. 04-cv-1514 (PAC) (HBP), 2010 WL 445192, at *3 (S.D.N.Y. Feb. 8, 2010) (citation omitted). Because a determination of futility is subject to the same standards as a motion to dismiss under Rule 12(b)(6), "[f]utility is generally adjudicated without resort to any outside evidence," and the court must accept all facts pleaded as true. *Wingate v. Gives*, No. 05-cv-1872 (LAK) (DF), 2009 WL 424359, at *5 (S.D.N.Y. Feb. 13, 2009) (citing *Nettis v. Levitt*, 241 F.3d 186, 194, n.4 (2d Cir. 2001); *Albright v. Oliver*, 510 U.S. 266, 268 (1994)).

The non-moving party bears the burden of demonstrating that the court should deny leave to amend. *Pearson Educ., Inc. v. Heliosbooks, Inc.*, No. 17-cv-203 (KMW), 2022 WL 970454, *4 (S.D.N.Y. Mar. 31, 2022) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

**DISCUSSION**

While conceding it previously suspected Riot "might have more control over Whinstone than a typical parent has over its subsidiary," GMO contends that it could not have moved earlier to amend and add Riot as a party because it only learned certain facts in the last six months of discovery pursuant to which it could assert a colorable piercing the corporate veil

4

and assumption of contract theories implicating Riot. It makes this assertion having known since May 26, 2021, that Riot acquired Whinstone, and it has known since June 29, 2023, that Riot and/or Whinstone terminated the Texas Agreement, causing GMO to file the fourth amended complaint. Riot is mentioned in the fourth amended complaint several times (ECF No. 106 ¶¶ 9, 24, 29, 34-37)

Nevertheless, GMO indicates that it learned a number of things since January 1, 2025 that led it to believe it had a credible basis for holding Riot liable under a theory of assumption of the contract, based on a recent statement by Riot to shareholders that it had assumed the Texas Agreement, and on an alter ego theory based on learning that Whinstone's Board is wholly comprised of Riot executives and that Whinstone's executives are also all executives of Riot; that Riot excluded Whinstone from making business decisions about the Texas Agreement, including its termination; that Riot did not have an arms-length hosting agreement with Whinstone; and that Riot closed Whinstone's bank accounts. Much of this information was learned only recently because Riot/Whinstone did not turn over these documents until late in discovery.

While it is true that GMP did know that Whinstone's costs exceeded its revenues, that there was a hosting agreement between GMO and Whinstone that was signed in late 2022, and that Riot was involved with termination of the contract, this information alone was insufficient according to GMO to assert that Riot should be on the hook for any liability of Whinstone, the counter-party to the contract at issue in this case.

Although it is quite late in the case, there is authority for adding a defendant on an alter ego theory at this juncture when the facts supporting the claim were learned late in the case. *Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11-cv-3489 (JMF), 2013 WL 1830416, at *4 (S.D.N.Y. May 1, 2013); *Partner Reinsurance Co. Ltd. v. RPM Mortg., Inc.*, No. 18-cv-5831, 2020 WL 6690659, at *13 (S.D.N.Y. Nov. 13, 2020). Further, the Court notes that GMO has been nothing if not diligent – as Whinstone tacitly acknowledges, GMO has pursued discovery aggressively. The Court has no doubt that GMO would have sought to amend to add Riot earlier if it thought it had sufficient facts to do so.

Riot/Whinstone contend they will be prejudiced by the addition of Riot as a party because its addition will require the parties to engage in extensive discovery on whether Whistone was adequately capitalized, among other topics not explored thus far. However, that additional discovery may be required, without more, is insufficient to establish prejudice. *See Partner Reinsurance Co.*, 2020 WL 6690659, at *13 (noting new discovery germane to added allegations did not counsel against granting leave to amend because such discovery "largely arises from the same operative facts as the allegations against the existing parties, and will overlap substantially with other discovery taken . . . in the case"). Riot/Whinstone also say the scope of expert discovery would significantly expand because an expert would need to conduct a forensic examination of Riot's and Whinstone's financials. The Court, however, can take certain actions, described below, to reduce and potentially eliminate the need for additional discovery (or, at minimum, to organize it to maximize efficiency). And, notably, no additional discovery is needed on the assumption of contract theory of liability.

6

To the extent Riot/Whinstone contend the amendments would be futile, they fail to meet their burden of demonstrating this.[2] At this point, the Court must assume the factual allegations in the proposed amended pleading to be true. That Riot recently told investors it assumed certain "legacy" contracts of Whinstone—a statement alleged by GMO which Riot has not disputed on this motion—gives rise to a plausible claim that Riot assumed the contract for purposes of liability. *See Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. All., Inc.*, No. 05-cv-7776 (KMK), 2007 WL 1701813, at *5 (S.D.N.Y. June 12, 2007) (concluding a suggestion that a party "acknowledged" it "had assumed obligations under the Contract" was sufficient to survive a Rule 12(b)(6) motion). Similarly, the allegations give rise to a plausible alter ego theory of liability; indeed, Riot does not dispute that Whinstone's expenses exceed its revenue and that its board is comprised primarily of Riot executives and that Riot controlled the negotiations over an amendment to the agreement and made the decision to terminate the agreement. *See Oy Noresin AB v. ICC Indus., Inc.*, No. 91-cv-1748 (MBM), 1991 WL 161367, at *1 (S.D.N.Y. Aug. 16, 1991); *see also Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 149 (S.D.N.Y. 2012) (listing and applying the factors to pierce the corporate veil under Delaware law, including "gross undercapitalization," "failure to observe corporate formalities," "siphoning of

---

[2] Likewise, the Court is not persuaded that the FAC adds claims against Whinstone. Whinstone points to a single paragraph of the FAC to support this assertion. (FAC ¶ 64.) While it is true that the factual allegations in this paragraph specify various sections of the Texas Agreement, Whinstone has explained how these allegations exceed the scope of what was already in the earlier complaints, nor has it made an argument which would cause the Court to suspect undue prejudice, delay, frivolity, or any other basis for denying amendment. As GMO states, these provisions were already either included in prior complaints, may have been discussed in discovery disclosures, or were necessarily intertwined with the other allegations. In any case, this paragraph is not styled as a separate cause of action; it merely makes explicit the theories of liability GMO asserts against both Defendants under its breach of contract claim. In these circumstances, the Court concludes there is good cause for this amendment, which is chiefly cosmetic but nevertheless serves to focus the issues which were already in the case.

corporate funds by the dominant stockholder," "whether the corporation is merely a façade," and significant overlap of personnel working at both entities).

Insofar as GMO must first prevail on its breach of contract claims against Whinstone before Riot could potentially become liable for that breach, and insofar as discovery on the underlying claims against Whinstone is nearly complete, the Court finds that it is appropriate to stay any required additional discovery on the alter ego theory until after the anticipated summary judgment motion practice on the underlying contract claim against Whinstone.  At that point, the Court will permit another 90-days for the parties to engage in targeted discovery concerning the alter ego theory.  Alternatively, if the parties wish to bifurcate the issues, the Court will consider whether it makes sense to bifurcate any trial such that it first conducts a trial on the underlying contract claim (and potentially the assumption of contract theory against Riot), after which it can allow discovery on the alter ego theory and then resolve the issue of alter ego liability, as appropriate.

## CONCLUSION

For the reasons set forth above, the motion to amend to add Riot as a party is GRANTED.  Discovery on the alter ego theory is stayed until after the anticipated summary judgment motion practice on the underlying contract claims against Whinstone are decided.  GMO shall file the Fifth Amended Complaint within five (5) days of the date of this Decision and Order.  Riot/Whinstone's Answer shall be due within fourteen (14) days of the date the FAC is filed.  The Clerk is respectfully directed to terminate the motion at ECF No. 377.

**SO ORDERED.**

DATED:   New York, New York
         August 26, 2025

_____
KATHARINE H. PARKER
United States Magistrate Judge